# U.S. District Court
# Eastern District of Arkansas (Little Rock)
# CRIMINAL DOCKET FOR CASE #: 4:97−cr−00243−GTE−2
## *Internal Use Only*

Case title: USA v. Kehoe, et al

Other court case numbers: 4:04−cv−00493 District
4:06cv1608 USDC E/D AR
:00−00−01975 USCA8
:00−02−02389 USCA8
:00−99−02897 USCA8
:00−99−03199 USCA8

Date Filed: 12/12/1997
Date Terminated: 05/13/2002

Assigned to: Judge G. Thomas Eisele

Appeals court case numbers: 00−1975,
02−2389

**Defendant (2)**

**Daniel Lewis Lee**
*TERMINATED: 05/13/2002*
*also known as*
Danny Lee
*also known as*
D L Graham
*also known as*
Daniel Lewis Graham

represented by **Cathleen V. Compton**
Arkansas Attorney General's Office
Catlett−Prien Tower Building
323 Center Street
Suite 200
Little Rock, AR 72201−2610
501−682−2007
Fax: (501) 374−5118
Email: vicki@cathicomptonlaw.com
*TERMINATED: 05/13/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**David A. Ruhnke**
Ruhnke &Barrett
47 Park Street
Montclair, NJ 07042
973−744−1000
Email: davidruhnke@ruhnkeandbarrett.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Jack T. Lassiter**
Lassiter &Couch
813 West Third Street
Little Rock, AR 72201

FEB 16 2011 1
Appellate Case: 11-1380   Page: 1   Date Filed: 02/17/2011 Entry ID: 3757208

501–370–9300
Fax: 501–370–9306
Email: jack@lassiterandcouch.com
*TERMINATED: 05/13/2002*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Laurence E. Komp**
Attorney at Law
Post Office Box 1785
Manchester, MO 63011
636–207–7330
Email: lekomp@swbell.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:1962–0100.F RICO– MURDER, FIRST DEGREE LIFE/$250,000 (1s) | DEATH on each of Counts 3s, 4s, and 5s; and LIFE on Counts 1s and 2s to run concurrent with each other |
| 18:1962–0100.F RICO CONSPIRACY – MURDER, FIRST DEGREE LIFE/$250,000 (2s) | DEATH on each of Counts 3s, 4s, and 5s; and LIFE on Counts 1s and 2s to run concurrent with each other |
| 18:1959–0100.F MURDER, FIRST DEGREE DEATH/$250,000 (3s–5s) | DEATH on each of Counts 3s, 4s, and 5s; and LIFE on Counts 1s and 2s to run concurrent with each other |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1962–7471.F RACKETEERING – MURDER LIFE; NMT $250,000 (1) | dismissed due to filing of superseding indictment |
| 18:1959–7471.F CONSPIRACY RACKETEERING ACTIVITY, MURDER/KIDNAPPING NMT 10 yrs; NMT $250,000 (2) | dismissed due to filing of superseding indictment |
| 18:1959–7471.F MURDER IN AID OF RACKETEERING DEATH; NMT $250,000 (3–5) | dismissed due to filing of superseding indictment |
| | dismissed due to filing of superseding indictment |

18:1951.F INTERFERENCE WITH
COMMERCE BY THREAT OR
VIOLENCE (HOBBS ACT) NMT 20
yrs; NMT $250,000
(6)

18:1951.F HOBBS ACT CONSP. –
INTERFERENCE WITH
COMMERCE BY THREAT OR                    dismissed on the motion of the govt
VIOLENCE NMT 20 YRS/$250,000
(6s)

18:924C.F VIOLENT
CRIME/DRUGS/MACHINE GUN
(Hobbs Act Consp.) DEATH; NMT           dismissed due to filing of superseding indictment
$250,000
(7)

18:924C.F USE OF FIREARM IN
HOBBS ACT ROBBERY
CONSPIRACY 5 YRS                         dismissed on the motion of the govt
CONSECUTIVE
(7s)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                      **Disposition**

None

---

**Plaintiff**

**United States of America**            represented by    **Clarence Daniel Stripling**
*TERMINATED: 05/13/2002*                                 U. S. Attorney's Office – Little Rock
                                                         Eastern District of Arkansas
                                                         Post Office Box 1229
                                                         Little Rock, AR 72203–1229
                                                         (501) 340–2600
                                                         Email: dan.stripling@usdoj.gov
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Robert A. De La Cruz**
                                                         U. S. Department of Justice –
                                                         Terrorism/Violent Crimes
                                                         601 D Street, N.W.
                                                         Suite 6500
                                                         Washington, DC 20530
                                                         (202) 563–6629
                                                         *TERMINATED: 05/13/2002*
                                                         *LEAD ATTORNEY*

FEB 16 2011  3

Appellate Case: 11-1380    Page: 3    Date Filed: 02/17/2011 Entry ID: 3757208

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 12/12/1997 | 1 | | INDICTMENT by USA Dan Stripling. Counts filed against Chevie O;Brien Kehoe (1) count(s) 1, 2, 3–5, 6, 7, Daniel Lewis Lee (2) count(s) 1, 2, 3–5, 6, 7, Faron Earl Lovelace (3) count(s) 1 (rkc) Modified on 02/23/1998 (Entered: 12/15/1997) |
| 12/12/1997 | 2 | | CASE SUMMARY warrant / summons : WARRANT request for defendant Chevie O;Brien Kehoe, defendant Daniel Lewis Lee, defendant Faron Earl Lovelace (rkc) (Entered: 12/15/1997) |
| 12/12/1997 | | | ARREST Warrant issued for Chevie O;Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace by Magistrate Judge John Forster Jr. (rkc) (Entered: 12/15/1997) |
| 12/15/1997 | 3 | | PETITION for Writ of Habeas Corpus Ad Prosequendum for Daniel Lewis Lee lej) (Entered: 12/16/1997) |
| 12/16/1997 | | | lej) (Entered: 12/16/1997) |
| 12/16/1997 | | | WRIT issued as to Daniel Lewis Lee lej) (Entered: 12/16/1997) |
| 12/22/1997 | 5 | | ORDER by Magistrate Judge John F. Forster Jr. appointing Jack T. Lassiter, and Cathleen V. Compton as to Daniel Lewis Lee (cc: all counsel and defendants) (rkc) (Entered: 12/22/1997) |
| 12/22/1997 | 12 | | Return on WRIT unexec. as to Daniel Lewis Lee [12–1] (rkc) (Entered: 12/23/1997) |
| 12/23/1997 | 11 | | NOTICE of hearing arraignment Mon. 1/5/98 at 11:00 a.m. as to Daniel Lewis Lee (rkc) (Entered: 12/23/1997) |
| 12/29/1997 | 14 | | PETITION for Writ of Habeas Corpus Ad Prosequendum by Daniel Lewis Lee (former empl) (Entered: 12/29/1997) |
| 12/29/1997 | | | WRIT issued as to Daniel Lewis Lee (former empl) (Entered: 12/29/1997) |
| 01/05/1998 | 20 | | MINUTES: court convened before Magistrate Judge John F. Forster Jr. first appearance of Daniel Lewis Lee on arraignment Attorney Jack Lassiter and Cathleen Compton present; entered plea of n/g; jury trial (5 weeks) Mon. 2/5/98 at 9:15 a.m.; 21 days to file pretrial motions as to Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 21 | | ORDER of Detention pending Trial of Daniel Lewis Lee by Magistrate Judge John F. Forster Jr. (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 22 | | |

Appellate Case: 11-1380    Page: 4    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | NOTICE of hearing jury trial Mon. 2/5/98 at 9:15 a.m. as to Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 28 | | MOTION for release of Brady materials by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 29 | | MOTION to produce alleged co−conspirator statements , and to suppress any such statements which fail to meet the criteria of F.R.of Evid. Rule 801(D)(2)(e) by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 30 | | MOTION to produce alleged section 404(b) evidence and Memorandum of Law in support thereof by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 31 | | MEMORANDUM by defendant Daniel Lewis Lee in support of motion for release of Brady materials [28−1] (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 32 | | MEMORANDUM by defendant Daniel Lewis Lee in support of motion to produce alleged co−conspirator statements [29−1], of motion to suppress any such statements which fail to meet the criteria of F.R.of Evid. Rule 801(D)(2)(e) [29−2] (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 33 | | MOTION for disclosure of Rule 16 materials by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 34 | | MOTION for disclosure of Jencks Act Material and Memorandum of Law in Support Thereof by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/05/1998 | 35 | | MOTION to compel disclosure of the existence and substance of promises of immunity, leniency, or preferential treatment and Memorandum of Law in support thereof by Daniel Lewis Lee (rkc) (Entered: 01/06/1998) |
| 01/06/1998 | 25 | | CJA Frm 20Cp4 (Apt Cnsl) appointing Cathleen V Compton #D37211 as to Daniel Lewis Lee lej) (Entered: 01/06/1998) |
| 01/06/1998 | 26 | | CJA Frm 20Cp4 (Apt Cnsl) appointing Jack T Lassiter #D37210 as to Daniel Lewis Lee lej) (Entered: 01/06/1998) |
| 01/09/1998 | 41 | | MOTION to continue trial by Daniel Lewis Lee (rkc) (Entered: 01/13/1998) |
| 01/09/1998 | 42 | | MOTION for order to adopt by silence all relevant pretrial motions and trial objections of co−dfts by Daniel Lewis Lee (rkc) (Entered: 01/13/1998) |
| 01/09/1998 | 43 | | MOTION to extend time to file pretrial motions by Daniel Lewis Lee (rkc) (Entered: 01/13/1998) |
| 01/23/1998 | 49 | | Return on WRIT executed 1/5/97 as to Daniel Lewis Lee [49−1] (former empl) (Entered: 01/23/1998) |
| 01/23/1998 | 50 | | |

FEB 16 2011  5
Appellate Case: 11-1380    Page: 5    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | RESPONSE by plaintiff USA to motion to extend time to file pretrial motions [43–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 51 | | RESPONSE by plaintiff USA to motion for order to adopt by silence all relevant pretrial motions and trial objections of co–dfts [42–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 52 | | RESPONSE by plaintiff USA to motion to continue trial [41–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 53 | | RESPONSE by plaintiff USA to motion to compel disclosure of the existence and substance of promises of immunity, leniency, or preferential treatment and Memorandum of Law in support thereof [35–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 54 | | RESPONSE by plaintiff USA to motion for disclosure of Jencks Act Material and Memorandum of Law in Support Thereof [34–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 55 | | RESPONSE by plaintiff USA to motion for disclosure of Rule 16 materials [33–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 56 | | RESPONSE by plaintiff USA to motion to produce alleged section 404(b) evidence and Memorandum of Law in support thereof [30–1] (former empl) Modified on 01/26/1998 (Entered: 01/26/1998) |
| 01/23/1998 | 57 | | RESPONSE by plaintiff USA to motion to produce alleged co–conspirator statements [29–1], motion to suppress any such statements which fail to meet the criteria of F.R.of Evid. Rule 801(D)(2)(e) [29–2] (former empl) (Entered: 01/26/1998) |
| 01/23/1998 | 59 | | RESPONSE by plaintiff USA to motion for release of Brady materials (require govt agents to retain rough notes) [28–1] (former empl) (Entered: 01/26/1998) |
| 01/23/1998 | 60 | | RESPONSE by plaintiff USA to motion for disclosure of Jencks Act Material and Memorandum of Law in Support Thereof [34–1] (former empl) (Entered: 01/26/1998) |
| 01/26/1998 | 58 | | MEMORANDUM by plaintiff USA in support of motion response for production of alleged co–conspirator statements and for suppression of any such statements which fail to meet the criteria of Fed Rules of Evid., Rule 801 (D)(2)(e)[57–1] (former empl) (Entered: 01/26/1998) |
| 01/27/1998 | 499 | | SUPPLEMENTAL CJA Form 20Cp4 (Appointment of Counsel) for Cathleen V. Compton as to Daniel Lewis Lee |

FEB 16 2011  6

Appellate Case: 11-1380     Page: 6     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | (rkc) (Entered: 01/28/1999) |
| 01/28/1998 | 61 | | MINUTES: Telephone conference held before Magistrate Judge Jerry W. Cavaneau with Dan Stripling, John Hall and Jack Lassiter as to Chevie O'Brien Kehoe and Daniel Lewis Lee regarding motion for blood sample from Kehoe and Lee. ERO – Donna Jackson (dmj) (Entered: 01/29/1998) |
| 01/30/1998 | 74 | | MINUTES: CONFERENCE as to all defts. held before Judge G. T. Eisele. Supplemental hearing set for 2/9/98. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 02/15/1998) |
| 02/04/1998 | 62 | | MOTION to allow individual sequestered voir dire by Daniel Lewis Lee lej) (Entered: 02/04/1998) |
| 02/05/1998 | 64 | | ORDER by Judge G. T. Eisele pretrial conference Mon. 2/9/98 at 9:00 a.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace (cc: all counsel and defendants) (rkc) (Entered: 02/06/1998) |
| 02/06/1998 | 65 | | MOTION to sever by Daniel Lewis Lee (rkc) (Entered: 02/09/1998) |
| 02/06/1998 | 66 | | MEMORANDUM by defendant Daniel Lewis Lee in support of motion to sever [65–1] (rkc) (Entered: 02/09/1998) |
| 02/09/1998 | 67 | | ORDER by Judge G. T. Eisele that compensation for counsel for Mr. Kehoe and Mr. Graham should be fixed at $125 for in–court and out–of–court time. The Court encourages counsel to conduct their own research and the Court directs counsel to advise it of any authority or analysis that would change the court's tentative conclusions. (cc: all counsel and defendants) (rkc) (Entered: 02/09/1998) |
| 02/09/1998 | 69 | | TRANSCRIPT of excerpted testimony of Attorney conference of 2/9/98 as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace (rkc) (Entered: 02/09/1998) |
| 02/09/1998 | 70 | | TRANSCRIPT of excerpted testimony of Attorney Conference of 1/30/98 as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace (rkc) (Entered: 02/09/1998) |
| 02/09/1998 | 103 | | MINUTES: CONFERENCE held before Judge G. T. Eisele to discuss scheduling matters. Court directs parties to file briefs by 2/23/98 on issue of compensation cap. (Ct. Rep. –– Elaine Hinson) lej) (Entered: 03/03/1998) |
| 02/12/1998 | 73 | | RESPONSE by plaintiff USA to motion to allow individual sequestered voir dire [62–1] as to Daniel Lewis Lee lej) (Entered: 02/12/1998) |
| 02/19/1998 | 77 | | RESPONSE by plaintiff USA to motion to sever [65–1] as to Danny Lewis Lee lej) (Entered: 02/19/1998) |
| 02/19/1998 | 78 | | |

| | | | |
|---|---|---|---|
| | | | MEMORANDUM by plaintiff USA in support of motion to sever response [77−1] as to Danny Lewis Lee lej) (Entered: 02/19/1998) |
| 02/19/1998 | 79 | | MOTION for travel expense No. 1 by Daniel Lewis Lee lej) (Entered: 02/19/1998) |
| 02/20/1998 | 81 | | ORDER by Judge G. T. Eisele granting an oral motion to extend the deadline for briefs addressing the compensation of Court−appointed counsel. The Court directs counsel for dfts Chevie O'Brien Kehoe and Daniel Lewis Lee to submit any appropriate briefs on the issue of compensation on or before Wed., 2/25/98. (cc: all counsel) lej) (Entered: 02/23/1998) |
| 02/23/1998 | 91 | | ORDER by Magistrate Judge John F. Forster Jr. granting motion for travel expense No. 1 [79−1] as to Daniel Lewis Lee (cc: all counsel defendants) lej) Modified on 02/23/1998 (Entered: 02/23/1998) |
| 02/24/1998 | 96 | | MOTION for order to set attorney's fees by Daniel Lewis Lee (former empl) (Entered: 02/25/1998) |
| 02/26/1998 | 100 | | MOTION for payment of reasonable attys fees by defts Chevie O'Brien Kehoe and Daniel Lewis Lee lej) (Entered: 02/27/1998) |
| 03/02/1998 | 102 | | ORDER by Judge G. T. Eisele directing counsel for defts Kehoe and Graham to advise the Court as soon as possible as to whether they will move to withdraw as counsel in the event that the Court denies the motion and sets compensation at $125 per hour (cc: all counsel and defendants) lej) (Entered: 03/02/1998) |
| 03/03/1998 | 104 | | RESPONSE by plaintiff USA to [103−1] court order of 2/9/98 lej) (Entered: 03/03/1998) |
| 03/04/1998 | 106 | | SEALED document by defendant Daniel Lewis Lee (motion) lej) (Entered: 03/05/1998) |
| 03/06/1998 | 107 | | SEALED document by defendant Daniel Lewis Lee (rkc) (Entered: 03/06/1998) |
| 03/06/1998 | 111 | | ARREST Warrant returned executed as to Daniel Lewis Lee 2/24/98 lej) (Entered: 03/11/1998) |
| 03/09/1998 | 109 | | RESPONSE by defendant Daniel Lewis Lee to Court's order dated 3/2/98 [102−1] lej) (Entered: 03/10/1998) |
| 03/10/1998 | 110 | | MEMORANDUM, Opinion and Order: by Judge G. T. Eisele directing the govt to file a notice by 3/30/98 of its intent to seek the death penalty against defts Kehoe and/or Graham and further order directing the govt to file an extension of time to comply if necessary by 3/24/98. (cc: all counsel) lej) (Entered: 03/10/1998) |

| | | | |
|---|---|---|---|
| 03/11/1998 | | | Docket Modification (Utility Event) stop XM excludable as to Daniel Lewis Lee lej) (Entered: 03/11/1998) |
| 03/16/1998 | 114 | | PETITION for Writ of HABEAS CORPUS AD PROSEQUENDUM as to Chevie O'Brien Kehoe lej) (Entered: 03/16/1998) |
| 03/17/1998 | 115 | | RESPONSE by defendant Daniel Lewis Lee to motion for order to prevent distribution [112−1] (former empl) (Entered: 03/17/1998) |
| 03/20/1998 | 119 | | NOTICE by plaintiff USA of intent to seek the death penalty as to Daniel Lewis Lee (rkc) (Entered: 03/20/1998) |
| 03/24/1998 | 122 | | ORDER by Judge G. T. Eisele denying motion to sever [65−1] of Lee and dft. Faron Earl Lovelace's sealed Motion for Severance (cc: all counsel and defendants) (rkc) (Entered: 03/24/1998) |
| 03/26/1998 | | | Docket Modification (Utility Event) stopping XM excludable for dfts Kehoe and Lovelace (rkc) (Entered: 03/26/1998) |
| 03/26/1998 | | | Docket Modification (Utility Event) starting XE excludable as to all dfts (rkc) (Entered: 03/26/1998) |
| 03/26/1998 | 133 | | NOTICE of hearing pretrial conference Thurs. 4/9/98 at 10:00 a.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace (rkc) (Entered: 03/26/1998) |
| 03/31/1998 | 136 | | ORDER by Judge G. T. Eisele addressing the April 9 pretrial conference; the parties are directed to advise the court of those motions that need to be acted upon; The Gov't is directed upon receipt of this order to submit a response or advise the Court that it does not intend to respond to the Motion for Payment of Reasonable Attorneys Fees; the parties are to advise the Court by 4/6/98 of any other issues which they want to discuss at the 4/9 conference (cc: all counsel and defendants) (rkc) (Entered: 03/31/1998) |
| 04/09/1998 | 139 | | MEMORANDUM, Opinion and Order: by Judge G. T. Eisele denying motion for payment of reasonable attys fees granting motion for order to set attorney's fees [96−1] It is ordered that counsel for Mr. Kehoe and Mr. Graham (Lee) be compensated at the maximum legal rate of $125 per hour for in−court and out−of−court time (cc: all counsel and defendants) (rkc) (Entered: 04/09/1998) |
| 04/09/1998 | 140 | | MINUTES: HEARING as to ALL DEFTS. on all pending motions/scheduling held before Judge G. T. Eisele. (Ct. Rep. −− Elaine Hinson) (mah) (Entered: 04/09/1998) |
| 04/10/1998 | 142 | | SEALED document as to Daniel Lee (rkc) (Entered: 04/10/1998) |
| 04/16/1998 | 144 | | |

FEB 16 2011  9

Appellate Case: 11-1380    Page: 9    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | CJA Frm 30Cp4 (Apt Cnsl) as to Daniel Lewis Lee appointing Cathleen Compton #D37211 (rkc) Modified on 04/23/1998 (Entered: 04/17/1998) |
| 04/17/1998 | 145 | | ORDER by Judge G. T. Eisele Ruling on motion to allow individual, sequestered voir dire [94−1] is deferred, on motion to allow individual sequestered voir dire [62−1] is deferred finding the motion for disclosure of JENCKS ACT MATERIAL [89−1] moot., finding the motion to preserve field notes of any interview conducted by any govt agent [88−1] moot., finding the motion for disclosure of LENIENCY or PLEA BARGAIN between the US and any state/govt witness [87−1] moot., finding the motion for disclosure of ELECTRONIC SURVEILLANCE [86−1] moot., finding the motion for disclosure of RULE 404(B) EVIDENCE [85−1] moot., finding the motion for release of Brady materials [84−1] moot., finding the motion for disclosure of GRAND JURY TESTIMONY [82−1] moot. finding the motion to compel disclosure of the existence and substance of promises of immunity, leniency, or preferential treatment and Memorandum of Law in support thereof [35−1] moot., finding the motion for disclosure of Jencks Act Material and Memorandum of Law in Support Thereof [34−1] moot., finding the motion for disclosure of Rule 16 materials [33−1] moot., finding the motion to produce alleged section 404(b) evidence and Memorandum of Law in support thereof [30−1] moot., finding the motion to produce alleged co−conspirator statements [29−1] moot., finding the motion to suppress any such statements which fail to meet the criteria of F.R.of Evid. Rule 801(D)(2)(e) [29−2] moot., finding the motion for release of Brady materials [28−1] moot., finding the motion for Rule 16 discovery [13−1] moot. The gov't is directed to provide dfts or their attorneys on o r before 5/11/98 all discovery to which they are at this time entitled, except for that discovery whose production would endanger the safety of any individual. The court directs counsel to brief the issue of severance in the light of Mr. Lovelace's self−representation on or before 4/23/98. The gov't is to advise the Court on the status of discovery. The Court appoints the FPD to serve as standby counsel for Mr. Lovelace. Her sole responsibility in this matter is to be available to consult w/Mr. Lovelace in the event that he seeks her assistance. (cc: all counsel and defendants) (rkc) (Entered: 04/17/1998) |
| 04/17/1998 | 146 | | MEMORANDUM by plaintiff USA in opposition to motion for severance of Faron Lovelace (rkc) (Entered: 04/17/1998) |
| 04/28/1998 | 155 | | ORDER by Judge G. T. Eisele that the Court has ocnsidered asking the Government to provide Ms. Horan, Mr. Lovelace's standby counsel, with a copy of the relevant materials in an effort to provide Mr. Lovelace greater access. It appears to the court that this procedure could |

FEB 16 2011  10

Appellate Case: 11-1380     Page: 10     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | accommodate everyone's interests as well as possible. Therefore, the Court hereby directs counsel to advise by the end of the week whether they believe that this solution is appropriate. (cc: all counsel and defendants) (rkc) (Entered: 04/28/1998) |
| 05/06/1998 | | | Docket Modification (Utility Event) granting motion to extend time to file pretrial motions [80−1] pursuant to order of 5/5/98 (rkc) (Entered: 05/06/1998) |
| 05/06/1998 | 159 | | PROPOSED Order to prevent distribution by plaintiff USA regarding [155−1] order of 4/28/98 (rkc) (Entered: 05/06/1998) |
| 05/07/1998 | 162 | | STIPULATION by USA re [161−1] motion to compel issuance of subpoena under Rule 17 (c) (former empl) (Entered: 05/08/1998) |
| 05/08/1998 | 163 | | ORDER by Judge G. T. Eisele that copies of photographs, audiotapes, and videotapes that are provided to the dfts. herein by the Gov't may not be copies by the dfts and may not be distributed by the dfts to any other person or entity w/o the prior approval of the Court. The Court further orders the Govt to provide copies of such materials to the Federal Public Defender, Lovelace's stand by counsel The Court orders the Federal Public Defender not to leave such copies in Mr. Lovelace's possession or to distribute them to any third party. The Court finally orders that all copies of all photographs, audiotapes, and videotapes provided by the Gov't to the dfts. be returned to the Gov't for storage or distruction. The Court directs the Gov't to retain for possible future use the originals of all photographs, audiotapes, and videotapes. (cc: all counsel and defendants) (rkc) (Entered: 05/11/1998) |
| 05/15/1998 | 165 | | MEMORANDUM, Opinion and Order: by Judge G. T. Eisele that on or before 6/1/98, Paramount Pictures submit to the court for review IN CAMERA the outtakes at issue in the stipulation between the gov't and paramount Pictures filed on 5/7/98 in the above styled matter. (cc: all counsel and defendants) (rkc) (Entered: 05/15/1998) |
| 06/01/1998 | 174 | | ORDER by Judge G. T. Eisele granting motion to extend time to file pretrial motions [43−1], motions should be filed by 9/15/98; granting motion to continue trial [41−1] jury trial Tuesday, 2/16/99 at 9:00 am as to Chevie O'Brien Kehoe, Daniel Lewis Lee , XT excludable started pursuant to Speedy Trial Act 18 USC 3161 (h)(8)(A) &(h)(7) as to Chevie O'Brien Kehoe, Daniel Lewis Lee (cc: all counsel and defendants) lej) (Entered: 06/02/1998) |
| 06/03/1998 | 178 | | CJA Frm 20Cp4 (Apt Cnsl) as to Daniel Lewis Lee supplemental voucher #37211 for Cathleen Compton (rkc) (Entered: 06/04/1998) |

FEB 16 2011  11

Appellate Case: 11-1380   Page: 11   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 06/03/1998 | 179 | | ORDER by Mag. Judge John F. Forster Jr. that Ms. Coleman's time shall be reflected separate from that of Mr. Lassiter on vouchers submitted for payment. Entered NUNC PRO TUNC 12/24/97 (cc: all counsel and defendants) (rkc) (Entered: 06/04/1998) |
| 06/03/1998 | 180 | | ORDER by Judge G. T. Eisele granting motion to compel issuance of subpoena under Rule 17 (c) [161−1] The court hereby directs the Gov't to copy the outtakes and distribute them to defense counsel upon receipt. (cc: all counsel and defendants) (rkc) (Entered: 06/04/1998) |
| 06/03/1998 | 183 | | MINUTES: HEARING (Ph.Cf.) as to Chevie Kehoe on govt's. motion to compel issuance of a subpoena to Paramount Pictures held before Judge G. T. Eisele. (Ct. Rep. −− Elaine Hinson) (mah) (Entered: 06/04/1998) |
| 06/22/1998 | 188 | | Supplemental CJA Frm 30 (Apt Cnsl) as to Daniel Lewis Lee attorney Cathleen V. Compton voucher #37211 lej) (Entered: 06/23/1998) |
| 06/22/1998 | 189 | | Supplemental CJA Frm 30 (Apt Cnsl) as to Daniel Lewis atty Jack T. Lassiter voucher #37210 lej) (Entered: 06/23/1998) |
| 06/23/1998 | 190 | | SEALED document (order JFF) as to Daniel Lewis Lee lej) (Entered: 06/23/1998) |
| 07/07/1998 | 195 | | SUPERSEDING indictment Chevie O'Brien Kehoe (1) count(s) 1s, 2s, 3s−5s, 6s, 7s, Daniel Lewis Lee (2) count(s) 1s, 2s, 3s−5s, 6s, 7s, Kirby Keith Kehoe (4) count(s) 1, 2, 6 (rkc) (Entered: 07/08/1998) |
| 07/07/1998 | 197 | | CASE SUMMARY warrant / summons : NONE request for defendant Chevie O'Brien Kehoe, defendant Daniel Lewis Lee (rkc) (Entered: 07/08/1998) |
| 07/08/1998 | 198 | | LETTER to Counsel Mark Hampton, John Wesley Hall, Cathleen V Compton and Jack T Lassiter re Waiver of Superseding Indictment as to Chevie O'Brien Kehoe and Daniel Lewis Lee (former empl) (Entered: 07/08/1998) |
| 07/15/1998 | 205 | | LETTER RESPONSE by defendant Daniel Lewis Lee regarding [201−1] waiver of arraignment on superseding indictment (rkc) (Entered: 07/23/1998) |
| 07/20/1998 | 201 | | LETTER by Counsel as to defendant Daniel Lewis Lee regarding waiver of superceding indictment [198−1] (former empl) Modified on 07/20/1998 (Entered: 07/20/1998) |
| 07/20/1998 | 204 | | CJA Frm 30 (Apt Cnsl) voucher #D37211 for atty Cathleen V. Compton as to Daniel Lewis Lee lej) (Entered: 07/20/1998) |
| 07/28/1998 | 207 | | MOTION for disclosure of Grand Jury information in support of government's motion for admission of hearsay |

FEB 16 2011  12
Appellate Case: 11-1380   Page: 12   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | evidence by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 08/20/1998 | 224 | | MOTION to amend notice of intent to seek a sentence of death by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee lej) (Entered: 08/20/1998) |
| 08/27/1998 | 238 | | RESPONSE by defendant Daniel Lewis Lee to motion for disclosure of Grand Jury information in support of government's motion for admission of hearsay evidence [207–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/26/2002) |
| 08/28/1998 | 241 | | RESPONSE by defendant Daniel Lewis Lee to the Motion of Notice to amend the Notice to seek the Death Penalty. (Unsealed per order of 10/2/98) (rkc) (Entered: 10/20/1998) |
| 09/01/1998 | 243 | | CJA Form 30 (Appointment of Counsel) appointing Cathleen V Compton #D37211 (NPT 12/18/97) as to Daniel Lewis Lee (former empl) (Entered: 09/01/1998) |
| 09/14/1998 | 253 | | ORDER by Judge G. T. Eisele granting motion for disclosure of Grand Jury information in support of government's motion for admission of hearsay evidence [207–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/14/1998 | 254 | | BRIEF by plaintiff USA regarding order [237–1] (former empl) (Entered: 09/14/1998) |
| 09/14/1998 | 255 | | MOTION for discovery pursuant to Rule 16(b) by USA as to Daniel Lewis Lee lej) (Entered: 09/14/1998) |
| 09/15/1998 | 263 | | MOTION in limine to foreclose suppression of evidence pursuant to 18:201(c) theories by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/15/1998 | 264 | | NOTICE of intent to use Federal Corpus Delicti law by plaintiff USA (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/26/2002) |
| 09/15/1998 | 264 | | MOTION for admission of hearsay evidence and memorandum of law in support by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/26/2002) |
| 09/15/1998 | 258 | | MOTION for discovery , to inspect information and evidence in aggravation by Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 09/16/1998) |
| 09/15/1998 | 258 | | MOTION for discovery , to inspect information and evidence in aggravation by Daniel Lewis Lee (rkc) (Entered: |

FEB 16 2011  13
Appellate Case: 11-1380    Page: 13    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 09/16/1998) |
| 09/15/1998 | 259 | | MEMORANDUM by Daniel Lewis Lee in support of motion for discovery [258–1], of motion to inspect information and evidence in aggravation [258–2] (rkc) (Entered: 09/16/1998) |
| 09/15/1998 | 260 | | MOTION for discovery on sentencing issues by Daniel Lewis Lee (rkc) (Entered: 09/16/1998) |
| 09/15/1998 | 261 | | MOTION to extend time in which to file penalty phase motions by Daniel Lewis Lee (rkc) (Entered: 09/16/1998) |
| 09/15/1998 | 262 | | ORDER by Judge G. T. Eisele granting motion to extend time for filing pretrial motions [252–1], granting motion for leave to file additional motions beyond the pretrial motion deadline [252–2] until 9/30/98. The Court directs dfts. Chevie O'Brien Kehoe and Daniel Lewis Lee to file all pre–trial motions on or before Sept. 30, 1998. (cc: all counsel and defendants) (rkc) (Entered: 09/16/1998) |
| 09/17/1998 | 266 | | MINUTES: HEARING (Ph.Cf.) as to Faron Earl Lovelace held before Judge G. T. Eisele on motions. (Ct. Rep. – Elaine Hinson) dfts.) (mah) (Entered: 09/17/1998) |
| 09/17/1998 | 267 | | MOTION to extend time to respond to govt's motions by Daniel Lewis Lee lej) (Entered: 09/18/1998) |
| 09/21/1998 | 269 | | OBJECTIONS under Fed.R.Evid 403 to hair comparison evidence by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/21/1998 | 270 | | ORDER by Judge G. T. Eisele granting motion to extend time to respond to govt's motions [267–1] until on or before 9/30/98 (cc: all counsel and defendants) (rkc) (Entered: 09/22/1998) |
| 09/21/1998 | | | Docket Modification (Utility Event) starting an XE excludable for filing of pretrial motions as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace, Kirby Keith Kehoe (sealed) (Entered: 09/23/1998) |
| 09/21/1998 | 268 | | MOTION to strike all aliases from the indictment by Daniel Lewis Lee (rkc) (Entered: 01/13/1999) |
| 09/22/1998 | 286 | | SUPPLEMENTAL MOTION to sever by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/22/1998 | 287 | | BRIEF in support of supplemental motion to sever [286–1] by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/23/1998 | 289 | | MOTION to strike notice of intention to seek the death penalty and to hold the death penalty unconstitutional by Daniel Lewis Lee (rkc) (Entered: 09/24/1998) |

FEB 16 2011  14

Appellate Case: 11-1380    Page: 14    Date Filed: 02/17/2011 Entry ID: 3757208

| 09/23/1998 | 288 | | RESPONSE by plaintiff USA to motion for discovery and inspection of information and evidence in aggravation [258–1] of Daniel Lee (rkc) (Entered: 10/16/1998) |
|---|---|---|---|
| 09/23/1998 | 288 | | MOTION for reciprocal discovery of mental health defenses to be raised during penalty phase by USA as to Daniel Lewis Lee (rkc) (Entered: 10/16/1998) |
| 09/28/1998 | 291 | | TRANSCRIPT ( 1 volumes) of proceedings for the following date(s): 9/17/98 (telephone conference) (rkc) (Entered: 09/28/1998) |
| 09/30/1998 | 295 | | RESPONSE by defendant Daniel Lewis Lee to motion in limine to foreclose suppression of evidence pursuant to 18:201(c) theories [263–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 295 | | MOTION to suppress evidence procured by prosecutorial promises by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 296 | | RESPONSE by defendant Daniel Lewis Lee to motion for reciprocal discovery of mental health defenses to be raised during penalty phase [288–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 306 | | MOTION for order directing government to provide notice of intention to use residual hearsay exception under Rule 807 by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 308 | | RESPONSE by Daniel Lewis Lee to [255–1] motion for discovery pursuant to Rule 16(b) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 309 | | RESPONSE by Daniel Lewis Lee to government's notice of intent to use federal corpus delicti law and motion for admission of hearsay evidence and memorandum of law in support [264–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 310 | | MOTION to suppress statement by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 311 | | BRIEF by defendant Daniel Lewis Lee in support of motion to suppress statement [310–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 09/30/1998 | 304 | | MOTION for order for dft. to appear at all court appearances in civilian clothing and w/o restraint and request for hearing by Daniel Lewis Lee (rkc) (Entered: 10/01/1998) |
| 09/30/1998 | 305 | | NOTICE of intent to offer an alibi defense by defendant Daniel Lewis Lee (rkc) (Entered: 10/01/1998) |

FEB 16 2011  15

Appellate Case: 11-1380    Page: 15    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 09/30/1998 | 307 | | MOTION for order to allow dft. to file additional pretrial motions (Unsealed per Order (344) of 10/9/98) by Daniel Lewis Lee (rkc) (Entered: 10/15/1998) |
| 09/30/1998 | 303 | | MOTION for order to permit counsel to participate in voir dire (Unsealed per order (428) of 12/11/98) by Daniel Lewis Lee (rkc) (Entered: 12/14/1998) |
| 10/01/1998 | 313 | | MEMORANDUM by USA in opposition to deft Lee's supplemental motion to sever [286–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/02/1998 | 325 | | BRIEF in support of government's response to deft Lee's objection to hair comparison evidence [269–1] by plaintiff USA (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/28/2002 (Entered: 06/26/2002) |
| 10/02/1998 | 327 | | RESPONSE by USA to [260–1] motion for discovery on sentencing issues (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/02/1998 | 329 | | RESPONSE by USA to deft Lee's Federal Rules of Evidence 403 objection to hair comparison evidence [269–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/02/1998 | 318 | | ORDER by Judge G. T. Eisele granting motion to amend notice of intent to seek a sentence of death [224–1] It is further ordered that dft. Lee's Response to the Motion of Notice to Amend the Notice to Seek the Death Penalty shall be unsealed by the Clerk (cc: all counsel and defendants) (rkc) (Entered: 10/05/1998) |
| 10/02/1998 | 342 | | NOTICE of hearing pretrial conference Tues. 10/13/98 at 2:00 p.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 10/06/1998) |
| 10/05/1998 | 337 | | MOTION to extend time in which to reply to deft. Lee's motion and memorandum brief to strike notice of intention to seek the death penalty and to hold the death penalty unconstitutional by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 06/16/1999) |
| 10/05/1998 | 339 | | RESPONSE by USA to [304–1] motion for order for deft to appear at all court appearances in civilian clothing and restraint and request for hearing (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/05/1998 | 333 | | RESPONSE by plaintiff USA to motion for order to allow dft. to file additional pretrial motions of Danny Lewis Lee (Unsealed per Order (344) of 10/9/98) [307–1] (rkc) (Entered: 10/15/1998) |
| 10/05/1998 | 336 | | RESPONSE by plaintiff USA to motion to strike all aliases |

FEB 16 2011  16
Appellate Case: 11-1380    Page: 16    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | from the indictment [268–1] of dft. Lee (rkc) (Entered: 01/13/1999) |
| 10/09/1998 | 345 | | ORDER by Judge G. T. Eisele granting motion to extend time in which to reply to deft. Lee's motion and memorandum brief to strike notice of intention to seek the death penalty and to hold the death penalty unconstitutional [337–1] The government will have until 10/19/98 to respond. (cc: all counsel and defendants) (rkc) (Entered: 06/16/1999) |
| 10/09/1998 | <u>351</u> | | RESPONSE by USA to [303–1] motion for order to permit counsel to participate in voir dire (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/09/1998 | 344 | | ORDER by Judge G. T. Eisele granting motion to extend time in which to file penalty phase motions [261–1], granting motion for discovery on sentencing issues [260–1], granting motion for discovery pursuant to Rule 16(b) [257–1], granting motion for discovery pursuant to Rule 16(b) [256–1], granting motion for discovery pursuant to Rule 16(b) [255–1], granting motion for Rule 16 discovery [240–1], granting motion for disclosure of any offer of leniency or plea bargains between the US or the State of Arkansas and any govt witness and brief in support [239–1], granting motion for disclosure of any offer of leniency or plea bargains between the United States or the State of Arkansas and any Government witness and brief in support [222–1], granting in part and denying in part motion for disclosure of Jencks Act Material [221–1], granting motion for Rule 16 discovery [220–1], granting in part and denying in part motion for disclosure of Jencks Act Material and brief in support [217–1] granting in part and denying in part motion of C. Kehoe to compel disclosure of evidence subject to suppression under F.R.Cr.P. 12(b)(3)(277–1) The Clerk is directed to unseal C. Kehoe's motion to compel discl. of evidence subject to suppression and the Govt's response thereto; motion of Lee to file additional pretrial motions is granted (307–1) The Clerk is directed to unseal Lee's motion to allow dft. to file additional pretrial motions (cc: all counsel and defendants) (rkc) (Entered: 10/13/1998) |
| 10/09/1998 | | | Docket Modification (Utility Event) granting in part and denying in part motion to compel disclosure of evidence subject to suppression under F.R.Cr.P. 12(b)(3) [277–1] granting motion for order to allow dft. to file additional pretrial motions per Order (344) of 10/9/98 (rkc) (Entered: 10/15/1998) |
| 10/13/1998 | 359 | | RESPONSE in opposition by plaintiff USA to motion to strike notice of intention to seek the death penalty and to hold the death penalty unconstitutional [289–1] (rkc) (Entered: 06/16/1999) |

FEB 16 2011  17

Appellate Case: 11-1380    Page: 17    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 10/13/1998 | 356 | | RESPONSE by plaintiff USA to motion for order directing government to provide notice of intention to use residual hearsay exception under Rule 807 [306–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/13/1998 | | | Docket Modification (Utility Event) granting in part and denying in part motion of Kirby Kehoe for discovery [216–1] pursuant to order of 10/9/98 by Judge Eisele (rkc) (Entered: 10/13/1998) |
| 10/13/1998 | 350 | | RESPONSE by plaintiff USA to motion of Lee to allow dft. to file additional pretrial motions (307–1) (rkc) (Entered: 10/13/1998) |
| 10/13/1998 | 372 | | MINUTES: HEARING held before Judge G. T. Eisele on certain motions. Court to enter order with rulings. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 10/19/1998) |
| 10/15/1998 | 361 | | ORDER by Judge G. T. Eisele granting motion for ext. of time in which to reply to Lee's motion to suppress statemsnts until 10/19/98 (cc: all counsel and defendants) (rkc) (Entered: 10/15/1998) |
| 10/15/1998 | 367 | | ORDER by Judge G. T. Eisele granting motion for order for additional peremptory challenges [353–1], granting motion for order for dft. to appear at all court appearances in civilian clothing and w/o restraint and request for hearing [304–1], denying motion for discovery and inspection information and evidence in aggravation [299–1], denying motion for disclosure of post conspiracy statements of co–dfts [281–1], denying motion for discovery of statements of codefts. and co–conspirators and Memorandum in support [283–1], Ruling on motion to compel examination or production of the personnel files of testifying agents and gov't employees and Memorandum in support [284–1] is deferred Ruling on motion for reciprocal discovery of mental health defenses to be raised during penalty phase [288–1] is deferred The Clerk is directed to unseal each of these motions and responses to the motions. (cc: all counsel and defendants) (rkc) (Entered: 10/16/1998) |
| 10/16/1998 | 369 | | AMENDED NOTICE of intent to seek a sentence of death by plaintiff USA (rkc) (Entered: 10/16/1998) |
| 10/19/1998 | 370 | | RESPONSE by plaintiff USA to motion to suppress statement (rkc) (Entered: 10/19/1998) |
| 10/19/1998 | 371 | | MEMORANDUM by USA in support of motion response [370–1] as to Daniel Lewis Lee (rkc) (Entered: 10/19/1998) |
| 10/22/1998 | | | APPEARANCE of Attorney for USA by Robert A. De La Cruz (rkc) (Entered: 10/22/1998) |
| 10/22/1998 | 373 | | |

FEB 16 2011  18

Appellate Case: 11-1380    Page: 18    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | NOTICE of hearing on Motions to Sever Tues. 11/10/98 at 10:00 a.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 10/22/1998) |
| 10/27/1998 | 376 | | MEMORANDUM of law in aid of this Court's authority to control voir dire and petit jury selection by plaintiff USA (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/26/2002) |
| 10/27/1998 | 378 | | SUPPLEMENTALCJA Form 30 (Appointment of Counsel) appointing Jack Lassiter #D37210 as to Daniel Lewis Lee (rkc) (Entered: 10/27/1998) |
| 10/30/1998 | 393 | | REPLY by defendant Daniel Lewis Lee to response in opposition to supplemental motion to sever [286–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 10/30/1998 | 383 | | NOTICE of hearing on motions to suppress on 12/7,8/98 at 9:00 a.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace, Kirby Keith Kehoe (rkc) (Entered: 11/02/1998) |
| 11/04/1998 | 396 | | SEALED MOTION (rkc) (Entered: 11/05/1998) |
| 11/10/1998 | 400 | | MINUTES: IN CAMERA HEARING before Judge G. T. Eisele on motions to sever; Court Reporter Carolyn Fant (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 11/12/1998 | 402 | | ORDER by Judge G. T. Eisele granting motion to extend time to file pretrial motions [384–1] until 11/30/98 (cc: all counsel and defendants) (rkc) (Entered: 11/12/1998) |
| 11/19/1998 | 408 | | SEALED MOTION (rkc) (Entered: 11/19/1998) |
| 11/19/1998 | 413 | | MINUTES: HEARING (In Camera) held before Judge G. T. Eisele (by Ph.) (Ct. Rep. –– Elaine Hinson) (UNSEALED pursuant to Order of 09/24/02) (mah) Modified on 09/25/2002 (Entered: 11/23/1998) |
| 11/23/1998 | 414 | | BRIEF in supplement to oral argument by defendant Daniel Lewis Lee regarding motion to sever [286–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 11/24/1998 | 415 | | SEALED ORDER by Judge James M. Moody granting motion [408–1] (rkc) (Entered: 11/24/1998) |
| 12/01/1998 | 418 | | SUPPLEMENTAL MEMORANDA of LAW to the government's opposition to deft Lee's motion to suppress statement by USA (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 12/03/1998 | 420 | | RESPONSE by USA to deft Lee's brief in supplement to oral argument [414–1] (Unsealed pursuant to Order dated |

FEB 16 2011  19
Appellate Case: 11-1380    Page: 19    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 06/25/02) (cdw) (Entered: 06/26/2002) |
| 12/07/1998 | <u>426</u> | | MINUTES before Judge G. T. Eisele on hearing on motions to suppress – dates 12/07/98 – 12/08/98; Court Reporter Carolyn Fant (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/26/2002) |
| 12/07/1998 | | | MINUTES: IN CAMERA HEARING held before Judge G. T. Eisele as to Chevie O'Brien Kehoe, Daniel Lewis Lee and Kirby Keith Kehoe on motions to suppress. (Ct. Rep. –– Elaine Hinson) (mah) Modified on 06/25/2002 (Entered: 12/08/1998) |
| 12/08/1998 | 425 | | PETITION for Writ of habeas corpus ad testificandum for John Albert Shults and John David Patton as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 12/08/1998) |
| 12/08/1998 | | | WRIT issued for John Albert Shults and John David Patton as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 12/08/1998) |
| 12/08/1998 | | | Docket Modification (Utility Event) dft Chevie O'Brien Kehoe, Daniel Lewis Lee arraigned; n/g plea entered to superseding indictment; Attorney present; as to Chevie O'Brien Kehoe, Daniel Lewis Lee (rkc) (Entered: 12/09/1998) |
| 12/11/1998 | 428 | | ORDER by Judge G. T. Eisele granting motion to allow individual sequestered voir dire [62–1] granting documents [274–1] granting documents [303–1] granting documents [285–1] (cc: all counsel and defendants) (rkc) (Entered: 12/11/1998) |
| 12/11/1998 | | | Docket Modification (Utility Event) granting motion for order to permit counsel to participate in voir dire (Unsealed per order (428) of 12/11/98) [303–1], granting motion for order to instruct jury on reasonable doubt during voir dire (Unsealed per Order (428) of 12/11/98) [285–1], granting motion for order to permit counsel to participate in voir dire (Unsealed per Order (428) of 12/11/98) [274–1] (rkc) (Entered: 12/14/1998) |
| 12/15/1998 | 433 | | PETITION for order to remove death penalty as a potential punishment by Daniel Lewis Lee (rkc) (Entered: 12/16/1998) |
| 12/15/1998 | 434 | | MOTION for order to require the Gov't to disclose specific institutional mechanisms designed to screen the disqualified attorney by Daniel Lewis Lee (rkc) (Entered: 12/17/1998) |
| 12/16/1998 | 437 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [423–1] (rkc) (Entered: 12/16/1998) |
| 12/16/1998 | 438 | | SEALED ORDER by Mag. Judge John F. Forster Jr. |

FEB 16 2011  20

Appellate Case: 11-1380    Page: 20    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | granting motion [410–1] (rkc) (Entered: 12/16/1998) |
| 12/16/1998 | 439 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [409–1] (rkc) (Entered: 12/16/1998) |
| 12/16/1998 | 443 | | MINUTES: HEARING as to Defts. C. Kehoe, D. Lee and K. Kehoe on jury questionaire held before Judge G. T. Eisele (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 12/17/1998) |
| 12/17/1998 | 444 | | MINUTES: CONFERENCE (Ph.) held before Judge G. T. Eisele to discuss information to be provided regarding K. Coleman billing. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 12/17/1998) |
| 12/21/1998 | 452 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [422–1] (rkc) (Entered: 12/23/1998) |
| 12/22/1998 | 450 | | MINUTES: HEARING as to Chevie Kehoe, Danny Lee and Kirby Kehoe held before Judge G. T. Eisele on motions to disqualify U.S. Atty. (Ct. Rep. –– Carolyn Fant) (mah) Modified on 06/25/2002 (Entered: 12/22/1998) |
| 12/28/1998 | 454 | | ORDER by Judge G. T. Eisele denying motion for order to remove death penalty as a potential punishment [433–1], denying motion to sever [429–1], denying motion to dismiss indictment due to prosecutorial misconduct [429–2], denying motion for order to disqualify U.S. Attorney, to strike death penalty, and for alternative relief [435–1], denying motion to sever dfts at penalty phase (unsealed per order of 12/28/98) [275–1] for the reasons stated during the hearing on 12/22/98 Documents 275 and 312 are to be unsealed. (cc: all counsel and defendants) (rkc) (Entered: 12/28/1998) |
| 01/05/1999 | 465 | | MOTION to continue by Daniel Lewis Lee (rkc) (Entered: 01/05/1999) |
| 01/05/1999 | 466 | | ORDER by Judge G. T. Eisele finding the motion for order to require the Gov't to disclose specific institutional mechanisms designed to screen the disqualified attorney [434–1] dismissed as moot. (cc: all counsel and defendants) (rkc) (Entered: 01/05/1999) |
| 01/06/1999 | 468 | | ORDER by Judge G. T. Eisele granting motion to continue [465–1], granting motion to continue trial [456–1] jury trial reset 3/1/99 at 9:30 a.m. as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe , delay is excludable pursuant to 18:3161(h)(8)(A) &(h)(7) as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (cc: all counsel and defendants) (rkc) (Entered: 01/07/1999) |
| 01/12/1999 | 472 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [460–1] (rkc) (Entered: 01/12/1999) |
| 01/13/1999 | 478 | | ORDER by Judge G. T. Eisele granting in part and denying |

FEB 16 2011  21
Appellate Case: 11-1380    Page: 21    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | in part motion for order to strike aliases from the indictment [380–1] the aliases "Kirby Kehoe" and "Keith Kehoe" are to be stricken from the Superseding Indictment, granting in part and denying in part motion to strike surplusage from the indictment [276–1] the aliases "Chevie Kehoe", "Chevie Collins", and "Jonathan Collins" are to be stricken from the Superseding Indictment, the Clerk is directed to UNSEAL this motion and the Govt's response thereto, granting in part and denying in part motion to strike all aliases from the indictment [268–1] the aliases "Daniel Lewis Lee", "Danny Lee", "D.L. Graham", "Daniel L. Lee", "D Man", and "David" are to be stricken from the Superseding Indictment, the Clerk is directed to UNSEAL this motion ad the Government's response thereto. (cc: all counsel and defendants) (rkc) (Entered: 01/14/1999) |
| 01/15/1999 | 479 | | ORDER by Judge G. T. Eisele that the jury questionaire reviewing process be as follows: All attorneys will be provided copies of all questionaires . Accompanying siad copies will b a list of approximately 1/3 of the questionnaires, indicated by juror #, selected by randomized draw. Initially, the Court asks that the parties review only these selected questionnaires. In the event the initial randomized subset drops below the deisred number of 200 to 250, the Court will notify the parties of additional randomized questionnaires for review. The Court directs all parties to file all motions to strike potential jurors for cause based upon the answers in the questionnaires on or before 2/8/99. A hearing on all such motions to strike, to be formally set at a later date, is anticipated to occur on 2/16/99. (cc: all counsel and defendants) (rkc) (Entered: 01/15/1999) |
| 01/16/1999 | 644 | | ORDER by Mag. Judge John F. Forster Jr. directing the Clerk to issue a check to Kay Quinn, Transcriber, in the amount of $730.00 for the transcript submitted the on 10th day of March, 1999. (cc: all counsel and defendants) (rkc) (Entered: 03/22/1999) |
| 01/19/1999 | 485 | | MOTION for order for videotaped deposition and that the costs of such deposition be borne by the Government by Daniel Lewis Lee (rkc) (Entered: 01/19/1999) |
| 01/19/1999 | 487 | | SEALED MOTION (rkc) (Entered: 01/19/1999) |
| 01/25/1999 | 490 | | RESPONSE in opposition by plaintiff USA to motion for order for videotaped deposition and that the costs of such deposition be borne by the Government [485–1] (rkc) (Entered: 01/25/1999) |
| 01/25/1999 | 491 | | ORDER by Judge G. T. Eisele As to the 81 potential jurors the Court has tentatively decided to excuse for hardship, the Court directs the parties to submit all objections to their exclusion on or before 1/29/99. If the Court does not receive |

FEB 16 2011  22

Appellate Case: 11-1380   Page: 22   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | any objections by that date, said potential jurors will be excused. The Court has replaced those jurors with 82 new potential jurors selected at random of those the Court intends to excuse 26 potential jurors contained in this secondsubset for hardship. Again, the Court directs the praties to submit all objections to the exclusion of these 26 potential jurors on or before 1/29/99. The Court has replaced those 26 with a new set of 26 potential jurors selected at random from the remaining questionaires. The Court intends to excuse 9 potential jurors in the third subset for hardship and the parties are directed to submit all objections to the exclusion of these 9 potential jurors by 1/29/99. On Juror Tables Page 11, the Court has listed 1 potential juror that the Court has excused because he was not qualified to serve. On Juror Tables Page 12, the Court has listed 3 potential jurors that it has concluded must be added to the potential disqualification list. It is therefore ordered that the parties are directed to file all objections to the Court's aforementioned intended exclusion of potential jurors for hardship on or before 1/29/99. (cc: all counsel and defendants) (rkc) (Entered: 01/25/1999) |
| 01/26/1999 | 493 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 01/26/1999) |
| 01/26/1999 | 494 | | SEALED ORDER by Mag. Judge John F. Forster Jr. of motion [487–1] (rkc) (Entered: 01/26/1999) |
| 01/26/1999 | 495 | | SEALED ORDER by Mag. Judge John F. Forster Jr. of motion [488–1] (rkc) (Entered: 01/26/1999) |
| 01/26/1999 | 496 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [486–1] (rkc) (Entered: 01/26/1999) |
| 01/27/1999 | 498 | | REPLY by defendant Daniel Lewis Lee to response to motion for order for videotaped deposition and that the costs of such deposition be borne by the Government [485–1] (rkc) (Entered: 01/28/1999) |
| 01/28/1999 | 501 | | SUPPLEMENT TO RESPONSE in opposition by plaintiff USA to deft Lee's supplemental motion to sever [286–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 01/28/1999 | 500 | | ORDER by Judge G. T. Eisele finding the motion for order for videotaped deposition and that the costs of such deposition be borne by the Government [485–1] moot due to death of dft's father. (cc: all counsel and defendants) (rkc) (Entered: 01/28/1999) |
| 01/29/1999 | 509 | | MINUTES: HEARING as to defts. C. Kehoe, Lee and K. Kehoe held before Judge G. T. Eisele on objections to certain juror excuses. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 02/01/1999) |

FEB 16 2011  23

Appellate Case: 11-1380    Page: 23    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 01/29/1999 | 586 | | SEALED RESPONSE document (rkc) (Entered: 02/24/1999) |
| 02/01/1999 | 505 | | SEALED ORDER by Judge G. T. Eisele granting motion [503–1] (rkc) (Entered: 02/01/1999) |
| 02/02/1999 | 512 | | PETITION for Writ of HABEAS CORPUS AD TESTIFICANDUM lej) (Entered: 02/03/1999) |
| 02/02/1999 | 513 | | MOTION for order to strike potential jurors by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe lej) (Entered: 02/03/1999) |
| 02/03/1999 | | | WRIT of Habeas Corpus Ad Testificandum issued for Chris Tolley to appear 3/1/99 @ 9:30 am lej) (Entered: 02/03/1999) |
| 02/04/1999 | 516 | | SUPPLEMENTAL NOTICE OF INTENT to offer an alibi defense by defendant Daniel Lewis Lee lej) (Entered: 02/04/1999) |
| 02/05/1999 | 518 | | ORDER by Judge G. T. Eisele that under no circumstances shall any juror (including members of the jury panel as well as those ultimately selected for the trial of this case) be contacted by any attorney, investigator, staff member, or anyone else identified with the parties in this matter; any individual who obtains information regarding the residence, place of employment, or other identifying characteristics about a juror is directed to keep such information confidential; anyone found to have violated this Order will face appropriate sanctions (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/05/1999 | 519 | | ORDER by Judge G. T. Eisele that the jurors, numbering one hundred twenty seven (127) in total, be and they are hereby, excused. Two hundred ninety six (296) jurors remain for initial consideration for service in this case. (cc: all counsel and defendants) (rkc) (Entered: 02/05/1999) |
| 02/05/1999 | 522 | | ORDER by Judge G. T. Eisele directing that the following rules be enforced during the jury trial for the defts. a) Except for court personnel, no one will bring into the courtroom or possess or operate in the courtroom any laptop computers, beepers, walkie–talkies, cellular telephones, electronic transmitting or recording equipment, or any other noise–generating electronic or mechanical devices. Separate arrangements will be made for attys of record. b) Members of the public and of the media will only be permitted to enter the courtroom before Court convenes in the morning and during any recess in the proceedings. Once Court convenes, no one may leave the courtroom until the Court declares a recess and the Judge has exited the courtroom. This rule is designed to retain and preserve appropriate courtroom |

FEB 16 2011  24

Appellate Case: 11-1380    Page: 24    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | decorum at all times. This rule will also help obviate the possibility that members of the media will rush out of the courtroom following evidence they deem newsworthy. Although circumstances may require departures from time to time, it is the intention of the Court to adhere to a schedule as closely as reasonable on the trial days Mondays through Thursdays. (cc: all counsel and defendants) lej) (Entered: 02/05/1999) |
|---|---|---|---|
| 02/08/1999 | 527 | | SEALED MOTION (rkc) (Entered: 02/08/1999) |
| 02/10/1999 | 531 | | MOTION to dismiss count(s) 6 and 7 of the superseding indictment by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee (former empl) (Entered: 02/10/1999) |
| 02/10/1999 | 532 | | SEALED document by plaintiff USA (former empl) (Entered: 02/10/1999) |
| 02/11/1999 | 533 | | SEALED RESPONSE document lej) (Entered: 02/12/1999) |
| 02/12/1999 | 540 | | MOTION for order to obtain photographs of deft Daniel Lee's tatoos by USA as to Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/12/1999 | 534 | | PETITION for Writ of HABEAS CORPUS AD TESTIFICANDUM for Kirby Kehoe lej) (Entered: 02/12/1999) |
| 02/12/1999 | 536 | | SEALED ORDER by Mag. Judge John F. Forster Jr. lej) (Entered: 02/12/1999) |
| 02/12/1999 | 537 | | SUPPLEMENTAL SEALED MOTION lej) (Entered: 02/12/1999) |
| 02/12/1999 | 538 | | SEALED RESPONSE document lej) (Entered: 02/12/1999) |
| 02/12/1999 | 539 | | MEMORANDUM by USA OF LAW in anticipation of issues arising at trial as to Chevie O'Brien Kehoe, Daniel Lewis Lee lej) (Entered: 02/16/1999) |
| 02/16/1999 | 542 | | SEALED MOTION lej) (Entered: 02/16/1999) |
| 02/17/1999 | 549 | | ORDER by Judge G. T. Eisele granting motion for order to obtain photographs of deft Daniel Lee's tatoos [540−1], granting motion to obtain photographs of deft Chevie Kehoe's tatoo [542−1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/28/2002 (Entered: 06/27/2002) |
| 02/17/1999 | 553 | | MEMORANDUM, Opinion and Order by Judge G. T. Eisele denying deft Chevie Kehoe's motion to sever counts [300−1]; denying deft Chevie Kehoe's motion to exclude evidence of extrinsic offenses [272−1], directing the Clerk to unseal this motion and the government's response thereto; denying deft Lee's supplemental motion to sever [286−1]; |

FEB 16 2011  25

Appellate Case: 11-1380    Page: 25    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | deft Lee's amendment to motion to sever [147–1] is dismissed as moot; deft Chevie Kehoe's motion to adopt co–defendant's motion to sever defts [302–1] is dismissed as moot, the Clerk is directed to unseal this motion and the government's response thereto; denying deft Kirby Kehoe's motion to sever [388–1], the Clerk is directed to unseal this motion, the brief in support thereof, and the government's response thereto; denying deft Chevie Kehoe's supplemental motion to sever defts [457–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/17/1999 | 546 | | ORDER by Judge G. T. Eisele granting motion to dismiss count(s) 6 and 7 of the superseding indictment [531–1] as to Chevie O'Brien Kehoe and Daniel Lewis Lee (cc: all counsel and defendants) lej) (Entered: 02/17/1999) |
| 02/17/1999 | 548 | | SEALED MOTION lej) (Entered: 02/17/1999) |
| 02/17/1999 | 555 | | ORDER by Judge G. T. Eisele granting in part and holding in abeyance in part the motion for order to strike potential jurors [513–1]; ruling the same for documents [535–1] and [527–1] (cc: all counsel) lej) (Entered: 02/17/1999) |
| 02/17/1999 | 556 | | MEMORANDUM, Opinion and Order: by Judge G. T. Eisele overruling Chevie Kehoe's objection to exclusion of certain citizens from jury service and denying his motion for an expanded jury pool [463–1] (cc: all counsel) lej) (Entered: 02/17/1999) |
| 02/18/1999 | 565 | | MOTION by movant Bobby Hulse to quash subpoena (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/18/1999 | 558 | | ORDER by Judge G. T. Eisele excusing juror #165 and #568 on hardship grounds (cc: all counsel) lej) (Entered: 02/18/1999) |
| 02/18/1999 | | | Docket Modification (Utility Event), denying motion to exclude evidence of extrinsic offenses [272–1], finding the motion for order to adopt co–deft's motion to sever defts [302–1] moot per the order by Judge Eisele filed 2/17/99 under seal. lej) (Entered: 02/18/1999) |
| 02/18/1999 | 563 | | SEALED ORDER by Mag. Judge John F. Forster Jr. lej) (Entered: 02/18/1999) |
| 02/18/1999 | 567 | | ORDER by Judge G. T. Eisele granting in part and denying in part the motion for order to strike potential jurors [513–1] and sealed motions [535–1], [527–1]; granting sealed motion [537–1] (cc: counsel) lej) Modified on 02/18/1999 (Entered: 02/18/1999) |
| 02/19/1999 | | | CORRESPONDENCE from Judge G.T. Eisele to attorneys regarding proposed statement of case &jury selection |

FEB 16 2011  26
Appellate Case: 11-1380    Page: 26    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | procedures (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/19/1999 | 568 | | ORDER by Judge G. T. Eisele excusing juror #573 due to hardship (cc: all counsel) lej) (Entered: 02/19/1999) |
| 02/19/1999 | 569 | | ORDER by Judge G. T. Eisele excusing juror #787 due to hardship (cc: all counsel) lej) (Entered: 02/19/1999) |
| 02/19/1999 | 570 | | CJA Form 30 (Appointment of and authority to pay court appointed counsel) voucher #D37211 appointing Cathleen Compton as to Daniel Lewis Lee lej) Modified on 02/19/1999 (Entered: 02/19/1999) |
| 02/19/1999 | 571 | | MOTION for daily transcript copy by Daniel Lewis Lee lej) (Entered: 02/19/1999) |
| 02/22/1999 | 575 | | REPLY by plaintiff USA to deft Kehoe's supplemental response to motion to use corpus delicti and use of residual and other hearsay re alleged murder of Jon Cox [264–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/22/1999 | 572 | | MINUTES: Ex–parte hrg before Mag. Judge John F. Forster Jr. (mcn) (Entered: 02/22/1999) |
| 02/22/1999 | 574 | | SEALED MOTION lej) (Entered: 02/23/1999) |
| 02/23/1999 | 580 | | RESPONSE by plaintiff USA to motion of Bobby Hulse to quash subpoena [565–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/23/1999 | 581 | | ORDER by Judge G. T. Eisele denying motion to quash subpoena [565–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/23/1999 | | | CORRESPONDENCE from Judge G.T. Eisele to attorneys regarding finding by the Court that the identity of eight witnesses withheld from defts justified (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/23/1999 | 578 | | SEALED ORDER by Mag. Judge John F. Forster Jr. lej) (Entered: 02/23/1999) |
| 02/23/1999 | 579 | | SEALED ORDER by Mag. Judge John F. Forster Jr. lej) (Entered: 02/23/1999) |
| 02/23/1999 | 582 | | ORDER by Judge G. T. Eisele excusing Juror No. 739 for cause now without allowing the parties the opportunity to respond. (cc: all counsel and defendants) (rkc) (Entered: 02/24/1999) |
| 02/23/1999 | 583 | | ORDER by Judge G. T. Eisele that the remaining jurors not contained in the initial four subsets, numbering 331 in total, should be excused because they will not be needed for the |

FEB 16 2011  27

Appellate Case: 11-1380     Page: 27     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | trial of this matter. The Court has further determined that 2 jurors contained in the initial four subsets must be excused for cause. The Court does hereby excuse the jurors now without allowing the parties the opportunity to respond. The jurors are Nos. 382 and 705. (cc: all counsel and defendants) (rkc) (Entered: 02/24/1999) |
| 02/24/1999 | 585 | | PETITION for Writ of habeas corpus ad testificandum for Larry Gene McPheron as to Chevie O'Brien Kehoe, Daniel Lewis Lee (rkc) (Entered: 02/24/1999) |
| 02/25/1999 | 591 | | ORDER by Judge G. T. Eisele that fourt (4) jurors contained in the initial four subsets must be excused for cause and they are Nos. 995, 152, 365, 381. (cc: all counsel and defendants) (rkc) (Entered: 02/25/1999) |
| 02/25/1999 | 588 | | MEMORANDUM, Opinion and Order by Judge G. T. Eisele denying deft Kehoe's motion to suppress search and seizure of motorhome in Casper, Wyoming [279–1]; denying deft Kehoe's motion to suppress evidence from Bonner County, Idaho [273–1]; granting deft Kehoe's motion to suppress photo identification and in–court identification [278–1], the photo identifications made by Patricia Young, Roger Young, and Charles Rose, the in–court identification by Patricia Young, and any attempted in–court identification by Patricia Young, Roger Young, Charles Rose, or Regina Clark are thereby suppressed; denying deft Kehoe's motion to suppress search and seizure of storage unit in Old Town, Idaho [280–1]; denying deft Lee's motion to suppress statement [310–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/26/1999 | 597 | | SEALED RESPONSE document (rkc) (Entered: 02/26/1999) |
| 02/26/1999 | 598 | | SEALED RESPONSE document (rkc) (Entered: 02/26/1999) |
| 02/26/1999 | 600 | | ORDER by Mag. Judge John F. Forster Jr. that the United States Marshal shall permit each defendant to shave just prior to commencement of court each morning, and shall provide razors and shaving cream for that purpose, commensurate with good security practices. (cc: all counsel and defendants) (rkc) (Entered: 02/26/1999) |
| 02/26/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee begun before Judge G. T. Eisele. Jury selection begun. Day 1. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/07/1999) |
| 02/26/1999 | 599 | | ORDER by Judge G. T. Eisele denying motion for order to remove metal detectors and x–ray machine from fourth floor hallway [593–1] (cc: all counsel and defendants) (Unsealed |

FEB 16 2011  28

Appellate Case: 11-1380    Page: 28    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 02/26/1999 | 602 | | MEMORANDUM, Opinion and Order by Judge G. T. Eisele denying deft Kehoe's motion for change of venue based on pretrial disclosure of material evidence [543–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 03/01/1999 | 603 | | ORDER by Judge G. T. Eisele excusing jurors 038 and 567 from the initial four subsets (cc: all counsel and defendants) (rkc) (Entered: 03/01/1999) |
| 03/01/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 2. Voir dire begun. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/07/1999) |
| 03/01/1999 | 604 | | ORDER by Judge G. T. Eisele overruling with prejudice deft Lee's Fed.R.Evid. 403 Objection to hair comparison evidence [269–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 03/02/1999 | 606 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #37210 appointing Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 03/02/1999) |
| 03/02/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 3. Voir dire resumed. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/07/1999) |
| 03/03/1999 | 607 | | ORDER by Judge G. T. Eisele granting motion for daily transcript copy [573–1], [571–1] pursuant to 18:3006A (cc: all counsel and defendants) (rkc) (Entered: 03/03/1999) |
| 03/03/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 4. Voir dire resumed. (A.M. Ct. Rep. –– Elaine Hinson) (P.M. Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/07/1999) |
| 03/04/1999 | 611 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 03/04/1999) |
| 03/04/1999 | | | MINUTES: JURY TRIAL resumed as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 5. Voir dire resumed. (A.M. Ct. Rep. –– Carolyn Fant) (P.M. Ct. Rep. –– Genie Power) (mah) (Entered: 03/07/1999) |
| 03/05/1999 | 614 | | ORDER by Judge G. T. Eisele modifying the Order filed 2/5/99 to permit persons to bring into the courtroom, possess, or operate in the courtroom beepers if they are set to operate without making any noise. In the event that the courtroom is interrupted by a beeper making noise, the |

FEB 16 2011  29
Appellate Case: 11-1380    Page: 29    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | Court will rescind the instant order and return to its original rule disallowing all beepers. (cc: all counsel and defendants) (rkc) (Entered: 03/05/1999) |
| 03/05/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 6. Voir dire concluded. (A.M. Ct. Rep. –– Elaine Hinson) (P.M. Ct. Rep. –– Carolyn Fant) (Late P.M. Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/07/1999) |
| 03/08/1999 | 617 | | CJA Form 30 (Appointment of and Authority to pay Court appointed Counsel), voucher #D37211 appointing Cathleen Compton as to Daniel Lewis Lee lej) (Entered: 03/08/1999) |
| 03/08/1999 | 618 | | SEALED MOTION (rkc) (Entered: 03/08/1999) |
| 03/08/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 7. (A.M. Ct. Rep –– Elaine Hinson)(P.M. Ct. Rep. –– Carolyn Fant)(Late P.M. Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/09/1999) |
| 03/09/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 8. (A.M. Ct. Rep. –– Christa Newberg)(AM/PM Ct. Rep. –– Carolyn Fant)(Late P.M. Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/09/1999) |
| 03/10/1999 | 620 | | SEALED document (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | 621 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [618–1] (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | 622 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | 623 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | 624 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | 626 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [625–1] (former empl) (Entered: 03/10/1999) |
| 03/10/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 9. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant)(Late PM Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/10/1999) |
| 03/10/1999 | 630 | | TRIAL BRIEF regarding Fed. R. Evid. 609 by plaintiff USA (rkc) (Entered: 03/11/1999) |
| 03/10/1999 | 627 | | MOTION for discovery of mental health evidence regarding |

FEB 16 2011  30

Appellate Case: 11-1380    Page: 30    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | deft Lee by USA as to Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 03/11/1999 | 631 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (former empl) (Entered: 03/11/1999) |
| 03/11/1999 | 632 | | SEALED MOTION (former empl) (Entered: 03/11/1999) |
| 03/11/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 10. (AM Ct. Rep. –– Christa Newberg)(PM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 03/11/1999) |
| 03/11/1999 | 633 | | RESPONSE by defendant Daniel Lewis Lee to motion for discovery of mental health evidence regarding deft Lee [627–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 03/15/1999 | 634 | | SEALED clerk's minutes before Judge Forster; ERO Cecilia Norwood/tapes and notes sealed and placed in vault (mcn) Modified on 03/15/1999 (Entered: 03/15/1999) |
| 03/15/1999 | 635 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 03/15/1999) |
| 03/15/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 11. (AM Ct. Rep. –– Christa Newberg)(AM/PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/15/1999) |
| 03/16/1999 | 636 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [508–1] (rkc) (Entered: 03/16/1999) |
| 03/16/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 12. (AM Ct. Rep. –– Christa Newberg)(AM/PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/19/1999) |
| 03/17/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 13. (AM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/19/1999) |
| 03/18/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 14. (AM Ct. Rep. –– Genie Power)(AM/PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Elaine Hinson) (mah) (Entered: 03/19/1999) |
| 03/19/1999 | 643 | | REPLY by plaintiff USA to response to motion for discovery of mental health evidence regarding deft Lee [627–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |

FEB 16 2011  31

Appellate Case: 11-1380    Page: 31    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 03/22/1999 | 645 | | MOTION for order for guidance from the Courts with regard to the denial of a continuance of the 4/26/99 trial date for Mr. Infinger by counsel for Daniel Lewis Lee (rkc) (Entered: 03/22/1999) |
| 03/22/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 15. ( AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/22/1999) |
| 03/22/1999 | 646 | | REPLY by Daniel Lewis Lee to government's reply to deft's response to motion for discovery of mental health evidence of deft Lee [643–1] (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 03/23/1999 | 647 | | ORDER by Judge G. T. Eisele that Integris Hospital through its representative provide the medical records of witness Debra Lee Graham. Entered NUNC PRO TUNC to 3/18/99. (cc: all counsel and defendants) (rkc) (Entered: 03/23/1999) |
| 03/23/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 16. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Genie Power)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 03/25/1999) |
| 03/24/1999 | 650 | | SEALED ORDER by Mag. Judge John F. Forster Jr. [649–1] (rkc) (Entered: 03/24/1999) |
| 03/24/1999 | 651 | | SEALED MOTION (rkc) (Entered: 03/24/1999) |
| 03/24/1999 | 652 | | SEALED ORDER by Mag. Judge John F. Forster Jr. [651–1] (rkc) (Entered: 03/24/1999) |
| 03/24/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 17. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/25/1999) |
| 03/25/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 18. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Genie Power) (mah) (Entered: 03/25/1999) |
| 03/26/1999 | 655 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 03/26/1999) |
| 03/29/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 19. (AM Ct. Rep. –– Christa Newberg)(AM/PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/30/1999) |
| 03/29/1999 | 657 | | AGREED DISCOVERY ORDER regarding BOP information as to deft Lee approved by Judge G. T. Eisele (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |

FEB 16 2011  32

Appellate Case: 11-1380    Page: 32    Date Filed: 02/17/2011 Entry ID: 3757208

| 03/30/1999 | 658 | | SEALED MOTION (rkc) (Entered: 03/30/1999) |
|---|---|---|---|
| 03/30/1999 | 659 | | SEALED MOTION (rkc) (Entered: 03/30/1999) |
| 03/30/1999 | 660 | | SEALED MOTION (rkc) (Entered: 03/30/1999) |
| 03/30/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 20. (AM Ct. Rep. –– Christa Newberg)(PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) Modified on 02/18/2003 (Entered: 02/17/2003) |
| 03/31/1999 | 661 | | SEALED document (rkc) Modified on 06/28/2002 (Entered: 03/31/1999) |
| 03/31/1999 | 663 | | ORDER by Judge G. T. Eisele granting motion MOTION [660–1], granting motion MOTION [659–1] (cc: all counsel and defendants) (rkc) (Entered: 03/31/1999) |
| 03/31/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 21. (AM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 03/31/1999) |
| 03/31/1999 | 662 | | AGREED DISCOVERY ORDER regarding USP videotape(s) as to deft Lee approved by Judge G. T. Eisele (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/28/2002 (Entered: 06/27/2002) |
| 03/31/1999 | 665 | | ORDER by Judge G. T. Eisele regarding motion for discovery of mental health evidence as to deft Lee [627–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/28/2002 (Entered: 06/27/2002) |
| 04/01/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 22. (AM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 04/03/1999) |
| 04/05/1999 | 675 | | CJA Form 30Cp4 (Appointment of Counsel) appointing Jack T. Lassiter as to Daniel Lewis Lee (rkc) (Entered: 04/05/1999) |
| 04/05/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 23. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Christa Newberg)((PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/06/1999) |
| 04/05/1999 | 672 | | RESPONSE by plaintiff USA to deft Lee's motion to exclude certain evidence at penalty phase (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |

FEB 16 2011  33

Appellate Case: 11-1380    Page: 33    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 04/05/1999 | | | CORRESPONDENCE to Judge G.T. Eisele from Buford McDonald and 04/08/99 reply to Buford McDonald from Eva Madison (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 04/06/1999 | 676 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/06/1999) |
| 04/06/1999 | 678 | | AMENDED AND SUBSTITUTED ORDER by Judge G. T. Eisele dismissing the MOTION [659–1] and granting MOTION [660–1] (cc: all counsel and defendants) (rkc) (Entered: 04/06/1999) |
| 04/06/1999 | 681 | | SEALED MOTION (rkc) (Entered: 04/06/1999) |
| 04/06/1999 | 682 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting MOTION [681–1] (rkc) (Entered: 04/06/1999) |
| 04/06/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 24. (AM Ct. Rep. –– Carolyn Fant)(AM/PM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. Christa Newberg) (mah) (Entered: 04/07/1999) |
| 04/06/1999 | <u>683</u> | | ORDER by Judge G. T. Eisele dismissing as moot deft Lee's motion to exclude certain evidence at penalty phase, if same occurs [632–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 04/07/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. Thomas Eisele. Day 25. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Christa Newberg)(PM Ct. Rep. –– Genie Power) (mah) (Entered: 04/07/1999) |
| 04/08/1999 | 686 | | SEALED MOTION (rkc) (Entered: 04/08/1999) |
| 04/08/1999 | 687 | | ORDER by Judge G. T. Eisele that all subpoenas issued for the appearance date of 5/3/99 are now effective for 4/20/99 or when directed by the subpoenaing party and shall remain in full force and effect for the new date. No new subpoenas or fees are required to be issued. (cc: all counsel and defendants) (rkc) (Entered: 04/08/1999) |
| 04/08/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 26. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Genie Power) (mah) (Entered: 02/17/2003) |
| 04/09/1999 | 689 | | SEALED doc (mcn) Modified on 04/12/1999 (Entered: 04/09/1999) |
| 04/09/1999 | 690 | | SEALED document as to defendant Chevie O'Brien Kehoe, defendant Daniel Lewis Lee (rkc) (Entered: 04/09/1999) |

FEB 16 2011  34

Appellate Case: 11-1380    Page: 34    Date Filed: 02/17/2011 Entry ID: 3757208

| 04/09/1999 | 691 | | SEALED document (rkc) (Entered: 04/09/1999) |
|---|---|---|---|
| 04/09/1999 | 692 | | SEALED document (rkc) (Entered: 04/09/1999) |
| 04/09/1999 | 693 | | SEALED document (rkc) (Entered: 04/09/1999) |
| 04/09/1999 | 694 | | TRANSCRIPT (volume 1) of proceedings for the following date: 2/26/99 (jury trial before the Honorable G Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 04/12/1999 (Entered: 04/12/1999) |
| 04/09/1999 | 695 | | TRANSCRIPT (volume 2) of proceedings for the following date: 3/1/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 04/12/1999 (Entered: 04/12/1999) |
| 04/09/1999 | 696 | | TRANSCRIPT (volume 3) of proceedings for the following date: 3/2/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 04/12/1999 (Entered: 04/12/1999) |
| 04/09/1999 | 697 | | TRANSCRIPT (volume 4) of proceedings for the following date: 3/3/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 04/12/1999 (Entered: 04/12/1999) |
| 04/09/1999 | 698 | | TRANSCRIPT (volume 5) of proceedings for the following date: 3/4/99 (jury trial before the Honorable G. Thomas Eisele) CRR Carolyn S Fant (former empl) Modified on 04/12/1999 (Entered: 04/12/1999) |
| 04/09/1999 | 699 | | TRANSCRIPT (volume 6) of proceedings for the following date: 3/5/99 (jury trial before the Honorable G. Thomas Eisele) CRR Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 700 | | TRANSCRIPT (volume 7) of proceedings for the following date: 3/8/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 701 | | TRANSCRIPT (volume 8) of proceedings for the following date: 3/9/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Christa R Newburg (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 702 | | TRANSCRIPT (volume 9) of proceedings for the following date: 3/10/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 703 | | TRANSCRIPT (volume 10) of proceedings for the following date: 3/11/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Christa R. Newburg (former empl) (Entered: 04/12/1999) |

| 04/09/1999 | 704 | | TRANSCRIPT (volume 11) of proceedings for the following date: 3/15/99 (jury trial before the Honorable G. Thomas Eisele) CRR Christa R. Newburg (former empl) (Entered: 04/12/1999) |
|---|---|---|---|
| 04/09/1999 | 705 | | TRANSCRIPT (volume 12) of proceedings for the following date: 3/16/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Christa R Newburg (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 706 | | TRANSCRIPT (volume 13) of proceedings for the following date: 3/17/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Carolyn S. Fant (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 707 | | TRANSCRIPT (volume 14) of proceedings for the following date: 3/18/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Eugenie M Power (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 708 | | TRANSCRIPT (volume 15) of proceedings for the following date: 3/22/99 (jury trial before the Honorable G. Thomas Eisele) CRR Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 709 | | TRANSCRIPT (volume 16) of proceedings for the following date: 3/23/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 710 | | TRANSCRIPT (volume 17) of proceedings for the following date: 3/24/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 711 | | TRANSCRIPT (volume 18) of proceedings for the following date: 3/25/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 712 | | TRANSCRIPT (volume 19) of proceedings for the following date: 3/29/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Christa R. Newburg (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 713 | | TRANSCRIPT (volume 20) of proceedings for the following date: 3/30/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Christa R. Newburg (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 714 | | TRANSCRIPT (volume 21) of proceedings for the following date: 3/31/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Carolyn S. Fant (former empl) (Entered: 04/12/1999) |

Appellate Case: 11-1380    Page: 36    Date Filed: 02/17/2011 Entry ID: 3757208

| 04/09/1999 | 715 | | TRANSCRIPT (volume 22) of proceedings for the following date: 4/1/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Carolyn S Fant (former empl) (Entered: 04/12/1999) |
| --- | --- | --- | --- |
| 04/09/1999 | 716 | | TRANSCRIPT (volume 23) of proceedings for the following date: 4/5/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 717 | | TRANSCRIPT (volume 24) of proceedings for the following date: 4/6/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Carolyn S Fant (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 718 | | TRANSCRIPT (volume 25) of proceedings for the following date: 4/7/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/09/1999 | 719 | | TRANSCRIPT (volume 26) of proceedings for the following date: 4/8/99 (jury trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) (Entered: 04/12/1999) |
| 04/12/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 27. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. Genie Power)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 04/12/1999) |
| 04/13/1999 | 721 | | SEALED MOTION (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 722 | | ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 723 | | SEALED MOTION (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 724 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 725 | | SEALED MOTION (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 726 | | SEALED MOTION (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 727 | | SEALED ORDER by Judge G. T. Eisele (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 728 | | SEALED ORDER by Judge G. T. Eisele (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | 729 | | MEMORANDUM of law by USA regarding lesser included offense instructions applicable to RICO predicates applying Idaho murder law as to Chevie O'Brien Kehoe, Daniel Lewis Lee (rkc) (Entered: 04/13/1999) |
| 04/13/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 28. Govt. rests. |

FEB 16 2011  37
Appellate Case: 11-1380     Page: 37     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | Defts' motion for directed verdict denied. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/13/1999) |
| 04/15/1999 | 731 | | CJA Form 30 (Appointment of and authority to pay Court appointed counsel) voucher #D37210 appointing attorney Jack Lassiter as to Daniel Lewis Lee lej) (Entered: 04/16/1999) |
| 04/15/1999 | 733 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/19/1999) |
| 04/16/1999 | 735 | | SEALED MOTION (rkc) (Entered: 04/19/1999) |
| 04/16/1999 | 738 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/19/1999) |
| 04/16/1999 | 740 | | ORDER by Mag. Judge John F. Forster Jr. entered nunc pro tunc to 2/26/99 (rkc) (Entered: 04/19/1999) |
| 04/16/1999 | 742 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/20/1999) |
| 04/16/1999 | 734 | | MOTION to preclude use of polygraph test results or testimony by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 04/19/1999 | 741 | | SEALED document (rkc) (Entered: 04/19/1999) |
| 04/19/1999 | | | CORRESPONDENCE from Judge G.T. Eisele to attorneys regarding opening statements (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 04/20/1999 | 743 | | SEALED MOTION (rkc) (Entered: 04/20/1999) |
| 04/20/1999 | 744 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/20/1999) |
| 04/20/1999 | 746 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/20/1999) |
| 04/20/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 29. (AM Ct. Rep. Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/23/1999) |
| 04/21/1999 | 748 | | ORDER by Judge G. T. Eisele denying deft's motion for compelled psychiatric examination of witness. (cc: all counsel and defendants) (rkc) (Entered: 04/21/1999) |
| 04/21/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 30. (AM Ct. Rep. –– Christa Newberg)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/23/1999) |
| 04/22/1999 | | | |

FEB 16 2011  38

Appellate Case: 11-1380   Page: 38   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 31. (AM Ct. Rep. –– Genie Power)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/23/1999) |
| 04/22/1999 | 753 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/23/1999) |
| 04/23/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed out of the presence of the jury for proffered testimony before Judge G. T. Eisele. Day 32. (AM Ct. Rep. –– Genie Power) (mah) (Entered: 04/23/1999) |
| 04/23/1999 | 754 | | CJA Form 20Cp4 (Appointment of Counsel) appointing Robert E. Irwin for Paul Humphrey a witness testifying for the defendants. (rkc) (Entered: 04/23/1999) |
| 04/26/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 33. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/26/1999) |
| 04/26/1999 | 755 | | ORDER by Mag. Judge John F. Forster Jr. directing the clerk to issue a check to Kay Quinn in the amt. of $239.87 for the transcript submitted on 19th of April 1999. (cc: all counsel and defendants) (rkc) (Entered: 04/27/1999) |
| 04/27/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 34. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/28/1999) |
| 04/28/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele and out of the presence of the jury. Day 35. Jury instructions discussed and objections stated. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 04/28/1999) |
| 04/29/1999 | 760 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 04/29/1999) |
| 04/29/1999 | 761 | | CJA Form 20Cp4 (Appointment of Counsel) supplemental voucher D37211 appointing Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 04/29/1999) |
| 04/29/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 36. Closing Arguments commenced. (AM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Genie Power)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 05/03/1999) |
| 04/30/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 37. Closing arguments resumed. (AM Ct. Rep. –– Elaine Hinson)(AM/PM Ct. Rep. –– Carolyn Fant) (mah) Modified |

FEB 16 2011  39
Appellate Case: 11-1380   Page: 39   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | on 05/03/1999 (Entered: 05/03/1999) |
| 05/03/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 38. Jury deliberation commenced. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/03/1999) |
| 05/04/1999 | 762 | | SEALED document by plaintiff USA lej) (Entered: 05/04/1999) |
| 05/04/1999 | 763 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 05/04/1999) |
| 05/04/1999 | 764 | | SEALED MOTION lej) (Entered: 05/04/1999) |
| 05/04/1999 | 765 | | SEALED ORDER by Mag. Judge John F. Forster Jr. granting motion [764–1] lej) (Entered: 05/04/1999) |
| 05/04/1999 | 766 | | SEALED ORDER by Mag. Judge John F. Forster Jr. lej) (Entered: 05/04/1999) |
| 05/04/1999 | 808 | | Jury instructions on the guilt/innocence phase given to the jury by the court. (mah) (Entered: 05/16/1999) |
| 05/04/1999 | 810 | | VERDICTS as to Daniel Lewis Lee of Guilty to Cts. 1s thru 5s. (Original placed under seal in vault.) (mah) Modified on 05/16/1999 (Entered: 05/16/1999) |
| 05/04/1999 | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 39. Jury returns verdicts of Guilty as to both defts. on Cts. 1s thru 5s. Jury excused until 5/6/99. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/16/1999) |
| 05/05/1999 | 768 | | SEALED TRANSCRIPT (Ct. Rep. –– Carolyn Fant) (former empl) Modified on 11/08/2002 (Entered: 05/05/1999) |
| 05/05/1999 | 769 | | SEALED document (former empl) (Entered: 05/05/1999) |
| 05/05/1999 | 770 | | SEALED document (former empl) (Entered: 05/05/1999) |
| 05/05/1999 | 771 | | SEALED document (former empl) (Entered: 05/05/1999) |
| 05/05/1999 | 772 | | SEALED document (former empl) (Entered: 05/05/1999) |
| 05/05/1999 | 773 | | TRANSCRIPT (Volume 27) of proceedings for the following date: 4/12/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 774 | | TRANSCRIPT (Volume 28) of proceedings for the following date: 4/13/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 775 | | TRANSCRIPT (Volume 29) of proceedings for the |

Appellate Case: 11-1380   Page: 40   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | following date: 4/20/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 776 | | TRANSCRIPT (Volume 30) of proceedings for the following date: 4/21/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Christa R Newburg (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 777 | | TRANSCRIPT (Volume 31) of proceedings for the following date: 4/22/99 (Jury trial before the Honorable G. Thomas Eisele) CRR: Eugenie M Power (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 778 | | TRANSCRIPT (Volume 32) of proceedings for the following date: 4/23/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Eugenie M Power (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 779 | | TRANSCRIPT (Volume 33) of proceedings for the following date: 4/26/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 780 | | TRANSCRIPT (Volume 34) of proceedings for the following date: 4/27/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 781 | | TRANSCRIPT (Volume 35) of proceedings for the following date: 4/28/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 782 | | TRANSCRIPT (Volume 36) of proceedings for the following date: 4/29/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Carolyn S Fant (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 783 | | TRANSCRIPT (Volume 37) of proceedings for the following date: 4/30/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 784 | | TRANSCRIPT (Volume 38) of proceedings for the following date: 5/3/99 (Jury Trial before the Honorable G. Thomas Eisele) CRR: Elaine Hinson (former empl) Modified on 05/05/1999 (Entered: 05/05/1999) |
| 05/05/1999 | 785 | | CJA Form 30 (Appointment of Counsel) appointing Cathleen V Compton #D37211 as to Daniel Lewis Lee (former empl) (Entered: 05/05/1999) |
| 05/05/1999 | 788 | | SEALED MOTION (former empl) (Entered: 05/06/1999) |
| 05/05/1999 | | | |

FEB 16 2011  41
Appellate Case: 11-1380    Page: 41    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | MINUTES: JURY TRIAL as to Chevie Kehoe and Danny Lee resumed before Judge G. T. Eisele. Day 40. Motions argued, objections to instructions stated. (Ct. Rep. –– Elaine Hinson) dfts.) (mah) (Entered: 05/16/1999) |
| 05/05/1999 | 767 | | TRANSCRIPT (1 volume) of proceedings for the following date: Tuesday, 04/20/99 (hearing before the Honorable G. Thomas Eisele on Chevie Kehoe's motion for psychiatric exam and USA's motion to preclude use of polygraph exam) (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/27/2002) |
| 05/06/1999 | 787 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 05/06/1999) |
| 05/06/1999 | 791 | | SEALED ORDER by Judge G. T. Eisele (former empl) (Entered: 05/06/1999) |
| 05/06/1999 | 792 | | SEALED MOTION (rkc) (Entered: 05/06/1999) |
| 05/06/1999 | 793 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 05/06/1999) |
| 05/06/1999 | 795 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 05/06/1999) |
| 05/06/1999 | | | MINUTES: JURY TRIAL on the penalty phase as to Chevie Kehoe resumed before Judge G. T. Eisele. Day 41. (Ct. Rep. –– AM Ct. Rep. –– Elaine Hinson)(AM/PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 05/16/1999) |
| 05/06/1999 | 796 | | ORDER by Mag. Judge John F. Forster Jr. that Dr Mark Cunningham and Dr Thomas Ryan shall be permitted to be present in the courtroom during the penalty phase of the trial involving deft Lee (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/07/1999 | 797 | | Return on WRIT of John L Fryman [797–1] (former empl) (Entered: 05/07/1999) |
| 05/07/1999 | 798 | | Return on WRIT of Gregg H Vieira [798–1] (former empl) (Entered: 05/07/1999) |
| 05/07/1999 | 799 | | SEALED MOTION (former empl) (Entered: 05/07/1999) |
| 05/07/1999 | 800 | | ORDER by Mag. Judge John F. Forster Jr. granting SEALED MOTION [799–1] (cc: all counsel and defendants) (former empl) (Entered: 05/07/1999) |
| 05/07/1999 | | | MINUTES: JURY TRIAL on the Penalty Phase as to Chevie Kehoe resumed before Judge G. T. Eisele. Day 42. (Ct. Rep. –– Carolyn Fant) (mah) (Entered: 05/16/1999) |
| 05/07/1999 | 811 | | Jury instructions (Preliminary) on the Penalty Phase as to Chevie Kehoe given to the jury by the court. (mah) Modified |

FEB 16 2011  42

Appellate Case: 11-1380    Page: 42    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | on 05/16/1999 (Entered: 05/16/1999) |
| 05/07/1999 | 812 | | Jury instructions (Final) on the Penalty Phase as to Chevie Kehoe given to the jury by the court. (mah) (Entered: 05/16/1999) |
| 05/10/1999 | | | MINUTES: JURY TRIAL on the Penalty Phase as to Chevie Kehoe resumed before Judge G. T. Eisele. Day 43. Jury deliberation resumed and jury returns verdict of life imprisonment without possibility of release on Cts. 3s thru 5s. Jury excused until 5/11/99. (Ct. Rep. –– Elaine Hinson) dfts.) (mah) (Entered: 05/16/1999) |
| 05/11/1999 | 803 | | Return on WRIT unexecuted for Isaac May as to Daniel Lewis Lee [803–1] (former empl) Modified on 05/11/1999 (Entered: 05/11/1999) |
| 05/11/1999 | 804 | | Return on WRIT [804–1] unexecuted for Alfred Ray Taylor as to Chevie Kehoe (former empl) Modified on 05/11/1999 (Entered: 05/11/1999) |
| 05/11/1999 | 805 | | Return on WRIT [805–1] unexecuted for Isaac May as to Chevie Kehoe (former empl) Modified on 05/11/1999 (Entered: 05/11/1999) |
| 05/11/1999 | | | MINUTES: JURY TRIAL on the Penalty Phase as to Danny Lee resumed before Judge G. T. Eisele. Day 44. Deft. Lee's motion to suppress denied. (AM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Genie Power)(PM Ct. Rep. –– Carolyn Fant) (mah) (Entered: 05/16/1999) |
| 05/11/1999 | 814 | | Jury instructions (Preliminary) as to Danny Lee given to the jury by the court. (mah) (Entered: 05/16/1999) |
| 05/12/1999 | | | MINUTES: JURY TRIAL on the Penalty Phase as to Danny Lee resumed before Judge G. T. Eisele. Day 45. (AM Ct. Rep. –– Elaine Hinson)(AM/PM Ct. Rep. –– Carolyn Fant)(PM Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/16/1999) |
| 05/13/1999 | 806 | | SEALED MOTION (rkc) (Entered: 05/13/1999) |
| 05/13/1999 | | | MINUTES: JURY TRIAL on the Penalty Phase as to Danny Lee resumed before Judge G. T. Eisele. Day 46. (AM Ct. Rep. –– Peggy Merkle)(PM Ct. Rep. –– Elaine Hinson)(PM Ct. Rep. –– Christa Newberg) (mah) (Entered: 05/16/1999) |
| 05/14/1999 | 807 | | MINUTES: JURY TRIAL on the Penalty Phase as to Danny Lee resumed before Judge G. T. Eisele. Day 47. Jury deliberation commenced and verdict of death returned on Cts. 3s thru 5s. Jury excused. (Original Juror Notes to Court placed under seal in vault) (AM Ct. Rep. –– Elaine Hinson)(AM/PM Ct. Rep. –– Carolyn Fant) (mah) Modified on 05/16/1999 (Entered: 05/16/1999) |
| 05/14/1999 | 815 | | |

FEB 16 2011  43

Appellate Case: 11-1380    Page: 43    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | Jury instructions (Final) on the Penalty Phase as to Danny Lee given to the jury by the court. (mah) (Entered: 05/16/1999) |
| 05/14/1999 | 816 | | VERDICTS on the penalty as to Daniel Lewis Lee of death on Cts. 3s thru 5s. (Original placed under seal in vault.) (mah) Modified on 05/16/1999 (Entered: 05/16/1999) |
| 05/17/1999 | 817 | | MOTION for order to impose restitution and memorandum of law regarding payment of restitution by USA as to Chevie O'Brien Kehoe and Daniel Lewis Lee lej) (Entered: 05/17/1999) |
| 05/17/1999 | 819 | | Return on WRIT unexecuted as to Daniel Lewis Lee [819−1] (former empl) (Entered: 05/18/1999) |
| 05/17/1999 | 823 | | ORDER by Judge G. T. Eisele that the transcripts of the hearings held on Monday, May 10, 1999 at 9:45 a.m. and 10:45 a.m., Volume 43−A and Volume 43−C respectively, will be and they are hereby, UNSEALED. (cc: all counsel and defendants) (rkc) (Entered: 05/19/1999) |
| 05/17/1999 | 824 | | TRANSCRIPT (volume 43−A) of proceedings for the following date: Monday, 05/10/99 (in−camera hearing before the Honorable G Thomas Eisele regarding Court's discussions with attorneys prior to receiving jury verdict for C Kehoe) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/17/1999 | 825 | | TRANSCRIPT (volume 43−C) of proceedings for the following date: Monday, 05/10/99 (in−camera hearing before the Honorable G. Thomas Eisele regarding Court's continued discussions with attorneys after receiving jury verdict for C. Kehoe regarding further proceedings for D. Lee) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/19/1999 | 822 | | MOTION for order for correction of sentence, for a new sentencing phase of the trial, or for enforcement of a plea agreement by Daniel Lewis Lee (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 826 | | TRANSCRIPT (39 volume) of proceedings for the following date(s): Tues. 5/4/99 (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 828 | | TRANSCRIPT ( 41−43 volumes) of proceedings for the following date(s): Thurs 5/6/99, Fri. 5/7/99, Mon. 5/10/99 (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 830 | | TRANSCRIPT (volumes 44,45) of proceedings for the following date(s): Tues. 5/11/99, Wed. 5/12/99 (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 832 | | TRANSCRIPT (Volume 47) of proceedings for the following date(s): Fri. 5/14/99 (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 833 | | |

FEB 16 2011   44

Appellate Case: 11-1380    Page: 44    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | MOTION for order for subpoena to KTHV–TV by Daniel Lewis Lee (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 834 | | MOTION to produce minutes or other records of meeting of death penalty committee by Daniel Lewis Lee (rkc) (Entered: 05/19/1999) |
| 05/19/1999 | 835 | | MINUTES: PRESENTENCE HEARING as to Chevie Kehoe held before Judge G. T. Eisele. Court advises parties that the sentence will be postponed until after the ruling on the motion for new trial. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/19/1999) |
| 05/19/1999 | 836 | | MINUTES: HEARING as to Danny Lee held before Judge G. T. Eisele. Court discusses motion to enforce plea agreement and other issues. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/19/1999) |
| 05/19/1999 | 827 | | TRANSCRIPT (volume 40) of proceedings for the following date: Wednesday, 05/05/99 (telephone conference before the Honorable G.Thomas Eisele regarding USA's brief concerning deft's expert testimony in penalty phase regarding Levin; USA's request regarding future dangerousness; and deft Kehoe's motion to make statement of allocution) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/19/1999 | 829 | | TRANSCRIPT (volume 43–B) of proceedings for the following date: Monday, 05/10/99 (in–camera hearing before the Honorable G. Thomas Eisele regarding concerns regarding verdict forms for Kehoe &Lee) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/19/1999 | 831 | | TRANSCRIPT (volume 46) of proceedings for the following date: Thursday, 05/13/99 (hearing before Judge G. Thomas Eisele regarding USA's cross–examination of Dr Cunningham) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/24/1999 | 837 | | ORDER by Mag. Judge John F. Forster Jr. granting motion for order for subpoena to KTHV–TV [833–1] (cc: all counsel and defendants) (rkc) (Entered: 05/24/1999) |
| 05/24/1999 | 838 | | ORDER by Mag. Judge John F. Forster Jr. directing the U.S. Marshal to serve subpoena free of costs pursuant to 18:3005–3006A. (cc: all counsel and defendants) (rkc) (Entered: 05/24/1999) |
| 05/25/1999 | 839 | | TRANSCRIPT (1 volume) of proceedings for the following date: 5/19/99 (hearing) as to Chevie Kehoe lej) (Entered: 05/25/1999) |
| 05/25/1999 | 840 | | TRANSCRIPT (1 volume) of proceedings for the following date: 5/19/99 (hearing) as to Daniel Lee lej) (Entered: |

FEB 16 2011  45

Appellate Case: 11-1380    Page: 45    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 05/25/1999) |
| 05/27/1999 | 841 | | RESPONSE by plaintiff USA to deft Lee's motion for production of records (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/27/1999 | 842 | | BRIEF in support of motion for correction of sentence, for a new sentencing phase of the trial of Daniel Lewis Lee, or for enforcement of a plea agreement, which motion was filed on 05/19/99 by defendant Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 06/01/1999 | 845 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 06/01/1999) |
| 06/01/1999 | 846 | | SEALED document (rkc) (Entered: 06/01/1999) |
| 06/07/1999 | 847 | | ORDER by Judge G. T. Eisele dismissing as moot the following motions: C. Kehoe's motion for order directing government to provide notice of intent to use residual hearsay exception under Rule 807 [282–1], C. Kehoe's motion to compel examination or production of the personnel files of testifying agents and government employees [284–1], C. Kehoe's motion for discovery [290–1], motion for inspection concerning government's use of informants, operatives and cooperating individuals [290–2], motion for disclosure of exculpatory evidence [290–3], C. Kehoe's motion for evidentiary hearing [458–1], C. Kehoe's motion to suppress statements [459–1], C. Kehoe's motion for leave for deft to present unsworn plea for mercy [544–1], C. Kehoe's motion for additional questions and subjects for general voir dire [584–1], C. Kehoe's motion for change of venue based on pretrial disclosure of material evidence [601–1], C. Kehoe's motion for Daubert and relevance hearing on government's witness Mewborn [671–1], C. Kehoe's motion for compelled psychiatric examination of witness [732–1], C. Kehoe's motion in limine [757–1], D. Lee's motion for order to adopt by silence all relevant pretrial motions and trial objections of co–defts [42–1], D. Lee's motion for discovery [258–1], motion to inspect information and evidence in aggravation [258–2], D. Lee's motion for order directing government to provide notice of intention to use residual hearsay exception under Rule 807 [306–1], D. Lee's supplemental motion to strike potential jurors for cause based upon a review of questionnaires [548–1], D. Lee's motion to include the following questions for death qualification of jurors [574–1], D. Lee's motion for order for guidance from the Courts with regard to the denial of a continuance of the 04/26/99 trial date for Mr. Infinger [645–1], D. Lee's motion in limine [806–1], K. Kehoe's motion for order for payment of reasonable attorney's fee [234–1], K. Kehoe's motion for order to permit counsel to participate in voir dire [379–1], |

FEB 16 2011  46

Appellate Case: 11-1380   Page: 46   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | government's motion in limine to foreclose suppression of evidence pursuant to 18:201(c) theories [263–1], government's motion for admission of hearsay evidence [264–1], government's motion for reciprocal discovery of mental health defenses to be raised during penalty phase [288–1], government's motion for additional time in which to respond to K. Kehoe's motion to suppress evidence of the Thompson Falls search [405–1], government's motion for discovery of mental health evidence regarding deft Lee [627–1], government's motion for discovery of mental health evidence regarding deft Chevie Kehoe [628–1], government's motion to preclude inquiry into irrelevant and immaterial matters [686–1], government's motion to preclude use of polygraph test results or testimony [734–1], government's motion to preclude impeachment of government witness on collateral matters [735–1], government's motion in limine regarding testimony of defense expert in penalty phase [788–1], government's motion for order to impose restitution [817–1], motion of Michael Tigar to quash, or in the alternative, to modify subpoena issued by deft Kehoe pursuant to Rule 17(c) [658–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 06/08/1999 | 848 | | ORDER by Mag. Judge John F. Forster Jr. finding the following motions moot, [759–1] [667–1] [525–1] [489–1] [477–1] [461–1] [431–1] [396–1] (cc: all counsel and defendants) (rkc) (Entered: 06/08/1999) |
| 06/10/1999 | 849 | | RESPONSE &Brief by plaintiff USA to motion to produce minutes or other records of meeting of death penalty committee [834–1] (rkc) (Entered: 06/11/1999) |
| 06/10/1999 | 850 | | RESPONSE by plaintiff USA to motion for order for correction of sentence, for a new sentencing phase of the trial, or for enforcement of a plea agreement [822–1] (rkc) (Entered: 06/11/1999) |
| 06/11/1999 | | | Docket Modification (Utility Event) terminating the motion [601–1] pursuant to order of 2/26/99, and terminating the motion for order for payment of reasonable atty's fee [234–1] pursuant to order of 4/9/98. (rkc) (Entered: 06/11/1999) |
| 06/11/1999 | 851 | | CJA Form 30Cp4 (Appointment of Counsel) appointing Cathleen Compton #37211 as to Daniel Lewis Lee (sealed) (Entered: 06/11/1999) |
| 06/14/1999 | 853 | | ORDER by Judge G. T. Eisele approving and adopting the attached document as the jury questionnaire to be used in this case. Entered nunc pro tunc to 1/12/99. (cc: all counsel and defendants) (rkc) (Entered: 06/15/1999) |
| 06/15/1999 | 854 | | |

FEB 16 2011  47

Appellate Case: 11-1380    Page: 47    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | MEMORANDUM, Opinion and Order: by Judge G. T. Eisele denying motion to dismiss notice of intent to seek the death penalty [297–1], and denying motion to strike notice of intention to seek the death penalty and to hold the death penalty unconstitutional [289–1]. The following documents are hereby unsealed Nos. 297, 298, 337, 345, 357, 359. Entered NUNC PRO TUNC to 5/5/99. (cc: all counsel and defendants) (rkc) (Entered: 06/16/1999) |
| 06/16/1999 | 856 | | REPLY by defendant Daniel Lewis Lee to response to motion for order for correction of sentence, for a new sentencing phase of the trial, or for enforcement of a plea agreement [822–1] (rkc) (Entered: 06/17/1999) |
| 06/21/1999 | 858 | | MOTION for order for subpoena by Daniel Lewis Lee (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 06/21/1999 | 859 | | ORDER by Mag. Judge John F. Forster Jr. granting motion for order for subpoena [858–1] (cc: all counsel and defendants) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 06/24/1999 | 874 | | MINUTES: HEARING (Ph.Cf.) as to Danny Lee held before Judge G. T. Eisele regarding subpoenas issued to Janet Reno &Eric Holder. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 06/30/1999) |
| 06/24/1999 | 861 | | CORRESPONDENCE by defendant Daniel Lewis Lee regarding testimony sought at hearing (Unsealed pursuant to Order dated 06/25/02) (cdw) Modified on 06/27/2002 (Entered: 06/27/2002) |
| 06/25/1999 | 863 | | ORDER by Judge G. T. Eisele clarifying sealed order filed June 7, 1999 as mooting motions decided in rulings from the bench to clear up the Court's docket (cc: all counsel and defendants) (former empl) (Entered: 06/25/1999) |
| 06/25/1999 | 865 | | MEMORANDUM of LAW in support of Deliberative Process Privilege as to Daniel Lewis Lee (former empl) (Entered: 06/28/1999) |
| 06/28/1999 | 866 | | TRANSCRIPT (1 volume) of proceedings for the following date: 6/25/99 (Sentencing before the Honorable G Thomas Eisele) (former empl) (Entered: 06/28/1999) |
| 06/28/1999 | 868 | | BRIEF regarding the deliberative process privilege, attorney work–product privilege, and touch regulations by plaintiff USA (former empl) (Entered: 06/28/1999) |
| 06/28/1999 | 869 | | ADDITIONAL BRIEF re authority of the Deputy Attorney General to act on behalf of the Attorney General by plaintiff USA (former empl) (Entered: 06/28/1999) |
| 06/28/1999 | 867 | | TRANSCRIPT ( 1 volumes) of proceedings for the |

FEB 16 2011  48
Appellate Case: 11-1380   Page: 48   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | following date(s): 6/24/99 (telephone conference) (rkc) (Entered: 06/30/1999) |
| 06/29/1999 | 870 | | MEMORANDUM OF LAW absence of the Attorney General and the Deputy Attorney General's authority to act in her absence by defendant Daniel Lewis Lee (rkc) (Entered: 06/29/1999) |
| 06/29/1999 | 871 | | MOTION to quash subpoenas , and to continue appearances by USA as to Daniel Lewis Lee (rkc) (Entered: 06/29/1999) |
| 06/29/1999 | 872 | | ORDER by Judge G. T. Eisele granting motion to continue appearances [871–2] for further hearing on this subpoena until July 29, 1999, 10:00 a.m. (cc: all counsel and defendants) (rkc) (Entered: 06/29/1999) |
| 06/29/1999 | 873 | | ORDER by Judge G. T. Eisele that the transcript of the telephone conference held on Thursday, June 24, 1999, at 2:00 p.m. will be, and it is hereby, UNSEALED. (cc: all counsel and defendants) (rkc) (Entered: 06/30/1999) |
| 06/30/1999 | 877 | | ORDER by Judge G. T. Eisele denying motion for enforcement of a plea agreement and the other issues raised in the motion for order for correction of sentence, for new sentencing phase of the trial [822–1] will be dealt with in due course. (cc: all counsel and defendants) (rkc) (Entered: 07/01/1999) |
| 07/02/1999 | 878 | | TRANSCRIPT (1 volumes) of proceedings for the following date(s): 6/29/99 (Hearing before Judge Eisele) (rkc) (Entered: 07/02/1999) |
| 07/02/1999 | 879 | | SUPPLEMENT TO MEMORANDUM by Daniel Lewis Lee in support of brief [870–1] regarding the absence of the Attorney General and the Deputy Attorney General's authority to act in her absence as to Daniel Lewis Lee (rkc) (Entered: 07/02/1999) |
| 07/02/1999 | 880 | | SUPPLEMENTAL BRIEF by defendant Daniel Lewis Lee regarding future dangerousness (rkc) (Entered: 07/02/1999) |
| 07/02/1999 | 881 | | RESPONSE by defendant Daniel Lewis Lee to motion to quash subpoenas [871–1] (rkc) (Entered: 07/02/1999) |
| 07/12/1999 | | | DOCKETING LETTER: 8 USCA Number 99–2897 ; court reporter's transcripts due 8/9/99 ; clerk's record on appeal due 8/11/99 appeal of KEHOE (dac) (Entered: 07/12/1999) |
| 07/13/1999 | 882 | | CJA Form 30Cp4 (Appointment of Counsel) appointing Cathleen Compton #37211 as to Daniel Lewis Lee (rkc) (Entered: 07/14/1999) |
| 07/14/1999 | 883 | | RESPONSE to letter form court dated 7/2/99 by Daniel Lewis Lee (rkc) (Entered: 07/14/1999) |
| 07/16/1999 | 884 | | |

FEB 16 2011  49

Appellate Case: 11-1380    Page: 49    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | REPLY by plaintiff USA to response to motion to quash subpoenas [871–1] (rkc) (Entered: 07/16/1999) |
| 07/20/1999 | 887 | | AFFIDAVIT of Kevin V. DiGregory as to Daniel Lewis Lee case (rkc) (Entered: 07/23/1999) |
| 07/22/1999 | 885 | | ORDER by Judge G. T. Eisele denying motion to quash subpoenas [871–1] (cc: all counsel and defendants) (sealed) (Entered: 07/22/1999) |
| 07/23/1999 | 886 | | MOTION for order to stay subpoenas and supporting memorandum by USA as to Daniel Lewis Lee (rkc) (Entered: 07/23/1999) |
| 07/26/1999 | 888 | | ORDER by Judge G. T. Eisele granting motion for order to stay subpoenas and supporting memorandum [886–1] The subpoenas are hereby stayed until the Government has exhausted any appeal or petition for writ of mandamus concerning the subpoenas. The hearing previously set for 7/29/99 is hereby canceled. (cc: all counsel and defendants) (rkc) (Entered: 07/26/1999) |
| 08/13/1999 | 890 | | CJA Form 30Cp4 (Appointment of Counsel) appointing Cathleen V. Compton (supplement D37211) as to Daniel Lewis Lee (rkc) (Entered: 08/16/1999) |
| 08/17/1999 | 891 | | CJA Form 30Cp4 (Appointment of Counsel) appointing Jack T. Lassiter (supplemental voucher D37210) as to Daniel Lewis Lee (rkc) (Entered: 08/17/1999) |
| 08/23/1999 | | | DOCKETING LETTER: 8 USCA Number 99–3199; petition for writ of mandamus has been filed as to deft Daniel Lewis Lee. (dac) (Entered: 08/23/1999) |
| 08/25/1999 | 897 | | TRANSCRIPT ( 1 volumes) of proceedings for the following date(s): 2/8/99 (chg. of plea of Kirby Kehoe) (rkc) (Entered: 08/26/1999) |
| 09/02/1999 | 900 | | SEALED MOTION (rkc) (Entered: 09/02/1999) |
| 09/03/1999 | 905 | | RESPONSE by defendant Daniel Lewis Lee to motion for order to lift gag order [904–1] and regarding security and distribution of exhibits (rkc) (Entered: 09/07/1999) |
| 09/07/1999 | 904 | | MOTION for order to lift gag order by USA as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Kirby Keith Kehoe (rkc) (Entered: 09/07/1999) |
| 09/08/1999 | 906 | | ORDER by Judge G. T. Eisele granting motion for order to lift gag order [904–1] The gag order previously entered in this case with respect to the attorneys for the Government be, and it is hereby lifted, rescinded and set aside. (cc: all counsel and defendants) (rkc) (Entered: 09/08/1999) |
| 09/08/1999 | 908 | | SEALED ORDER by Mag. Judge John F. Forster Jr. (rkc) (Entered: 09/08/1999) |

FEB 16 2011  50

Appellate Case: 11-1380    Page: 50    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 09/13/1999 | 910 | | MOTION by movant New York Times Co for leave to intervene for the purpose of responding to the Government's motion regarding exhibits, and brief in support as to deft KEHOE (dac) Modified on 09/14/1999 (Entered: 09/14/1999) |
| 09/13/1999 | 911 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #D37210 for Jack T. Lassiter as to Daniel Lewis Lee (rkc) (Entered: 09/14/1999) |
| 09/15/1999 | 913 | | TRANSCRIPT ( 1 volumes) of proceedings for the following date(s): 8/24/99 (sentencing before Judge Eisele) (rkc) (Entered: 09/15/1999) |
| 09/17/1999 | 916 | | RESPONSE by defendant Daniel Lewis Lee to motion for leave to intervene for the purpose of responding to the Government's motion regarding exhibits, and brief in support as to deft KEHOE [910–1] (dac) (Entered: 09/17/1999) |
| 09/20/1999 | 917 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental appointment voucher #D37211 for Cathleen V. Compton as to Daniel Lewis Lee (rkc) (Entered: 09/21/1999) |
| 09/21/1999 | 919 | | ORDER by Judge G. T. Eisele granting motions for leave to intervene of MGA Films Inc. and New York Times Corp. for the purpose of responding to the Government's motion regarding exhibits, and brief in support as to deft KEHOE [910–1] (cc: all counsel and defendants) (rkc) (Entered: 09/21/1999) |
| 09/21/1999 | 920 | | ORDER by Judge G. T. Eisele directing the parties to attempt to reach a consent order that is consistent with th erulings and establishes procedures for public access to the exhibits in this case. The parties shall submit a proposed consent order to this Court for its consideration on or before 10/12/99. If the parties are unable to reach an agreement, they should so notify the Court in writing by 10/12/99, in which event each shall offer suggestions as to the appropriate procedures that the Court should impose. The Court will then proptly resolve the issue. (cc: all counsel and defendants) (rkc) (Entered: 09/21/1999) |
| 10/06/1999 | 922 | | ORDER by Judge G. T. Eisele denying motion to produce minutes or other records of meeting of death penalty committee [834–1] (cc: all counsel and defendants) (rkc) (Entered: 10/07/1999) |
| 10/13/1999 | 923 | | ORDER by Judge G. T. Eisele granting motion for order to be entered regarding security and distribution of exhibits It Is Therefore Ordered the New York Times and MGA Films shall be permitted to view the trial exhibits on 10/18 &19/99 between 9:00 a.m. and 5:00 p.m. An agent of the ATF, or some other governmental employee who is familiar with the |

FEB 16 2011  51

Appellate Case: 11-1380   Page: 51   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | exhibits and their storage, will be present during all viewing. The New York Times and MGA Films will each pay its proportionate share of the $100 per hr fee needed to help defray the cost of having an ATF agent and or and another U S employee present during the review of the exhibits. The money will be paid to the U S Treasury through the Clerk of the District Court. No exhibits will leave the area where they are stored or the immediate vicinity of the area where they are stored and such exhibits will at all times remain under the control of the said governmental agents. The New York Times and MGA Films will provide scanners or other suitable equipment for the purpose of copying photographs, documents, audiotapes and videotapes. Filming equipment will be permitted. The U S will photocopy exhibits if request to do so using photocopy equipment provided by the Clerk of the District Court at $.50 per page payable to the Clerk of the District Court. [899–1] (cc: all counsel) (dac) (Entered: 10/14/1999) |
| 10/18/1999 | 924 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher D37211 for Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 10/18/1999) |
| 11/04/1999 | 926 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #D37211 for Cathleeen Compton as to Daniel Lewis Lee (rkc) (Entered: 11/04/1999) |
| 12/07/1999 | 929 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #D37210 for Jack T. Lassiter as to Daniel Lewis Lee (rkc) (Entered: 12/07/1999) |
| 12/13/1999 | 930 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher D37211 for Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 12/13/1999) |
| 12/13/1999 | 931 | | Opinion (8USCA) as to petition for writ of mandamus as to defendants' Kehoe and Lee (dac) (Entered: 12/13/1999) |
| 12/13/1999 | 932 | | MANDATE from Circuit Court of Appeals petition for a writ of mandamus is granted; remanding the matter back to District Court for proceedings consistent with the opinion of this court as to defendants Kehoe and Lee (dac) (Entered: 12/13/1999) |
| 01/14/2000 | 933 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher D37211 for Cathleen V. Compton as to Daniel Lewis Lee (rkc) (Entered: 01/14/2000) |
| 02/10/2000 | 934 | | MINUTES: HEARING (Ph. Cf.) as to Danny Lee to determine status of motions held before Judge G. Thomas Eisele. (Ct. Rep. –– Elaine Hinson) (mah) Modified on 02/10/2000 (Entered: 02/10/2000) |
| 02/16/2000 | 935 | | CJA Form 20Cp4 (Appointment of Counsel) supplemental voucher #D37211 for Cathleen Compton as to Daniel Lewis |

FEB 16 2011  52
Appellate Case: 11-1380   Page: 52   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | Lee (rkc) (Entered: 02/16/2000) |
| 02/18/2000 | 936 | | SUPPLEMENTAL MEMORANDUM by Daniel Lewis Lee in support of motion for order for correction of sentence, for a new sentencing phase of the trial, or for enforcement of a plea agreement [822–1] (former empl) Modified on 02/24/2000 (Entered: 02/18/2000) |
| 02/18/2000 | 937 | | MEMORANDUM by USA in support of response [850–1] to deft's motion for correction of sentence, for a new sentencing phase of the trial, or for enforcement of a plea agreement as to Daniel Lewis Lee (former empl) (Entered: 02/22/2000) |
| 02/18/2000 | 938 | | ADDITIONAL BRIEF IN RESPONSE by USA to [834–1] govt's violation of its death penalty protocol (former empl) (Entered: 02/22/2000) |
| 03/01/2000 | 939 | | SUPPLEMENTAL BRIEF by USA (received by Judge Eisele 6/24/99) in support of government's response to defendant Lee's motion for new sentencing phase of the trial (#822) [850–1]. (mah) (Entered: 03/03/2000) |
| 03/09/2000 | 940 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #37211 appointing Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 03/09/2000) |
| 03/21/2000 | 941 | | MEMORANDUM, Opinion and Order: That the Department of Justice and the Attorney General are ordered to properly review and act upon the U.S. Attorney's request to decertify or withdraw the death penalty notice in Deft Lee's case in accordance with the procedures mandated by the Death Penalty Protocol before the Attorney General, herself, makes the final decision whether to grant or deny that request. It is further ordered that deft. Lee's Motion for a New Penalty Phase Trial be granted. Accordingly if the Attorney General denies the request to decertify or withdraw the death penalty notice, then the Court will hold a new penalty phase trial for deft. Lee. If the Attorney General grants the request to decertify or withdraw the death penalty notice, then the Order for a new penalty phase trial will be moot, and the Court will sentence deft. Lee to life imprisonment without the possibility of release. by Judge G. T. Eisele (cc: all counsel and defendants) (rkc) (Entered: 03/21/2000) |
| 04/14/2000 | 942 | | NOTICE of Appeal to Circuit Court by plaintiff USA [941–1] (2 certified copies to Clerk USCA8)(cc: all counsel and defendant) (dac) (Entered: 04/14/2000) |
| 04/14/2000 | | | Docket Modification (Utility Event) exculdable start as to Daniel Lewis Lee (dac) (Entered: 04/14/2000) |
| 04/19/2000 | | | DOCKETING LETTER: 8 USCA Number 00–1975; court reporter's transcripts due 5/30/00; counsel to proceed on appendix as defendant Lee's appeal by USA (dac) (Entered: |

FEB 16 2011  53

Appellate Case: 11-1380    Page: 53    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 04/19/2000) |
| 04/20/2000 | 943 | | ORDER by Mag. Judge John F. Forster Jr. granting motion to appoint Dr. Cunningham as an expert to assist counsel for Daniel Lewis Lee. (cc: all counsel and defendants) (rkc) (Entered: 04/20/2000) |
| 04/20/2000 | 944 | | CJA Form 31 (Expert Services) as to Daniel Lewis Lee (rkc) (Entered: 04/20/2000) |
| 05/01/2000 | 945 | | DESIGNATION for Record on Appeal by USA as to defendant LEE (dac) (Entered: 05/01/2000) |
| 05/02/2000 | 946 | | AMENDED DESIGNATION of Record on Appeal by USA as to defendant Danny Lee (dac) (Entered: 05/04/2000) |
| 05/09/2000 | 947 | | TRANSCRIPT (1 volume) of proceedings for the following date: Tuesday, 11/10/98 (arguments on motions to sever before the Honorable G. Thomas Eisele) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/09/2000 | 948 | | TRANSCRIPT (1 volume) of proceedings for the following date: Monday, 12/07/98 (motions hearing before the Honorable G. Thomas Eisele) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/09/2000 | 949 | | TRANSCRIPT (volume 2) of proceedings for the following date: Tuesday, 12/08/98 (motions hearing before the Honorable G. Thomas Eisele) (Unsealed pursuant to Order dated 06/25/02) (cdw) (Entered: 06/27/2002) |
| 05/10/2000 | | | CERTIFICATE of Record (15 vols transcripts 1–15) transmitted to USCA re appeal of Lee [942–1] (dac) (Entered: 05/25/2000) |
| 05/12/2000 | 951 | | SEALED MOTION by deft. Lee (mah) (Entered: 05/12/2000) |
| 05/12/2000 | 952 | | SEALED MOTION by deft. Lee (mah) (Entered: 05/12/2000) |
| 05/12/2000 | 953 | | SEALED RESPONSE by USA (mah) (Entered: 05/12/2000) |
| 05/12/2000 | | | Docket Modification (Utility Event) finding the sealed MOTION by deft. Lee [951–1] moot due to entry of 4/15/99 order by Magistrate Judge Forster. (mah) (Entered: 05/12/2000) |
| 05/12/2000 | | | Docket Modification (Utility Event) finding the sealed MOTION by deft. Lee [952–1] moot due to entry of 4/15/99 order by Magistrate Judge Forster. (mah) (Entered: 05/12/2000) |
| 05/12/2000 | 954 | | DESIGNATION for Record on Appeal by Daniel Lewis Lee (dac) (Entered: 05/18/2000) |
| 05/17/2000 | | | |

FEB 16 2011  54

Appellate Case: 11-1380    Page: 54    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | CERTIFICATE of Record (33 vols of trial transcripts) (16–39 &41 – 47)transmitted to USCA re appeal of Lee [942–1] (dac) (Entered: 05/25/2000) |
| 05/25/2000 | | | CERTIFICATE of Clerk's Record; 3 volumes transcripts; and 25 in camera envelopes transmitted to USCA re appeal of LEE [942–1] (dac) (Entered: 05/25/2000) |
| 05/11/2001 | | | MINUTES: PHONE CONF. before Judge G. Thomas Eisele regarding recent motion filed by defendant Kehoe. Attorneys Hampton, Sullivan and Stripling present. Discussion of correspondence from Buford McDonald. Discussion of remand. (Court reporter, Christa Newburg) (cjw) (Entered: 05/11/2001) |
| 06/05/2001 | 958 | | ORDER (8 USCA) on the Court's own motion, it is ordered that the appeal of Chevie Kehoe shall proceed; Clerk's record due 7/6/01, transcripts due 7/3/01 (dac) (Entered: 06/05/2001) |
| 08/22/2001 | 960 | | DESIGNATION for Record on Appeal by USA as to Kehoe appeal (dac) (Entered: 08/22/2001) |
| 08/28/2001 | | | CERTIFICATE of Clerk's Record; transcript of 6/15/99 sentencing transmitted to USCA re appeal of Kehoe [942–1] (dac) (Entered: 08/28/2001) |
| 10/19/2001 | | | MINUTES: PHONE CONF. before Judge G. Thomas Eisele with the parties to discuss Motion for New Trial and Request for Hearing on Motion for New Trial. Hearing set for December 18, 2001, at 9:30 a.m. (Court reporter, Carolyn Fant) (cjw) (Entered: 10/19/2001) |
| 11/16/2001 | 973 | | Return on WRIT as to Daniel Lewis Lee unexecuted ASR received from U S Attorney's office [973–1] (dac) (Entered: 11/16/2001) |
| 11/16/2001 | 974 | | Return on WRIT as to Bufford McDonald, unexecuted previous writ received [974–1] (dac) (Entered: 11/16/2001) |
| 12/18/2001 | 975 | | MINUTES: HEARING as to Chevie O'Brien Kehoe and Daniel Lewis Lee held before Judge G. T. Eisele on C. Kehoe's motion and D. Lee's oral motion for new trial based of newly discovered evidence. Court grants D. Lee's oral motion to join, in part, Kehoe's motion for new trial. Defts. directed to file supplemental briefs by 1/15/02; govt. shall file response by 1/25/02. The Court finds the motion for hearing on motion for new trial based on newly discovered evidence and prosecutorial misconduct [961–1] moot. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 12/18/2001) |
| 12/24/2001 | 977 | | CJA Form 20Cp4 (Appointment of Counsel) appointing James W. Wyatt #1002587 for witness Buford McDonald (rkc) Modified on 12/26/2001 (Entered: 12/24/2001) |

FEB 16 2011  55

Appellate Case: 11-1380     Page: 55     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| 01/07/2002 | 981 | | RESPONSE by defendant Daniel Lewis Lee to motion to unseal record [979–1] (cdw) (Entered: 01/07/2002) |
| 01/08/2002 | 982 | | MOTION for order to join in Chevie Kehoe's motion for a new trial based on newly discovered evidence and prosecutorial misconduct by Daniel Lewis Lee (cdw) (Entered: 01/08/2002) |
| 01/23/2002 | 985 | | TRANSCRIPT (1 volume) of proceedings for the following date(s): Tuesday, 12/18/01 (hearing on motion for new trial before the Honorable G Thomas Eisele) (cdw) (Entered: 01/23/2002) |
| 02/11/2002 | 987 | | TRANSCRIPT (1 volume) excerpted testimony from proceedings held on 12/22/98: Ct. Rep. –– Carolyn Fant. (Hearing on Motion to Disqualify U.S. Atty [435–1] ) (mah) (Entered: 02/11/2002) |
| 02/13/2002 | | | DOCKET NOTE: 49 volumes of transcripts and 25 envelopes of in camera documents returned from Clerk USCA8 (dac) Modified on 04/24/2002 (Entered: 02/13/2002) |
| 02/19/2002 | 989 | | Opinion (8USCA) the order of the district court for a new penalty hearing as to Lee is reversed, and the sentence of death is reinstated. (dac) (Entered: 02/19/2002) |
| 02/19/2002 | 990 | | MANDATE from Circuit Court of Appeals reversing decision of the District Court [Appeal as to defendant Lee [942–1] (dac) (Entered: 02/19/2002) |
| 03/04/2002 | 992 | | NOTICE of sentencing hearing Monday, 05/13/02 at 11:00 a.m. as to Daniel Lewis Lee before Judge G. T. Eisele (cdw) (Entered: 03/04/2002) |
| 05/13/2002 | 995 | | ORDER by Judge G. T. Eisele denying defts Chevie Kehoe &Danny Lee's motion for new trial based on newly discovered evidence and prosecutorial misconduct [982–1], [955–1] (cc: all counsel and defendants) (cdw) (Entered: 05/13/2002) |
| 05/13/2002 | 996 | | JUDGMENT and Commitment by Judge G. T. Eisele issued to U.S. Marshal sentencing Daniel Lewis Lee (2) count(s) 1s, 2s, 3s–5s to DEATH on each of Counts 3s, 4s, and 5s; and LIFE imprisonment on Counts 1s and 2s to run concurrent with each other ; dismissing counts 6s, 7s on the motion of the govt as to Daniel Lewis Lee (cc: all counsel) (cdw) (Entered: 05/13/2002) |
| 05/13/2002 | 997 | | MINUTES: SENTENCE as to Daniel Lewis Lee held before Judge G. Thomas Eisele. Sentence imposed. Deft. remanded to custody of U. S. Marshal. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 05/13/2002) |
| 05/13/2002 | | | Docket Modification (Utility Event) the following motions |

FEB 16 2011  56

Appellate Case: 11-1380   Page: 56   Date Filed: 02/17/2011 Entry ID: 3757208

| Date | Doc # | | Description |
|---|---|---|---|
| | | | were untermed due to the unsealing of various orders pursuant to the Order of 06/25/02, and thus are moot: motion for order to lift gag order [892–1], motion to suppress evidence [390–1], motion for review of disputed materials [343–1], motion to suppress evidence procured by prosecutorial promises [295–1], motion for hearing [278–2], motion to inspect information and evidence in aggravation [258–2], motion to compel government to protect/relocate witness or excuse witness [171–1], motion for order for the Court to retain jurisdiction [170–1], motion to sever [149–1], motion to dismiss case [149–2], motion to dismiss appointed counsel [121–1], motion for leave to proceed pro se [121–2], motion for severance [95–1] (cdw) (Entered: 06/27/2002) |
| 05/16/2002 | 998 | | NOTICE of Appeal to Circuit Court by defendant Daniel Lewis Lee, [996–6] (2 certified copies to Clerk USCA8 (cc: all counsel) (dac) (Entered: 05/16/2002) |
| 05/16/2002 | 999 | | MOTION for order to provide defendant with all transcripts requested by defendant at his sentencing hearing by Daniel Lewis Lee (dac) (Entered: 05/16/2002) |
| 05/17/2002 | 1000 | | RESPONSE by plaintiff USA to motion for order to provide defendant with all transcripts requested by defendant at his sentencing hearing [999–1] (dac) (Entered: 05/17/2002) |
| 05/23/2002 | 1001 | | ORDER by Judge G. T. Eisele granting motion for order to provide defendant with all transcripts requested by defendant at his sentencing hearing [999–1] Mr Lee's counsel–both his current counsel and any newly appointed counsel may provide him with copies of the transcripts of the trial testimony of FBI &ATF agents as well as copies of any other unsealed testimony. The Court emphasizes that Mr. Lee is responsible for paying the costs associated with producing such transcripts (cc: all counsel and defendant) (dac) (Entered: 05/23/2002) |
| 06/04/2002 | | | DOCKETING LETTER: 8 USCA Number 02–2389 ; court reporter's transcripts due 6/25/02 ; clerk's record on appeal due 6/27/02 as to Daniel Lee (dac) (Entered: 06/04/2002) |
| 06/21/2002 | 1002 | | JUDGMENT and Commitment returned executed 5/30/02 , Daniel Lewis Lee (2) count(s) 3s–5s, 2s, 1s; defendant delivered to U. S. Penitentiary, Terre Haute, IN (dac) (Entered: 06/21/2002) |
| 06/25/2002 | 1003 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 5/13/02 sentencing of Daniel Lee ( [998–1] ) (dac) (Entered: 06/25/2002) |
| 06/25/2002 | 1004 | | ORDER by Judge G. T. Eisele granting in part and denying in part deft Chevie Kehoe's motion to unseal record [979–1]; the following documents shall be unsealed: document nos. |

FEB 16 2011  57

Appellate Case: 11-1380    Page: 57    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 95, 113, 120–121, 149, 170–172, 191, 194, 207, 213, 238, 244, 246, 253, 263–264, 269, 273, 278–280, 282, 286–287, 290, 294–296, 300–301, 306, 308–311, 313, 316, 320–322, 325, 327, 329, 331–332, 339, 343, 346–348, 351, 354, 356, 374, 376, 388–393, 398, 400, 405–407, 414, 418, 420–421, 426, 436, 440, 445–446, 457–459, 501, 518, 523, 529, 540, 543–545, 549, 553–554, 557, 559–561, 564–566, 02/18/99 correspondence, 575, 580, 581, 02/23/99 correspondence, 588, 590, 592–596, 599, 602, 604–605, 608, 627–628, 633, 643, 646, 657, 662, 664–665, 671–672, 683, 04/05/99 correspondence, 732, 734, 736, 04/19/99 correspondence, 767, 796, 824–825, 827, 829, 831, 841–842, 847, 858–859, 861, 892, 898, 902, 947–949; all other documents will remain sealed until the resolution of the appeals at which time the Court will consider unsealing the remaining documents upon the filing of an appropriate motion (cc: all counsel and defendants) (cdw) Modified on 06/28/2002 (Entered: 06/26/2002) |
| 06/27/2002 | 1005 | | DESIGNATION for Record on Appeal by Daniel Lewis Lee (dac) (Entered: 06/28/2002) |
| 06/27/2002 | | | CERTIFICATE of Record 45 vols of jury trial transcripts transmitted to USCA re appeal of Daniel Lee [998–1] (dac) (Entered: 06/28/2002) |
| 07/01/2002 | 1006 | | NOTICE of filing a petition for writ of certiorari with the Supreme Court as to Daniel Lee, Supreme Court #01–10510 (dac) (Entered: 07/01/2002) |
| 07/16/2002 | 1007 | | CJA Form 30Cp4 (Appointment of Counsel) supplemental voucher #37211 appointing Cathleen Compton as to Daniel Lewis Lee (rkc) (Entered: 07/16/2002) |
| 07/24/2002 | | | CERTIFICATE of Clerk's Record; in camera document #806; transcripts of 5/19/99; 6/24/99; 6/29/99; 12/18/01; 5/13/02 transmitted to USCA re appeal of Daniel Lee [998–1] (dac) (Entered: 07/24/2002) |
| 07/30/2002 | 1008 | | CJA Form 20 (Attorney Payment Voucher #000613000013 D37210) by Daniel Lewis Lee (cdw) (Entered: 07/30/2002) |
| 09/24/2002 | 1011 | | ORDER by Judge G. T. Eisele directing that the Clerk's Minutes [413–1] of the 11/19/98 ex parte In Camera hearing on the government's motion for protective order be unsealed; directing that the transcript of the 11/19/98 telephone conference regarding the In Camera hearing be filed unsealed and furnished to deft Lee's counsel, Cheryl Pilate (cc: all counsel and defendants) (cdw) (Entered: 09/25/2002) |
| 09/24/2002 | 1012 | | TRANSCRIPT (1 volume) of proceedings for the following date: Thursday, 11/19/98 (telephone conference before the Honorable G Thomas Eisele) (filed unsealed pursuant to Order of 09/24/02) (cdw) (Entered: 09/25/2002) |

| | | | |
|---|---|---|---|
| 11/07/2002 | 1013 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 1/30/98 attorney conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1014 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 2/9/98 attorney conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1015 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 4/9/98 pretrial conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1016 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 6/3/98 telephone conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1017 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 10/13/98 pretrial conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1018 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 12/16/98 attorney conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1019 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 12/17/98 telephone conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1020 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 1/12/99 juror questionnaire ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1021 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 1/29/99 attorney conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1022 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 2/24/99 attorney conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1023 | | SEALED document: transcript of 2/9/98 in camera conference (dac) (Entered: 11/08/2002) |
| 11/07/2002 | 1024 | | SEALED document: transcript of 2/24/99 in camera conference (dac) (Entered: 11/08/2002) |
| 11/08/2002 | 1025 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 2/10/00 telephone conference ( [998–1] ) (dac) (Entered: 11/08/2002) |
| 11/12/2002 | 1026 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 5/11/01 ( [998–1] ) (dac) (Entered: 11/12/2002) |
| 11/12/2002 | | | CERTIFICATE of Record: 12 volumes transcripts and 2 volumes transcripts of 2/9/98 &2/24/99 in camera proceedings transmitted to USCA re Lee appeal [998–1] |

Appellate Case: 11-1380    Page: 59    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | (dac) (Entered: 11/12/2002) |
| 11/18/2002 | 1027 | | LETTER to court from Supreme Court, petition for a writ of certiorari is denied as to Daniel Louis Lee (dac) (Entered: 11/18/2002) |
| 11/20/2002 | | | DOCKET NOTE: sentencing transcript of Kehoe returned from USCA8 (dac) (Entered: 11/20/2002) |
| 01/22/2003 | 1028 | | Opinion (8USCA) as to appeal of Chevie Kehoe (dac) (Entered: 01/22/2003) |
| 01/22/2003 | 1029 | | MANDATE from Circuit Court of Appeals judgment is affirmed as to appeal of Chevie Kehoe (dac) (Entered: 01/22/2003) |
| 01/27/2003 | 1030 | | TRANSCRIPT ( 1 volume) of proceedings for the following date: 12/22/98 motions hearing ( [998–1] ) (dac) (Entered: 01/27/2003) |
| 01/27/2003 | | | CERTIFICATE of Record: transcript of 12/22/98 transmitted to USCA re appeal of Daniel Lee [998–1] (dac) (Entered: 01/27/2003) |
| 05/01/2003 | 1031 | | NOTICE of filing a petition for writ of certiorari with Supreme Court #02–10091 as to Chevie Kehoe (dac) (Entered: 05/01/2003) |
| 06/02/2003 | 1032 | | LETTER to court from Supreme Court, the petition for a writ of certiorari is denied as to Chevie Kehoe (dac) (Entered: 06/02/2003) |
| 10/15/2004 | | | DOCKET NOTE: 64 volumes of transcripts and sealed documents #806, 1023 &1024; transcript #867 returned from USCA8 as to the appeal of Lee (dac) (Entered: 10/15/2004) |
| 11/30/2004 | 1048 | | RESPONSE by Chevie O'Brien Kehoe to pltf's motion for discovery [1043–1] (lej) (Entered: 11/30/2004) |
| 12/16/2004 | 1049 | | MINUTES: HEARING (Ph.Cf.) on Govt's. motion for discovery to be conducted in relation to defendant Chevie Kehoe's 2255 petition held before Judge G. T. Eisele. Craig Lambert and Patrick Benca appeared for defendant, Chevie Kehoe; Mark Hampton and Tom Sullivan appeared as defendant, Chevie Kehoe's former counsel; Dan Stripling appeared for government. Court finds that defendant/petitioner Chevie Kehoe waived the attorney–client privilege as to any communications in reference to specific ineffective assistance of counsel allegations. Court finds that former counsel may voluntarily meet with government's atty., or they may require the government to proceed formally. The Court further finds that a conflict of representation by atty. Patrick Benca exists and directs that he file a motion to withdraw forthwith. The |

FEB 16 2011 60

Appellate Case: 11-1380    Page: 60    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | Court grants the oral motion by atty. Lambert for appointment of co–counsel to replace Mr. Benca; further directs Mr. Lambert to notify the Court within ten days if successor is found; otherwise the Court will appoint someone. Court directs that Amended 2255 Petition be filed no later than 3/31/05; deadline for completion of discovery set for 7/1/05. (Ct. Rep. –– Elaine Hinson) (mah) (Entered: 12/16/2004) |
| 03/03/2005 | 1055 | | NOTICE of filing a petition for writ of certiorari with Supreme Court as to Daniel Lee, Supreme Court #04–8773 (dac) Modified on 03/04/2005 (Entered: 03/03/2005) |
| 07/08/2005 | 1070 | | TRANSCRIPT of Proceedings as to Chevie O'Brien Kehoe, Daniel Lewis Lee held on 4/7/99 before Judge G Thomas Eisele. Court Reporter: Power. FILED UNDER SEAL (dac ) (Entered: 07/08/2005) |
| 07/12/2005 | 1072 | | MANDATE of USCA (certified copy of opinion &judgmnet) as to Daniel Lewis Lee re 998 Notice of Appeal – Final Judgment of the district court is affirmed (dac ) (Entered: 07/13/2005) |
| 07/12/2005 | 1073 | | Letter from Supreme Court petition for writ of certiorari is denied as to Daniel Lee (dac, ) (Entered: 07/13/2005) |
| 08/17/2005 | 1078 | | MOTION to Appoint Counsel and Memorandum in Support by Daniel Lewis Lee. (jph, ) (Entered: 08/18/2005) |
| 08/26/2005 | 1079 | | ORDER granting 1078 Motion to Appoint Counsel David A. Ruhnke and Laurence E. Komp for Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 8/26/05. (jph, ) (Entered: 08/30/2005) |
| 08/30/2005 | 1080 | | Certificate of Mailing by the Clerk re 1079 Order on Motion to Appoint Counsel (jph, ) (Entered: 08/30/2005) |
| 08/30/2005 | 1081 | | Certificate of Mailing by the Clerk re 1079 Order on Motion to Appoint Counsel. Copies mailed to Atty: David Ruhnke and Larry Komp. (jph, ) (Entered: 08/30/2005) |
| 09/09/2005 | | | ***Clear Appeal Flag (dac ) (Entered: 09/09/2005) |
| 01/17/2006 | 1094 | | SEALED MOTION by Daniel Lewis Lee. (jph, ) (Entered: 01/17/2006) |
| 01/19/2006 | 1095 | | SEALED MOTION by Daniel Lewis Lee. (jph, ) (Entered: 01/19/2006) |
| 01/19/2006 | 1096 | | SEALED ORDER (Hard copies sent to defense attorneys) (ade) Modified on 1/19/2006 to correct text(ade). (Entered: 01/19/2006) |
| 01/19/2006 | 1097 | | CJA 30 as to Daniel Lewis Lee: Appointment of Attorney Laurence E. Komp for Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 1/18/06. Signed Nunc Pro Tunc |

FEB 16 2011  61

Appellate Case: 11-1380   Page: 61   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 8/26/05. (jph, ) (Modified entry on 5/8/2006 to correct text – incorrect event entered) (bfw). (Entered: 01/19/2006) |
| 01/19/2006 | 1098 | | CJA 30 as to Daniel Lewis Lee: Appointment of Attorney David A. Ruhnke for Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 1/18/06. Signed Nunc Pro Tunc 8/26/05 (jph) (Modified entry on 5/8/2006 to correct text – incorrect event entered) (bfw). (Entered: 01/19/2006) |
| 01/19/2006 | 1099 | | Sealed ORDER granting 1095 Sealed Motion as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 1/19/06. Hard Copies mailed to Defendant's Counsel (jph, ) (Entered: 01/23/2006) |
| 01/31/2006 | 1100 | | SEALED MOTION by Daniel Lewis Lee. (jph, ) (Entered: 01/31/2006) |
| 02/02/2006 | 1102 | | CJA 30: Appointment of Attorney (Sealed). Signed by Judge G. Thomas Eisele on 2/2/06. (jph, ) (Entered: 02/03/2006) |
| 02/03/2006 | 1103 | | SEALED ORDER as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 2/3/06. (jph, ) (Entered: 02/03/2006) |
| 04/21/2006 | | | Staff Note: CJA 30 voucher no. 06012700003–2 for $21,799.23 paid to David Ruhnke for work from 1/1/06 to 3/31/06 on behalf of Daniel Lewis Lee. (mar) (Entered: 04/28/2006) |
| 05/08/2006 | | | NOTICE OF DOCKET CORRECTION: 1097 CJA 20 – Appointment; 1098 CJA 20 – Appointment – (modified entries to correct text; incorrect event entered) (bfw) (Entered: 05/08/2006) |
| 05/23/2006 | 1112 | | SEALED MOTION (lmr, ) (Entered: 05/23/2006) |
| 05/24/2006 | 1113 | | SEALED ORDER granting 1112 SEALED MOTION. Signed by Judge G. Thomas Eisele on 5/24/2006. (lmr, ) (Entered: 05/25/2006) |
| 05/24/2006 | | | Staff Note: CJA Voucher NO. 06030300023–2 for $22,726.87 paid to Laurence Komp for work from 1/1/06 to 4/30/06 on behalf of Daniel Lewis Lee habeas petition. (mar) (Entered: 05/26/2006) |
| 05/24/2006 | | | ***Motions terminated as to Daniel Lewis Lee: 1112 SEALED MOTION, pursuant to order 1113 (lmr, ) (Entered: 05/26/2006) |
| 05/25/2006 | 1114 | | CERTIFICATE OF MAILING by the Clerk re 1113 Order (lmr, ) (Entered: 05/25/2006) |
| 06/06/2006 | 1116 | | SEALED MOTION. (lmr, ) (Entered: 06/06/2006) |
| 06/12/2006 | 1117 | | SEALED ORDER as to 1116 SEALED MOTION . Signed by Judge G. Thomas Eisele on 6/12/2006. (lmr, ) Modified |

FEB 16 2011  62
Appellate Case: 11-1380   Page: 62   Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | on 6/12/2006 to add descriptor, Sealed (lmr). (Entered: 06/12/2006) |
| 06/26/2006 | 1118 | | MOTION to Set Aside Judgment by Daniel Lewis Lee. (Attachments: # 1 Affidavit of Movant)(Ruhnke, David) (Entered: 06/26/2006) |
| 06/29/2006 | | | ***Motions terminated as to Chevie O'Brien Kehoe, Daniel Lewis Lee, Faron Earl Lovelace, Kirby Keith Kehoe: 1112 SEALED MOTION moot due to 1113 , 1116 SEALED MOTION moot due to 1117 . (cjw, ) (Entered: 06/29/2006) |
| 07/14/2006 | | | Staff Note: CJA 20 voucher no. 05ARE600627 for $5,004.00 paid to Patrick Benca for work from 4/15/04 to 12/20/04 on behalf of Daniel Lewis Lee (mar) (Entered: 08/04/2006) |
| 08/07/2006 | | | Staff Note: CJA 30 voucher no. 0601270003–3 for $18,600.30 paid to David Ruhnke for work from 4/1/06 to 6/30/06 on behalf of Daniel Lewis Lee (mar ) (Entered: 08/18/2006) |
| 09/26/2006 | 1119 | | ORDER directing the government to file a response by November 17, 2006 re 1118 MOTION to Set Aside Judgment filed by Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 9/26/2006. (lmr, ) (Entered: 09/26/2006) |
| 10/26/2006 | 1120 | | MOTION for Order by United States of America as to Daniel Lewis Lee. (Stripling, Clarence) (Entered: 10/26/2006) |
| 10/26/2006 | 1121 | | ORDER granting 1120 Motion for Order as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 10/26/2006. (lmr) (Entered: 10/26/2006) |
| 11/13/2006 | 1122 | | MOTION for Extension of Time to File Response/Reply as to 1118 MOTION to Set Aside Judgment *2255 motion* by United States of America as to Daniel Lewis Lee. (Stripling, Clarence) (Entered: 11/13/2006) |
| 11/16/2006 | 1123 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER as to Daniel Lewis Lee GRANTING 1122 MOTION for Extension of Time to File Response/Reply as to 1118 MOTION to Set Aside Judgment *2255 motion* filed by United States of America. USA has up to and including 12/8/06 . Signed by Judge G. Thomas Eisele on 11/16/06. (cjw, ) (Entered: 11/16/2006) |
| 11/20/2006 | 1124 | | NOTICE of Change of Address by Laurence E. Komp (Komp, Laurence) (Entered: 11/20/2006) |
| 12/06/2006 | 1126 | | RESPONSE to Motion by United States of America as to Daniel Lewis Lee re 1118 MOTION to Set Aside Judgment (Attachments: # 1 # 2 # 3 # 4 # 5)(Stripling, Clarence) (Entered: 12/06/2006) |

| | | | |
|---|---|---|---|
| 12/15/2006 | 1127 | | Consent MOTION to Extend Time *and set date for reply* by Daniel Lewis Lee. (Ruhnke, David) (Entered: 12/15/2006) |
| 12/18/2006 | 1128 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER as to Daniel Lewis Lee GRANTING 1127 Consent MOTION to Extend Time *and set date for reply* to the response to the Motion to vacate filed by Daniel Lewis Lee. Movant has up to and including March 19, 2007 . Signed by Judge G. Thomas Eisele on 12/18/06. (cjw, ) (Entered: 12/18/2006) |
| 12/18/2006 | 1129 | | CERTIFICATE OF MAILING by the Clerk re 1128 Order, Terminate Motions, (cjw, ) (Entered: 12/18/2006) |
| 03/13/2007 | 1130 | | Consent MOTION for Extension of Time to File Response/Reply as to 1126 Response to Motion *Up to and Including April 2, 2007* by Daniel Lewis Lee (Komp, Laurence) (Entered: 03/13/2007) |
| 03/19/2007 | 1131 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER as to Daniel Lewis Lee GRANTING 1130 Consent MOTION for Extension of Time to File Response/Reply as to 1126 Response to Motion *Up to and Including April 2, 2007* filed by Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 3/19/07. (cjw) (Entered: 03/19/2007) |
| 03/29/2007 | 1132 | | Consent MOTION for Extension of Time to File Response/Reply as to 1126 Response to Motion *Up to and Including April 9, 2007* by Daniel Lewis Lee (Komp, Laurence) (Entered: 03/29/2007) |
| 03/30/2007 | 1133 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER GRANTING RE 1132 Consent MOTION for Extension of Time to File Response/Reply as to 1126 Response to Motion *Up to and Including April 9, 2007* filed by Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 3/30/07. (cjw) (Entered: 03/30/2007) |
| 04/09/2007 | 1134 | | REPLY TO RESPONSE to Motion by Daniel Lewis Lee re 1118 MOTION to Set Aside Judgment (Komp, Laurence) (Entered: 04/09/2007) |
| 04/10/2007 | 1135 | | APPENDIX TO BRIEF 1134 by Daniel Lewis Lee; Compact Disk of verdict sheets in federal capital cases, referred to in Footnote 22 of Defendant's Brief. (lmr) (Entered: 04/10/2007) |
| 06/11/2007 | 1136 | | SEALED MOTION. (lmr) (Entered: 06/11/2007) |
| 06/11/2007 | 1137 | | SEALED ORDER. Signed by Judge G. Thomas Eisele on 6/11/2007. (lmr) (Entered: 06/11/2007) |
| 06/12/2007 | 1138 | | RESPONSE in Support by Daniel Lewis Lee re 1118 |

FEB 16 2011  64

Appellate Case: 11-1380     Page: 64     Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | MOTION to Set Aside Judgment , *supplemental submisssion re mtDNA results* (Attachments: # 1 Attachment A – mtDNA report)(Ruhnke, David) (Entered: 06/12/2007) |
| 07/18/2007 | 1139 | | BRIEF in Support by Daniel Lewis Lee re 1118 MOTION to Set Aside Judgment *Related to DNA Exclusion* (Komp, Laurence) (Entered: 07/18/2007) |
| 08/01/2007 | 1140 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER GRANTING oral motion by the Government for extension of time to file a supplemental reply to the supplement filed by Petitioner Lee Doc.# 1138 as to Daniel Lewis Lee. The Government has up to and including August 14, 2007 to file its supplemental reply. Signed by Judge G. Thomas Eisele on 8/1/07. (cjw) (Entered: 08/01/2007) |
| 08/14/2007 | 1141 | | MOTION for Extension of Time to File Response/Reply *to Petitioner's Supplement* by United States of America as to Daniel Lewis Lee (Stripling, Clarence) (Entered: 08/14/2007) |
| 08/15/2007 | 1142 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)ORDER granting 1141 Motion for Extension of Time to File Response/Reply as to Daniel Lewis Lee. The Government has up to and including August 21, 2007, to file its supplemental reply in response to petitioner Lee's supplement. Signed by Judge G. Thomas Eisele on 8/15/07.(sgm) (Entered: 08/15/2007) |
| 08/21/2007 | 1144 | | BRIEF in Opposition by United States of America as to Daniel Lewis Lee re 1118 MOTION to Set Aside Judgment – *United States' Supplemental Memorandum in Opposition to Motion Pursuant to 28 U.S.C.§ 2255 to Vacate Conviction and Sentence* (Attachments: # 1 Exhibit Exhibit B# 2 Exhibit Exhibit C# 3 Exhibit Exhibit D# 4 Exhibit Exhibit E)(Stripling, Clarence) (Entered: 08/21/2007) |
| 08/29/2007 | 1145 | | Government's Supplement to Its Supplemental Memorandum 1144 in Opposition to Motion Pursuant to 28 USC 2255 to Vacate Conviction and Sentence.(lmr) (Entered: 08/29/2007) |
| 09/04/2007 | 1146 | | Unopposed MOTION for Extension of Time to File Response/Reply *to United States' Reply and Additional Authority* by Daniel Lewis Lee (Komp, Laurence) (Entered: 09/04/2007) |
| 09/05/2007 | 1147 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)ORDER granting 1146 Motion for Extension of Time to File Response/Reply as to Daniel Lewis Lee. Mr. Lee shall have until September 24, 2007, to file a reply to the United States' response regarding the mtDNA. Signed by Judge G. Thomas Eisele on 9/5/2007. |

FEB 16 2011  65

Appellate Case: 11-1380    Page: 65    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | (ere) (Entered: 09/05/2007) |
| 09/24/2007 | 1149 | | MOTION for Extension of Time to File Response/Reply *(Agreed Upon By Government)* by Daniel Lewis Lee (Komp, Laurence) (Entered: 09/24/2007) |
| 09/25/2007 | 1150 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 1149 Motion for Extension of Time to File Response/Reply as to Daniel Lewis Lee (2). Movant Lee shall have until October 8, 2007, to file a reply to the USA's response regarding the mtDNA. Signed by Judge G. Thomas Eisele on 9/25/2007. (ere) (Entered: 09/25/2007) |
| 10/08/2007 | 1151 | | BRIEF in Support by Daniel Lewis Lee re 1118 MOTION to Set Aside Judgment *(Reply in Support of mtDNA Supplemental Memorandum)* (Attachments: # 1 Affidavit # 2 Exhibit Wraxall C.V.)(Komp, Laurence) (Entered: 10/08/2007) |
| 11/01/2007 | 1152 | | Unopposed MOTION for Hearing *re status conference* by Daniel Lewis Lee (Ruhnke, David) (Entered: 11/01/2007) |
| 02/29/2008 | 1153 | | ORDER denying 1152 Motion for Hearing (Status Conference) as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 2/29/2008. (lmr) (Entered: 02/29/2008) |
| 05/15/2008 | 1154 | | ORDER as to Chevie O'Brien Kehoe and Daniel Lewis Lee re pending 28 USC 2255 motions, and directing Petitioners to respond to this order no later than June 2, 2008. Signed by Judge G. Thomas Eisele on 5/15/2008. (lmr) (Entered: 05/15/2008) |
| 05/22/2008 | 1156 | | ORDER as to Daniel Lewis Lee re 1118 MOTION to Vacate (2255) filed by Daniel Lewis Lee. Signed by Judge G. Thomas Eisele on 5/22/2008. (lmr) (Entered: 05/22/2008) |
| 06/02/2008 | 1157 | | RESPONSE re 1154 May 15, 2008 Order, by Chevie O'Brien Kehoe (Attachments: # 1 Document Transcript: Gloria Louise Kehoe 3/31/1998) NOTE: Original certified transcript on file in Clerk's Office.(lmr) (Entered: 06/02/2008) |
| 06/02/2008 | 1158 | | NOTICE *of Filing of Transcript of Gloria Kehoe 3/31/98 Interview* by Daniel Lewis Lee re 1154 Order (Attachments: # 1 Exhibit Transcript of 3/21/98 Gloria Kenoe Interview)(Komp, Laurence) (Entered: 06/02/2008) |
| 06/09/2008 | 1160 | | RESPONSE re 1157 Response (Non Motion) − *Reply to Petitioner's Response to the Court's Order of May 15, 2008 (doc. 1154)* by United States of America (Stripling, Clarence) (Entered: 06/09/2008) |
| 06/20/2008 | 1161 | | MEMORANDUM re 1118 Motion to Set Aside Judgment, by Daniel Lewis Lee (Komp, Laurence) (Entered: |

FEB 16 2011  66

Appellate Case: 11-1380    Page: 66    Date Filed: 02/17/2011 Entry ID: 3757208

| | | | |
|---|---|---|---|
| | | | 06/20/2008) |
| 08/28/2008 | 1163 | 70 | ORDER denying 1118 Motion to Vacate (2255) as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 8/28/08. (cby) (Entered: 08/28/2008) |
| 09/18/2008 | 1165 | | MOTION to Amend/Correct *pursuant to F.R.Civ.P. 59* by Daniel Lewis Lee (Attachments: # 1 Affidavit Clark, # 2 Affidavit McNally, # 3 Affidavit Ryan, # 4 Exhibit Ryan ethics complaint, # 5 Affidavit Edens, # 6 Affidavit US v. Haynes, # 7 Affidavit Stetler)(Ruhnke, David) (Entered: 09/18/2008) |
| 09/22/2008 | 1166 | | MOTION for Extension of Time to File Response/Reply as to 1164 MOTION to Amend/Correct, 1165 MOTION to Amend/Correct *pursuant to F.R.Civ.P. 59* by United States of America as to Chevie O'Brien Kehoe, Daniel Lewis Lee (Stripling, Clarence) Modified on 10/27/2008 to correct docket text (lmr). (Entered: 09/22/2008) |
| 09/23/2008 | 1167 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)ORDER granting Government's Motion for Extension of Time to File Response/Reply 1166 as to Motions to Correct or Amend Judgment filed by Chevie O'Brien Kehoe(1) and Daniel Lewis Lee(2). Responses to both motions are due on October 20, 2008. Signed by Judge G. Thomas Eisele on 9/23/2008. (ere) (Entered: 09/23/2008) |
| 10/08/2008 | 1168 | | BRIEF in Support by Daniel Lewis Lee re 1165 MOTION to Amend/Correct *pursuant to F.R.Civ.P. 59*. (cby) (Entered: 10/08/2008) |
| 10/20/2008 | 1170 | | RESPONSE in Opposition by United States of America as to Daniel Lewis Lee re 1165 MOTION to Amend/Correct *pursuant to F.R.Civ.P. 59* (Stripling, Clarence) (Entered: 10/20/2008) |
| 10/21/2008 | 1171 | | LETTER ORDER as to Daniel Lewis Lee re 1168 Brief in Support of Motion. Signed by Judge G. Thomas Eisele on 10/21/08. (cby) (Entered: 10/21/2008) |
| 10/25/2008 | 1172 | | REPLY TO RESPONSE to Motion by Daniel Lewis Lee re 1165 MOTION to Amend/Correct *pursuant to F.R.Civ.P. 59* (Ruhnke, David) Modified on 10/27/2008 to correct docket text as to party and correct linkage to motion. (lmr). (Entered: 10/25/2008) |
| 10/27/2008 | 1173 | | NOTICE OF APPEAL by Daniel Lewis Lee re: 1163 Order (Attachments: # 1 Memorandum re protective notice of appeal)(Ruhnke, David) (Docket entry modified on 10/27/2008 to establish linkage.) (thd) (Entered: 10/27/2008) |
| 10/27/2008 | | | NOTICE OF DOCKET CORRECTION 1172 Reply to Response, filed by Daniel Lewis Lee (2). CORRECTION: |

Appellate Case: 11-1380    Page: 67    Date Filed: 02/17/2011 Entry ID: 3757208

FEB 16 2011  67

| | | | |
|---|---|---|---|
| | | | Docket entry modified on 10/27/2008 to correct docket text as to party and create linkage to correct motion 1165 . (lmr) (Entered: 10/27/2008) |
| 10/27/2008 | | | NOTICE OF DOCKET CORRECTION re: 1173 Notice of Appeal – Final Judgment. CORRECTION: The docket entry was modified to establish linkage to 1163 Order. (thd) (Entered: 10/27/2008) |
| 11/11/2008 | 1174 | | MOTION SUPPLEMENT THE RECORD WITH THE MATERIALS FILED WITH THE COURT IN RESPONSE TO THE OCTOBER 21, 2008 LETTER ORDER re 1171 Order by Daniel Lewis Lee (Komp, Laurence) (Entered: 11/11/2008) |
| 11/17/2008 | 1175 | | ORDER granting 1174 Motion as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 11/17/08. (cby) (Entered: 11/18/2008) |
| 11/17/2008 | 1176 | | RESPONSE to Letter Order by USA as to Daniel Lewis Lee. (cby) (Entered: 11/18/2008) |
| 11/17/2008 | 1177 | | Sealed Document. (cby) (Entered: 11/18/2008) |
| 12/15/2008 | 1178 | | AFFIDAVIT in Support of Motion for Reconsideration by Daniel Lewis Lee. (cby) (Entered: 12/15/2008) |
| 12/17/2008 | 1179 | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER directing the Government to respond to Lee's Affidavit in Support of Motion [Doc. 1178] not later than January 6, 2009. Signed by Judge G. Thomas Eisele on 12/17/08. (cjw) (Entered: 12/17/2008) |
| 01/05/2009 | 1181 | | RESPONSE re 1178 affidavit in Support of Motion – *Government's Response to Sworn Statement/Declaration of Daniel Louis Lee in Support of Movant's Motion for Reconsideration* by United States of America (Attachments: # 1 Exhibit Motion to Alter or Amend Judgment, Or, In The Alternative, For Relief From Judgment)(Stripling, Clarence) (Entered: 01/05/2009) |
| 02/03/2009 | 1182 | | NOTICE *of Additional Authority in Support of Rule 59 Motion* by Daniel Lewis Lee (Attachments: # 1 Exhibit Nelson Opinion)(Komp, Laurence) (Entered: 02/03/2009) |
| 12/22/2010 | 1189 | 189 | ORDER denying 1165 Motion to Amend/Correct pursuant to F.R.Civ.P. 59 as to Daniel Lewis Lee (2). Signed by Judge G. Thomas Eisele on 12/22/2010. (cby) (Entered: 12/22/2010) |
| 01/13/2011 | 1192 | | SEALED ORDER. Signed by Judge G. Thomas Eisele on 1/13/2011. (cby) (Entered: 01/14/2011) |
| 01/14/2011 | 1191 | | SEALED MOTION.(cby) (Entered: 01/14/2011) |

| | | | |
|---|---|---|---|
| 02/09/2011 | 1194 | | MOTION for Certificate of Appealability *(reconsideration of denial)* by Daniel Lewis Lee (Ruhnke, David) (Entered: 02/09/2011) |
| 02/14/2011 | 1195 | 202 | NOTICE OF APPEAL by Daniel Lewis Lee re 1163 Order and 1189 Order. (Ruhnke, David) (Docket entry modified on 2/15/2011 to establish linkage.)(thd) (Entered: 02/14/2011) |
| 02/15/2011 | | | NOTICE OF DOCKET CORRECTION re: 1195 Notice of Appeal by Daniel Lewis Lee. CORRECTION: The docket entry was modified to establish linkage to 1163 Order and 1189 Order. (thd) (Entered: 02/15/2011) |
| 02/16/2011 | 1198 | 204 | NOTIFICATION OF APPEAL and NOA SUPPLEMENT as to 1173 1195 Notice of Appeal – Final Judgment filed by Daniel Lewis Lee 1189 Order on Motion to Amend 1163 Order on Motion to Set Aside Judgment. (dac) (Entered: 02/16/2011) |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


UNITED STATES OF AMERICA


v.                                    NO.  4:97-CR-00243-(2) GTE
                                      (Civil Case No. 4:06-CV-1608)


DANIEL LEWIS LEE


MEMORANDUM OPINION

Before the Court is Petitioner Daniel Lewis Lee's Motion to Set Aside Judgment under

28 U.S.C. § 2255.[1]   The United States opposes any post-conviction relief.[2]   Additional relevant

pleadings include: (1) Petitioner's Reply in Support of 2255 Motion;[3]  (2) Petitioner's Appendix

to Brief;[4]  (3) Petitioner's Supplemental Submission (mtDNA results) in additional support of §

2255 Motion and Brief in Support;[5] (4) Government's Supplemental Memorandum Opposing §

2255 Motion and Supplement;[6] (5) Petitioner's Supplemental Reply Memorandum regarding the

DNA Exclusion;[7] and (6) Petitioner's Notice of Filing of Transcript of Gloria Kehoe's 3/31/98

Statement;[8] (7) Government's Reply to Petitioner's Response to the Court's Order of May 15,

---

[1]  Docket Number ("Doc. No.") 1118, hereinafter referred to as "Petitioner's motion."

[2]  Doc. No. 1126.

[3]  Doc. No. 1134.

[4]  Doc. No. 1135, consisting of a compact disk of verdict sheets in capital cases.

[5]  Doc. No. 1138 & 1139.

[6]  Doc. No. 1144 & 1145.

[7]  Doc. No. 1151.

[8]  Doc. No. 1158.

- 1 -

Appellate Case: 11-1380   Page: 70   Date Filed: 02/17/2011 Entry ID: 3757208

FEB 16 2011  70

2008;[9] and (8) Petitioner's Second Supplemental Memorandum in Support of his 28 U.S.C. § 2255 Motion Pursuant to the Court's May 22, 2008 Order.[10]

The Court has considered carefully the above pleadings.  Additionally, the Court has undertaken a review of the relevant portions of the voluminous record in this matter.  Based upon its careful consideration of all issues presented, the Court concludes that Petitioner is entitled to no relief.

## I.    BACKGROUND

Simultaneously with the filing of this Memorandum Opinion, the Court is filing a separate Memorandum Opinion addressing the § 2255 motions filed by Petitioner Danny Lee's co-defendant Chevie Kehoe.   Significant portions of the Memorandum Opinions are the same, as they address many similar or identical arguments for relief presented by both Petitioners.  This Memorandum Opinion is significantly broader because it also addresses challenges to the sentencing phase presented by Petitioner Lee, which were not presented by Petitioner Kehoe.[11]

### A.    Procedural History

On July 7, 1998, Chevie Kehoe ("Kehoe"),[12] Daniel Lewis Lee ("Lee"), and Kirby Kehoe ("Kirby")[13] were charged in a seven-count Superseding Indictment.[14]  Lee and Kehoe were both

---

[9]  Doc. No. 1160.

[10]  Doc. No. 1161.

[11]  During the sentencing phase, the jury had only two options:  life imprisonment or death.  Because the jury rejected a death sentence for Kehoe, he was left with the most lenient sentence available for the offenses of conviction.  For obvious reasons, Chevie Kehoe did not challenge the jury's decision to impose life rather than death.

[12]  Throughout this opinion, "Kehoe" refers to Chevie Kehoe.  To avoid confusion, the Court will refer to other members of the Kehoe family (primarily, Kirby, Gloria and Cheyne Kehoe) by either their full names or their first names only.

[13]  Kirby is the father of Chevie Kehoe.

[14]  A fourth defendant, Faron Loveless, was charged in the racketeering count in the original Indictment. The Government dismissed Loveless prior to filing the Superseding Indictment.

- 2 -

Appellate Case: 11-1380   Page: 71   Date Filed: 02/17/2011 Entry ID: 3757208

charged in all 7 counts.  Count 1 charged all three defendants with racketeering in violation of 18 U.S.C. § 1962(d).  Count 1 alleged ten racketeering acts, of which Lee was charged with 4, specifically, the Mueller family murders/robbery and the Spokane City Hall bombing (racketeering acts 4, 5, 6, and 7 of Count 1).[15]  Chevie Kehoe was charged in all ten racketeering acts.  Count 2 charged all three Defendants with a racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  Counts 3, 4, and 5 of the Superseding Indictment charged Lee and Kehoe with murder in aid of racketeering in violation of 18 U.S.C. § 1959 alleging that they murdered William Mueller, Nancy Mueller, and Sarah Powell, Nancy Mueller's eight-year-old daughter.  Count 6 charged all three Defendants with a robbery conspiracy in violation of 18 U.S.C. § 1951(a) for the second robbery of the Muellers.  Count 7 charged Lee and Kehoe with the use of a firearm in the Mueller robbery and murders in violation of 18 U.S.C. § 924(c).

Before trial, Kirby pled guilty to racketeering as charged in Count 1.  Also before trial, the Government dismissed Counts 6 and 7.  The Government pursued the death penalty against both Kehoe and Lee.

The trial began on March 1, 1999.   A single jury was selected to hear both the guilt and, if necessary, the penalty phases for both Defendants.  On May 4, 1999, the jury found Kehoe and Lee guilty of the five remaining counts in the Superseding Indictment.  As to Count 1, Lee was found to have committed the three racketeering acts associated with the murder of the Mueller family, but was found not to have committed the racketeering act related to the Spokane City Hall bombing.  Also as to Count 1, Kehoe was found to have committed all of the alleged racketeering acts with the exception of those for the robbery in the first degree of Jill and

---

[15]  Co-defendant Chevie Kehoe was charged in all ten racketeering acts.

FEB 16 2011  72
Appellate Case: 11-1380   Page: 72   Date Filed: 02/17/2011 Entry ID: 3757208

Malcolm Friedman, money laundering, first degree murder of Jeremy Scott, and first degree arson related to the Spokane City Hall bombing

Kehoe and Lee's sentencing phases were conducted separately, with Kehoe's sentence determined first. The jury sentenced Kehoe to life without possibility of release for each of the three murders. The same jury then sentenced Lee to death for each of the three Mueller murders. On May 13, 2002, this Court imposed a Judgment of Death for Lee on Counts 3, 4, and 5, and Life Imprisonment on Counts 1 and 2, to run concurrent.

Lee sought to set aside the death penalty and attempted to obtain by subpoena evidence from Attorney General Reno and Deputy Attorney General Holder. This Court denied the Government's motion to quash the two subpoenas, but was reversed by the Eighth Circuit Court of Appeals, which issued a writ of mandamus directing that the subpoenas be quashed.[16] This Court subsequently granted Lee's request for a new penalty phase trial based on its conclusion that the Government exceeded the permissible scope of cross-examination in questioning Lee's mental health expert, improperly elicited aggravating evidence from Lee's own rebuttal expert, and breached its own internal protocol for imposing the death penalty.[17] The Eighth Circuit Court of Appeals reversed and reinstated the death penalty.[18]

---

[16] *In re United States*, 197 F.3d 310 (8th Cir. 1999).

[17] *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000).

[18] *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, 537 U.S. 1000 (2002).

Both Lee and Kehoe appealed their convictions.  The Eighth Circuit Court of Appeals affirmed Lee's conviction.[19]  The Supreme Court denied Lee's certiorari petition on June 27, 2005.[20]  Lee timely filed the present motion for relief under § 2255 on June 26, 2006.

### B.       Facts Supporting Conviction

### 1.       The Enterprise – the Aryan Peoples' Republic

The Government alleged that Defendants formed an "enterprise" known as the Aryan People's Republic, the Aryan People's Resistance, or the Aryan People's Revolution ("APR"). More specifically, the Government alleged that Chevie Kehoe was the leader of the enterprise and that Danny Lee, Cheyne Kehoe, Kirby Kehoe, and Faron Loveless were principal assistants. Chevie Kehoe conceptualized the enterprise based in part on Robert Matthews's group, known as "The Order."[21]   The group believed that whites were the chosen race,[22] that Jews were the devil's children and should die,[23] and that the Bible justified violence.[24]  Kehoe was so concerned with racial purity that at one point he contemplated killing his own wife and children because of suspicions that his wife's blood was tainted with Indian blood and therefore impure.[25]

---

[19]  *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004).  Kehoe's conviction was also affirmed.  *United States v. Kehoe*, 310 F.3d 579 (8th Cir. 2002).

[20]  *Lee v. United States*, 545 U.S. 1141 (2005).

[21]  Tr. 1317-18. (Unless otherwise noted, the transcript referenced is the trial transcript beginning on February 26, 1999, through May 14, 1999).  Matthews's activities are described in a book authored by him entitled "The Silent Brotherhood."  Tr. 1310.  Kehoe gave a copy of this book to Lee and to others.  Tr. 1310, 4964.

[22]  Tr. 1316, 1433.

[23]  Tr. 1433-34.

[24]  Tr. 1435.

[25]  Tr. 1440.

- 5 -

FEB 16 2011  74
Appellate Case: 11-1380   Page: 74   Date Filed: 02/17/2011 Entry ID: 3757208

The purpose of the enterprise was to establish an Aryan Homeland for the benefit of the white man, free of "mongrel races," in the Northwest United States.[26]  Kehoe envisioned that his group could assume control in the aftermath of chaos created by simultaneously killing large numbers of judges and law enforcement officials.[27]  He hoped to raise enough money to buy a remote piece of property to set up a training camp and to attract more members.[28]

### 2.     1995 Mueller Burglary (Racketeering Act 1)[29]

William Mueller, his wife Nancy, and eight year old Sarah lived in Tilley, Arkansas. William Mueller was a gun show enthusiast who had strong anti-government views.  The Mueller family and the Kehoe family became acquainted through gun shows when the Kehoe family lived in Arkansas.[30]   Gloria Kehoe developed a friendship with the Muellers.[31]

In February 1995, Kehoe stole a trailer near Harrison, Arkansas, and pulled it to the home of his parents near Kingston, Arkansas.[32]  On February 12, 1995, Chevie and Kirby Kehoe went to the Mueller home while the Mueller family was attending a gun show.[33]  They robbed the home and divided the stolen property.  Chevie Kehoe took some of the stolen property to

---

[26]  Tr. 1319-20, 1375-76.

[27]  Tr. 1320, 1321.

[28]  Tr. 5370.

[29]  Danny Lee was not charged in this racketeering act.

[30]  Tr. 4950.

[31]  *Id.*

[32]  Tr. 1760, 4951.

[33]  Tr. 4952-54.

FEB 16 2011  75
Appellate Case: 11-1380     Page: 75     Date Filed: 02/17/2011 Entry ID: 3757208

Washington state.  Kirby later became angry at his son, believing that Chevie had shorted him his share of the proceeds from coins that Chevie sold in Washington state.[34]

### 3.      Friedman Kidnaping and Robbery (Racketeering Act 2)[35]

On June 12, 1995, Faron Lovelace kidnaped and robbed Malcolm and Jill Friedman at their home outside of Colville, Washington.[36]   Chevie and Kirby Kehoe dropped Mr. Lovelace off near the Friedman's home before the robbery.[37]   After robbing them of approximately $15,620, two guns, and a bottle of tequila, Lovelace had the Friedmans drive him to Spokane, Washington, where he stole their car and left them at a restaurant.[38]  Lovelace was then picked up by Kehoe and Cheyne, who drove him from Spokane to Idaho.[39]   Kehoe knew the Friedmans from his youth, when he worked for them both in their grocery store and in their home.[40]

Lovelace gave $15,000 of the money stolen from the Friedmans to Kehoe, who kept $13,000 and allowed Lovelace to keep $2,000.[41]   Kehoe later gave Kirby $4,000.[42]   Between June 18 and July 11, 1995, Kehoe and his wife used some of the proceeds from the robbery to purchase five acres of land near Priest River, Idaho.[43]

---

[34] Tr. 4955-56.

[35] Danny Lee was not charged in this racketeering act.

[36] Tr. 4139-4147.

[37] Tr. 4963.

[38] Tr. 4143-47.

[39] Tr. 5299-5301.

[40] Tr. 4137.

[41] Tr. 5300-02.

[42] Tr. 4963.

[43] Tr. 4189-97, 4199.

FEB 16 2011  76
Appellate Case: 11-1380   Page: 76   Date Filed: 02/17/2011 Entry ID: 3757208

#### 4.    The Mueller Family Murders (Racketeering Acts 4-6; Counts 3-5)

Sometime after Christmas in 1995 or early January of 1996, Kehoe and Lee[44] left Spokane, Washington.  They told friends that they were going to Idaho to build a barn,[45] but instead traveled to Arizona where they met Kirby and Gloria Kehoe ("Gloria").[46]  After a brief stay in Arizona, Kehoe and Lee left for Oklahoma.  Kehoe told Gloria that he was taking Lee to see Lee's mother because Lee did not have transportation or money to make the trip.[47]   Lee's mother lived in Yukon, Oklahoma (near Oklahoma City) and had undergone emergency gall bladder surgery.[48]

On January 10, 1996, around 6:00 p.m., Kehoe and Lee left Lee's mother's house in Oklahoma.  Lee's mother gave them as much as $40.00 before they left town because they were low on cash.[49]  Kehoe and Lee were driving Kehoe's blue 1985 GMC diesel truck, which he had purchased from his parents.[50]

On or about January 11, 1996, Kehoe and Lee broke into the Tilley, Arkansas home of William Mueller, Nancy Mueller, and Sarah Powell.[51]  Kehoe and Lee were dressed in raid gear

---

[44]Sean Haines, Danny Lee's former roommate, testified that Chevie Kehoe and Danny Lee first met at his apartment in late August or early September in 1995.  Tr. 2773, 2776-77.  Danny Lee moved in with Chevie Kehoe in April of 1996.  Tr. 2791.

[45] Tr. 2778-79, 2898.

[46] Gloria Kehoe is the mother of Chevie Kehoe.

[47] Tr. 5126-27, 5132-33.

[48] Tr. 2617-18.

[49] Tr. 2618-20.

[50] Tr. 5127.  The Court notes a minor discrepancy in the record regarding the GMC's model year.  Gloria repeatedly referred to it as a model year 1985, but Cheyne described it as being a model year 1984.  Tr. 5356.  The Court does not know which is correct.

[51] While the exact date of the murders was disputed at trial, there was substantial evidence to support the Government's theory that the Mueller family was murdered on January 11, 1996.

FEB 16 2011  77

Appellate Case: 11-1380   Page: 77   Date Filed: 02/17/2011 Entry ID: 3757208

that gave the impression that they were federal law enforcement officers.  When the Muellers

returned home, Kehoe and Lee emerged from hiding and pretended to be federal law enforcement

officers.  They had to physically subdue William Mueller who strongly resisted.  They suffocated

the Muellers by placing plastic bags over their heads and using duct tape to secure the plastic

bags.[52]  The undisputed evidence was that Lee was unwilling to kill Sarah, the little girl, so

Kehoe killed her.[53]   After killing the Muellers, Kehoe and Lee transported their bodies to Pope

County and threw the bodies, weighted down with rocks, into the Illinois Bayou.[54]

Kehoe and Lee took cash, coins, numerous firearms, firearm parts, gun display cases, and

ammunition from the Mueller home.  Kehoe estimated the value of the cash and gold taken to be

$50,000.  He estimated the value of the firearms and firearm parts to be to be $30,000.  For his

part in the crime, Lee received $3,000 or $4,000 and a pistol.[55]

Kehoe and Lee returned with the stolen property to the Shadows Motel in Spokane,

Washington, a place where Kehoe stayed off and on.  The evidence established that they were

back in Spokane no later than January 14, 1996, at 5:59 p.m., when Lee called his mother.[56]

Kehoe explained the large quantity of guns, gun parts, and cash in his possession to Jeff

Brown, manager of the Shadows Motel, by stating that the guns and gun parts were on

---

[52]  There was testimony that Kehoe and Lee shocked the Muellers with stun guns, causing them to pass out, before suffocating them.  Tr. 4974.

[53]  Tr. 5328.

[54]  Tr. 5327-29.

[55]  Tr. 5330.

[56]  Tr. 2610, 2620-22.

FEB 16 2011 78

Appellate Case: 11-1380   Page: 78   Date Filed: 02/17/2011 Entry ID: 3757208

consignment from a dealer.[57]   Kehoe later provided a similar explanation to his brother,

Cheyne.[58]

On February 4, 1996, Gloria arrived at the Shadows Motel from Arizona and saw a large

quantity of merchandise in her son's room.[59]   During a trip to the grocery store, Kehoe confessed

to Gloria that he "put Bill and Nancy on a liquid diet."[60]   He then proceeded to tell Gloria in

detail how he and Lee murdered and robbed the Muellers.[61]   Later, at the motel, Lee also

confessed his involvement in the murders to Gloria.[62]

On February 13, 1996, a man named Travis Brake was arrested in Seattle, Washington,

and the police confiscated a .45 caliber Colt pistol from him.[63]   The pistol was later linked to a

.45 caliber Colt box belonging to the Muellers.[64]   Brake testified that he purchased the gun at a

gun show from an older man, a young man, and a young boy.[65]   This information led

investigators to the gun show where Brake had purchased the gun and then to the Kehoes at the

---

[57] Tr. 2894-98.

[58] Tr. 5319.

[59] Tr. 4969-70, 5603, 5138.

[60] Tr. 4971.

[61] Tr. 4971-74.

[62] Tr. 4975.

[63] Tr. 3190.

[64] Tr. 3165-66, 3176-77.

[65] Tr. 3182.

- 10 -

FEB 16 2011   79

Shadows Motel.  Records revealed that "K.M. Gumm" (Chevie Kehoe's wife)[66] rented tables at a gun show in Seattle over the weekend of February 11, 1996.[67]

On June 28, 1996, the bodies of the Mueller family were discovered.  A woman fishing near a bridge that crossed the Illinois Bayou snagged two tennis shoes tied together with "something that was flapping around extending from it."[68]  This discovery prompted a dragging operation that led to the recovery of portions of the bodies of William Mueller, Nancy Mueller, and Sarah Powell.  Plastic bags were duct taped around the heads of all three bodies.  One body was recovered with a large rock duct taped to it.  The condition of the bodies indicated that rocks had been similarly placed around the other two bodies, by folding their arms over the rocks and then using duct tape to secure the rock to the body.[69]

In late June or early July of 1996, Kehoe had his 1985 GMC diesel truck –  the vehicle that he and Lee took to Arkansas when they murdered the Muellers –  painted white.[70]  He then traded the vehicle to his father.[71]

On December 10, 1996, Sean Haines, Lee's former roommate, was arrested in South Dakota with a Bushmaster rifle in his possession.[72]  The rifle had been reported stolen and was

---

[66] While Karena Kehoe, a/k/a Karena Gunn, was Kehoe's wife and the mother of his children, Kehoe briefly had a second wife.  From August through November of 1995, Kelly Kramer lived with Kehoe and Karena in Priest River, Idaho, in a polygamous relationship.  (Tr. 4251-52, 4256-57, 4267).

[67] Tr. 3178-79.

[68] Tr. 3074-75.

[69] Tr. 3104, 3118.

[70] Tr. 3044-56.

[71] Tr. 5356.

[72] Tr. 2794.

- 11 -

FEB 16 2011  80
Appellate Case: 11-1380   Page: 80   Date Filed: 02/17/2011 Entry ID: 3757208

registered to the Muellers.  Sean Haines told police he acquired the rifle from Chevie Kehoe.[73]

Haines called Lee and informed him police were questioning him about the rifle.[74]   Lee told

Kehoe about Haines's arrest.[75]  On December 11, 1996, the day after Haines was arrested, Kehoe,

his wife, and children left the R.V. park in Spokane, Washington, where their motor home had

been parked.[76]  Danny Lee left for Oklahoma.[77]

### 5.    Ohio Shootings (Racketeering Act 9)[78]

After leaving Spokane, Kehoe, his wife Karena, and their three children arrived in Yaak,

Montana, with their motor home and the blue Suburban.[79]  Kirby and Gloria were already living

there.  Also living there were Cheyne, his wife Tanna, and their baby.  Shortly thereafter,

Kehoe's and Cheyne's families left in the motor home, pulling the blue Suburban behind them.

They planned to travel to Arizona to look for construction work.[80]  Before leaving, Cheyne

accompanied his brother to a storage unit in Old Town, Montana, where Kehoe filled the

Suburban with guns, ammunition, and miscellaneous gun parts.[81]

---

[73] Tr. 2794-98.

[74] Tr. 2799.

[75] Tr. 4978-80.

[76] Tr. 4469-73.

[77] Tr. 4980.

[78] Danny Lee was not charged in this racketeering act.

[79] Tr. 5317.

[80] Tr. 5317-20.

[81] Tr. 5318.

Appellate Case: 11-1380   Page: 81   Date Filed: 02/17/2011 Entry ID: 3757208

FEB 16 2011  81

Kehoe and Cheyne attended gun shows in Phoenix and Tucson, Arizona.[82] While selecting a gun to sell at one of the shows, Kehoe remarked to Cheyne that he needed to get rid of a particular shotgun because it was "one of the Muellers' guns."[83]

The two families traveled from Arizona to Galveston, Texas. By then they had decided to go on the "gun show circuit," rather than find construction work.[84] While in Galveston, Kehoe told Cheyne that the guns, parts, and accessories in his possession had belonged to the Muellers. Kehoe then confessed to Cheyne that he and Lee had murdered the Muellers. Kehoe provided considerable detail about the manner in which the crime had been committed.[85] He also showed Cheyne the raid gear he and Lee had worn.[86]

After leaving Galveston, the two families traveled through Alabama, Florida, North Carolina, and West Virginia, before heading back west. They arrived in Ohio on January 21, 1997.[87] While in Ohio, Kehoe arranged to meet Lee in Greensboro, Kentucky, but Lee failed to show.[88]

On February 15, 1997, Kehoe and Cheyne were on their way to the campground where they were staying when they were stopped by law enforcement officers in Wilmington, Ohio. The traffic stop escalated into a shoot-out. Cheyne exited the truck and exchanged gunfire with a

---

[82] Tr. 5321.

[83] Tr. 5323.

[84] Tr. 5325.

[85] Tr. 5326-30.

[86] Tr. 5329.

[87] Tr. 5332-33.

[88] Tr. 5342.

FEB 16 2011  82

Appellate Case: 11-1380   Page: 82   Date Filed: 02/17/2011   Entry ID: 3757208

Clinton County, Ohio deputy sheriff.  Following the shooting, Cheyne fled on foot while Kehoe jumped into the blue Suburban and drove away.[89]

Shortly after the first shoot-out, a city police officer located the blue Suburban, with Kehoe inside, parked a short distance away.[90]  As the officer exited his vehicle, Kehoe opened fire on the officer and another officer who had arrived at the scene.  Kehoe fired approximately 33 rounds.[91]  A civilian bystander was shot in the arm.[92]  Kehoe escaped on foot.

A search of the Suburban revealed, among other things, federal officer raid jackets, FBI caps, bullet proof vests, guns, various gun parts, ammunition, holsters, handcuffs, and duct tape.[93]  In one of the caps, a hair was found that was later determined to be microscopically similar to Lee's hair.[94]

Following the shoot-out, Kehoe and Cheyne eventually reunited with their families with the help of Kirby and Gloria.[95]  Kehoe and Cheyne decided to flee together.  Kirby agreed to help them get a vehicle.  Kirby sold the 1985 GMC truck, the paint on which had been changed from its original blue to white, back to Kehoe.[96]  After registering the GMC truck in Idaho, Kehoe and Cheyne traveled with their families to Arizona and then to Utah, where they met a rancher named

---

[89] Tr. 5343-48.

[90] Tr. 4568-69.

[91] Tr. 4573-76, 4594-85, 4612.

[92] Tr. 4600-04.

[93] Tr. 4633-98 (Officer who conducted search of Suburban describing vehicle contents).

[94] Tr. 4722.  The Court notes that Lee was recently excluded by DNA testing as the source of the hair from the "raid cap."

[95] Tr. 5354-56.

[96] Tr. 5356.

FEB 16 2011   83
Appellate Case: 11-1380   Page: 83   Date Filed: 02/17/2011   Entry ID: 3757208

Rod Leavitt.[97]   Kehoe and Cheyne agreed to take care of Leavitt's alfalfa ranch in Beryl Junction, Utah, so they moved there with their families.[98]

### 6.      Cheyne Kehoe's Surrender

Chevie Kehoe was upset about losing so many firearms and accessories in the aftermath the Ohio shootout.  While in Utah, Kehoe discussed with Cheyne the possibility of murdering Kirby and Gloria in order to acquire Kirby's weapons and ammunition.  Kehoe also commented that he could then take his other brothers, raise them, and use them as recruits for the APR.[99]

Cheyne, having become fearful of his brother, decided that he was going to leave.  In June 1997, Cheyne, his wife and child took Kehoe's GMC truck and left the Utah ranch.  On June 16, 1997, after stopping to see his parents in Yaak, Cheyne turned himself in to local authorities in Colville, Washington.[100]

An FBI forensic chemist later determined that paint samples taken from the GMC truck were "consistent, very similar" to metallic blue paint chips found in duct tape removed from the bodies of the Mueller family.[101]

On June 17, 1997, Kehoe was arrested in Cedar City, Idaho.

### 7.      Gloria Kehoe's Cooperation

In early March 1998, Gloria contacted ATF agents in Spokane and began cooperating with the authorities.  Gloria was concerned that her husband, Kirby, would kill her because "she

---

[97]  Tr. 5357-60.

[98]  Tr. 5368.

[99]  Tr. 5374.

[100]  Tr. 5374-76, 5378.

[101]  Tr. 3658-60, 3678-84.

- 15 -

Appellate Case: 11-1380     Page: 84     Date Filed: 02/17/2011 Entry ID: 3757208

FEB 16 2011  84

knew too much."[102]  Gloria provided information that prompted the authorities to search two rental storage units – one in Thompson Falls, Montana, and the other in Old Town, Idaho.

On March 6 and 7, 1998, an ATF agent searched a storage unit at Thompson Falls, reported by Gloria to have been rented by Kirby.[103]   Inside the unit were large quantities of guns, hand grenades, grenade parts, a machine gun, assault weapons, and over 30,000 rounds of ammunition of various calibers including armor piercing ammunition.  Also found were a Maddi AK-47 gun, which had been registered to Nancy Mueller[104] and some Black Hills ammunition, which was determined, by matching serial numbers, to previously have been sold to William Mueller.[105]

In April of 1998, the authorities searched a storage unit in Old Town, Idaho, reported by Gloria to have been rented by Chevie Kehoe.[106]   Among the items found in the search were two display cases similar to those used by William Mueller.  The cases had fibers in them similar to the carpet in the Mueller home.[107]   One of the cases had a hair similar to William Mueller's in it.[108]   Fingerprints were found on one of the display cases that were determined to have been left by Kehoe and Lee.[109]  Other items seized included personal papers belonging to Kehoe and his

---

[102]  Tr. 3476-77, 4980.

[103]  Tr. 3377-78, 3478.

[104]  Tr. 3385, 3401-02.

[105]  Tr. 3390-92, 3527-30.

[106]  Tr. 3479-80.

[107]  Tr. 3646-50.

[108]  Tr. 3651-52.

[109]  Tr.  3708-12 (The fingerprint analyst testified that he found three matching fingerprints for Danny Lee and one for Chevie Kehoe).

- 16 -

Appellate Case: 11-1380   Page: 85   Date Filed: 02/17/2011   Entry ID: 3757208

wife, Karena, a Rubbermaid container filled with Mueller property, and white supremacist and survivalist literature.[110]

### C.      Strength of the Evidence

The Court has outlined some of the evidence linking Kehoe and Lee to the Mueller murders in part to demonstrate the abundance of evidence supporting the guilt phase convictions. Those bare facts alone can not convey the demeanor of the witnesses who testified, the scope and detail of the Government's evidence, or the general overall tenor of the case against Kehoe and Lee.  While the bulk of the evidence at trial related to Kehoe, the jury's conclusion that Lee was with Kehoe when the Muellers were murdered and that he participated in the murders was well-founded.  As this brief recitation of the facts also demonstrates, there was no question about Kehoe and Lee's respective roles:  Chevie Kehoe was the ringleader, and Danny Lee was the follower.

Much of Lee's argument relates to the sentencing phase and the inherent unfairness of Lee's death sentence as compared to Kehoe's life sentence.  This Court's previous rulings sympathized with this view, but, in evaluating this argument on collateral review, the Court must follow the law as interpreted and applied by the Eighth Circuit Court of Appeals.

### II.      DISCUSSION OF PRELIMINARY ISSUES

Petitioner Danny Lee asserts that he is entitled to post conviction relief and raises the following claims:  (1) ineffective assistance of counsel during the guilt phase of his trial, with various subparts;  (2) ineffective assistance of counsel during the sentencing phase of his trial, with various subparts; (3) ineffective assistance of appellate counsel, with various subparts; (4) that the death penalty is unconstitutional because it is sought and imposed in an arbitrary and

---

[110] Tr. 3479, 3610-28.

FEB 16 2011  86

Appellate Case: 11-1380    Page: 86    Date Filed: 02/17/2011 Entry ID: 3757208

capricious manner; (5) that it was error to admit evidence of Lee's juvenile conviction related to the Wavra murder; (6) that counsel did not meet the statutory definition of "learned in the law applicable to capital cases"; and (7) there is newly discovered evidence bearing on Kirby's role in the offense.

Before taking up the merits of Petitioner's claims, the Court will address the issue of the necessity of a hearing. In considering a petitioner's challenge to his federal custody under § 2255, the Court is required to grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[111] The Government contends that Petitioner has failed to allege facts which justify a hearing. The Court agrees. The Court's determination is based upon a review of the complete record in this matter, including relevant portions of the voluminous trial transcript, and the absence of the necessary offers of proof supporting Petitioner's claims.

More particularly, Petitioner has failed to include supporting affidavits or other independent support for the testimony of certain persons whom he contends should have been called to testify. Likewise, he has failed to offer independent support for the contention that certain witnesses who were called should have been cross-examined differently. He asserts that the failure to call these persons as witnesses or to cross-examine certain witnesses differently constitutes ineffective assistance on the part of his counsel. The Court specifically concludes, under such circumstances, that it is not required to conduct a hearing to permit the "discovery" testimony of the numerous witnesses whom Petitioner contends should have been called to testify or who should have been cross-examined differently.[112] Even accepting Petitioner's description

---

[111] 28 U.S.C. § 2255.

[112] *See Kafo v. United States*, 467 F.3d 1163 (7th Cir. 2006); *Porcaro v. United States*, 832 F.2d 208, 212-13 (1st Cir. 1987) (per curiam).

- 18 -

of how such witnesses might have testified, the Court still concludes that no hearing is required.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE GUILT PHASE

### A.   Legal Standard

To establish an ineffective assistance claim Petitioner Lee has a heavy burden since courts "indulge a strong presumption that counsel's conduct falls within the wide range of professionally reasonably assistance and sound trial strategy."[113]  To prevail, Petitioner must not only establish that his attorneys' performance was constitutionally deficient, but he must also demonstrate that he was prejudiced as a result of that deficient performance.[114]  Indeed, courts are not required to analyze the performance prong if they determine that a petitioner suffered no prejudice as a result of the allegedly deficient performance.[115]  Furthermore, "reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."[116]  As pointed out in the leading case of *Strickland v. Washington*,[117] the distorting effects of hindsight must be avoided and courts "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[118]  In evaluating counsel's conduct "judicial scrutiny of counsel's performance must be highly deferential."[119]

---

[113] *Driscoll v. Delo*, 71 F.3d 702, 706 (8th Cir. 1995).

[114] *United States v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002).

[115] *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

[116] *Graham v. Domire*, 212 F.3d 437, 440 (8th Cir. 2000).

[117] 466 U.S. 668 (1984).

[118] *Id*. at 690.

[119] *Id*. at 689.

Counsel's conduct is deficient if it falls "outside the wide range of professionally competent assistance."[120]  Counsel's performance will be considered objectively unreasonable if "counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances."[121]  Absent the requisite showing, courts "will presume attorneys provide[d] effective assistance and will not second-guess strategic decisions or exploit the benefits of hindsight."[122]

When considering the prejudice prong the Court must decide whether Petitioner has established "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[123]  The Supreme Court has cautioned that "to set aside a conviction or sentence solely because the outcome could have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."[124]  Thus, Petitioner must show some effect of the challenged conduct on the reliability of the trial process. Otherwise, the Sixth Amendment guarantee is generally not implicated.[125]  A petitioner's failure to show prejudice is dispositive.  In other words, absent a showing of prejudice a court need not address the reasonableness of counsel's performance.[126]

With this standard in mind, the Court turns to Petitioner's contentions regarding how his counsel's performance fell short of the minimal standard of representation guaranteed by the

---

[120] *Id*. at 690.

[121] *Battle v. Delo*, 19 F.3d 1547, 1554 (8th Cir. 1994).

[122] *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997).

[123] *Strickland*, 466 U.S. at 694.

[124] *Lockhart v. Fretwell,* 506 U.S. 364, 369-70 (1993).

[125] *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[126] *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

FEB 16 2011  89
Appellate Case: 11-1380   Page: 89   Date Filed: 02/17/2011 Entry ID: 3757208

Sixth Amendment.  The Court has considered and rejected each and every allegation of ineffective assistance of counsel timely asserted by Petitioner on the merits, whether or not such allegation is discussed in detail herein.

### B.       Errors in Failing to Call Certain Witnesses

Petitioner argues that his counsel erred in failing to call certain witnesses to testify at trial and failing to locate and interview certain witnesses.  "The decision not to call a witness is a virtually unchallengeable decision of trial strategy."[127]  However, counsel's failure to interview a witness or to discover mitigating evidence "may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel."[128]

Even assuming that counsel's failure to discover mitigating evidence or to present an exculpatory witness was constitutionally deficient, a petitioner still must "make a substantial showing that, but for counsel's failure to interview [or to call] . . . the witness[ ] in question, there is a reasonable probability that the result of his trial would have been different."[129]  To satisfy the prejudice prong, it is not enough to speculate as to what the witness might have said, if interviewed or called to the stand.  Rather, a petitioner must present independent evidence, by affidavit or otherwise, as to what the witness would have said if he or she had been interviewed or called to testify.[130]  Absent any independent evidence, prejudice can not be found without

---

[127] *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (internal citations omitted).

[128] *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994).

[129] *Id*.

[130] *See Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (appellant who filed a § 2255 motion indicating that an uncalled witness "might" have testified appellant was innocent but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice).

FEB 16 2011  90
Appellate Case: 11-1380   Page: 90   Date Filed: 02/17/2011 Entry ID: 3757208

speculating that the outcome of the trial might have been different.  Such speculation is "simply inadequate to 'undermine confidence in the outcome.'"[131]

Petitioner has provided no affidavits from the myriad of witnesses whom he claims should have been interviewed or called to testify.  Such omission is arguably fatal to any finding of prejudice.  Moreover, even accepting as true Petitioner's description of the omitted testimony, the evidence in this case overwhelmingly supported the jury's finding of guilt, and the Court can not find that the outcome would have been different if such persons had testified as Petitioner speculates.

With these principles in mind, the Court considers Petitioner's specific contentions.

### 1.    Kirby Kehoe

Petitioner Lee argues that his counsel were ineffective for not calling Kirby as a witness. He argues that the examination of Kirby would have cast doubt on his Arizona alibi, the roles played by his sons (Chevie and Cheyne) in the murders, and his role in and knowledge of the insurance fraud perpetrated by the Muellers with regard to a faked burglary of their residence.

The Government contends that after defense counsel was advised that the Government did not intend to call Kirby, defense attorneys Mark Hampton (representing Kehoe) and Jack Lassiter (representing Lee) conducted an extensive interview of Kirby in the presence of Kirby's attorney.  Both defense attorneys agreed that calling Kirby would be more detrimental than favorable to the defense.  The Government has supported its response with an affidavit from Mr. Lassiter.  In his affidavit, Mr. Lassiter attests that he and Mr. Hampton "were given adequate

---

[131]   *Id.* at 210 (quoting *Strickland*, 466 U.S. at 694).

FEB 16 2011  91
Appellate Case: 11-1380   Page: 91   Date Filed: 02/17/2011   Entry ID: 3757208

time to interview Kirby Kehoe," "questioned Mr. [Kirby] Kehoe extensively," and "determined that Mr. [Kirby] Kehoe's testimony would not be helpful to the defense case."[132]

Petitioner responds by stating that Kirby's testimony would have emphasized the Kehoe family's involvement and de-emphasized Lee's role or involvement in any matter regarding the Muellers. He also argues that Mr. Lassiter's affidavit omits important information, *i.e.*, when the interview occurred (when in the Government's case were defense counsel required to decide whether to call a witness out of order and what other trial responsibilities they had at that time); how much time was provided for the interview; and whether limitations were placed on the substance of the interview due to the presence of Kirby's attorney.

When trial counsel conducts an investigation and determines not to call a witness, trial counsel's conduct does not violate either the "performance" or "prejudice" prongs.[133] Petitioner attempts to distinguish *Griffen* by noting that in that case trial counsel provided sworn deposition testimony and the petitioner had received an evidentiary hearing. The Court is not persuaded by Petitioner's argument. Trial counsel in this case clearly conducted an investigation and determined not to call Kirby as a witness. The Court concludes that Petitioner's counsel's decision was a legitimate trial strategy. Additionally, Petitioner has failed to establish *Strickland* prejudice based on the claimed error.

### 2. George Eaton

Petitioner contends that his trial counsel were ineffective for failing to call George Eaton as a witness. Petitioner states that in an interview by the press subsequent to the discovery of the bodies of the Mueller family, Eaton informed reporters that William Mueller expressed fear for

---

[132] Affidavit of Jack Lassiter, Exh. D to Govt.'s Resp., at ¶ 1.

[133] *Griffin v. Delo*, 33 F.3d 895, 901-02 (8th Cir. 1994).

FEB 16 2011   92
Appellate Case: 11-1380   Page: 92   Date Filed: 02/17/2011   Entry ID: 3757208

his life two months before he vanished and reported a connection between William Mueller and Andy Strassmeir (who was connected to Timothy McVeigh and the Christian Identity community near Muldrow, Oklahoma).  The Government contends that, even if true, the allegations prove nothing.  Petitioner replies that William Mueller's expressed fear of Michael Brescia, *see below*, and individuals in the Christian Identity movement provides circumstantial evidence of William Mueller's state of mind.

Assuming Eaton would testify as alleged, this claim fails to establish either deficient performance or resulting prejudice.

### 3.      Peter Langan and Michael Brescia

Petitioner contends that his counsel were ineffective for failing to locate and interview Peter Langan and Michael Brescia.  Petitioner states that Langan and Brescia were members of the Aryan Republican Army ("ARA"), which committed a series of bank robberies throughout the mid-west in the early to mid-1990s with the proceeds going to finance the aims of the ARA, including the overthrow of the government.  He further states that Langan was prosecuted for his role in the bombings and is serving a life sentence in federal prison.  Similarly, Brescia was prosecuted and convicted, and was serving a federal sentence throughout most of the period leading up to the trial in this case.  Petitioner states that during an interview with Eugene Wirges, a witness for the defense, William Mueller expressed fear for his life from Strassmeir and Brescia.  The Government contends that Lee does not explain how Langan or Brescia possessed any information relevant to any issue.  Petitioner replies that William Mueller's expressed fear of Brescia and individuals in the Christian Identity movement provides circumstantial evidence of William Mueller's state of mind.

- 24 -

Appellate Case: 11-1380   Page: 93   Date Filed: 02/17/2011   Entry ID: 3757208

This claim fails both the "performance" and "prejudice" prongs for ineffective assistance of counsel.

### 4.       David Hill

Petitioner contends that his trial counsel were ineffective for failing to investigate and call David Hill as a witness.  Petitioner states that Hill could have testified that he saw Paul Humphrey and another man throwing something off of a bridge at the Illinois Bayou at about 8:15 a.m. during the second week of January 1996.[134]

The Government states that Lee's trial counsel relied upon the reports of the investigator and co-counsel.  In addition to the affidavit from Mr. Lassiter, the Government has submitted an affidavit from Mark Hampton, one of Kehoe's trial counsel.  Mr. Hampton attests that he was aware of the potential testimony of Hill and visited Hill twice, but determined that his testimony would not be helpful to the defense.[135]  Mr. Lassiter's affidavit states that trial counsel were aware of Hill's availability to testify, but determined, based upon Mr. Hampton's and Investigator Eubanks's interviews, that Hill was not a beneficial witness to the defense.[136]  Once again, the Government cites *Griffin*[137] for the proposition that when trial counsel conducts an investigation and determines not to call a witness, such decision may not form the basis for a successful ineffective assistance claim.

---

[134]   The Court notes that Chevie Kehoe's brief states that this occurred in early February 1996.

[135]   Affidavit of Mark Hampton, Exh. C to Govt.'s Resp., at ¶ 2.

[136]   Affidavit of Jack Lassiter, Exh. D to Govt.'s Resp., at ¶ 2.

[137]   33 F.3d at 901-02.

FEB 16 2011  94
Appellate Case: 11-1380   Page: 94   Date Filed: 02/17/2011   Entry ID: 3757208

Petitioner replies by stating that the Government cites no authority that his trial counsel can defer their tactical decisions to an attorney representing a co-defendant.[138]  Petitioner further states that his counsel suggested throughout the trial, and argued to the jury, that Paul Humphrey was a substantial and alternative guilty party, and distinguishes *Griffen* by noting that there the petitioner had received an evidentiary hearing.

The Court concludes that Petitioner's counsel's decision not to call Hill was a legitimate trial strategy and there is no indication that such testimony would have altered the outcome of the trial.

### 5.     Glen Hinson

Petitioner argues that his trial counsel were ineffective for failing to call Glen Hinson as a witness.  He states that Hinson would have presented evidence that after Paul Humphrey obtained the title to the Mueller vehicle, he was nervous and scared, and that Nancy Mueller had told Hinson that she was frightened of Humphrey.  The Government contends that Lee fails to explain how this testimony could have benefitted him and, further, that Nancy Mueller's statement would not be admissible.  The Government points out that Humphrey testified extensively on direct examination by the defense, and the jury had the opportunity to consider the weight to give his testimony.  Petitioner responds by stating that testimony regarding Humphrey's disposition would have further corroborated the defense effort to shift blame to Humphrey.  Petitioner further states that testimony about Nancy Mueller's state of mind regarding Humphrey would be admissible pursuant to Fed. R. Evid. 803(3) and would further support the defense that Humphrey was involved in the Mueller killings.

---

[138] In reviewing the record, it is clear that the defense attorneys for Kehoe and Lee worked together on common issues.

FEB 16 2011  95

Appellate Case: 11-1380     Page: 95     Date Filed: 02/17/2011 Entry ID: 3757208

This claim fails both the "performance" and "prejudice" prongs for ineffective assistance of counsel.  The Court notes that Humphrey was called to testify at trial by Petitioner. Petitioner's trial counsel attempted, but failed, to establish a link between Humphrey and the death of the Muellers.  Humphrey was questioned in detail about the circumstances under which he acquired the title to William Mueller's vehicle and the fact that he attempted to have the title transferred to himself.

### 6. Eldon King

Petitioner asserts that his counsel were ineffective for failing to call Eldon King as a witness because he would have testified that Humphrey began acting strangely after the Muellers disappeared.  He asserts that this evidence corroborates the defense effort to shift blame to Humphrey.  The Government contends that the evidence would have established that Humphrey began acting strangely long before the Muellers disappeared, and Lee fails to explain how this evidence could have benefitted him.

As noted above, Petitioner's trial counsel attempted, but failed, to establish a link between Humphrey and the death of the Muellers.  This claim fails both the "performance" and "prejudice" prongs for ineffective assistance of counsel.

### 7. Maria Ahrens and Vernon Ahrens

Petitioner contends that his counsel were ineffective for failing to call Maria and Vernon Ahrens as witnesses.  He states that Maria Ahrens would have testified that she had seen the Muellers at her husband Vernon's auto shop the Thursday after they were supposed to be missing.  Such testimony would have been confirmed by Vernon Ahrens.

The Government submits the affidavit of Agent Glen Jordan, which states that according to the discovery material provided to defense counsel, the Ahrens were interviewed on three

FEB 16 2011  96
Appellate Case: 11-1380   Page: 96   Date Filed: 02/17/2011 Entry ID: 3757208

occasions.[139]  Although Maria Ahrens was not interviewed, she was present at an early interview.

Agent Jordan's affidavit makes it clear that after reviewing a calendar for January 1996, the

Ahrens fixed the last day they saw the Muellers as either January 3rd or 4th, 1996.

In his reply, Petitioner asserts that the facts in this case are analogous to those in *Lord v.

Wood*.[140]  In *Lord*, the Court held that "counsel's cursory investigation of the three possible alibi

witnesses [who claimed to have seen the victim after petitioner was supposed to have killed her],

and their subsequent failure to put them on the stand, constitute[d] deficient performance that

was prejudicial to [the petitioner's] defense."[141]  Petitioner contends that the Ahrens were

disinterested witnesses who would have corroborated the other witnesses who reported seeing the

Muellers after the date of their alleged disappearance, including Janis Rowlands, Lucy Carr, Sue

Sullivan, Ron Greer, and Mary Reid.

However, *Lord* is distinguishable because in that case "the most important elements of

the [witnesses's] statements remained consistent in each interview with police and defense

investigators during the four-month period following [the victim's] disappearance and

murder."[142]  Also, in *Lord*, the court stated that the witnesses never expressed any significant

doubt about the sighting, and "[t]o this day, none of the three has wavered from his belief that it

was [the victim] whom they saw . . . ."[143]  Here, the Ahrens clearly retracted their statements that

they had seen the Muellers after they were supposed to be missing.  Petitioner's claim fails both

the "performance" and "prejudice" prongs for ineffective assistance of counsel.

---

[139]  Affidavit of Agent Jordan, Exh. A to Govt.'s Resp., at ¶ 2.

[140]  184 F.3d 1083 (9th Cir. 1999).

[141]  *Id*. at 1093.

[142]  *Id*. at 1093-94.

[143]  *Id*. at 1094.

FEB 16 2011  97
Appellate Case: 11-1380   Page: 97   Date Filed: 02/17/2011 Entry ID: 3757208

### 8.      Pam Wrappe

Petitioner asserts that his counsel were ineffective for failing to call Pam Wrappe as a witness.  He states that Wrappe, an additional Wal-mart employee, participated in discussions regarding the Muellers being in Wal-mart, and would have further corroborated the testimony of Susan Weaver and Betty Gray.  Weaver and Gray both worked for Wal-Mart.  Both were called in the defense case to offer testimony that they had seen William Mueller in Wal-Mart after the January 12th date so critical to the Government's timeline.

Betty Gray was the district manager for Wal-Mart's shoe and jewelry division during the time in question.  She knew William Mueller as a customer and as a contractor who performed electrical work for the store.  Gray testified that she had a conversation with William Mueller about some electrical work on a remodeling project in the store during January of 1996.  During direct, Gray testified that she originally told Investigator Tom Brown that this conversation occurred on January 17th or 18th, 1996, but on cross-examination she explained that at the time she spoke with Brown, she had not reviewed her records.[144]  After reviewing her records, which pinpointed the week during which the remodeling project at Wal-Mart had been completed, Gray indicated that conversation with William Mueller must have taken place between January 6th and 12th, 1996.[145]  Thus, Gray's testimony in fact supported the Government's timeline.

Susan Weaver worked in Wal-Mart's food department during the time in question.  She testified that she sold William Mueller a very large quantity of water by the gallon.  She could not pinpoint the exact date that this occurred, but believed it to be "within a two month period of

---

[144] Tr. 5823-26.

[145] Tr. 5825-26.

- 29 -

time" that an article about the disappearance of the Muellers appeared in the local newspaper.[146] A receipt for a large water purchase on January 22, 1996, corroborated Weaver's testimony.[147]

Petitioner argues that Wrappe's testimony became more important because of the vacillation of Weaver and Gray during cross-examination.  Petitioner's counsel spent a considerable amount of trial time attempting to prove that the Muellers were alive after the January 12 date so critical to the Government's theory.  None of the testimony established the fact conclusively, however, and there was also considerable evidence to suggest that the Muellers were not seen or heard from after January 12th.  In order to return a guilty verdict, the jury had to reject Petitioner's theory that the Meullers were alive after January 12th.  Petitioner has failed to specifically set forth the testimony Wrappe would have provided.  The Court can not find that if Wrappe had presented her unspecified testimony to corroborate that of Weaver and Gray that the outcome would have been different.  Nor can the Court conclude that Petitioner's counsel was ineffective for failing to offer Wrappe's testimony.

Petitioner's claim fails both the "performance" and "prejudice" prongs for ineffective assistance of counsel.

### 9.    David and Denise Hollabaugh

Petitioner asserts that his counsel were ineffective for failing to call David and Denise Hollabaugh as witnesses.  He asserts that Nancy Mueller was treated at the Hollabaughs' clinic for stomach problems in early January, and that the Hollabaughs would have testified that Nancy Mueller told them that her family was planning on leaving town.

---

[146]  Tr. 5832-33.

[147]  Tr. 6364.

FEB 16 2011  99

Appellate Case: 11-1380    Page: 99    Date Filed: 02/17/2011 Entry ID: 3757208

The Government contends that the Muellers "left town" many weekends to attend gun shows.  The Government further contends that even if Nancy Mueller's statement was construed to mean that her family was leaving town for an extended period, Lee fails to explain how the testimony would be helpful to his case.

Petitioner replies by stating that Nancy Mueller's statement corroborates the defense theory that the Muellers were in fear of individuals and intended to "get off the grid."

Once again, Petitioner fails to provide any evidence that the Hollabaughs would have testified as alleged.  Even if there were evidence presented that the Muellers intended to "get off the grid," such evidence would fall far short of overcoming the overwhelming evidence of Petitioner's guilt.  Petitioner's claim fails both the "performance" and "prejudice" prongs for ineffective assistance of counsel.

### 10.   Earlene Branch

Petitioner contends that his counsel were ineffective for failing to call Earlene Branch, Nancy Mueller's mother, as a witness.  He asserts that Branch would have testified that she saw Nancy Mueller a few times at Wal-mart in early January and described her as nervous, upset, and not very talkative.  He also states that Branch could have testified that while at the home of Sylvia and David Mason in February 1996, she believed she heard William Mueller's distinctive cough.

The Government states that it sees no possible benefit that could have accrued to the defense by calling Branch to testify as to Nancy Mueller's demeanor during a casual meeting.  Also, the Government states that it is not aware of any testimony regarding hearing William Mueller's "distinctive cough," but states that such testimony would be easily discredited.

Petitioner rebuts that Nancy Mueller's demeanor demonstrates her fear and implicates

FEB 16 2011  100
Appellate Case: 11-1380   Page: 100   Date Filed: 02/17/2011 Entry ID: 3757208

Humphrey and/or others from Oklahoma as a known threat, as opposed to Lee. Petitioner also contends that Branch's testimony that she heard her son-in-law's cough three weeks after he was alleged to be dead would not be easily discredited.

The testimony, if given as alleged, is not sufficiently specific that it would have undercut the ample evidence of Petitioner's guilt. Petitioner does not assert that Branch had any knowledge or even suspicion of a known threat. The Court agrees that any testimony regarding a "distinctive cough" would have been easily discredited. Petitioner's argument fails both the "performance" and "prejudice" prongs.

### 11.   Faron Lovelace

Petitioner contends that his counsel were ineffective for failing to call Faron Lovelace as a witness. He states that Lovelace would have testified that he had never heard of the "Aryan People's Republic," "Aryan People's Resistance," "Aryan People's Revolution," or any organization with the initials "APR." Petitioner also states that Lovelace claimed at the time of trial to be in possession of additional exculpatory evidence.

In response, the Government submits the affidavit of Mr. Hampton, which states:

Trial counsel had numerous interviews with Faron Lovelace. In those interviews Lovelace asserted that he could prove persons other than our client, Chevie Kehoe and co-defendant Danny Lee had committed the murders of the Mueller family. However, Mr. Lovelace refused to state what this testimony would be. Mr. Lovelace also advised Judge Eisele that he could identify the true murders. [sic] This resulted in an in camera meeting with Judge Eisele where trial counsel was advised of Mr. Lovelace's assertions. The decision was made not to call Mr. Lovelace as trial counsel had no knowledge regarding what Mr. Lovelace's ultimate testimony would be. It also was obvious that Mr. Lovelace was not mentally stable. Counsel felt that presenting Lovelace as a defense witness would possibly compromise the defenses being permitted. The matter was discussed with defendant Kehoe.[148]

---

[148] Affidavit of Mark Hampton, Exh. C to Govt.'s Resp., at ¶ 1.

FEB 16 2011  101
Appellate Case: 11-1380   Page: 101   Date Filed: 02/17/2011 Entry ID: 3757208

In his affidavit, Mr. Lassiter states that although defense counsel considered calling Lovelace as a witness, he was too unstable and would not state what evidence he had.[149]  The Government argues that while defense counsel knew of the witness and considered calling him, they wisely decided against doing so due to Lovelace's mental instability.

Petitioner argues that the affidavits of defense counsel provide no insight as to whether they considered calling Lovelace on the limited issue of the existence of the APR.

Petitioner's counsel's decision not to call Lovelace was clearly a legitimate and prudent trial strategy.  Additionally, Petitioner's argument fails because the limited testimony proposed, if given, would not have altered the result in this case.

### 15.   Norda Lewis

Petitioner asserts that his trial counsel were ineffective in failing to call Norda Lewis, Faron Lovelace's wife, as a witness.  Petitioner asserts that Lewis would have testified that she had never heard of the "Aryan People's Republic," "Aryan People's Resistance," "Aryan People's Revolution," or any organization with the initials "APR."  The Government states that it has no indication that Lewis would have testified as alleged, and given the fact that she was rarely near Kehoe, the testimony would have been useless.

Petitioner's counsel's decision not to call Lewis was clearly a legitimate trial strategy.  Additionally, Petitioner's argument fails because the limited testimony proposed, if given, would not have altered the result in this case.

### 16.   Angela Holderman

Petitioner asserts that his trial counsel were ineffective in failing to call Angela Holderman as a witness.  He contends that Holderman would have testified that she called the

---

[149] Affidavit of Jack Lassiter, Exh. D to Govt.'s Resp., at ¶ 3.

FEB 16 2011   102
Appellate Case: 11-1380   Page: 102   Date Filed: 02/17/2011 Entry ID: 3757208

Mueller residence at 8:00 a.m. on January 11, 1996, and a man identifying himself only as "Darryl" answered the phone.  Petitioner asserts that this would establish that there was an unknown individual, and potentially others, in the Mueller household immediately before (according to the Government's theory) the Muellers were killed.  Petitioner contends that an individual's presence at a home where the residents disappear and later turn up dead is relevant, particularly when the name provided a witness does not fit the Government's theory of the case.

The Government contends, and the Court agrees, that even if available, this evidence would not have changed the outcome of the trial.

### C.    Inadequate Cross-Examination of Witnesses

Petitioner claims that his trial counsel were ineffective in their cross-examinations of several Government witnesses either because they failed to properly impeach the witness or they failed to elicit testimony favorable to Petitioner during cross-examination.

To succeed on this challenge, Petitioner must show his counsel's cross-examination of these key witnesses fell below professional standards of competence and that such deficient performance prejudiced his defense.[150]  As the Eighth Circuit has noted:

> The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another.  Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel.  We have recently observed that there are a few [sic], if any, cross-examinations that could not be improved upon.  If that were the standard of constitutional effectiveness, few would be the counsel whose performance would past [sic] muster.[151]

With this deferential standard in mind, the Court considers Petitioner's claim that his counsel's cross-examinations of certain witnesses were constitutionally deficient.

---

[150]  *Strickland*, 466 U.S. at 687.

[151]  *Henderson*, 118 F.3d at 1287 (omitting citations and internal quotations).

- 34 -

### 1. Gloria Kehoe

Gloria Kehoe testified for several hours over the course of two days.[152]  The Court has reviewed the entire transcript of Gloria's testimony, both on direct and cross.  The Court concludes that counsel's cross-examination of Gloria was well within the scope of a constitutionally effective cross-examination.

Petitioner first argues that his trial counsel were ineffective for not calling Gloria as a witness in the defense case because she would have been subject to examination regarding her complicity in a plan, hatched by Kirby, to have Chevie kill one of his younger brothers to punish him for abusing one of Chevie's children.  Chevie Kehoe refused to kill his brother, but instead gave him a lashing.  The Government contends that Petitioner fails to explain how testimony that a co-defendant's father hatched a plan to have one of his sons kill another would have aided his defense.  Petitioner responds by stating that this testimony would demonstrate Cheyne's and Gloria's willingness to sacrifice one of their own regardless of his guilt.

The Court addressed this issue in two bench conferences while Gloria was testifying in the Government's case-in-chief.[153]  The parties disputed the relevance of this line of questioning.  The first bench conference was conducted at the conclusion of Gloria's testimony on April 7, 1999.  The second bench conference was conducted the next morning before Gloria resumed her testimony.  After initially ruling that the evidence was not proper cross-examination because it did not impeach Gloria, the Court subsequently altered its ruling and permitted defense counsel to ask the following three questions of Gloria:

(1) Did she ever hear Kirby order Chevie Kehoe to kill anyone?;

---

[152] Tr. 4948-5209.

[153] Both bench conferences were transcribed and filed under seal.  *See* Docket No. 692 (April 8, 1999) and Docket No. 693 (April 7, 1999).

FEB 16 2011  104
Appellate Case: 11-1380   Page: 104   Date Filed: 02/17/2011 Entry ID: 3757208

(2) (Assuming he did), to your knowledge, did Chevie Kehoe kill that person?; and

(3) Did she take any action to stop her husband?[154]

While the Court limited the testimony on cross-examination, it pointed out that the defense was free to revisit the issue during its case-in-chief.

Petitioner's counsel asked Gloria the above questions during cross-examination. She acknowledged that Kirby had ordered Chevie to kill someone, but that Chevie refused to do so.[155] Defense counsel did not, however, call Gloria Kehoe during their case-in-chief to attempt to elaborate on or to further explain this incident.

The defense elicited this evidence, to the extent that the Court permitted it, during cross-examination. The Court only can assume that the decision not to elaborate on the issue further during the defense case was a tactical one. To question this decision would second guess defense counsel's strategy, which the law does not permit. While Petitioner argues that such evidence reveals Cheyne's and Gloria's willingness to sacrifice one of their own regardless of his guilt, an equally compelling argument may be made to the contrary, as no party appears to argue that Chevie's younger brother was innocent of abusing one of Chevie's children. Thus, a jury hearing such evidence might well conclude that Gloria was most concerned with having the guilty answer for their wrongful actions, thereby enhancing her credibility. There simply is no basis for concluding that defense counsel were ineffective for not presenting more of this evidence during the trial.

Second, Petitioner argues that his trial counsel were ineffective in failing to cross-examine Gloria on a statement she made about Kehoe and Lee remaining in Arkansas after

---

[154] Doc. No. 692, at pp. 13-14.

[155] Tr. 5205-06.

- 36 -

the Muellers were murdered.  Gloria allegedly told officers that Kehoe and Lee, "waited around a few days" after the Muellers were murdered.  He asserts that such evidence would contradict the evidence that Lee and Kehoe were in Spokane, Washington no later than January 14th. Petitioner argues that Gloria's statement to law officers destroys the Government's time line, but that trial counsel failed to bring it out on cross-examination.

The Government initially contended that Gloria made no such statement.  Rather, Lee and Kehoe told Gloria that after the Spokane City Hall bombing, they parked on a hill above City Hall, watched the explosion, and were then disappointed because the police did not respond immediately.

To determine what Gloria actually said, the Court ordered Kehoe and Lee to produce a transcript of the interview.[156]  The transcript reads in pertinent part:

> AD:[157]  Did he tell you how long they were in, uh, close to the MUELLERS house before they actually took 'em down?  Were they there for a day or two?  Did they scope things out?
>
> GK:  No.  No, from what I understood he said that uh, the job was done and they took 'em and then they rode around in the Wagoneer to, for the, to see what came in the paper.  See if the MUELLERS would come up missing or . . . In other words how the media would handle it.
>
> AD:  They rode around in the Wagoneer?
>
> GK:  That's why I'm, that's what I believing he said.
>
> AD:  So they stayed in that area for a while?
>
> GK:  I'm not sure if it was that area or the outside of that area.  I can't be quoted on that.

---

[156]  Order dated May 15, 2008, Doc.  No. 1154.

[157]  Based upon the Government's response, it appears that "AD" stands for "Aaron Duvall," a Deputy Sheriff.  "GK" stands for "Gloria Kehoe."  *See* Doc. No. 1160, p. 1 n.1.

- 37 -

AD: Did he tell you where he and DANNY went right after they disposed of the bodies? Where did they go?

GK: You know, I was in shock by then.

AD: Mm mh (affirmative).

GK: I'll be very honest with you. I believe they just headed straight back to Spokane. I just remember him saying that they hung around for a few days. That could have been at DANNY'S mother's house and then they came back to Spokane.[158]

The Government replies that Gloria was momentarily confused about the Spokane City Hall bombing and the Mueller murders, and that the follow-up questions establish that she was aware of this confusion. Additionally, she made it clear that she was unsure about Kehoe's remarks, and ultimately stated that she believed "they just headed straight back to Spokane." Thus, it appears to the Court that even if trial counsel had questioned Gloria about the statement, she would have been easily rehabilitated by the Government.

Finally, even if it could be said that counsel's cross-examination of Gloria was constitutionally deficient, Petitioner suffered no prejudice because it would not have altered the result. Defense counsel effectively used what they had to work with in an effort to create reasonable doubt. They were, of course, limited by the facts. Admittedly, Gloria was an important Government witness. She was a difficult witness to cross-examine because of the fact that she testified convincingly, consistently with her prior statements, and against her own son.

### 2.   Kelly Kramer

Petitioner asserts that his trial counsel were ineffective for failing to adequately cross-examine Kelly Kramer, Kehoe's "second wife."[159] Petitioner asserts that his counsel should have

---

[158] Doc. No. 1158-1, at pp. 66-67.

[159] While they were not formally married, trial testimony indicated that Chevie considered Kelly his second wife. Kelly left Chevie after a brief period.

- 38 -

elicited testimony from Kramer that Chevie never spoke of setting up anything like the "Aryan People's Republic," "Aryan People's Resistance," "Aryan People's Revolution," or any organization with the initials "APR."

The Government states there is no factual basis for concluding Kramer, if asked, would have so testified. The Court agrees. Additionally, if she had so testified, it would not have changed the outcome of the trial.

### 3.    Jeff Brown

Petitioner asserts that his trial counsel were ineffective in failing to adequately cross-examine Jeff Brown. Petitioner asserts that although called as a Government witness, if asked, Brown would have testified that he never heard of the "Aryan People's Republic," "Aryan People's Resistance," "Aryan People's Revolution," or any organization with the initials "APR." Petitioner also asserts that Brown would have testified that he believed Kehoe had arrived back at the Shadows Motel in Spokane late in the day on January 12, 1996, or shortly after midnight on January 13, 1996.

The Government states that it has no factual basis to support the contention that Brown would have testified as alleged with respect to either subject. As to Kehoe's arrival at the Shadows Motel, the Government submits the affidavit of Agent Jordan, which states that there is no "indication in any of the numerous interviews of Mr. Brown which indicate that he thought Chevie Kehoe was at the Shadows Motel on either January 12, or January 13, 1996."[160]

Petitioner states that Brown's potential testimony would corroborate the trial testimony of Vada Campbell that Lee was at the Shadows Motel on January 13th.[161] The Court notes that

---

[160]  Affidavit of Agent Jordan, Exh. A to Govt.'s Resp., at ¶ 3.

[161]  Tr. 5953-54.

- 39 -

Vada Campbell testified that she saw Lee at Sean Haines' "apartment on Augusta" on January 13th around 8:00 p.m.[162]  Also, Petitioner states that Agent Jordan's affidavit refers to Kehoe's presence only, not Lee's, and the Government does not indicate whether Brown was specifically asked about these two dates in his interviews.  Finally, unless the witness interviews are all signed, Petitioner asserts that it is improper to rely upon them, especially absent some adversarial process.

The Court finds that Petitioner has failed to establish that Brown would have testified as Petitioner argues.  Additionally, and alternatively, if he had so testified, it would not have changed the outcome of the trial.

### 4.    Jack Price

Petitioner asserts that his counsel were ineffective in failing to adequately cross-examine Jack Price.  He states that although called as a Government witness, defense counsel failed to elicit an accurate recounting of Price's criminal history, and the Government failed to correct Price's false testimony.  Price testified that "all my offenses consisted of fraud, bad checks, and theft of property, sir."  Petitioner asserts that this was not accurate because Price also had prior convictions for armed robbery and assault with a firearm.

In response, the Government submits the affidavit of Agent Jordan, which states that although Price was once charged with armed robbery and assault with a firearm, the NCIC record does not indicate that he was convicted of either crime.[163]  In reply, Petitioner argues that although Petitioner may have mistakenly referred to "convictions," Price's testimony was still inaccurate because he had other "offenses" of armed robbery and assault.

---

[162] *Id.*

[163] Affidavit of Agent Jordan, Exh. A to Govt.'s Resp., at ¶ 4.

FEB 16 2011  109
Appellate Case: 11-1380   Page: 109   Date Filed: 02/17/2011 Entry ID: 3757208

The record disproves Petitioner's allegation.  Price testified "all my offenses consisted of fraud, bad checks, and theft of property, sir" in response to the question, "what types of offenses have you . . . pled guilty through the years?"[164]  Petitioner offers no evidence that Price was convicted of armed robbery and assault with a firearm.

### 5.    The Wankers

Petitioner asserts that his trial counsel were ineffective for failing to cross-examine the Wankers about being compensated by the Government.  Petitioner states that throughout trial, the defense asserted that the Government's important witnesses "had been bought and paid for," making their credibility suspect.  Additionally, Petitioner argues that in their rebuttal summation, the Government emphasized to the jury that the Wankers had not received any compensation, when in fact they received an unknown amount of money so that they could move out of the area.  Petitioner also argues that defense counsel did not cross-examine the Wankers about their interviews with the media, but should have done so.

In response, the Government submits the affidavit of Agent Jordan, which states that Lee made statements to the Wankers implicating himself in a murder "down south" with the bodies being disposed "in a swamp."[165]  The Wankers were identified as potential witnesses in the Spokane media, and agents became concerned because the criminal organization responsible for the Mueller murders, the Spokane City Hall bombing, and the Collville, Washington kidnapings had many associates in Washington and Idaho.[166]  Agent Jordan further states that the Wankers received four $50 subsistence payments, which the Government equates to "meal money," for

---

[164]  Tr. 4108.

[165]  Affidavit of Agent Jordan, Exh. A to Govt.'s Resp., at ¶ 1.

[166]  *Id.*

four days during the time they moved from one location to another for security reasons.[167] Petitioner contends that there is no mention of the need for security or danger to the Wankers on the paperwork for the subsistence pay.

As for the Wankers' media interviews, the Government argues that examination by defense counsel would have only established and unnecessarily emphasized that the case was significant in Spokane and that the Wankers were legitimately concerned for their safety. Lee's defense would not have been helped, the Government contends, by pointing out that Lee and his associates are considered so dangerous that witnesses against them must hide for protection. The Government also notes that Lee's argument is irreconcilable with his argument that the Government improperly bolstered Cheyne Kehoe's testimony by telling the jury that he was threatened by an Aryan prison gang member while incarcerated. Petitioner replies by stating that the Government presented the Wankers as "disinterested witnesses," not informants at trial.

On direct appeal, in considering whether the district court erred in ruling that the prosecution did not have to provide defense counsel the names of witnesses three days before trial, the Eighth Circuit stated:

> The decision of Lee's counsel not to impeach these witnesses could well have been strategic, however, for there was reason not to bring up the Wankers' relocation. The government says that they were moved because of previous retaliation against witnesses by white supremacist groups. Even though it has not said that it facilitated the Wankers' relocation due to a fear of retaliation by Lee, his counsel may have wanted to keep any evidence of this type from the jury. Lee has not shown plain error.[168]

The Court concludes that Petitioner's counsel's decision not to cross-examine the Wankers on the fact that they had received the small amount of "meal money" from the Government or on the

---

[167] *Id.*

[168] *Lee*, 374 F.3d at 652.

- 42 -

issue of the Wankers' media interviews was a legitimate trial strategy.  Further, even if such strategy was defective, Petitioner can not demonstrate any resulting prejudice.

### D. Error in Failing to Object to Government's Pre-trial Motion to Bar Lee's Access to Discovery

Petitioner argues that his trial counsel were ineffective for failing to object to the Government's motion, made prior to trial, to bar Lee's access to early disclosed *Jencks* material for the protection of witnesses.  The Court granted the motion.  While the issue was challenged on appeal, it was reviewed and rejected under a stringent plain-error standard.  Had counsel preserved the issue for appeal, Petitioner contends, it would have been reviewed under a more relaxed appellate standard and his conviction would have been vacated.  The Court disagrees.

Prior to trial, the Government learned that Lee had forwarded copies of *Jencks* material to others along with letters suggesting an intent to bring harm to potential witnesses against him. The Government moved to deny Lee direct access to the written materials.  Initially, the Government filed the motion ex parte, but the Court did not rule on the motion without knowledge and input from Petitioner's counsel.  The Court held an emergency telephone conference to address the serious safety concerns posed by Lee's alleged conduct.  During the conference, Karen Coleman represented Lee.  She did so only because both Mr. Lassiter and Cathy Compton, Lee's other attorney, were out of state at the time.   Although Ms. Coleman agreed to the Government's proposal to remedy the situation, she did so only after discussing the issue with Mr. Lassiter, who agreed with the Government's proposed remedy.[169]

The Court rejects Petitioner's suggestion, raised for the first time in its reply brief, that Karen Coleman had a conflict of interest that precluded her from effectively representing Lee on

---

[169] Transcript, Telephone Conference, November 19, 1998, Doc. No. 1012 (Under Seal).

FEB 16 2011  112
Appellate Case: 11-1380   Page: 112   Date Filed: 02/17/2011 Entry ID: 3757208

this issue.  First, Ms. Coleman was acting with the knowledge and at the direction of Mr. Lassiter.  Second, the Court has considered and rejected Petitioner's additional argument that his entire defense was prejudiced by Ms. Coleman's involvement in the case.  The Court's discussion and ruling on the conflict of interest issue may be found below in Section H.

Significantly, Lee and his counsel have never disputed – either prior to trial or now – that Lee in fact used the *Jencks* materials he obtained from his counsel in the threatening manner alleged by the Government.  Thus, it is unclear what grounds Petitioner's trial counsel could have asserted if they had objected.  In the absence of something to contradict the strong showing made by the Government, this Court's ruling would have been the same.  And, as the Government points out, had trial counsel objected, the Government simply would have stopped providing *Jencks* material so far in advance.  The Court concludes that defense counsels' failure to object to the Government's motion to bar Lee's access to certain discovery materials was not constitutionally deficient.

Further, the Court rejects Petitioner's contention that the Eighth Circuit would have reversed his conviction on appeal under a less deferential standard of review.  In considering this issue on appeal, the Eighth Circuit stated:

> Here, the district court found good cause for limiting Lee's access to discovery materials based on the government's argument that Lee was a danger to potential witnesses.  Its order was not a blanket proscription against Lee communicating with counsel, however.  The order prevented Lee from accessing discovery documents and the names of witnesses, but it permitted him to be informed about all other matters and to discuss them with counsel.  It did not violate § 3432, which only requires disclosure of witnesses and juror names to the defense but not to the defendant personally.  The district court's order limiting discovery was not plain error because is did not impermissibly limit Lee's communications with his attorneys.[170]

---

[170] *Lee*, 374 F.3d at 652.

FEB 16 2011  113
Appellate Case: 11-1380   Page: 113   Date Filed: 02/17/2011 Entry ID: 3757208

"The standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis."[171]  The Court concludes that Petitioner has failed to demonstrate *Strickland* prejudice.

### E.    Failure to Object to the Court's Order Regarding Witness Lists

Petitioner asserts that defense counsel were ineffective for failing to object to the Court's Order excusing the Government from disclosing the names of eight witnesses three days before the trial started, which is normally required by 18 U.S.C. § 3432.  The Court did so after concluding that identifying these witnesses so far in advance was likely to jeopardize the life or safety of such witnesses.  In its ruling, this Court applied the statutory exception for pre-trial disclosure of witnesses.[172]

Petitioner presents neither argument nor evidence to rebut the Government's contention that Lee posed a danger to potential witnesses.  The Court can only conclude that no such evidence exists.  Had Petitioner's counsel objected at trial without any evidence or argument to counter that of the Government, the Court would have entered the same Order and followed the same procedure at trial for the identification of witnesses.  Trial counsel's failure to object to this Court's rulings regarding the disclosure of prosecution witnesses was not constitutionally deficient.

The Court also rejects Petitioner's contention that the Eighth Circuit would have reversed the conviction if it had applied an abuse of discretion or clearly erroneous standard of review

---

[171]  *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005).

[172]  Section 3432 provides for the disclosure of witnesses at least three days before trial, "except that such list . . . need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person."

- 45 -

rather than a plain error standard of review.[173]  "The standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis."[174]  Just as the Eighth Circuit rejected a similar argument on plain error, this Court rejects Petitioner's contention that he suffered *Strickland* prejudice in connection with this issue.

### F.    Failure to Request and Conduct mtDNA Testing

Petitioner argues that despite the availability of Mitochondrial DNA ("mtDNA") analysis at the time of trial, his counsel did not seek authorization for the funding needed to conduct such analysis of the hair found in the FBI "raid cap" and linked to the Mueller murders, which was determined to be microscopically similar to Lee's hair.  Petitioner argues that mtDNA testing could have provided an absolute, science-based exclusion of Lee as the source of the hair, which would have undercut a key aspect of the Government's proof.  Therefore, Petitioner argues that his counsel were ineffective for failing to request and conduct the mtDNA testing.

The Government submits Agent Jordan's affidavit, which states that the Government considered DNA testing of the hair, but investigators were advised that DNA testing was not possible on that hair.[175]  Petitioner replies by noting that there is nothing in the record that suggests Lee's trial counsel deferred their decision-making process to Agent Jordan.

After submission of the initial round of briefs, Petitioner obtained mtDNA testing of the hair found in the FBI "raid cap."  The Analytical Report concluded that "[t]he mitochondrial DNA sequence data from the hair from the Baseball Cap (item 2) differs from that of the hair

---

[173]  *See Lee*, 374 F.3d at 651-52 (rejecting argument that Lee's defense was prejudiced by the disclosure of Dee and James Wanker less than 48 hours before their appearance).

[174]  *Becht*, 403 F.3d at 549.

[175]  Affidavit of Agent Jordan, Exh. A to Govt.'s Resp., at ¶ 5.

- 46 -

from Danny [Lee][176] at a number of base positions and is therefore <u>excluded</u> as originating from the same person or maternal lineage."[177]

Petitioner now argues that evidence excluding him as the source of the hair is significant and material, especially considering the Government's theory that the raid cap in which the hair was found was used in the fake FBI raid involving the Muellers and given the Government's consistent reference to "Danny Lee's hair" throughout the trial.  During trial, Chantelle Bequette, a criminalist at the Arkansas State Crime Laboratory, testified that "[t]he hair from the FBI cap was microscopically similar to the known hair from Danny Lee."[178]  She explained that "microscopically similar" "means that the range of characteristics that were observed in the known hair and questioned hair were similar."[179]  During trial, Bequette clarified that "finding that [the hairs] are similar doesn't necessarily point to a positive identification."[180]  Additionally, on cross-examination, counsel for Petitioner noted, and Bequette agreed, that "the hairs do not possess enough individual characteristics to be positively identified as having originated from a particular person."[181]

Petitioner argues that counsel for the Government overstated the significance of the hair in its closing argument with the following comments:

> Danny Lee's hair.  Mr. Lassiter got up here and spent a lot of time talking about Danny Lee's hair in the raid cap.  Remember when they found this stuff they had

---

[176] The Analytical Report actually states that the control hair is from "Danny Graham," which is an alias for Petitioner.

[177] Analytical Report, Attachment A to Supplemental Submission (Doc. No. 1138), at p. 4.

[178] Tr. 4722.

[179] Tr. 4722-23.

[180] Tr. 4724.

[181] *Id.*

- 47 -

two sets of raid equipment?  One of them has a cap and they found a hair similar to Danny Lee's hair in the raid cap.  But remember Chantell [Bequette]'s testimony?  The reason they have to say similar and can't do a match is there are a couple of probabilities.  Number one, people like me with white hair, they don't have enough pigment and characteristics.  They are hard to match.  But when you get past those people, as you do with Danny Lee, there might be another one out there.  Remember, if she took a hair from everybody off the jury and everybody in the courtroom if you eliminated the white-haired people she would be able to match up because we would have had controlled conditions.  That was her testimony.  But she recognizes that there might be out there somewhere another hair that could match.  We recognize that, but here, I submit to you, the evidence establishes that that was Danny Lee's hair.  Not just a hair tested itself but the other proof that is associated with it are associated with him.[182]

In response, the Government states that it made clear, through its arguments and Bequette's testimony, that the only proof it was presenting was that the hair was microscopically similar to that of Lee.  Furthermore, the Government states that the affidavits of ATF agent Jordan and Bequette (now Taylor) show that investigators made inquiry to determine whether DNA testing of the hair could be conducted, but were advised that it was not possible.[183]  Agents were advised that no nuclear DNA testing was available as the hair had no root.[184]  As to mtDNA testing, agents were advised that two centimeters of hair was required for the test.[185]  Additional affidavits, as well as a copy of the FBI protocol in place in 1998, confirm that in order to obtain testing of a single hair in 1998, protocol required a 2 centimeter section of hair.[186]  The Analytical

---

[182]  Tr. 7000-01.

[183]  Affidavit of Agent Jordan, Exh. A to Govt.'s Supplement to Its Supplemental Memorandum in Opposition to Motion (Doc. No. 1145), at ¶ 2;  Affidavit of Chantelle Bequette, Exh. B to Govt.'s Supplemental Memorandum in Opposition to Motion (hereinafter "Govt.'s Supp.") (Doc. No. 1144), at ¶ 3.

[184]  *Id.*

[185]  *Id.*

[186]  FBI Mitochondrial DNA Sequencing Protocol, Exh. C to Govt.'s Supp. (Doc. No. 1144, at 3.1.2.3); Affidavit of Dr. Melton, Exh. D to Govt.'s Supp. (Doc. No. 1144), at ¶ 4; Affidavit of Meghan Clement, Exh. E to Govt.'s Supp. (Doc. No. 1144), at ¶ 3.

- 48 -

Report submitted by Lee, and available at the time of trial, shows that the hair was approximately 1.1 centimeters in length.

Petitioner stresses that it is undisputed that mtDNA analysis was available at the time of the trial, that it could have been done prior to trial, and that such testing would have excluded Lee as the source of the hair. As set forth the affidavits of Brian Wraxall and Meghan Clement,[187] it is not the case that mtDNA analysis was unavailable on samples less than 2 centimeters in length, but rather lab protocols only permitted testing on such samples if the lab received permission to consume the sample. Thus, Petitioner argues that the protocols in place did not reflect a limitation on available technology, but rather, a safeguard to protect the sample from being exhausted.

The Court accepts that in 1998, mtDNA testing of a single hair required a 2 centimeter section of hair, unless the submitting agency authorized consumption of the entire sample. It is unclear in this case whether the parties could have agreed to permit the testing under these circumstances. Whether or not Petitioner's counsel can be faulted for failing to obtain a mtDNA test of the 1.1 centimeter hair in question, the Court finds that Petitioner has failed to demonstrate prejudice. The evidence in this case overwhelmingly supported the jury's finding of guilt. The Court can not find that the outcome would have been different if Petitioner's counsel would have obtained mtDNA testing and disproved Petitioner as the source of the hair found in the raid cap. For this reason, the Court rejects this claim.

---

[187] Affidavit of Brian Wraxall, Exh. A to Petitioner's Supplemental Reply (Docket No. 1151), at ¶ 8-9; Affidavit of Meghan Clement, Exh. E to Govt.'s Supp. (Docket No. 1144), at ¶ 4.

FEB 16 2011  118
Appellate Case: 11-1380   Page: 118   Date Filed: 02/17/2011 Entry ID: 3757208

### G.    Adoption of a Jury-selection Strategy that Emphasized Seating African-Americans

Petitioner argues that his trial counsel were ineffective in adopting a jury-selection strategy that emphasized seating as many African-American jurors as possible.  He states that the offensive and abhorrent white-supremacist views held by both Kehoe and Lee, which were part of the trial evidence, were likely to be particularly offensive to non-white people since they were the targets of race-based hatred.  Lee had visible Nazi-related tattoos on both sides of his neck, and photographs of tattoos not otherwise visible were presented to the jury through testimony and photograph exhibits.  Petitioner contends that the strategy emphasizing the selection of African-American jurors was unreasonable and prejudicial since the final jury was made up of a majority of African-Americans.[188]

In response, the Government submits the affidavit of Mr. Hampton, which states:

Selecting a jury with as many black jurors as possible was a strategic decision made by defense counsel.  Jury consultant Bob Berry concurred in the strategy.  Defense counsel felt this strategy was reasonable because (1) blacks are more likely than whites to discredit government testimony, (2) research indicates that blacks are generally less likely to give the death penalty, and (3) it was felt that blacks were less likely to give the death penalty than whites in this particular case.[189]

Mr. Hampton represented Kehoe, not Lee.  Petitioner points out that the affidavit submitted by one of his lawyers, Mr. Lassiter, makes no mention of jury selection strategy and fails to indicate that Lee's counsel adopted the strategy used by Kehoe's counsel.  It would have been professionally deficient to do so, Petitioner contends, given his racially insensitive and inflammatory tattoos which were visible to the jury daily.  It is unclear on this record that Petitioner's counsel joined in this strategy, but it appears highly unlikely that counsel for Kehoe

---

[188]  The jury's racial composition was 9 blacks and 3 whites.

[189]  Affidavit of Mark Hampton, Exh. C to Govt.'s Resp., at ¶ 4.

FEB 16 2011  119

Appellate Case: 11-1380   Page: 119   Date Filed: 02/17/2011   Entry ID: 3757208

and Lee would not have consulted on jury selection strategies.  In any event, it is unnecessary to resolve this issue.

Petitioner also asserts that the basis of such a strategic decision is inherently racial and assumes racial proclivities as to beliefs and tendencies, which in turn discriminates against whites.  Petitioner further asserts that even if such stereotypes are correct, it is unreasonable to rely on them when representing an individual who demeans and discounts the race the attorneys seek to favorably exploit.

It is interesting to note that had the Government recognized the apparent defense strategy to seat as many black jurors as possible, presumably by using peremptory challenges only as to white jurors, the defense jury selection strategy could have been challenged as unconstitutional. The Supreme Court has held that "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges."[190] Race-based jury selection offends the constitutional rights of the <u>jurors</u> who are eliminated from jury service because of their race.[191]  That Petitioner's counsel may have allowed race to influence the jury selection process does not offend <u>Petitioner's</u> constitutional rights.

To the extent that Lee's counsel approved the jury selection strategy, the Court can not say that defense counsel's jury selection strategy fell below an objective standard of reasonableness.  In assessing counsel's performance, the Court must "presume attorneys provide effective assistance and [can] not second-guess strategic decisions or exploit the benefits of hindsight."[192]  To the extent that Lee's counsel did not in fact participate in or authorize this

---

[190] *Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

[191] *Id*. at 48-49.

[192] *Henderson,* 118 F.3d at 1287.

- 51 -

strategy, a contention that seems highly unlikely, the Court finds that Petitioner has failed to demonstrate that he was prejudiced as a result of such strategy. The Court can not find that a jury with a different racial composition would have returned a different verdict.

### H.      Conflict of Interest of Attorney Karen Coleman[193]

Petitioner raises an ineffective assistance claim in connection with Karen Coleman, an attorney who assisted Mr. Lassiter, one of Petitioner's appointed defense counsel. Prior to the trial of this case, Ms. Coleman accepted employment with the Department of Justice to become an Assistant United States Attorney in the same office responsible for the prosecution of this case.

On December 7, 1998, Petitioner and this Court both became aware for the first time that Ms. Coleman had been hired by the United States Attorney for the Eastern District of Arkansas and that she planned to assume her new duties in January of 1999. During the December 7th hearing, the Court permitted defense counsel to question Ms. Coleman, Paula Casey (then United States Attorney for the Eastern District of Arkansas), and Mr. Lassiter.[194]   On December 22, 1998, the Court conducted an evidentiary hearing to consider the issue further.[195]   The Court devoted considerable resources and time to satisfy itself that the circumstances surrounding Ms. Coleman's job change would not compromise Petitioner's defense. As the Court concluded at the end of the December 22nd hearing:

> There is some problem with the timeliness of the disclosure in this case, but this record is absolutely clear that Ms. Coleman has not disclosed any confidential information that she received during her employment in this case with Mr.

---

[193]  Karen Coleman is now known as Karen Whatley.

[194]  Hearing, December 7, 1998, Doc. No. 948.

[195]  Hearing, December 22, 1998, Doc. No. 1030;  Excerpted Testimony from Hearing, December 12, 1998, Doc. No. 987.

FEB 16 2011  121
Appellate Case: 11-1380   Page: 121   Date Filed: 02/17/2011   Entry ID: 3757208

Lassiter, nor has the United States Attorney requested any such information. Furthermore, I'm convinced that both of these attorneys will honor their obligations, their oaths as attorneys not to disclose anything during the course of this proceeding until it's over ultimately, appeals and everything else. I am assuming and accepting Ms. Casey's statements that she will build the Chinese Wall. She's gone a little farther than may be required, but I think it's important that she has stated that she is going to move, just physically, the operation of this particular case out of her office and that will make it easier to insulate the attorneys involved in the case - - the government attorneys involved in the case - - from Ms. Coleman. Ms. Coleman is on notice, of course, of the concern of the Court and that she should remain - - not only not discuss it, she shouldn't even be near any of the attorneys involved for the government on this case from hence forward. I think that's her attitude and her understanding. So I see no actual prejudice of the defendant's case or their defenses. And if I did, I would feel entirely differently about it but I'm going to overrule the defendant's motions, the two that are making motions essentially to disqualify the United States Attorney's Office or to dismiss for improper prosecutorial abuse of discretion.[196]

Petitioner now brings a litany of ineffective assistance allegations arising out of Ms. Coleman's departure. He contends that his defense counsel, Mr. Lassiter, was ineffective and breached his duty of loyalty to Petitioner when he vouched for Ms. Coleman's integrity at the December 7th hearing and by failing to inform Petitioner of Ms. Coleman's change in employment sooner. Second, Petitioner asserts that his counsel were ineffective for failing to move to disqualify the United States Attorney's office based on Ms. Coleman's employment or to join Kehoe's motion so moving. Finally, Petitioner argues that a hearing is necessary to determine whether Ms. Coleman, purposely or not, disclosed privileged and confidential information and/or work-product to the prosecution team and whether the United States Attorney's office set up adequate procedures to guard against the deliberate or inadvertent disclosure of such information.

---

[196] Hearing, December 22, 1998, Doc. No. 1030, at p. 17.

FEB 16 2011  122
Appellate Case: 11-1380    Page: 122    Date Filed: 02/17/2011 Entry ID: 3757208

Petitioner states that he had significant contact with Ms. Coleman and continued to have contact with her after Ms. Coleman had accepted employment with his prosecutors. Petitioner complains that Jack Lassiter had known for some time that Ms. Coleman was seeking employment with the United States Attorney, but failed to so advise his co-counsel, Ms. Compton, or Petitioner. Additionally, Petitioner states that Ms. Coleman was permitted to continue working on his case, although it was revealed during the two hearings in December 1998 that she had been offered the position, had accepted it four or five weeks earlier, and was awaiting only a routine background check before commencing her employment there.

In his affidavit,[197] Petitioner states that Ms. Coleman assisted Ms. Lassiter and Ms. Compton in investigating the facts of the case and preparing for trial, and that during much of the pretrial period, she was his primary contact with the defense team. Specifically, Ms. Coleman reviewed hundreds of documents, interviewed defense witnesses, attended defense team meetings, met with Petitioner in person and on the telephone, and gathered facts relating to Petitioner's alibi defense. Petitioner states that he had many confidential and privileged conversations with Ms. Coleman, who assured him that she was committed to him and his case for the "long haul."

Petitioner states that he learned about Ms. Coleman's departure when he called Mr. Lassiter's office and asked to speak with her. Petitioner states he felt completely betrayed, especially because it appeared that Ms. Coleman was trying to find out if he had any connection to Tim McVeigh or the "midwest bank robbers," although it had nothing to do with his defense.

Following the December 7th hearing, Kehoe moved to disqualify the United States Attorney's Office for the Eastern District of Arkansas from further participation in the case.

---

[197] Affidavit of Petitioner, Exh. 1 to Petitioner's Motion, at ¶ 4-36.

FEB 16 2011   123
Appellate Case: 11-1380   Page: 123   Date Filed: 02/17/2011 Entry ID: 3757208

Petitioner did not join in he motion.  The motion to disqualify was denied.  Petitioner asserts that although it would have been advantageous to have replacement prosecutors who were not as knowledgeable about the case, Mr. Lassiter's testimony supported the integrity of Ms. Coleman in a manner adverse to that interest.  Petitioner complains that Mr. Lassiter testified that he believed in Ms. Coleman's honesty and integrity and did not believe that she would disclose confidential information to the prosecution.  Petitioner did not share Mr. Lassiter's confidence in Coleman due to conversations in which she "probed" him for information unrelated to his defense.  Additionally, Petitioner states that Ms. Coleman and Paula Casey, the United States Attorney for the Eastern District of Arkansas, gave conflicting accounts of some of the circumstances surrounding Ms. Coleman's application and hiring.  Despite the testimony about a "Chinese wall" being built in the prosecutor's office so that any information that Ms. Coleman obtained while she was Petitioner's attorney would not be shared with the prosecutors on the case, Petitioner states that it did not reassure him or restore confidence in his defense team.

In his affidavit, Petitioner states that he felt "shocked and betrayed" and expresses concern about Ms. Coleman "intensively questioning" him on a regular basis.  He states that his testimony that he had "full confidence" in Mr. Lassiter and in his desire to help him was "rehearsed with [his] lawyers ahead of time" and "simply wishful thinking" because he never fully trusted his attorneys again after that day.

The Government responds that no grounds existed to disqualify the United States Attorney's Office for the Eastern District of Arkansas and that the obvious remedy was to wall off Ms. Coleman from the attorneys trying the case, which was done.  Additionally, even if the United States Attorney's Office for the Eastern District of Arkansas had been disqualified, it is likely that Robert De La Cruz, who had been assigned from Washington D.C. to assist in the

FEB 16 2011  124
Appellate Case: 11-1380   Page: 124   Date Filed: 02/17/2011 Entry ID: 3757208

prosecution, would have continued with additional trial counsel from the Department of Justice or another district.  The Government points out that Mr. De La Cruz had been working on the case for a year and was intimately familiar with the details of the case.  Furthermore, the Government contends that the evidence against Lee was so overwhelming that an entirely new prosecution team would have easily secured a conviction.

Finally, the Government states that Mr. Lassiter was called as a defense witness and testified under oath as to why he had not questioned United States Attorney Casey about the Chinese wall to prevent Ms. Coleman from providing information to the attorneys trying the case.  Mr. Lassiter stated, "I've worked with [] Coleman three and a half years.  I know her integrity."[198]  The Government questions whether Mr. Lassiter was supposed to lie or avoid the question.

The Government has submitted an affidavit from Ms. Coleman, which states:

1.  At no time since joining the United States Attorney's Office have I revealed any attorney-client privileged information or trial/case strategy learned during the course of my representation of Danny Lee.

2.  Upon my arrival at the United States Attorney's Office on January 4, 1999, the Kehoe prosecution team was in the process of moving to offices in another building to prepare for a trial.  Until such time as they left the office, I made it a point not to be in the general vicinity of the offices of those attorneys.

3.  My main task during the defense of Danny Lee was to organize and catalog the evidence received from the prosecution.

4.  While I did have numerous conversations with Danny Lee during the course of my representation of him, those conversations were to gather information for use to the defense and to relay the information to other members of the defense team.  At no time have I divulged information

---

[198]  Hearing, December 7, 1998, Doc. No. 948, at 52.

FEB 16 2011  125
Appellate Case: 11-1380   Page: 125   Date Filed: 02/17/2011 Entry ID: 3757208

learned during those conversations to anyone other than attorneys representing Mr. Lee.[199]

In his reply, Petitioner asserts that Ms. Coleman's acceptance of employment prior to ending her representation of him constitutes active representation of conflicting interests. Petitioner also asserts that Ms. Coleman's inaction at the pretrial hearing limiting his access to discovery materials demonstrates that the conflict adversely affected her performance.

While Petitioner's counsel did not join Kehoe's motion for disqualification, it attempted to use the conflict issue to Petitioner's advantage.  On December 15, 1998, Petitioner's counsel filed a petition to remove death penalty as a potential punishment stating that "[o]bjection has been made in open court to what is, or what appears to be, an irremedial conflict of interest," and outlining the details of Ms. Coleman's move to the United States Attorney's Office.[200] Ultimately, the motion was denied.[201]

"The Sixth Amendment right to counsel has been interpreted to provide for representation that is 'free from conflicts of interest or divided loyalties.'"[202]  "A defendant bears the burden of showing that the conflict 'adversely affected the lawyer's performance.'"[203]  "He may prevail on an ineffective assistance claim resulting from either an actual or a potential conflict of interest."[204]  "Short of demonstrating that his counsel 'actively represented conflicting interests,'

---

[199] Affidavit of Karen (Coleman) Whatley, Exh. E to Govt.'s Resp., at ¶¶ 1-4.

[200] *See* Doc. No. 433.

[201] *See* Doc. No. 454.

[202] *United States v. Reed*, 179 F.3d 622, 624 (8th Cir. 1999) (quoting *United States v. Acty,* 77 F.3d 1054, 1056 (8th Cir. 1996)).

[203] *Id.* at 624-25 (quoting *Cuyler,* 446 U.S. at 348).

[204] *Id.* at 625.

- 57 -

a defendant has not met the constitutional threshold for a claim of ineffective assistance."[205]   "If a defendant is unable to demonstrate an actual conflict of interest under *Cuyler,* he may alternatively establish that his attorney:  (1) had a potential conflict of interest which (2) actually prejudiced the defense."[206]   "[T]he mere possibility of conflict is insufficient to impugn a criminal conviction."[207]   "In order to support the second prong of this test, the defendant must show that the errors committed by counsel were so serious that the defendant was deprived of a fair trial or a reliable result" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[208]

The Court recognizes that a potential conflict of interest existed.  However, Petitioner's claim fails because he cannot demonstrate that the potential conflict of interest actually prejudiced the defense.  As discussed above, Ms. Coleman's failure to object to the Government's motion to bar Lee's access to discovery was not constitutionally deficient, and Petitioner failed to demonstrate prejudice due to said failure to object.[209]  Furthermore, even assuming that an actual conflict existed, Petitioner has failed to demonstrate that the conflict adversely affected Ms. Coleman's performance.

The Court further finds that Mr. Lassiter's statements to the Court do not constitute ineffective assistance of counsel.  Mr. Lassiter had an obligation to testify truthfully.  Also, Petitioner's counsel's failure to move for the disqualification of the United States Attorney's office, or to join in Kehoe's disqualification motion, does not constitute ineffective assistance of

---

[205] *Id*. (quoting *Cuyler*, 466 U.S. at 350).

[206] *Id*.

[207] *Dawan v. Lockhart*, 31 F.3d 718, 721 (8th Cir. 1994).

[208] *Reed*, 179 F.3d at 625.

[209] *See* Section III. D. *supra*.

FEB 16 2011   127
Appellate Case: 11-1380   Page: 127   Date Filed: 02/17/2011   Entry ID: 3757208

counsel. As noted above, the motion was denied. Petitioner cannot demonstrate that if his counsel would have joined the motion, it would have been granted, or that the result of his trial would have been different.

As to the evidentiary hearing issue, the Government states that a post-conviction petitioner is only entitled to an evidentiary hearing if the facts alleged, if true, would entitle him to relief.[210] Affidavits may be reviewed by the court to determine whether an evidentiary hearing is required.[211] The Government notes that Lee does not assert in his affidavit that Ms. Coleman shared any privileged information. Furthermore, as outlined in Ms. Coleman's affidavit, there could have been no inadvertent sharing of information. Because these facts are uncontested, the Government contends that no hearing is required. The Court agrees. In the absence of any new information to suggest that Ms. Coleman actually made any disclosure of privileged and confidential information and/or work-product to the prosecution team or to suggest that Petitioner's defense was adversely affected by the conflict, this claim may be disposed of without a hearing.

## I.      Failure to Capitalize on Inconsistent Testimony Regarding Searches

Petitioner asserts that although he recalls conflicting testimony regarding the search of a storage unit located in Old Town, Idaho, his counsel advised him that no such evidence had been presented. Specifically, Petitioner states that he recalls testimony from a federal agent, and an accompanying video tape, that documented an initial search of the Old Town unit that disclosed no incriminating evidence and a second search, conducted a few days later, where significant incriminating evidence was uncovered. Petitioner contends that his trial counsel's failure to

---

[210] *Payne v. United States*, 78 F.3d 343 (8th Cir. 1996).

[211] *United States v. Goodman*, 590 F.2d 705, 712 (8th Cir. 1979).

- 59 -

capitalize on such conflicting evidence in summation constituted ineffective assistance of counsel.

The Government responds that it has reviewed the testimony regarding the search of the Old Town, Idaho storage unit, and is unable to locate any conflict.  Petitioner responds by stating that the Government "does not contest the multiple searches at locations which yielded differing results," and that "[f]urther factual development needs to occur regarding these circumstances that can challenge the reliability of the evidence discovered."  Petitioner has failed to specify the conflicting testimony.  Bare allegations will not suffice.  After careful review of the portions of the transcript cited by the Government regarding the Old Town, Idaho storage unit, the Court agrees that there is no conflicting testimony.

### J.      Failure to Object to Improper Closing Argument

Petitioner argues that during closing argument of the guilt phase, the Government engaged in five acts of significant misconduct, which his trial counsel failed to object to and preserve.  Petitioner contends that trial counsel's failure to object to each of these acts by the Government constitutes ineffective assistance of counsel.

### 1.      Comments Regarding Death Threats

Petitioner contends that the Government argued that Cheyne Kehoe had faced death threats from an inmate who was associated with the Aryan Brotherhood or other Aryan-related prison gang. Petitioner asserts that such argument improperly bolstered Cheyne's testimony and placed in front of a jury a prejudicial incident (if it did in fact really occur) that was never connected to Petitioner.

The Government responds that Kehoe's trial attorney broached the subject during trial by asking if Cheyne had ever been placed in an infirmary while incarcerated in Ohio, and Cheyne

- 60 -

responded that he had been placed in protective custody.[212]  Kehoe's attorney pursued the matter.[213]  On redirect, the Government clarified that Cheyne was placed in the infirmary as a safety precaution, and that a prison guard told Cheyne that while he was in the infirmary, an Aryan inmate got into the infirmary and threatened him, at which point Cheyne was taken into federal custody.[214]  During the Government's closing argument, the Government's attorney stated:

> So, you have heard that we have put on - - we have made deals with some of these people.  We made a deal with Cheyne Kehoe.  We moved him out of the state prison to a federal prison.  What did you hear about that?  That Cheyne Kehoe had been put in protective custody, and that even after being put in protective custody an Aryan inmate came in looking for him and there were death threats on Cheyne's life.  Is that a fair deal?  That's a question you can answer yourself.[215]

The Government asserts that, throughout the trial, defense counsel argued that the Government had made deals with all of its witnesses, including a deal to allow Cheyne to serve his Ohio penitentiary time in the federal penitentiary system.  The Government contends that there was clearly evidence that removing Cheyne to the federal penitentiary was undertaken to protect him, not to give him a better place to serve his time.  Petitioner rebuts by stating that Cheyne's report that a guard told him of an alleged threatened attack on him was not admissible evidence and should not have been argued as such to the jury.

The Court agrees that considering the defense efforts to suggest that the Government had made deals with all of its witnesses, the Government had a right to question Cheyne to clarify the reason for moving Cheyne to a federal penitentiary.  Clearly, at the time of closing arguments,

---

[212]  Tr. 5514.

[213]  Tr. 5514-18.

[214]  Tr. 5541.

[215]  Tr. 6808.

FEB 16 2011  130
Appellate Case: 11-1380   Page: 130   Date Filed: 02/17/2011 Entry ID: 3757208

the incident in question was already known to the jury as a result of Cheyne's testimony.  The Court finds that counsel's failure to object to the aforementioned comments was not deficient, and Petitioner cannot demonstrate prejudice.

**2.       Comments About Kirby Kehoe's Failure to Participate in Murders**

Petitioner contends that the Government's argument that Petitioner's involvement in the plot to kill the Muellers was the cause of Kirby's decision not to participate is speculation premised only upon inadmissible hearsay from Gloria because Kirby did not testify.

The Government states that it had to prove that Petitioner had a position in the enterprise.  The Government asserts that it was arguing that Kehoe was the leader of the enterprise, and as such, involved Petitioner, despite Kirby's objection.[216]  Specifically, in closing arguments, the Government stated:

> If you will recall the testimony, Chevie Kehoe brought Danny Lee down to Arizona with the plans to do the January, 1996 robbery and murder of the Muellers.  And because he brought Danny Lee with him, Kirby Kehoe didn't want to play.  He didn't want to go.  He didn't want to participate, and he stayed in Arizona.

According to the Government, this argument was premised on testimony provided by Gloria.

During cross-examination by counsel for Kehoe, Gloria testified that Kirby told her that he had planned a second burglary of the Muellers, but that he "didn't want to have anyone outside the family do it."[217]  She also testified that Kehoe "jumped the gun," and that "Chevie wanted Kirby to go," but Kirby would not go "because of Danny Lee."[218]  The Government states that the testimony was not offered to prove the truth of the matter asserted, *i.e.* that Kirby knew

---

[216]  Tr. 6821.

[217]  Tr. 5134.

[218]  *Id.*

- 62 -

in advance of the Mueller hit, but rather to impeach Gloria for not taking any action to protect the Muellers, and thus was not hearsay. Further, the Government states that even if the testimony was hearsay, an exception to the hearsay rule applies as the statement was clearly against Kirby's interest.

Petitioner replies that the Government impermissibly manipulated the alleged impeachment evidence brought out by Kehoe's attorney into substantive evidence of an enterprise at closing regarding a non-testifying co-defendant that pled guilty to the enterprise, and his counsel should have objected.

The Government's argument that testimony was non-hearsay or satisfies an exception to the hearsay rule is unavailing. While at the time the testimony was given it may have been offered as impeachment evidence, rather than for the truth of the matter asserted, the Government's argument was that the testimony indicated that Kirby did not want to participate in the Mueller murders because of Lee's involvement. Furthermore, the "statement against interest" exception applies only when the declarant is unavailable as a witness.[219]

The Court notes that Petitioner does not argue that his counsel should have objected to the admission of the testimony of Gloria to which the Government referred in closing argument. Said testimony was presented to the jury during Gloria's cross-examination by Kehoe's counsel. The Court agrees that the Government's comments were improper, and Petitioner's counsel should have objected. Had Petitioner's counsel objected to the Government's statement, the Court would have instructed the jury that the testimony referenced could only be considered for impeachment purposes. However, the Court concludes that counsel's failure to object does not

---

[219] *See* Fed. R. Evid. 804(b)(3).

FEB 16 2011  132
Appellate Case: 11-1380   Page: 132   Date Filed: 02/17/2011 Entry ID: 3757208

satisfy the prejudice prong of *Strickland* because even absent counsel's error, the result of the proceeding would have been the same.

### 3. Name-Calling

Petitioner argues that, in its closing argument, the Government engaged in improper and unprofessional name-calling that devalued Petitioner's status as a human being, by referring to Petitioner as Kehoe's "faithful dog."

The Government states that this argument colorfully shows Petitioner's position in the criminal enterprise. During closing arguments, the Government stated, "Chevie Kehoe is the leader of this enterprise. Danny Lee, Danny Lee is like the faithful dog."[220] The Government contends that referring to someone's similarity to a faithful dog, something that is revered in our society, is not name calling and does not lower one's status as a human being.

In response, Petitioner asserts that the Government's comment violates the principles of *Darden v. Wainwright*.[221] However, there, the Supreme Court held that although the prosecutor's incorporation of the defense's use of the word "animal" in reference to the defendant was improper, the comments did not deprive the defendant of a fair trial.[222] Here, although the Government might have more appropriately analogized the relationship between Kehoe and Petitioner, the comparison of Petitioner to a faithful dog was not prejudicial and did not impact the reliability of the trial process.

---

[220] Tr. 6821.

[221] 477 U.S. 168 (1986).

[222] *Id*. at 182.

FEB 16 2011  133
Appellate Case: 11-1380   Page: 133   Date Filed: 02/17/2011   Entry ID: 3757208

### 4.   Arguing Facts Not in Evidence

Petitioner asserts that the Government argued facts that were not in evidence, by stating that Petitioner had referred to Nancy Mueller as a "dumb bitch."  In closing, immediately after explaining Petitioner's role as the "henchman," the Government stated:

> But that's not all Danny did.  Danny told Gloria after the murders, Gloria Kehoe, "Bill was one tough son of a bitch," talking about that fight when Bill fought for his life.  "Bill was one tough son of a bitch."  But Nancy was a dumb bitch because she pulled that plastic bag over her own head.[223]

The Government states that Gloria Kehoe testified as follows:

> Q.   What did Mr. Lee tell you about the murders?
>
> A.   Just said Bill was one tough son of a bitch because he fought so hard and how dumb Nancy was because she thought it was real and helped put the trash bag on her head because she thought it was real.[224]

The Government states that the attorney for the Government erred in his recollection of this testimony, by using the term "bitch," but that given the actual testimony, such recollection error is understandable.  The Government asserts that the matter is trivial.  Petitioner rebuts that it is not trivial to argue to a jury that a defendant referred to a murder victim as a "dumb bitch" when no such statement had been made and is "incendiary to the highest level."  The Court agrees that the reference is not trivial, but concludes that it does not rise to the level of *Stickland* prejudice because the Court can not find that the jury's verdict would have been different without such reference.

---

[223]  Tr. 6822.

[224]  Tr. 4975.

- 65 -

### 5.    Reference to Kirby Kehoe's Guilty Plea

Petitioner contends that the Government improperly referred to Kirby Kehoe's guilty plea as proof of the existence of the RICO enterprise.  During closing arguments, the Government's attorney stated:

> Count 2 is a conspiracy to commit racketeering activity, if you will.  We talked a little bit about that conspiracy being a criminal agreement.  It's an agreement to participate in racketeering activity in that the defendants deliberately joined with knowledge of the criminal organization's purpose.  Now, Chevie Kehoe didn't join this.  He created it.  Danny Lee joined it.  Faron Lovelace was involved in this enterprise.  Kirby Kehoe was involved in this enterprise.  Kirby Kehoe is not present today, because you've already been informed that Kirby Kehoe pled guilty to Racketeering Act Count 1 for his role and his participation in this criminal organization.  There are others who were named, Cheyne Kehoe.  Cheyne Kehoe told you he was up there after the Friedman robbery, and he counted that money out that was stolen from the Friedmans.  And later, when they got to Ohio, who is in that blue Chevrolet Suburban?  Cheyne Kehoe, along with Chevie Kehoe.  The defendants agreed that one of the members of this enterprise would commit at least two of the crimes that we call racketeering acts.[225]

The Government asserts that it was not arguing that Kirby's guilty plea was proof of the existence of the RICO enterprise.  Rather, it was making the point that several people joined the criminal organization that Kehoe created, and only mentioned Kirby's guilty plea in passing.

In response, Petitioner quotes *United States v. Baez*[226] as follows:

> A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt. . . . If the codefendant testifies, however, either the government

---

[225]  Tr. 6823-24.

[226]  703 F.3d 453, 455 (10th Cir. 1983). *See also United States v. Dougherty*, 810 F.2d 763, 767-68 (8th Cir. 1987) (holding that it was error for the prosecutor to refer to a codefendant's conviction related to the investigation at issue in opening statements, but that there was no prejudice to the defendant due to the curative instruction given, the jury found the defendant not guilty of the only transaction regarding the prosecutor's improper statement, and there was overwhelming evidence of guilt of those counts defendant was convicted of regardless of the prosecutor's statement). *But see United States v. Little Boy*, 578 F.2d 211, 212-13 (8th Cir. 1978) (granting a new trial based upon the prosecutor's closing argument that improperly served as substantive evidence of defendant's guilt when the court did not give a limiting instruction and the prosecutor strongly implied in closing argument that two co-defendant witnesses must have told the truth because they were honest enough to plead guilty and accept responsibility for their actions and that defendant must have been lying about his participation in the rape).

FEB 16 2011  135

Appellate Case: 11-1380    Page: 135    Date Filed: 02/17/2011   Entry ID: 3757208

or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness. . . . Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical.

Petitioner asserts that even if the Government intended only to demonstrate the size of the enterprise via a guilty plea, a reasonable juror would understand that this also established the existence of the organization, and thus, counsel were ineffective in failing to object. Petitioner further asserts that the language used by the Government asserts that Kirby pled for his role in an existing enterprise – "this enterprise" that the jury was considering – and belies the benign purpose alleged.

"Any time a guilty plea of a co-offender is either directly or indirectly brought into a trial, trial courts must ensure it is *not* being offered as substantive proof of the defendant's guilt."[227] "Reference to such pleas obviously is capable of seriously prejudicing the defendant's right to a fair trial."[228] The factors a court must consider in reviewing such reference are as follows: (1) whether the court gave the jury a limiting instruction; (2) whether there was a proper purpose in introducing the fact of the guilty plea; (3) whether the plea was improperly emphasized or used as substantive evidence of guilt; and (4) whether the introduction of the plea was invited by the defense counsel.[229]

The Court agrees with the Government that the purpose in introducing the fact of Kirby's guilty plea was to point out that several people joined the criminal organization that Chevie

---

[227] *United States v. Rogers*, 939 F.2d 591, 594 (8th Cir. 1991) (citing *United States v. Wiesle*, 542 F.2d 61, 62 (8th Cir. 1976) (finding a co-defendant or co-conspirator's guilty plea may not be used as evidence of the defendant's guilt)).

[228] *Id.*

[229] *Id.* (citing *United States v. Fleetwood*, 528 F.2d 528, 532 (5th Cir. 1976); *United States v. Kroh*, 915 F.2d 326, 337 (8th Cir. 1990) (en banc) (Lay, C.J., dissenting)).

- 67 -

created.  The plea was not emphasized.  If Petitioner's counsel had objected, the Court would have given essentially the same instruction it later in fact gave regarding this issue, *to wit*:

> Kirby Kehoe was charged in certain counts and entered a plea of guilty pursuant to a negotiated agreement with the government in which he received sentencing considerations and the dropping of certain charges in return for his plea of guilty and his agreement to assist in the prosecution of this case.
> . . .
> You are instructed not to consider the legal effect or consequences of Kirby Kehoe's plea . . . in your deliberations on these charges as they relate to the defendants Kehoe and Lee.[230]

Also, the Court instructed the jury multiple times that the statements and arguments by the attorneys were not evidence.[231]

The Court concludes that Petitioner's claim fails because he cannot establish *Strickland* prejudice due to the limiting instruction given, and the fact that there was overwhelming evidence of the existence of the RICO enterprise and Petitioner's involvement therein regardless of the Government's statement in closing argument.[232]

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE SENTENCING PHASE

### A.   Failure to Challenge the Multiple Killings Aggravating Factor

Petitioner asserts that the multiple-murder statutory aggravating factor should not have been submitted to the jury as an aggravating factor with regard to the murders of William and Nancy Mueller.  Petitioner states that the multiple killings aggravating factor, found at 18 U.S.C. § 3592(c)(16), did not become part of the Federal Death Penalty Act until April 24, 1996, while

---

[230]  Tr. 7016-17.

[231]  Tr. 7013, 7020.

[232]  *See Lee*, 374 F.3d at 647-48 ("There was sufficient evidence for a reasonable jury to find that both a conspiracy and a RICO enterprise existed and that Lee intentionally joined and participated in each.").

the Government's theory was that the Muellers were killed on January 11, 1996.  Petitioner contends that counsel's failure to move to strike the factor constitutes ineffective assistance of counsel.

The Government contends that even if defense counsel had timely objected, the Court's improper submission of the "multiple killings" aggravating factor to the jury is harmless beyond a reasonable doubt because the jury properly found at least one other statutory aggravating factor as to each murder.[233]  Specifically, the Government states that the death sentences for William and Nancy Mueller's murders were adequately supported by the "pecuniary gain" statutory aggravating factor, and the sentence for Sarah Powell's murder was adequately supported by the "vulnerable victim" factor.  The Government further states that the jury can properly consider the "multiple killings" aspect of the offense, even if not as a statutory aggravating factor.

In reply, Petitioner asserts that the decision in *Sanders*, upon which the Government relies, does not support the Government's contention.  In reviewing a death sentence imposed under the California statutory scheme, the Supreme Court in *Sanders* held that "a[n] invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process unless one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances."[234]  The Court further stated that "the death sentence must be set aside if the jury's consideration of the invalidated eligibility factor allowed it to hear evidence that would not otherwise have before it."[235]  Petitioner contends that the evidence of multiple

---

[233] *See Brown v. Sanders*, 546 U.S. 212, 222-24 (2006); *United States v. Higgs*, 353 F.3d 281, 300 (4th Cir. 2003).

[234] 546 U.S. at 218-19.

[235] *Id.* at 219.

FEB 16 2011  138
Appellate Case: 11-1380   Page: 138   Date Filed: 02/17/2011 Entry ID: 3757208

murders was not properly before the jury as relevant to any of the remaining aggravating factors as to any of the murders.

For a jury to return a sentence of death, the Federal Death Penalty Act requires the finding of at least one statutory aggravating factor.[236]  However, "[t]he jury . . . may consider whether any other aggravating factor for which notice has been given exists."[237]  Before the jury may consider the nonstatutory factors, the jury must find at least one statutory aggravating factor beyond a reasonable doubt.[238]

As discussed below, the pecuniary gain factor, a statutory aggravating factor which the jury found beyond a reasonable doubt, applied to the factual circumstances of the case. Therefore, even if counsel had objected to the multiple killings factor due to its enactment date, the Court simply would have allowed the jury to consider the multiple killings aggravating factor as a nonstatutory factor, as Petitioner had adequate notice thereof.  The submission of the "multiple killings" aggravating factor to the jury is harmless beyond a reasonable doubt. Therefore, Petitioner's claim fails because he cannot demonstrate the required *Strickland* prejudice.[239]

### B.      Failure to Challenge the Pecuniary Gain Aggravating Factor

Petitioner asserts that his counsel were ineffective for failing to bring to the Court's attention authority limiting the applicability of the pecuniary gain factor to situations where the murder was the direct and indispensable key to the pecuniary gain, such as a killing done for hire

---

[236] *See* 18 U.S.C. § 3593(d).

[237] 18 U.S.C. § 3592(c).

[238] 18 U.S.C. § 3592; *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007).

[239] Because the Court finds that Petitioner's argument is without merit, it need not consider whether *Teague* bars this claim.

FEB 16 2011  139
Appellate Case: 11-1380   Page: 139   Date Filed: 02/17/2011   Entry ID: 3757208

or a killing done to gain an inheritance or insurance proceeds. He also asserts that his counsel were ineffective for failing to move to strike the pecuniary gain factor. Petitioner notes that in a letter to the Court dated April 22, 1999, his counsel objected to the submission of the pecuniary gain factor on the basis that "this aggravator was meant to be used in cases of murder for hire." Counsel further stated that she only had committee comments to the Eighth Circuit Model Death Penalty Instructions and dicta in *United States v. Davis*[240] to support her theory. However, Petitioner states that six weeks before the letter was written a district court in New York had so held in *United States v. Cuff.*[241]

The Government asserts that there was ample evidence to sustain the jury's finding beyond a reasonable doubt that Lee committed the murders for pecuniary gain. Thus, the Government contends that any challenge to the pecuniary gain factor would have lacked merit, especially in light of subsequent case law construing the factor, and Petitioner cannot show that his counsel's performance was deficient or prejudicial. The Government further asserts that counsel in fact timely objected on the ground that this factor was limited to cases involving murder for hire and cited the most directly applicable authorities available. The Government contends that counsel's failure to cite an additional district court opinion was hardly deficient or prejudicial, especially in light of the number of federal appellate decisions deciding the issue to the contrary.

---

[240] 904 F. Supp. 554, 558 (E.D. La. 1995).

[241] 38 F. Supp. 2d 282, 288 (S.D.N.Y. 1999) ("The sections in question appear to be directed at a murder for hire or to collect insurance proceeds, or at least the sort of murder in which pecuniary gain can be expected to follow as a direct result of the crime.").

Petitioner and Chevie took cash, gold, guns and gun parts from the Muellers. Kehoe kept $50,000 in cash and gold, and guns and gun parts valued at $30,000.[242] Kehoe gave Lee between $3,000 and $4,000 and one handgun for his involvement in the Mueller murders.[243] The Government asserts that pecuniary gain motivated Lee's participation in the murders, not just the robbery. Furthermore, the murders were essential to complete the robbery, as Lee told Gloria that William Mueller resisted vigorously. The Government states that this left Lee and Kehoe with no doubt that they would have to kill him to succeed with the robbery.

18 U.S.C. § 3592(c)(8), the pecuniary gain factor, provides:

> In determining whether a sentence of death is justified for an offense described in section 3591(a)(2), the jury . . . shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:
>
> . . .
>
> The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

The Ninth Circuit has held that "[t]he plain reading of § 3593(c)(8) is that it applies 'in the murder-for-hire scenario . . . or in the robbery scenario (if the defendant committed a concomitant *murder* 'in the expectation of the receipt of anything of pecuniary value').'"[244] "Limiting § 3592(c)(8) to murders-for-hire would read the second clause out of the statute."[245]

In *Mitchell*, the defendant murdered the owner of a vehicle and her granddaughter to obtain the vehicle to use in a subsequent robbery.[246] There, the Ninth Circuit held that the

---

[242] Tr. 5330.

[243] Tr. 5329-30.

[244] *United States v. Mitchell*, 502 F.3d 931, 975 (9th Cir. 2007) (quoting *United States v. Brown,* 441 F.3d 1330, 1370 (11th Cir. 2006)).

[245] *Id*. (rejecting the defendant's argument that the pecuniary gain factor is unconstitutional because it fails to narrow the class of offenders, is unconstitutionally vague and overbroad, and it automatically triggers capital eligibility for every carjacking that results in death).

[246] *Id*.

FEB 16 2011  141
Appellate Case: 11-1380   Page: 141   Date Filed: 02/17/2011 Entry ID: 3757208

victims "were not murdered incidentally, or solely to cover up a crime, but because 'pecuniary gain was expected to flow directly from the homicide.'"[247]  The court in *Mitchell* distinguished the facts from those in *Bernard*,[248] where the Fifth Circuit held that it was error to instruct on pecuniary value as an aggravating factor where the defendant shot the victims to prevent them from reporting their crimes and carjacked and robbed the victims before killing them and burning the car.[249]  The court in *Mitchell* noted that in the case before it, the defendant's crime spree was ongoing and he needed to kill the victims so the vehicle to be used in the subsequent robbery could not be traced to him.[250]  The court also found that the case was distinguishable from *United States v. Chanthadara*[251] because the instruction specified that the "Defendant committed the *killing* as consideration . . .."[252]

Additionally, in *United States v. Brown*,[253] the Eleventh Circuit held:

Neither *Chanthadara* nor *Bernard* supports the argument that the pecuniary gain factor is somehow inapplicable in cases involving a robbery or that the factor is limited to cases of murder-for-hire.  Rather, they simply stand for the

---

[247] *Id*. (quoting *United States v. Bernard,* 299 F.3d 467, 483-84 (5th Cir. 2002) ("[T]he application of the 'pecuniary gain' aggravating factor is limited to situations where 'pecuniary gain' is expected 'to follow as a direct result of the [murder].'")).

[248] 299 F.3d at 483-84.

[249] *Mitchell*, 502 F.3d at 975.

[250] *Id*.

[251] 230 F.3d 1237 (10th Cir. 2000) (holding that the phrasing of the pecuniary value instruction given in that case was error because it "failed to specify the 'offense' to which it referred was the homicide, not the underlying robbery).

[252] *Mitchell*, 502 F.3d at 975.

[253] 441 F.3d 1330, 1370 (11th Cir. 2006).

FEB 16 2011  142
Appellate Case: 11-1380   Page: 142   Date Filed: 02/17/2011 Entry ID: 3757208

unremarkable proposition that the murder itself, and not an underlying robbery, must be committed in expectation of something of pecuniary value.[254]

. . .

Quite simply, the "pecuniary gain" aggravating factor may apply in the "murder-for-hire" scenario ( if the defendant committed the murder "as *consideration for the receipt of ...* anything of pecuniary value") or in the robbery scenario (if the defendant committed a concomitant *murder* "in the expectation of the receipt of anything of pecuniary value"). *See* 18 U.S.C. § 3592(c)(8). The "consideration" and "expectation" clauses are two separate ways by which the pecuniary gain factor may be satisfied, and they both must have meaning. *See Cooper,* 91 F. Supp. 2d at 105 (discussing the two separate prongs). The pecuniary gain factor will not necessarily apply to every robbery/murder scenario, however, and, therefore, we must examine the facts of this case.

In *Brown*, the defendant stated that during the robbery of the post office he "accidentally" cut the murder victim prior to gaining control of the money orders, but that he had no recollection of any stabbing after the initial wound.[255]   The medical examiner testified that the victim was stabbed ten times, two of which could have been fatal, but was unable to determine the order in which the wounds occurred.[256]   The court found that "because that first wound [inflicted on the murder victim] may have been one of the two fatal wounds, the jury could reasonably have found that [the defendant] killed [the victim] before he had control of the money orders, and that the killing was necessary so that [the defendant] could complete the robbery (which, obviously, carried with

---

[254] Citing *United States v. Barnette,* 390 F.3d 775, 807-08 (4th Cir. 2004), *vacated on other grounds,* 546 U.S. 803 (2005) (finding, in a case involving carjacking and murder, that the district court's instructions properly limited the pecuniary gain factor to the murder, and that the evidence supported the jury's finding that the murder itself was committed with the expectation of receiving pecuniary gain); *United States v. Roman,* 371 F. Supp. 2d 36, 46 (D.P.R. 2005) (rejecting the defendants' motion to strike the pecuniary gain aggravating factor because the murder and robbery were committed "practically simultaneous[ly]" and therefore a jury could properly infer that the murder was committed for the express reason to effect the robbery, rather than being incident to, or as an afterthought to the robbery); *United States v. Cooper,* 91 F. Supp. 2d 90, 105-06 (D.D.C. 2000) (denying defendant's motion to strike the pecuniary gain aggravating factor because a jury could reasonably infer that the murder of a store employee during an unsuccessful robbery could have been motivated by the fact that the employee was frustrating the robber's ultimate goal, which was to obtain money from the robbery).

[255] 441 F.3d at 1371.

[256] *Id.*

- 74 -

it the expectation of pecuniary gain)."[257]  Additionally, the court noted that due to the defensive wounds on the victim, the jury "could reasonably have concluded that [the victim] was struggling and that [the defendant] had to kill her in order to successfully complete the robbery."[258]

In his reply, Petitioner contends that *Allen I*[259] supports his argument that the pecuniary gain factor applies only where the murder is a necessary condition to the expected pecuniary gain.  There, a panel of the Eighth Circuit stated that "the application of the pecuniary gain aggravating factor is limited to situations where pecuniary gain is expected to follow as a direct result of the [murder]."[260]  The court also stated that "[t]o hold otherwise would convert every felony murder in which the underlying felony had a pecuniary object or benefit into a federal capital offense," and there is "nothing in the statute or legislative history to suggest that Congress intended such a result."[261]

In *Allen I*, the defendant killed a security guard during an armed robbery of a bank.[262] The court found that the indictment could not be read to state the essential facts which would constitute the pecuniary gain aggravator because "[n]othing in either count necessarily links the murder of [the security guard] to the receipt of, or expectation of the receipt of, pecuniary

---

[257] *Id.*

[258] *Id. See also United States v. O'Reilly*, 2007 WL 2420830, at *6-7 (E.D. Mich. 2007) (holding that because the Government intended to prove that the guard was killed before the defendant and his co-defendants obtained any money, a jury could reasonably determine that the murder was motivated by pecuniary gain and was committed to complete the underlying robbery).

[259] *United States v. Allen*, 357 F.3d 745, 750 (8th Cir. 2004) (*Allen I*).

[260] *Id.* (internal quotes omitted) (citing *Bernard*, 299 F.3d at 483; *Chanthadara*, 230 F.3d at 1263; *Cuff*, 38 F. Supp. 2d at 288).

[261] *Id.*

[262] *Id.* at 747.

gain."[263]  Because the defendant's indictment could not be reasonably construed to charge a statutory aggravating factor, as required for imposition of the death penalty, the Eighth Circuit held that the indictment was constitutionally deficient to charge a capital offense.[264]  The Eighth Circuit granted rehearing en banc and vacated the panel's judgment in *Allen II*.[265]

In *Allen II*, the Eighth Circuit found that the defendant's indictment suffered from a Fifth Amendment defect.[266]  However, the court declined to treat the defect as a structural error requiring automatic reversal without a showing of prejudice to the defendant.[267]  After limiting itself to the evidence presented to the grand jury at the time of indictment, the court concluded that the defect in the indictment did not prejudice the defendant, and thus, was harmless beyond a reasonable doubt.[268]  With regard to the statutory aggravating factors, the court found that any rational jury, including the defendant's grand jury, would have found probable cause to charge one of the statutory aggravating factors – that the defendant knowingly created a grave risk of death to persons other than the murder victim while committing the bank robbery or in escaping apprehension.[269]  The Court did not address the pecuniary gain factor.

---

[263] *Id*. at 750.

[264] *Id*. at 751.

[265] *United States v. Allen*, 406 F.3d 940, 942 (8th Cir. 2005) (*Allen II*).

[266] *Id*. at 943.

[267] *Id*. at 945.

[268] *Id*. at 946-47.

[269] *Id*.

FEB 16 2011  145
Appellate Case: 11-1380   Page: 145   Date Filed: 02/17/2011 Entry ID: 3757208

Even assuming *Allen I* has precedential value, the court simply held that the facts contained in the indictment alone did not support the pecuniary gain factor.[270]   *Allen I* expressed no opinion as to whether the facts of the case supported the applicability of the pecuniary gain aggravating factor.

As in *Brown*,[271] the evidence at trial indicated that William Mueller strongly resisted the robbery.  Therefore, the jury could reasonably have concluded that Lee and Kehoe had to kill him in order to successfully complete the robbery, which obviously carried with it the expectation of pecuniary gain.  Also, as in *Mitchell*,[272] the Muellers "were not murdered incidentally, or solely to cover up a crime, but because 'pecuniary gain was expected to flow directly from the homicide.'"

The Court further finds that counsel in fact timely objected on the ground that this factor was limited to cases involving murder for hire, and counsel's failure to cite an additional district court opinion does not constitute deficient or prejudicial conduct.  Even if counsel had not

---

[270]  In *Allen I*, the court set forth the language of counts one and two of the Indictment as follows:

Count one charged a violation of 18 U.S.C. §§ 2, 2113(a) and (e), and alleged that the defendants

> by force, violence, and intimidation did take from the person or presence of another, a quantity of United States currency, belonging to, and in the care, custody, control, management, and possession of the Lindell Bank & Trust Company, the deposits of which were then insured by the Federal Deposit Insurance Corporation; and in committing such offense did kill Richard Heflin.

Count two charged a violation of 18 U.S.C. §§ 2, 924(c)(1) and (j)(1), and alleged that the defendants

> knowingly used and carried a firearm during and in relation to a crime of violence which may be prosecuted in a court of the United States, that is, bank robbery as alleged in Count I of this indictment and incorporated herein; and that in so doing [the defendants] committed murder as defined in 18 U.S.C. § 1111, that is, the unlawful killing of Richard Heflin with malice of forethought, such murder being willful, deliberate, malicious, premeditated, and committed in the perpetration of a robbery.

*Allen I*, 357 F.3d 745, 749-50 (8th Cir. 2004).

[271]  441 F.3d at 1370.

[272]  502 F.3d at 975.

- 77 -

challenged the pecuniary gain aggravating factor, Petitioner cannot demonstrate prejudice because any challenge would have been rejected.[273]

C.      Failure to File Pre-Trial Motions Challenging Constitutionality of the Federal Death Penalty

This is the first of Petitioner's three claims challenging the FDPA – two in the context of ineffective assistance claims (pre-trial and on appeal) and one direct claim.  Because the claims are so related, the Court will address all three claims together, *infra*, in the section of the opinion addressing Petitioner's direct constitutional challenge.[274]

The Court notes that Lee's trial counsel in fact filed a pre-trial motion challenging the constitutionality of the death penalty.[275]  The Court did not rule on the motion until after trial, at which time it rejected Petitioner's pre-trial constitutional challenge.[276]  Additionally, to the extent that the proposed constitutional challenge differs from those challenges made by Petitioner's trial counsel and rejected by this Court previously, Petitioner is unable to demonstrate prejudice because the Court finds no merit in the argument that the proposed pre-trial motions challenging the constitutionality of the death penalty would have been successful.

D.      Failure to Challenge Penalty Phase Jury Instruction

Petitioner claims that counsel were ineffective for failing to note or object to this Court's penalty-phase instructions regarding the range of punishments for the capital counts under the

---

[273] Because the Court finds that Petitioner's argument is without merit, it need not consider whether *Teague* bars this claim.

[274] *See* Section VI.

[275] *See* Doc. No. 289.

[276] *See* Order dated June 15, 1999, Doc. No. 854.

FEB 16 2011  147
Appellate Case: 11-1380   Page: 147   Date Filed: 02/17/2011   Entry ID: 3757208

Violent Crimes in Aid of Racketeering Activity ("VICAR") statute found at 18 U.S.C. § 1959, which provides in pertinent part:

> (a) Whoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . shall be punished --
>
> > (1) for murder by death or life imprisonment . . . .

Specifically, Petitioner states that the Court instructed the jury as follows:

> Based upon this weighing process, you must determine whether a sentence of death is justified.  If you cannot unanimously agree upon a sentence of death, you must then decide whether to return a sentence of life in prison without the possibility of release.  Again, your finding with respect to a sentence of life in prison without the possibility of release must be unanimous.
>
> If you unanimously agree upon a sentence of death or a sentence of life in prison without the possibility of release, the Court is required to impose that sentence.  If you cannot unanimously agree upon either a sentence of death or a sentence of life in prison without the possibility of release, the Court will impose the sentence required by law.[277]

Petitioner asserts that the instruction is erroneous because if the jury was unable to reach unanimous agreement on a sentence of death, its deliberations were concluded and, as a matter of law, because of the mandatory life sentence required by the Violent Crimes in Aid of Racketeering Activity ("VICAR") statute itself, the Court would be required to impose a life sentence.  Furthermore, Petitioner asserts that the instruction is erroneous because assuming a lack of agreement on death, the Court had no authority to impose any sentence other than life imprisonment.

Petitioner asserts that leaving the jury to speculate on the meaning of "the sentence required by law" may result in the conclusion that if the jury cannot agree on death or life, the Court may impose some lesser sentence.  Petitioner further asserts that, as a result, jurors in a

---

[277] Tr. 7995-96.

FEB 16 2011  148
Appellate Case: 11-1380   Page: 148   Date Filed: 02/17/2011 Entry ID: 3757208

minority may be convinced to vote for a death sentence in the face of arguments from jurors favoring a death sentence that if they do not all agree on something, Petitioner might be released at some point.

In response, the Government contends that the Court appropriately instructed the jury in accordance with the law. In a similar situation, the Supreme Court held that the Eighth Amendment does not require that the jurors be instructed as to the consequence of their failure to agree, i.e., that the Court would sentence the defendant to life without the possibility of release.[278] The Supreme Court stated:

> We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, we have long been of the view that "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." . . . We further have recognized that in a capital sentencing proceeding, the Government has "a strong interest in having the jury express the conscience of the community on the ultimate question of life or death." . . . We are of the view that a charge to the jury of the sort proposed by petitioner might well have the effect of undermining this strong governmental interest.[279]

Such an instruction would be "an open invitation for the jury to avoid its responsibility and to disagree."[280]

Petitioner replies by stating that he does not argue that the Court should have instructed the jury on the consequences of a failure to agree unanimously on a verdict of death. Rather, Petitioner asserts that the Court erroneously viewed the capital charges as carrying a potential punishment of death, life, or some other "sentence required by law," and erroneously instructed the jury on the issue of potential punishment. Petitioner states that *Jones* did not forbid an

---

[278] *Jones v. United States*, 527 U.S. 373, 381 (1999).

[279] *Id*. at 382.

[280] *Id*. at 384 (quoting *Justus v. Virginia*, 220 Va. 971, 979, 266 S.E.2d 87, 92-93 (1980)).

FEB 16 2011 149
Appellate Case: 11-1380   Page: 149   Date Filed: 02/17/2011 Entry ID: 3757208

instruction in which the jury is told of the consequences of their failure to agree; it simply held that it was not required under the constitution.[281]

The Court notes that in *Jones*, the Supreme Court rejected the argument that "the jury was led to believe that if it could not reach a unanimous sentence recommendation [the defendant] would receive a judge-imposed sentence less severe than life imprisonment, and his proposed instruction as to the consequences of the deadlock was necessary to correct the jury's erroneous impression."[282]  The Supreme Court also rejected the petitioner's argument that the "alleged confusion independently warrant[ed] reversal of his sentence under the Due Process Clause, the Eighth Amendment, and the Act itself."[283]  The Supreme Court stated that the district court "did not expressly inform the jury that it would impose a lesser sentence in case of a deadlock[,]" but "simply told that jury that, if it recommended a lesser sentence, the court would impose a sentence 'authorized by the law.'"[284]

The Court concludes that Petitioner's argument is without merit.[285]  The Court gave the following instruction in written form to the jury for their deliberations:

> At the end of your deliberations, if you determine that the defendant be sentenced to death or to life imprisonment without possibility of release, the court is required to impose that sentence.
>
> If you cannot unanimously agree whether the defendant should be sentenced to death or life imprisonment without possibility of release, the court will impose a

---

[281] *See Untied States v. Sampson*, 335 F. Supp. 2d 166, 240-41 (D. Mass. 2004) ("Declining to instruct the jury on the consequences of a deadlock could result in jurors deliberating based on a misunderstanding of the law rooted in speculation and incorrect assumptions.").

[282] 527 U.S. at 384, 390.

[283] *Id.*

[284] *Id.* at 390.

[285] Because the Court finds that Petitioner's argument is without merit, it need not consider whether *Teague* bars this claim.

sentence of life imprisonment or a sentence of life imprisonment without possibility of release, as required by law.[286]

During deliberations, the jury sent the Court two notes.  In response, the Court brought the jury back to the courtroom and read this instruction to the jury.[287]  The Court did not erroneously instruct the jury on the issue of potential punishment, as it clearly stated that it would impose a sentence of life imprisonment or a sentence of life imprisonment without possibility of release, as required by law.  Therefore, the Court concludes that the failure of Petitioner's counsel to object to said instructions was not error.  Furthermore, even if error occurred, Petitioner cannot show prejudice.

### E.      Failure to Challenge Indictment

Petitioner asserts that his trial counsel erred by failing to make the standard challenge to the indictment based on the argument that the aggravating factors and *mens rea* functioned as elements of offense, and thus, had to be included in the indictment.  Petitioner states that the United States Supreme Court vindicated this view in *Ring v. Arizona*[288] several years after Petitioner's trial and sentencing.  Petitioner further states that due to counsel's failure to challenge the indictment on this basis, the issue was reviewed under a plain-error standard, rather than a more relaxed standard under which his death sentence would have been vacated.

---

[286]  Doc. No. 815, Capital Final Instruction 11.  The Court read a three-page summary of the penalty phase instructions, rather than the entire set of penalty phase instructions, as it had read the entire set of instructions in the Kehoe penalty phase and the entire set of actual instructions were be given to the jurors. Tr. 7955.

[287]  Tr. 7999-8000, 8008-09.

[288]  536 U.S. 584 (2002).

FEB 16 2011  151
Appellate Case: 11-1380   Page: 151   Date Filed: 02/17/2011 Entry ID: 3757208

In response, the Government states that at the time of Petitioner's trial and sentencing, binding precedent made clear that there was no requirement for the indictment to include eligibility factors, such as statutory intent factors and statutory aggravating factors.[289]

Petitioner replies by stating that whether raising this issue was standard practice at the time will have to await a hearing, and likely, expert evidence.  Petitioner states that similar arguments were presented in *United States v. Nguyen*[290] and *United States v. Spivey*.[291]  In the cases cited by Petitioner, the district courts rejected such arguments.

First, the Court notes that racketeering acts 4, 5, and 6 in Count One of the Superseding Indictment allege that Petitioner "caused the death[s] of" William Mueller, Nancy Mueller, and Sarah Powell "with the purpose of causing the death[s] of" William Mueller, Nancy Mueller, and Sarah Powell.  The statutory intent factors found in 18 U.S.C. § 3591(a)(2) are as follows:

(a) A defendant who has been found guilty of --

. . .

> (2) any other offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at the hearing under section 3593 --
>
> > (A) intentionally killed the victim;
> >
> > (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

---

[289] *See Jones v. United States*, 526 U.S. 227 (1999) (holding that serious bodily injury was an element of the offense, rather than a sentencing factor, which was required to be pled in the indictment and proven to a jury beyond a reasonable doubt, as it increased the statutory penalty from fifteen years to twenty-five years imprisonment); *Walton v. Arizona*, 497 U.S. 639, 648-49 (1990) (aggravating factors are not "separate . . . offenses"), *overruled* by *Ring*, 536 U.S. 584 (2002); *Lewis v. Jeffers*, 497 U.S. 764, 782 (1990) (aggravating factors are not "'elements' of any offense").

[290] 928 F. Supp. 1525, 1545 (D. Kan. 1996) (rejecting the argument that the death notice be presented before a grand jury).

[291] 958 F. Supp. 1523, 1528 (D.N.M. 1997) (rejecting the argument that § 848 violates the Indictment Clause of the Fifth Amendment because it permits the Government merely to give notice of the aggravating factors, rather than requiring a grand jury to charge those factors by way of indictment).

- 83 -

> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

Also, Counts 4, 5, and 6 of the Superseding Indictment allege that Petitioner "as consideration for the receipt of anything of value from an enterprise engaged in racketeering activity, and to increase or maintain their position in the enterprise, as described in Count I of the indictment, and pursuant to and in furtherance of the conspiracy described in Count II of the indictment, murdered" William Mueller, Nancy Mueller, and Sarah Powell. The pecuniary gain factor reads: "The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value."[292] Therefore, the Court finds that the Superseding Indictment was not defective since it adequately charged the statutory intent factor and the pecuniary gain statutory aggravating factor.

Furthermore, even if the Superseding Indictment was defective, the failure of Petitioner's trial counsel to anticipate a change in the law does not establish that counsel performed below professional standards.[293] Finally, even if the Superseding Indictment was defective and

---

[292] 18 U.S.C. § 3592(c)(8).

[293] *Fields v. United States*, 201 F.3d 1025, 1028 (8th Cir. 2000).

- 84 -

Petitioner's counsel preserved the issue for direct appeal, his argument is without merit because such error was harmless.

In *Allen II*, the Eighth Circuit held that "the Fifth Amendment requires at least one statutory aggravating factor and the mens rea requirement to be found by the grand jury and charged in the indictment."[294]  Because the objection was preserved, the Court reviewed the case under harmless error analysis by determining whether any rational grand jury would have found the existence of the requisite mental state and one or more of the statutory aggravating factors found by the petit jury if the grand jury had been asked to do so.[295]  The court chose to make this determination utilizing the narrowest method by limiting review to the evidence presented to the grand jury at the time it was asked to indict the defendant, which satisfied the court "beyond a reasonable doubt that the error in the case was harmless."[296]  The court also set forth two other methods of harmless-error review: (1) "to review the entire record, including the evidence presented to the petit jury at the trial and penalty phase," and (2) "to view the petit jury's verdict, which unanimously found the existence of the mens rea requirement and the aggravating factors beyond a reasonable doubt, as proof that the grand jury in this case would have charged the requisite mental state and the aggravating factors in the indictment."[297]

Upon review of the petit jury's verdict, the Court is convinced beyond a reasonable doubt that any such claimed error in this case was harmless.  With regard to the *mens rea* issue, the petit jury found that the Government established beyond a reasonable doubt that Petitioner

---

[294]  406 F.3d at 943 (noting that *Ring* did not directly address the issue because it involved a state prosecution).

[295]  *Id*. at 945.

[296]  *Id*. at 946.

[297]  *Id*. at 945-46.

FEB 16 2011  154
Appellate Case: 11-1380   Page: 154   Date Filed: 02/17/2011 Entry ID: 3757208

"intentionally killed" William and Nancy Mueller, and "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death" to William Mueller, Nancy Mueller, and Sarah Powell, and that "participation in the act constituted a reckless disregard for human life" and William Mueller, Nancy Mueller, and Sarah Powell "died as a direct result of the act."[298]  With regard to the statutory aggravating factors, the petit jury found beyond a reasonable doubt that the Government established that Petitioner "committed the offense of murdering" William Mueller, Nancy Mueller, and Sarah Powell "in the expectation of receiving something of pecuniary value" and "intentionally killed more than one person in a single criminal episode."[299]  The petit jury also found beyond a reasonable doubt that the government established that "Sarah Powell was a particularly vulnerable victim due to her youth, that being eight years old."[300]

Furthermore, as in *Allen II*, Petitioner "had complete and timely notice of the allegations against him, through the combination of the indictment and the notice of intent to seek the death penalty," and his "defense during both the guilt and penalty phases was in no way prejudiced."[301] "Nor is there any dispute that the indictment was sufficiently clear to allow [Petitioner] to use it as a bar to being prosecuted again for the same conduct."[302]  Thus, Petitioner was not prejudiced, as the two primary purposes of an indictment – to give the defendant clear notice of the

---

[298] Doc. No. 816.

[299] Doc. No. 816.

[300] Doc. No. 816.

[301] *Id*. at 946.

[302] *Id*.

allegations that he will have to defend himself against at trial, and to allow him to plead prior prosecution as a bar to future prosecution – were satisfied.

Additionally, the two primary purposes of the grand jury are "the protection of citizens against unfounded criminal prosecutions" and "to make 'the determination whether there is probable cause to believe a crime has been committed.'"[303]  As in *Allen II*, there is no suggestion in this case that the Government "engaged in hasty, malicious, or oppressive persecution of an innocent man," that "the prosecution was unreasoned," or that the Government singled Petitioner "out for prosecution because of personal ill will toward him, racial animus, or any other discriminatory reason."[304]  Also, the Court is persuaded beyond a reasonable doubt that the grand jury would have charged Petitioner with the statutory intent factors and the pecuniary gain statutory aggravating factor.  As noted above, the evidence at trial indicated that William Mueller strongly resisted the robbery, and thus, a jury could reasonably have concluded that Lee and Chevie had to kill him in order to successfully complete the robbery, which obviously carried with it the expectation of pecuniary gain.  With regard to the statutory intent factors, the evidence at trial clearly indicates that Lee's participation in the Mueller murders satisfies said factors.

Therefore, even if the Superseding Indictment was defective, the Court concludes that any rational grand jury would have found probable cause to charge Petitioner with the statutory intent factor and the pecuniary gain statutory aggravating factor.  Thus, any failure to charge said factors in the Superseding Indictment was harmless error.  The Court also notes that on direct appeal the Eighth Circuit held that "[e]ven if the indictment was defective, Lee cannot show plain error," noting Lee's receipt of an amended death penalty notice and that "the petit jury's

---

[303] *Id.*

[304] *Id.*

FEB 16 2011  156

Appellate Case: 11-1380   Page: 156   Date Filed: 02/17/2011 Entry ID: 3757208

findings confirmed the soundness of the judicial proceedings and rendered harmless any conceivable error in the charging decision."[305]   Therefore, Petitioner's argument that counsel was ineffective for not challenging the Superseding Indictment's omission of the aggravating factors & *mens rea* allegations fails because Petitioner cannot show prejudice.

**F.      Failure to Conduct Complete and Adequate Investigation of Lee's True Role in the Wavra Murder**

Petitioner asserts that his counsel were ineffective for failing to conduct a complete and adequate investigation of the circumstances of his true role in the murder of Joey Wavra, which occurred when Petitioner was 17 years old.

Petitioner states that one of the Government's primary arguments for sentencing him to death, and for distinguishing his case from Kehoe's, was the role played by Petitioner in the Wavra murder.  Petitioner further states that the state criminal case against him was resolved by plea of guilty to a charge that he had either taken keys or a bicycle from the victim by force. Petitioner asserts that he made statements that ascribed to himself a greater role in the crime than was actually true in a misguided effort to help his cousin David Patton – the true perpetrator of the murder.  Petitioner contends that a properly-conducted investigation of the circumstances of the Wavra murder would have revealed his true role, which would have placed his actions in an entirely different light and would have led to a different result because one or more jurors would have voted for a life sentence.

The Court agrees with Petitioner that the testimony regarding his role in the Wavra murder was powerful and likely contributed to or influenced the jury's ultimate decision.

---

[305] *Lee*, 374 F.3d at 651.  *See also Becht*, 403 F.3d at 549 ("The standard for prejudice under *Strickland* is virtually identical to the showing required to establish that a defendant's substantial rights were affected under plain error analysis.").

- 88 -

However, there is nothing before the Court to indicate that Petitioner's "true role" in the murders was anything other than as portrayed during the sentencing trial. The Government asserts, and the Court agrees, that counsel's investigation into the matter was entirely reasonable and caused no prejudice to Petitioner. Importantly, Petitioner provides no evidence of his alleged "true role." Furthermore, the Court notes that Petitioner's counsel attempted unsuccessfully to suppress some of Lee's statements offered by the Government.

Petitioner's argument is without merit.

### G.  Trial Counsel Erred in Stipulating to the Receipt of Evidence Presented at Chevie Kehoe's Penalty Phase Without Obtaining a Waiver of Petitioner's Confrontation Rights

Petitioner argues that his Sixth Amendment confrontation rights were compromised by his counsel's stipulation to a portion of the Kehoe penalty evidence. Further, Petitioner contends that by stipulating to such evidence, the error was not preserved on appeal causing the issue to be reviewed under the more stringent plain error standard. But for such error, Petitioner contends, he would have prevailed on appeal under the less stringent appellate standard and his death sentence would have been vacated.[306]

On appeal, the Eighth Circuit rejected this identical argument under a plain error review based on its finding that "Lee was aware of the stipulation prior to the penalty phase and waived his confrontation rights when he did not object to the stipulation in court."[307] Whether Lee personally and knowingly waived his confrontation rights may not be revisited on collateral review.

---

[306] Pet.'s Motion, Doc. No. 1118, at pp. 32-33.

[307] *Lee*, 374 F.3d at 650.

FEB 16 2011  158
Appellate Case: 11-1380   Page: 158   Date Filed: 02/17/2011   Entry ID: 3757208

The argument fails for the additional reason that Petitioner can not demonstrate that his counsel's decision to stipulate to a portion of the Kehoe penalty evidence, which consisted of testimony by three witnesses (Agent Duvall, Monical Gurel, and Michael Marmaduke) covering a total of fifteen transcript pages,[308] was professionally deficient or that it prejudiced him in any way.  The decision was clearly a tactical one.  By stipulating to the evidence, Petitioner's counsel avoided again placing before the jury powerful evidence of Petitioner's crimes, through gruesome photographs and evidence related to the Mueller murders, through the testimony of Aaron Duvall, and powerfully sympathetic evidence through Sarah Powell's first cousin Monica Gurel and family friend Michael Marmaduke.  Most of Agent Duvall's penalty phase testimony and evidence already had been before the jury once during the guilt phase, when Petitioner had the opportunity to confront such evidence as well as Agent Duvall's testimony.  So, Petitioner was not deprived of his right to confront such evidence.  With regard to the two other witnesses, both of whom testified about Sarah Powell, their statements were not testimonial in nature and arguably triggered no confrontation rights.[309]  But even assuming they did, the Court can not fathom how cross-examining either of these two witnesses could possibly have altered the outcome.

---

[308]  Tr. 7185-7200.

[309]  At present, there is an unresolved issue of law as to whether defendants even have any Sixth Amendment confrontation rights during penalty phase proceedings.  *See, e.g., United States v. Fields*, 483 F.3d 313 (5th Cir. 2007)("the Confrontation Clause does not operate to bar the admission of testimony relevant only to a capital sentencing authority's selection decision."); *United States v. Johnson*, 378 F. Supp. 2d 1051, 1059-62 (N.D. Iowa 2005) (questioning whether the confrontation clause applies in capital sentencing phase).

FEB 16 2011  159
Appellate Case: 11-1380   Page: 159   Date Filed: 02/17/2011 Entry ID: 3757208

**H.      Trial Counsel Erred in Failing to Object During Government's Cross-Examination of Dr. Cunningham Regarding Future Dangerousness Based on the Hare Psychopathy Checklist**

This argument relates to the testimony of Dr. Mark Cunningham, a forensic psychologist and Lee's mental health expert.  Petitioner argues that his counsel erred in allowing the Government to exceed the scope of cross-examination and make Dr. Cunningham a witness for the prosecution as to Lee's future dangerousness.  Petitioner contends that counsel "failed to fully and continuously object during the government's cross-examination" and further failed "to immediately move and renew their [request for] access to the DOJ materials in order to rehabilitate Dr. Cunningham and present what could have been compelling mitigating information to rebut the government's claim."[310]

The subject of Dr. Cunningham's testimony has received extensive scrutiny, both post-trial and on appeal.  This Court set aside the death verdict based on its conclusion that the Government's use of Dr. Cunningham to make "an expanded encore presentation" of its case for future dangerousness was "fundamentally unfair" to Lee and required that he be given a new penalty phase trial.[311]  In doing so, this Court noted that Petitioner's trial counsel timely and properly objected to the alleged improper cross-examination of Dr. Cunningham.[312]  The Eighth Circuit reversed, finding that this Court abused its discretion in setting aside the death verdict based on the claimed evidentiary errors.[313]  The Eighth Circuit accepted this Court's conclusion

---

[310] Pet.'s Motion, Doc. No. 1118, at p. 33.

[311] *Lee*, 89 F. Supp. 2d at 1027-28, 1041-42.

[312] *Id*. at 1023, n.2.

[313] *Lee*, 274 F.3d at 496.

FEB 16 2011  160
Appellate Case: 11-1380   Page: 160   Date Filed: 02/17/2011 Entry ID: 3757208

that Petitioner's counsel had sought and received a continuing objection to the cross-examination of Dr. Cunningham concerning future dangerousness issues.[314]

Petitioner's argument is without merit.  Trial counsel performed exactly as Petitioner now argues that they should have – by interposing a continuing objection to said cross-examination of Dr. Cunningham.  Additionally, the merits of this issue, which have been ruled on by the Eighth Circuit, may not be revisited on collateral review.

Petitioner's remaining contention is that his trial counsel erred in failing to seek access to "DOJ materials in order to rehabilitate Dr. Cunningham and present what could have been compelling mitigating information to rebut the government's claim."[315]  Presumably, Petitioner is referring to certain materials to which his counsel were denied access in a pre-trial ruling by United States Magistrate John F. Forster, Jr.  Petitioner's counsel later claimed that the denial of these materials prevented Dr. Cunningham from obtaining all the information he needed to complete a proper risk assessment.[316]  This Court in its prior opinion quoted from Dr. Cunningham's affidavit in which he identified the requested information as including "specific statistical data and procedures, including the rate of assaults among white supremacists in BOP," "a tour of several U.S. Penitentiaries and a more detailed tour of ADX Florence," which tours "would have allowed [Dr. Cunningham] additional specific perspectives regarding confinement, rehabilitation, and treatment programs for Mr. Lee."[317]

---

[314] *Id*. at 493-94.

[315] Pet.'s Motion, Doc. No. 1118 at p. 33.

[316] *See Lee*, 89 F. Supp. 2d at 1019.

[317] *Id*. at 1024, n.3.

FEB 16 2011  161
Appellate Case: 11-1380   Page: 161   Date Filed: 02/17/2011 Entry ID: 3757208

Contrary to Lee's suggestion, such materials could not have been used as a mitigating factor at trial.[318]  To the extent that such evidence could have been used by Petitioner to undercut Dr. Ryan's testimony, the Court disagrees that the requested tours and generalized statistical data could have changed the outcome of the sentencing trial.

### I.   Ineffectiveness in Utilizing Dr. Cunningham as a Family and Social History Witness

Petitioner contends that his trial counsel's decision to use Dr. Cunningham to report or narrate Petitioner's life and family history opened the door to the Government's cross-examination on the inflammatory issue of  "psychopathy."  The better course, Petitioner contends, would have been to present such history by using the defense mitigation specialist, Gloria Settles, and lay witnesses.  The Government counters that the decision to have Dr. Cunningham forego any specific diagnosis of Lee, but instead to have him present Lee's family and social history including a history of prior mental diagnoses was a reasonable trial strategy. The Court agrees.

Trial counsel's strategy provided Lee with the benefit of having a certified forensic psychologist detail his family and social history, which allowed the expert to summarize such history with broad sweeping opinions which were difficult to counter.  For example, Dr. Cunningham concluded his direct testimony as follows: "Danny Lee experienced many traumatic and adverse life experiences that fundamentally shaped him.  It shaped him neurologically, psychologically, socially, emotionally and ethically, and that I think contributed to his involvement in this offense."[319]  While Settles may have been able to give a factual accounting of

---

[318] *See United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (finding that evidence that maximum security federal prisons with control units would be sufficient to control defendant's dangerous propensities was not appropriate mitigating factor; mitigating factors are limited to factors specific to the defendant).

[319] Tr. 7742.

FEB 16 2011  162
Appellate Case: 11-1380   Page: 162   Date Filed: 02/17/2011 Entry ID: 3757208

Lee's history, she could not have offered the opinions that Dr. Cunningham gave and her testimony would have lacked the credibility Dr. Cunningham's credentials provided.

Additionally, Petitioner's trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination failed.  Trial counsel attempted to limit the risk of damaging cross-examination of Dr. Cunningham by not having him perform any risk assessment or offer any testimony on direct as to a formal diagnosis or future dangerousness.  It was certainly not foreseeable that this Court would allow the Government to expand the cross-examination as far as it did.

The Court rejects, as completely unfounded, Petitioner's challenge to his counsel's decision to use Dr. Cunningham.  His counsel's performance was objectively reasonable under any definition of the phrase.

### J.      Failure to Object to Dr. Ryan's Testimony and Report

Petitioner argues that his trial counsel erred by not objecting to the Government's use of a rebuttal witness, neuropsychologist Thomas Ryan, Ph.D., since Dr. Cunningham never diagnosed Lee.  Petitioner also contends that counsel erred by allowing Dr. Ryan's report, which contained a risk assessment, to be admitted.  Finally, Petitioner states that he is prepared at a hearing to offer evidence that Dr. Ryan no longer stands by his testimony based on the Hare Psychopathy Checklist because it is no longer an appropriate instrument for predicting the future dangerousness of capital defendants.[320]  The Government argues that these issues were addressed previously by the Eighth Circuit.  The Eighth Circuit concluded that Lee was not unfairly prejudiced by the evidence from Dr. Ryan as to Lee's lack of remorse.[321]

---

[320]  Pet.'s Motion, Doc. No. 1118, at p. 34.

[321]  *Lee*, 274 F.3d at 495.

- 94 -

Since it appears most of Petitioner's claims related to Dr. Ryan's testimony are likely foreclosed by the Eighth Circuit's prior ruling, the Court considers such claims solely to the extent they raise broader issues than those previously presented and rejected by the Eighth Circuit.

First, Petitioner's premise that Dr. Ryan was offered as a rebuttal witness to Dr. Cunningham is flawed, since a fair reading of Dr. Ryan's testimony indicates that he was called primarily to counter the opinion testimony of Petitioner's expert, Kevin Joseph Bianchini, Ph.D. Dr. Bianchini diagnosed Lee with "nonpsychotic mental disorder following organic brain damage."[322] Dr. Ryan countered that Lee suffered from no brain damage.[323] In any event, Petitioner's counsel were not ineffective for failing to object to Dr. Ryan being called to testify. Such objection, had it been made, would have been overruled.

Second, when Dr. Ryan started to offer testimony as to Lee's "level of remorse," Petitioner's counsel objected, arguing that such testimony was "a part of the nonstatutory aggravating factor of future dangerousness" which the Court had excluded.[324] The Eighth Circuit subsequently held that Petitioner's counsel had preserved this issue, but rejected it on the merits.[325] To the extent Petitioner's counsel in fact objected to Dr. Ryan's testimony, Lee's ineffective assistance claim obviously fails.

Finally, to the extent that Petitioner claims counsel should have raised additional objections to Dr. Ryan's testimony, Petitioner can not demonstrate prejudice. In light of this

---

[322] Tr. 7869.

[323] Tr. 7907.

[324] Tr. 7929.

[325] *Lee*, 274 F.3d at 493-95.

FEB 16 2011   164
Appellate Case: 11-1380   Page: 164   Date Filed: 02/17/2011 Entry ID: 3757208

Court's prior decision to set aside the death verdict and the Eighth Circuit's subsequent holding that the evidence presented through Dr. Cunningham and Dr. Ryan as to Lee's psychopathy and lack of remorse did not unfairly prejudice Lee, it is difficult to see how any additional objection that Petitioner's counsel could have made to Dr. Cunningham's or Dr. Ryan's testimony could have altered the outcome.

### K.      Failure to Investigate and Present Available Mitigation Evidence

Petitioner asserts that his trial counsel were ineffective for failing to place before the jury the fact that the Government had, on more than one occasion, offered Lee a sentence of less than death and, in fact, had tried to have the death penalty withdrawn as an option following the life sentence imposed upon his co-defendant Kehoe.  Petitioner further asserts that his trial counsel were ineffective for failing to call Marty Barker as a witness to solidify the fact that Kehoe was the one who killed the child, Sarah Powell, not Lee.  Petitioner vaguely asserts that "[t]here was additional readily available mitigating evidence that defense counsel failed to discover or present."[326]

The Government asserts that evidence that the local United States Attorney's office had sought Department of Justice approval to withdraw the death penalty notice as to Lee, or offers to permit Lee to plead guilty to a life sentence, were no more admissible against the Government than offers by Lee to plead guilty would have been admissible against him to prove his death penalty eligibility.  The Government also asserts that any decision to withdraw the death penalty notice unilaterally required the approval of the Attorney General or Deputy Attorney General. That approval was denied.

---

[326] Pet.'s Motion, Doc. No. 1118, at p. 35.

FEB 16 2011  165
Appellate Case: 11-1380   Page: 165   Date Filed: 02/17/2011 Entry ID: 3757208

The Court agrees that evidence of the Government's plea proposals and attempts to remove the death penalty was not admissible because it did not relate to Lee's character or background or to the circumstances of the offense.[327]   Therefore, Petitioner's arguments in this regard are without merit.

As to the decision not to call Barker, the Government asserts, and the Court agrees, that said decision was a legitimate trial strategy.  Evidence had already been presented that Kehoe killed Sarah Powell.  If Petitioner's counsel would have called Barker to "solidify" this point, Petitioner would have arguably waived any *Bruton* protection regarding testimony that Kehoe told Barker he was with a man named "Daniels."  Although Petitioner's guilt had already been determined at that point, additional inculpatory statements surely would not have benefitted Lee in the sentencing phase.  Petitioner fails to satisfy either prong of the *Strickland* test.

### L.   Failure to Object to Improper Closing Argument during Penalty Phase

Petitioner asserts that his trial counsel were ineffective for failing to object to certain statements made by the Government during closing arguments during the penalty phase and failing to preserve the errors for appellate review.  Petitioner identifies the following allegedly improper remarks:

1.    The Government presented numerous arguments related to psychopathy and Movant's alleged propensity for violence that had been improperly introduced through cross-examination of Dr. Cunningham and the direct examination of Dr. Ryan.

---

[327]   *See* 18 U.S.C. 3592(a)(8) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following: . . . Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence."); *Oregon v. Guzek*, 546 U.S. 517 (2006) ("The Eighth Amendment . . . insists that a sentencing jury be able 'to consider and give effect to mitigating evidence' about the defendant's 'character or record or the circumstances of the offense.'"); *Franklin v. Lynaugh*, 487 U.S. 164, 173 (1988) (holding that the Court's edict that, in a capital case, "the sentencer . . . [m]ay not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense," does not mandate reconsideration by capital juries, in the sentencing phase, of their "residual doubts" over a defendant's guilt).

2.   The Government improperly characterized defense counsel's arguments for life as "smoke and mirrors;" or "that's like the kid who killed his parents who walked into court, said, 'Take mercy on me. I'm an orphan'"; or that displaying photographs of Movant was an act of "manipulation" by defense counsel.

3.   The Government improperly argued that there had been a nexus between the mitigation evidence presented and the commission of the crime.

4.   The Government improperly characterized evidence of Movant's family background and development as an effort to "figuratively" blame others for the murders.

5.   The Government resorted to inflammatory and unfairly prejudicial emotional pleas by arguing that "we" have the right to be safe in our homes – "our sanctuary."  "Doesn't an eight year-old girl, damn it, have that right?"

6.   The Government improperly denigrated the protections afforded a criminal defendant on trial for his life by arguing that it was somehow relevant to the jury's sentencing decision that Movant received more due process than the Muellers received.

7.   The Government improperly argued that the difference between Movant's case and Chevie Kehoe's was that, as argued by Kehoe's counsel during his penalty phase, [] Kehoe could receive "grace."  The government then argued that it was privy to defense counsel's state of mind and that Ms. Compton "realized that she couldn't sell grace to you" because Movant had already had a shot at "grace," a reference to the Oklahoma murder case.  It was also improper to denigrate counsel's efforts to bring appropriate mitigating circumstances to the jury's attention as an attempt by defense counsel to "sell" the jury something.

8.   The Government improperly argued to the jury that Movant should be sentenced to death on the basis of Chevie Kehoe's actions.

The Government asserts that the challenged arguments were consistent with its customary strategy.  Such strategy seeks to hold the defendant responsible for his voluntary and criminal actions and to discount defense efforts to blame others or to excuse defendant's crimes based on unrelated mitigating factors, such as upbringing.

FEB 16 2011  167
Appellate Case: 11-1380   Page: 167   Date Filed: 02/17/2011 Entry ID: 3757208

The Court notes that it has rejected Petitioner's objections to Dr. Cunningham's cross-examination and Dr. Ryan's testimony. Petitioner's counsel did not err in failing to object to the mention of said testimony during the Government's closing arguments. As for the remaining statements by the Government, the Court concludes that had counsel objected, the Court would not have sustained such objections as the statements were not improper. The Court also notes that the closing statements of Petitioner's counsel eloquently rebutted many of the arguments of the Government. Furthermore, even assuming that the arguments of the Government were improper, Petitioner has failed to demonstrate prejudice. Therefore, Petitioner's argument is without merit.

### M.     Failure to Ascertain Whether a "Hold-Out" Juror Was Coerced to Reach a Death Verdict

Petitioner contends that his trial counsel were ineffective in failing to request *voir dire* to determine whether a hold-out juror was coerced into agreeing to the death penalty verdict.

After the jury retired to consider its verdict in Lee's penalty phase trial, two notes were received by the Court. The first, signed by the foreperson, read, "We have a juror who does not believe in the death penalty – no matter what the crime!" The second note, signed by another juror, stated, "I think we need more time to discuss it." After discussing with counsel how to respond to the notes, the Court brought the jury back in and reminded the jurors of its earlier instructions concerning their duty to deliberate.[328] The death verdict was returned slightly over one hour after the jury received the supplemental charge.[329] Defense counsel requested that the

---

[328] Tr. 8008-10.

[329] Tr. 8010, 8015.

FEB 16 2011  168
Appellate Case: 11-1380   Page: 168   Date Filed: 02/17/2011 Entry ID: 3757208

jurors be polled.  This was done, the result being that each juror individually confirmed his/her agreement with the verdict previously returned.[330]

Federal Rule of Evidence 606(b) provides:

Upon inquiry into the validity of a verdict . . . , a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be preluded from testifying.

Petitioner presents no evidence of any extraneous prejudicial information, outside influence, or mistake affecting the jury's deliberations or the entry of the jury's verdict.   Therefore, there was no basis for further inquiry.  The Court agrees with the Government that Petitioner's claim fails because defense counsel requested and received all of the inquiry that was proper under the circumstances.  Counsel's failure to request more was neither deficient nor prejudicial.

## V.    INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

To prevail on his ineffective assistance of appellate counsel claims, Petitioner must establish both prongs of *Strickland* – that counsel's performance was objectively unreasonable, and "that counsel's ineffective assistance was prejudicial, that is, there was 'a reasonable probability that the outcome of the appeal would have been different if counsel had raised the

---

[330] Tr. 8021-22.

FEB 16 2011  169
Appellate Case: 11-1380   Page: 169   Date Filed: 02/17/2011 Entry ID: 3757208

claim.'"[331] The same "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" applies to appellate counsel's conduct.[332]

"[T]he Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal."[333] "'Absent contrary evidence,' [the Court] assume[s] that appellate counsel's failure to raise a claim was an exercise of 'sound appellate strategy.'"[334] "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a ineffective assistance claim based on allegations that counsel was deficient in failing to assert some other claims."[335] Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue.[336] "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."[337] "The decision to forgo a plain error claim is usually the result of a reasonable winnowing of weaker appellate claims," and thus, rarely leads to the conclusion of ineffective assistance.[338]

---

[331] *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quoting *Chambers v. Bowersox*, 157 F.3d 560, 566 (8th Cir. 1998)).

[332] *Id*.

[333] *Id*.

[334] *Id*. (quoting *Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir. 1995)).

[335] *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006).

[336] *Id*.

[337] *Id*.

[338] *Delo*, 160 F.3d at 418.

### A.      Failure to Raise Issue of Improper Closing Argument

In Sections III-J and IV-L, *supra*, the Court rejected Petitioner's arguments that trial counsel were ineffective for failing to object to certain statements made by the Government during closing arguments in the guilt and penalty phases of the trial.  For the same reasons, the Court concludes that appellate counsel's failure to raise such issues on appeal is harmless beyond a reasonable doubt.  Petitioner cannot demonstrate that appellate counsel's failure to raise such issues was objectively unreasonable or prejudicial.

### B.      Failure to Raise Erroneous Submission of the Multiple Killings Aggravating Factor

In Section IV-A, *supra*, the Court rejected Petitioner's argument that trial counsel's failure to object to the submission of the multiple killings statutory aggravating factor to the jury constituted ineffective assistance of counsel.  Because the pecuniary gain factor applied to the facts of the case, and the jury need only find one statutory aggravating factor to impose the death penalty, the Court found that Petitioner could not demonstrate prejudice.  The Court stated that even if trial counsel had objected to the multiple killings factor due to its enactment date, the Court simply would have allowed the jury to consider the multiple killings aggravating factor as a nonstatutory factor, as Petitioner had adequate notice of said factor, and that the submission of the "multiple killings" aggravating factor to the jury was harmless.  For the same reasons, the Court concludes that appellate counsel's failure to raise this issue on appeal is harmless beyond a reasonable doubt.  Petitioner cannot demonstrate that appellate counsel's failure to raise this issue was objectively unreasonable or prejudicial.

FEB 16 2011  171
Appellate Case: 11-1380     Page: 171     Date Filed: 02/17/2011 Entry ID: 3757208

### C. Failure to Raise Erroneous Submission of Pecuniary Gain Aggravating Factor

In Section IV-B, *supra*, the Court rejected Petitioner's argument that trial counsel's failure to argue that the pecuniary gain statutory aggravating factor should not have been submitted to the jury constituted ineffective assistance of counsel. The Court found that trial counsel in fact timely objected on the ground that this factor was limited to cases involving murder for hire, and counsel's failure to cite an additional district court opinion did not constitute deficient or prejudicial conduct. The Court further found that even if trial counsel had failed to challenge the pecuniary gain aggravating factor, Petitioner cannot demonstrate prejudice because any challenge would have been rejected. For the same reasons, the Court concludes that Petitioner cannot demonstrate that appellate counsel's failure to raise the issue was objectively unreasonable or prejudicial.

### D. Failure to Raise Issue of Erroneous Penalty Phase Instructions

Petitioner claims that appellate counsel were ineffective for failing to raise on appeal this Court's erroneous penalty-phase instructions regarding the range of punishments for the capital counts under the VICAR statute. In Section IV-D, *supra*, the Court concluded that it did not erroneously instruct the jury on the issue of potential punishment, as it clearly stated that it would impose a sentence of life imprisonment or life imprisonment without the possibility of release as required by law. For the same reasons stated above, the Court concludes that the failure of appellate counsel to raise this issue on direct appeal was not error. Furthermore, even if error occurred, Petitioner cannot show prejudice since Petitioner cannot demonstrate that the outcome of the appeal would have been different if counsel had raised the claim.

### E.   Failure to Challenge Constitutionality of the Federal Death Penalty on Appeal

This is the second of Petitioner's three claims challenging the FDPA – two in the context of ineffective assistance claims (pre-trial and on appeal) and one direct claim.  Because the claims are related, the Court will address all three claims together, *infra*, in the section of the opinion addressing Petitioner's direct constitutional challenge.  For the reasons discussed in that section,[339] Petitioner is unable to demonstrate prejudice because the Court concludes that the proposed appellate challenges to the constitutionality of the death penalty were either made and rejected (and are therefore not reviewable on collateral review) or would have failed if made.

### F.   Failure to Challenge Death Sentence Imposed as to the Murder of Sarah Powell Since the Jury Did Not Find that Lee Committed Deliberate Murder

Petitioner states that the jury found that Lee had not deliberately taken Sarah Powell's life, but still imposed sentence of death.  Petitioner asserts that this presents a substantial Eighth Amendment challenge not raised by appellate counsel.  The Court notes that trial counsel failed to preserve this argument for appeal.

The verdict forms reflect that the jury did not find that the Government had established beyond a reasonable doubt that Petitioner "intentionally" killed Sarah Powell or that Petitioner "intentionally participated in an act, contemplating that the life of Sarah Powell would be taken, or intending that lethal force would be used against Sarah Powell, and that Sarah Powell died as a direct result of that act."  However, the jury found that the Government established beyond a reasonable doubt that Petitioner "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to Sarah Powell, and that participation in the

---

[339] *See* Section IX, *infra*.

FEB 16 2011  173
Appellate Case: 11-1380   Page: 173   Date Filed: 02/17/2011 Entry ID: 3757208

act constituted a reckless disregard for human life and Sarah Powell died as a direct result of the act."

18 U.S.C. § 3591(a)(2)(D) provides:

(a) A defendant who has been found guilty of  - -
. . .

(2) any other offense for which a sentence of death is provided, if the defendant, as determined beyond a reasonable doubt at the hearing under section 3593 - -
. . .

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

Clearly, neither 18 U.S.C. § 3591 nor the Constitution require an intent to kill the victim.[340]  The Court agrees with the Government that appellate counsel's performance was neither deficient nor prejudicial.

## VI.   ERRONEOUS SUBMISSION OF LEE'S JUVENILE CONVICTION

Petitioner contends that it was error to admit Petitioner's conviction as a juvenile for an offense related to the Wavra murder.  Petitioner notes that in *Roper v. Simmons*,[341] the Supreme Court struck down death penalty as applied to those under age 18.

The Government asserts that Petitioner's claim is barred by procedural default and non-retroactivity doctrines because this is the first time he has raised the present argument.  "Where a

---

[340] *See Tison v. Arizona*, 481 U.S. 137, 158 (1987) (holding that the constitution does not require an intent to kill to impose the death penalty for felony murder, and that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement").

[341] 543 U.S. 551 (2005).

FEB 16 2011  174
Appellate Case: 11-1380   Page: 174   Date Filed: 02/17/2011 Entry ID: 3757208

defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[342]  The Government asserts that Petitioner cannot show that trial and direct appeal counsel's failure to pursue this argument was due to a factor external to his defense.  The Government also asserts that Petitioner cannot show that no reasonable juror would have found Petitioner eligible for death but for the error because Lee's participation in the Wavra robbery and murder was relevant solely as a non-statutory aggravating factor, not to Lee's eligibility for the death penalty.  The Court agrees.  Additionally, it is clear that Petitioner has failed to demonstrate actual innocence.  Therefore, Petitioner's claim is barred by the procedural default doctrine.

As to the non-retroactivity issue, the Government contends that *Teague* bars Petitioner's claim because Petitioner proposes to extend the holding in *Roper* to bar the introduction of evidence, at a capital defendant's penalty hearing, of non-capital crimes that the defendant committed as a juvenile.  However, *Teague*'s rule of non-retroactivity applies only "to those cases which have become final before the new rules are announced."[343]  *Roper* was decided on March 1, 2005.[344]  Lee's petition for a writ of certiorari was filed on February 18, 2005.  Notice of the petition was filed in this Court on March 3, 2005.  The Supreme Court denied Lee's certiorari petition on June 27, 2005.[345]  A conviction becomes final "for purposes of retroactivity analysis when the availability of direct appeal . . . has been exhausted and the time for filing a

---

[342]  *Becht*, 403 F.3d at 545 (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998)).

[343]  *United States v. Becker*, 502 F.3d 122, 129 (2d Cir. 2007) (quoting *Teague*, 489 U.S. at 310).

[344]  543 U.S. 551 (2005).

[345]  *Lee*, 545 U.S. at 1141.

petition for a writ of certiorari has elapsed or a timely filed petition has been finally decided.'"[346]

Thus, arguably, *Teague* does not apply here.

The Court notes that even if Petitioner's claim is not barred by the procedural default doctrine, Petitioner's claim is without merit. The circumstances in *Roper* are not present in this case, as Petitioner was over the age of eighteen at the time of the conduct making up the charges in this case for which the Government alleges the death penalty is appropriate. Furthermore, the Government did not rely on Petitioner's conduct as a juvenile to cause Petitioner to be "eligible" for the death penalty, but as evidence supporting the non-statutory aggravating factor of future dangerousness. Thus, the Court concludes that the Government's use of the Defendant's adult conviction for actions taken while he was a juvenile are not precluded by the principles in *Roper*.[347]

## VII.   COUNSEL NOT "LEARNED IN THE LAW APPLICABLE TO CAPITAL CASES"

Petitioner asserts that his trial counsel did not meet the statutory definition of "learned in the law applicable to capital cases" and, therefore, his sentence of death was illegal. 18 U.S.C. § 3005 provides in pertinent part:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases. . . ."

Additionally, 18 U.S.C. § 3599(b) (formerly 21 U.S.C. § 848(q)(5)) reads:

---

[346] *Beard v. Banks*, 542 U.S. 406, 411 (2004).

[347] *See United States v. Duncan*, 2008 WL 711603, *6 (D. Idaho March 14, 2008) (holding that the Government's use of the defendant's adult conviction for actions taken as a juvenile as an aggravating factor to support a sentence of death is not precluded by the principles in *Roper*); *United States v. Davis*, 2003 WL 1873088, *5 (E.D. La. April 10, 2003) (holding that defendant's argument that the government cannot rely on criminal conduct committed by the defendant as a juvenile as an aggravating factor is without merit).

FEB 16 2011  176

Appellate Case: 11-1380   Page: 176   Date Filed: 02/17/2011   Entry ID: 3757208

> If the appointment [in a death penalty eligible case] is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

The Court agrees with the Government that Petitioner's claim is barred by the procedural default doctrine because this is the first time he has raised the present argument. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[348] The Government correctly asserts that Petitioner cannot show that appeallate counsel's failure to pursue this argument was due to a factor external to his defense or that no reasonable juror would have found Petitioner eligible for death but for the error. Additionally, Petitioner has failed to demonstrate actual innocence.

Furthermore, Petitioner's claim fails on the merits because, by Petitioner's own admission, his trial counsel "had some experience in capital cases." Petitioner's counsel are two of the most highly respected, experienced, and competent criminal defense attorneys in Arkansas. At the time of appointment, Magistrate Judge Forster stated that "[b]oth Mr. Lassiter and Ms. Compton are experienced criminal defense attorneys, who are learned in the law applicable to capital cases." Furthermore, in an affidavit submitted by Mr. Lassiter in support of his legal fees, Mr. Lassiter outlined his extensive legal experience, including his participation in several capital murder cases.[349] Both attorneys had been admitted to practice in this Court for over a decade prior to the trial in this case. Petitioner's claim that his counsel, Mr. Lassiter and Ms. Compton, were not "learned in the law" is frivolous.

---

[348] *Becht*, 403 F.3d at 545 (quoting *Bousley,* 523 U.S. at 622).

[349] *See* Docket No. 96.

## VIII.   NEWLY DISCOVERED EVIDENCE

Petitioner adopts by reference the arguments presented by Kehoe, in his amended motion for § 2255 relief, that newly discovered evidence exists regarding Kirby Kehoe's whereabouts at the time of the Mueller murders.  As the Court discusses in its Memorandum Opinion denying § 2255 relief to Kehoe, filed on this same date, Kehoe failed to come forward with any newly discovered evidence which would place Kirby in Arkansas during the time of the Mueller family murders.[350]  This claim therefore fails.

## IX.   DEATH PENALTY IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED

Petitioner contends that the "federal death penalty is sought and imposed in an arbitrary and capricious manner"[351] and violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Petitioner makes similar challenges in the context of ineffective assistance claims, contending that his counsel should have challenged the constitutionality of the death penalty before trial and on appeal.  As noted *supra*, the Court addresses all three claims together.[352]

As a threshold matter, the Court after reviewing all of Petitioner's submissions concludes that there is no need for an evidentiary hearing.  Thus, Petitioner's repeated assertion that he will show "at a hearing" how and why the death penalty is unconstitutional puts the cart before the horse.  Petitioner's attorneys are obligated to describe the evidence they have to support their constitutional challenges now.  They are not entitled to a hearing for the purpose of presenting

---

[350]  That portion of the Kehoe opinion, found in Section II, C, is hereby incorporated by reference.

[351]  Pet's Motion, Doc. No. 1118, at p. 39.

[352]  The Court notes that in his filings subsequent to the original § 2255 motion, Petitioner has discussed the theories together.  *See, e.g.*, Pet.'s Reply Brief, Doc. No. 1134, pp. 42-49.

evidence unless and until they make a threshold showing that a hearing is necessary.   The Court concludes, for the reasons described below, that Petitioner has failed to make such showing.

Many constitutional issues related to the FDPA, and the death penalty in general, previously have been addressed in this case by this Court and the Eighth Circuit of Appeals. Before trial, Petitioner's counsel filed a comprehensive challenge to the constitutionality of the FDPA and the death penalty in general.[353]  This Court did not rule on the motion until after sentencing at which time it rejected all constitutional arguments.[354]  While Petitioner's pre-trial motion, for obvious reasons, did not argue that the death sentence was arbitrarily and unconstitutionally applied to Lee in light of the fact that the more culpable defendant, Kehoe, was sentenced to life, this argument was made on appeal and rejected.  The Eighth Circuit specifically rejected Lee's claim that his death sentence was "arbitrarily imposed in violation of 18 U.S.C. § 3595(c)(1),[355] the Fifth Amendment, and the Eighth Amendment because Kehoe, the more culpable defendant,[356] did not receive the death penalty."[357]  The Eighth Circuit also held that the FDPA does not require "proportional review of sentences."[358]

Claims expressly raised and rejected on appeal may not be relitigated on collateral review.[359]  This Court may not revisit the constitutional issues resolved by the Eighth Circuit.

---

[353] Doc. No. 289.

[354] *See* Order dated June 15, 1999, Doc. No. 854.

[355] This provision of the FDPA required the Eighth Circuit to consider, among other things, "whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor."

[356] This Court, having heard the evidence in the case, agrees that Danny Lee is unquestionably "less culpable" than Chevie Kehoe in relation to the crimes alleged and proven in this case.

[357] *United States v. Lee*, 374 F.3d 637, 652-53 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005).

[358] *Id.* at 653.

[359] *See Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir.), *cert. denied*, 540 U.S. 1094 (2003).

Additionally, to the extent that any constitutional claims were not ruled on by the Eighth Circuit, such claims are foreclosed by existing legal principles.

Petitioner relies generally on *Furman v. Georgia*[360] for the proposition that the Eighth Amendment "will not tolerate the arbitrary and capricious infliction of capital punishment."[361] Underlying Petitioner's argument is the suggestion that a sentence of death is *per se* unconstitutional because of the lack of predictability, *i.e*, the arbitrariness as to who will be sentenced to death and the infrequency with which the federal death penalty is sought and imposed. Petitioner's reliance on *Furman* is misplaced. As the First Circuit has noted:

> In the thirty-four years since *Furman* was decided, the Court has made clear that its decision was not based upon the frequency with which the death penalty was sought or imposed. Rather, the primary emphasis of the Court's death penalty jurisprudence has been the requirement that the discretion exercised by juries be guided so as to limit the potential for arbitrariness.[362]

As the Supreme Court has observed, *Furman* along with *Gregg v. Georgia*,[363] establish that a capital sentencing scheme, to pass constitutional muster, must:

> (1) rationally narrow the class of death-eligible defendants; and
> (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime.[364]

Petitioner does not contend that the FDPA does not satisfy this minimum constitutional threshold. The Court finds no authority in existing law for the proposition that either the FDPA or the death penalty in general are facially unconstitutional.

---

[360] 408 U.S. 238 (1972).

[361] Pet.'s Reply, Doc. No. 1134, at p. 45.

[362] *United States v. Sampson*, 486 F.3d 13, 23 (1st Cir. 2007).

[363] 428 U.S. 153 (1976).

[364] *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006).

FEB 16 2011  180
Appellate Case: 11-1380    Page: 180    Date Filed: 02/17/2011 Entry ID: 3757208

Petitioner also complains that the death penalty is unconstitutional as applied "in light of the life sentence Chevie Kehoe received."[365]  As noted, to the extent this argument was addressed and rejected on direct appeal, it may not be relitigated here.  Additionally, even if the argument is considered on the merits, it must be rejected.

To place this argument in context, there is no question here that the evidence was sufficient to justify the death sentence imposed on Lee.  Lee's death sentence is not out of line or disproportionate when one considers the cold-blooded murders in which he participated.  "The criminal acts with which we are confronted are ugly, vicious, reprehensible acts.  Their sheer brutality cannot and should not be minimized."[366]  Rather, it is the disparity between penalties that this Court finds so troubling.  If Kehoe and Lee had both received death sentences, there would be no need to inquire into the proportionality of the penalties imposed.  But, the Eighth Circuit has resolved this issue adversely to Petitioner and this Court may not revisit it.

Recently, in *United States v. Johnson*,[367] the Eighth Circuit specifically rejected the contention that "the Eighth Amendment requires not only proportionality between a sentence and a particular category of crime, but also proportionality between codefendants' sentences."[368] While Johnson received the death penalty for aiding and abetting her boyfriend in killing four people, a separate jury in a separate trial imposed a life sentence on her boyfriend for committing the same murders.  The Eighth Circuit held that the disparity between the two sentences did not violate the Eighth Amendment.[369]

---

[365]  Pet.'s Supp. Memo., Doc. No. 1144, at p. 1.

[366]  *Furman*, 408 U.S. at 315 (Marshall, J. concurring).

[367]  *United States v. Johnson*, 495 F.3d 951 (8th Cir. 2007).

[368]  *Id*. at 961.

[369]  *Id*. at 960-61.

FEB 16 2011  181
Appellate Case: 11-1380   Page: 181   Date Filed: 02/17/2011 Entry ID: 3757208

Similarly, in *Getsy v. Mitchell*[370] the court considered and rejected the defendant's argument that the Eighth Amendment was violated because the more culpable co-defendant, who masterminded the crime and hired Getsy, received a life sentence while Getsy, who carried out the hit, received the death penalty.[371]  Getsy was constitutionally protected from irrational conviction, the court held, "by the due process requirement that a conviction must be supported by sufficient evidence."[372]

This case is different from *Johnson* and *Getsy* in that the same jury imposed the arguably inconsistent results.  Certainly, Lee's argument would appear to carry more weight.  However, the hallmark of a constitutional capital sentencing scheme is that any decision to impose death must be made following an individualized inquiry.[373]  Lee and Kehoe are different individuals.  Each had his separate penalty phase trial, albeit before the same jury.  Their aggravating and mitigating factors were different.  Can it be said that the jury's decision to find Lee deserving of death, but to spare Kehoe, violated Lee's constitutional rights?

There is obviously an inherent tension in requiring that every death sentence, to pass constitutional muster, be based on an individualized determination as to the suitability of death, but then concluding that constitutional principles are violated because a jury making such determinations finds death suitable for one guilty defendant, but not for another found guilty of the same crime(s).  It is also ironic that while in non-death cases judges at sentencing are admonished to consider the need for the sentence "to avoid unwarranted sentence disparities

---

[370]  495 F.3d 295 (6th Cir. 2007) (en banc).

[371]  *Id*. at 303-04.

[372]  *Id*. at 307.

[373]  *Buchanan v. Angelone*, 522 U.S. 269, 275 (1998).

among defendants . . . who have been found guilty of similar conduct," analogous proportionality considerations appear to be irrelevant in reviewing death cases.[374] Perhaps the Eighth Circuit on appeal will provide more guidance on this important issue.

While this Court, having heard all the evidence at trial, continues to believe it is unfair to impose the death penalty on Lee, but not Kehoe, for the murders of the Muellers, any ruling that Lee's death sentence is <u>unconstitutionally</u> arbitrary, irrational, cruel or unusual in light of the life sentence that the "mastermind" Chevie Kehoe received would qualify as a "new" rule of constitutional criminal law which is foreclosed by *Teague v. Lane*.[375]

Petitioner additionally contends that the FDPA, the federal death penalty in general, and the application of the death penalty in this particular case are unconstitutional because the death penalty is sought and imposed in a racially and regionally discriminatory fashion. First, Petitioner is procedurally barred from his direct constitutional challenge on this basis because he failed to present the claim previously and he has made no effort to show "cause" and "prejudice" to excuse the default.[376] Thus, such claims may be considered solely in the context of his ineffective assistance of counsel claims. Second, no matter the context, the claim fails on the merits as a matter of law.

To support his claims that the death penalty is unconstitutional, Petitioner states that he is prepared to demonstrate racial bias in an evidentiary hearing during which he will show that in the past 18 years the United States has used the federal death penalty to target minority

---

[374] 18 U.S.C. § 3553(a)(6); *Compare Lee*, 374 F.3d at 652-53 (holding that proportional review of capital sentences is not required by the Eighth Amendment or the FDPA).

[375] 489 U.S. 288 (1989). The Court rejects Petitioner's argument that the rule announced in *Teague* does not apply to § 2255 motions based on the theory that such proceedings are not yet final. *See, e.g.*, *United States v. Moss*, 252 F.3d 993, 997-98 (8th Cir. 2001) (applying *Teague* in § 2255 context).

[376] *United States v. Frady*, 456 U.S. 152, 170 (1982).

FEB 16 2011  183
Appellate Case: 11-1380   Page: 183   Date Filed: 02/17/2011 Entry ID: 3757208

defendants "at a rate of 70% or more."[377]   Similarly, Petitioner proposes to demonstrate regional

bias by showing that more than 70% of the federal death verdicts returned in the last 18 years are

from Southern states.  Finally, Petitioner proposes to demonstrate a "white-victim effect,"

although it is less clear what evidence he would offer to support this argument.

The proposed statistical showings as to racial bias, regional bias, and white-victim effect,

assuming they can be made, are insufficient to merit any relief as a matter of law.  The Supreme

Court has made clear that statistical evidence alone can not prove an equal protection violation.

In addition to statistical evidence, Petitioner must also adduce "exceptionally clear proof" that

"the decision makers in *his* case acted with discriminatory purpose."[378]  Petitioner has failed to

proffer any evidence specific to his own case that the decision makers in this case sought to

impose the death penalty on him based at least in part on constitutionally prohibited factors.

It is not that Petitioner's trial counsel failed to make inquiry into whether his race

influenced the Government's decision to proceed with the death.  After the jury returned its death

verdict, Lee's counsel sought to question Deputy Attorney General Holder as to whether race

played any role in the decision to continue to seek death against Lee.  The issue was not fully

developed at the trial court level because it was rendered moot by the Eighth Circuit's reversal of

this Court's decision to allow limited discovery into the death protocol issue.[379]

A showing of discriminatory effect and intent is generally required to justify discovery on

a claim of selective prosecution.[380]  In *United States v. Minerd*,[381] the court rejected the

---

[377]  Reply Brief, Doc. No. 1134, at p. 47.

[378]  *McCleskey v. Kemp*, 481 U.S. 279, 292, 297 (1976) (emphasis in original).

[379]  *See U.S. v. Lee*, 274 F.3d 485 (8th Cir. 2001).

[380]  *See, e.g., United States v. Bass*, 536 U.S. 862 (2002)(reversing Sixth Circuit's opinion allowing discovery into whether race influenced decision to charge defendants with death-eligible offenses).  The Court notes that in the underlying Sixth Circuit opinion, 266 F.3d 532 (2001), the court relied in part on public comments made

defendant's claim that he was selected for prosecution under the FDPA because he was white and the DOJ was attempting to "balance its statistics by selecting more white defendants for death penalty prosecution." Minerd's motion to dismiss the government's death penalty notice was denied in part because he could not produce any evidence that the Attorney General's decision with regard to him was made with discriminatory intent.[382] In any event, Petitioner has produced no evidence that Mr. Holder's decision to proceed with the death penalty was influenced in part by Petitioner's race (or other improper factors) and, therefore, the Court reluctantly concludes that he is not entitled to a hearing on the issue. Petitioner therefore cannot prevail on such claim.[383]

More troubling to the Court is Petitioner's argument that the Government violated his constitutional rights by insisting on proceeding with the death penalty against him after the jury spared Kehoe's life. The Government, apparently acting through Deputy Attorney General Eric Holder, made the decision. Unfortunately, the Court did not learn until too late that a so-called "death penalty protocol" existed or that the Government had failed to follow it.[384] While this Court subsequently ruled that Lee was entitled to a new penalty phase trial based, *inter alia*, on the Government's failure to follow its own protocol, the Eighth Circuit reversed that ruling,

---

by then-Attorney General Reno and then-Deputy Attorney General Holder that they were concerned over racial disparities uncovered by a DOJ survey.

[381] 182 F. Supp. 2d 459, 461 (W.D. Pa. 2002).

[382] *Id*. at 463.

[383] However, it is unclear to the Court how the Petitioner here could produce such evidence without being given the opportunity to inquire into the basis of the DOJ's decision.

[384] Such protocol is found in § 9-10.000 et seq. of the United States Attorney's Manual. It contains procedures for seeking and withdrawing the death penalty notice and includes the requirement that the Attorney General is "the ultimate decisionmaker" on such issues. *See Lee*, 274 F.3d at 488-89 (discussing death penalty protocol).

- 116 -

holding that Lee had no right to enforce compliance with what it described as DOJ's "internal" death penalty protocol.[385]

While much has been said about the DOJ's disregard of its own protocol for making death decisions, little has been said about the fact that the DOJ exercised its prosecutorial discretion in disregard of the recommendation of the local U.S. Attorney and her assistants involved in the case (including lead counsel), the case agents, and even the victims' family that a death sentence should not be pursued against Lee if the jury spared Kehoe's life.  As this Court noted in a letter to the parties shortly after the death verdict was returned:

> Before the jury determined that Mr. Lee should die, all of the attorneys in the case appeared to be of a mind that the death penalty would be inappropriate in the case of Mr. Lee because the jury had failed to sentence Mr. Kehoe to death.  Everyone seemed to be in agreement that the death penalties for both defendants would have been a possible and appropriate outcome, and life without parole for both defendants would have been a possible and appropriate outcome; but no one believed that it would be appropriate to seek the death penalty for Lee if the death penalty had not been imposed upon Mr. Kehoe.  Nevertheless, this is the result that the jury has handed us.[386]

In the eyes of this Court, the DOJ's insistence on continuing to seek the death penalty as to Lee, under the circumstances, casts a pall over the case.  But, is it a taint of constitutional proportion for which a legal remedy exists on collateral review?

Petitioner relies on *United States v. Littrell* [387] to support his position.  In *Littrell,* the district court held that the Government's decision to continue to seek the death penalty against the defendant was unconstitutional.[388]  Littrell was 1 of 40 defendants charged in "the largest

---

[385] *Lee*, 274 F.3d at 492-93.

[386] Court's letter of May 17, 1999 at p. 4; attached as Court Exhibit A to Doc. No. 836.

[387] 478 F. Supp. 2d 1179 (C.D. Cal. 2007).

[388] *Id*. at 1192.

- 117 -

capital murder indictment in American history."[389]  The indictment targeted an Aryan Brotherhood prison gang and alleged 13 murders, 11 attempted murders, and 3 additional conspiracies to murder.[390]  In concluding that the Government's continued intention to seek the death penalty against Littrell was arbitrary and capricious, the court focused on the lack of proportionality between Littrell and the leaders of the organization who had ordered Littrell to kill and several others who had committed "identical crimes" but who would not face a death sentence, either because a jury rejected a death sentence or the Government decided not to seek the death penalty.[391]  The court held that the Government's discretionary decision to continue to attempt to impose a sentence of death on Littrell was "arbitrary and capricious" because "no rational decision-maker" would continue to seek the death penalty under such circumstances.[392]

While this Court may agree with Petitioner that Deputy Attorney General Holder's decision to require the Government to continue to seek the death penalty against Lee was unreasonable, unfair, and possibly even an abuse of prosecutorial discretion, the question is whether that decision violated the Constitution.  The Court concludes that it did not.  *Littrell* is the only case of which the Court is aware where a district court has overruled and stricken a prosecutor's decision to refuse to withdraw its notice of intent to seek the death penalty because more culpable defendants were given life sentences.

Had Petitioner's trial counsel here moved to strike the Government's notice of intent on this basis at trial, the Court, while sympathizing with the result in *Littrell,* concludes that it would

---

[389] *Id.* at 1180.

[390] *Id*. at 1182.

[391] *Id.* at 1192.

[392] *Id*.

FEB 16 2011  187
Appellate Case: 11-1380   Page: 187   Date Filed: 02/17/2011 Entry ID: 3757208

have been obligated to reject such a motion based on separation of powers principles. A prosecutor, as a representative of the Executive Branch, has the discretion to decide charging issues in the absence of constitutionally impermissible motives (such as race).

The Court concludes that Petitioner has failed to prove that the federal death penalty, facially or as applied, is unconstitutional under applicable legal principles as set forth by the Supreme Court and the Eighth Circuit Court of Appeals. Accordingly, Petitioner's ineffective assistance claims and direct claim based on the alleged unconstitutionality of the death penalty are denied. That Petitioner's death sentence is not redressable under existing legal principles does not mean that it constitutes a fair and rational result under the peculiar and special circumstances of this particular case. Perhaps more than anything else, this case illustrates that the most carefully crafted capital punishment regime in the hands of the humans who must carry it out can never be completely free of arbitrariness in all of its implementations.

## CONCLUSION

After considering Petitioner's claims for relief, the record, and the applicable law, the Court concludes that application of existing legal principles requires the denial of any post-conviction relief. Accordingly,

IT IS HEREBY ORDERED THAT Petitioner Daniel Lewis Lee's Motion to Set Aside, Reduce or Vacate Sentence under 28 U.S.C. § 2255 [Doc. No. 1118] be, and it is hereby, DENIED. All claims asserted are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS __28th__ day of August, 2008.

_____
UNITED STATES DISTRICT JUDGE

- 119 -

FEB 16 2011  188

Appellate Case: 11-1380    Page: 188    Date Filed: 02/17/2011 Entry ID: 3757208

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT

v.                                    CASE NO.  4:06-CV-1608 GTE
                                      (Criminal Case No. 4:97-CR-243-02 GTE)

DANIEL LEWIS LEE                                            DEFENDANT/MOVANT

## ORDER DENYING POST-JUDGMENT RELIEF

Currently before this Court is Petitioner's Amended Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) ("Rule 59 motion").[1]  Respondent opposes the motion, contending that it is a successive petition the Eighth Circuit Court of Appeals has not authorized.  Alternatively, Respondent contends that the Rule 59 motion, to the extent it is not successive, is completely lacking in merit.  The issues presented have been fully briefed.  In addition to the Rule 59 motion, the record includes:  Respondent's Response;[2] Petitioner's Reply;[3]  Petitioner's Motion to Supplement the

---

[1] Doc. 1165.  All references to docket entries ("Doc. #") refer to filings in this case, Case No. 4:97-CR-00243 (2) GTE.

[2] Doc. 1170.

[3] Doc. 1172.

1

Appellate Case: 11-1380    Page: 189    Date Filed: 02/17/2011 Entry ID: 3757208

Record;[4] Affidavit of Petitioner Lee;[5] Respondent's Response to Affidavit;[6] and Petitioner's Notice of Additional Authority.[7]

After carefully considering the issues presented, the Court concludes that Petitioner's motion must be **DENIED**.

## I.      Rule 59(e) Motion

"Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (omitting internal quotation marks and additional citation). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* "A Rule 59(e) motion cannot be used to raise arguments which could, and should, have been made before the trial court entered final judgment." *Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir. 1993) (omitting internal quotations); *see also Williams v. Norris*, 461 F.3d 999, 1004 (8th Cir. 2006) (citing *Bannister* and observing that its holding is not weakened by the fact that it is a pre-AEDPA case). Finally, in the habeas context, a Rule 59(e) motion is subject to the well established restrictions on filing successive motions for postconviction relief. *United States v. Lambros*, 404 F.3d 1034, 1036, 1037 (8th Cir. 2005), cert. denied, 516 U.S. 1135 (2005) (affirming the district court's dismissal of petitioner's Rule 59(e) motion as an effort to file a

---

[4]  Doc. 1174.

[5]  Doc. 1178.

[6]  Doc. 1181.

[7]  Doc. 1182.

FEB 16 2011  190

Appellate Case: 11-1380      Page: 190      Date Filed: 02/17/2011 Entry ID: 3757208

successive motion for post-conviction relief, observing that motion "sought ultimately to resurrect the denial of his earlier § 2255 motion").

It seems clear, based on existing case law and despite Petitioner's arguments to the contrary, that a district court should examine a Rule 59(e) motion filed in a § 2255 proceeding preliminarily, just as it would a Rule 60(b) motion, to ensure that it is not a successive petition. And it further seems clear that the substance of the allegations contained in the motion, rather than its caption, controls whether such allegations are deemed successive. See, e.g., *United States v. Nelson*, 465 F.3d 1145, 1149 (10th Cir. 2006) (collecting cases) ("It is the relief sought, not [petitioner's] pleading's title, that determines whether the pleading is a § 2255 motion.").

## II. PETITIONER'S ARGUMENTS

### A. Failure to Have Evidentiary Hearing

Petitioner Lee argues that the Court committed legal error when it denied his § 2255 motion without indulging his request for an evidentiary hearing. Lee further contends that such denial raises to the level of a defect in the integrity of the habeas proceeding within the meaning of *Gonzalez v. Crosby*, 545 U.S. 524 (2005)[8] and may not therefore be considered successive.[9] Although the issue of whether this should be considered a successive argument is not free from doubt,[10] the Court will

---

[8] Assuming *Gonzalez* applies to Rule 59(e) motions in § 2255 proceedings, which Petitioner disputes.

[9] See Petitioner's Reply, Doc. No. 1172, at 14-16.

[10] See, e.g., *In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (per curiam) (holding that Rule 60(b) challenge that district court erred in denying § 2255 motion without an evidentiary hearing necessarily was an attack on court's analysis of the merits and therefore successive).

3

Appellate Case: 11-1380   Page: 191   Date Filed: 02/17/2011 Entry ID: 3757208

address this argument on the merits as Petitioner contends the Court applied the wrong standard in determining whether an evidentiary hearing was warranted.

An evidentiary hearing is required "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. It is appropriate to deny § 2255 relief without a hearing if: (1) petitioner's allegations, if accepted as true, would not entitle petitioner to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (1998). In *Delgado*, the denial of a hearing was affirmed. Delgado's ineffective assistance claims failed on both the performance and prejudice prongs because he "made no showing of what other witnesses were available, how they would have testified, and why such additional evidence would likely have affected the result." *Id.*

The Court was purposefully lenient in permitting the parties to expand the record as they wished before taking up the merits of Petitioner's motion. The Court permitted Petitioner to conduct any and all discovery that he requested prior to ruling on the § 2255 motion. For example, the Court granted Petitioner's request to conduct mitochondrial DNA testing (mtDNA) on a hair sample.[11] Later, in an Order dated May 15, 2008, the Court sought to clarify the record as to one of Petitioner's ineffective assistance allegations. The Court pointed out that the record was unclear as to whether an alleged tape-recorded interview of Gloria Kehoe existed and directed Petitioner to produce the interview referenced, but not produced.[12] Finally, in an Order dated May 22, 2008, the Court

---

[11] See Petitioner's motion, Doc. 1118, at 20 ("This Court has recently approved a request by Movant's present counsel to fund mtDNA testing and arrangements are being made" for such testing).

[12] Order, Doc. 1154.

FEB 16 2011  192

Appellate Case: 11-1380   Page: 192   Date Filed: 02/17/2011 Entry ID: 3757208

provided Petitioner with "one final opportunity to put before the Court additional legal authority or argument in support of the grounds for relief currently before the Court." [13]

The Court considered the entire record, as expanded, in making its ruling. The Court gave Petitioner the benefit of all allegations of fact, that is, the Court assumed that Petitioner could prove the substance of any factual assertion. The Court did not, however, engage in speculation about what witnesses, if called to testify, might have said. Nor did the Court credit Petitioner's conclusions. Because the Court concluded on the basis of all the submissions that Petitioner had failed to establish any legally cognizable basis for post-conviction relief, it declined to have an evidentiary hearing.

Petitioner Lee raises numerous objections to the Court's failure to provide an evidentiary hearing. Petitioner contends that the Court erroneously grafted an "affidavit requirement" onto the standard for obtaining an evidentiary hearing. The Court agrees with Petitioner that there is no such requirement in the Eighth Circuit. That is, affidavits are one way, but not the only way, that a petitioner may present facts to support a claim that his counsel was constitutionally deficient.

Petitioner's obligation, however, is greater than simply placing the Court on notice of claims alleged to merit post-conviction relief. At the time he filed his petition for § 2255 relief, Petitioner was obligated to "specify all the grounds for relief available to the petitioner . . . and state the facts supporting each ground." Rule 2(b) of the Rules Governing Section 2255 Proceedings. "Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing Rule 2(c) of the Rules Governing Section 2254 Proceedings, which is identical to Rule 2(b) of the Rules Governing Section 2255 Cases); *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (also citing Rule 2(c)).

---

[13] Order, Doc. 1156.

FEB 16 2011  193
Appellate Case: 11-1380   Page: 193   Date Filed: 02/17/2011 Entry ID: 3757208

In the context of his ineffective assistance of counsel claims, Petitioner was obliged to state the facts showing both that his counsel's performance was deficient and explaining how such deficiencies prejudiced his defense. Petitioner failed to adequately present facts sufficient to support his ineffective assistance of counsel claims. For example, Petitioner contended that his trial counsel were ineffective in failing to locate, interview, effectively examine or present a total of 19 witnesses. The Court noted in denying § 2255 relief that Petitioner "failed to include supporting affidavits *or other independent support*" in connection with some of these witnesses.[14] Some of Petitioner's contentions were too vague to raise any issue about either his counsel's performance or prejudice as a result thereof. For example, Petitioner identified Peter Langan as a member of the Aryan Republican Army serving a life sentence in federal prison. Petitioner alleged that "efforts should have been made to locate and interview Mr. Langan who was, throughout most of the period leading up to this trial, incarcerated on federal charges."[15] Petitioner made no effort to explain how Langan possessed information relevant to the charges against him or how such information, if presented at trial, could have altered the outcome. Similarly, with respect to numerous other witnesses, Petitioner merely presented conclusory allegations.

The Court's point was simply that it was incumbent upon Petitioner to provide sufficient information about the alleged substance of any omitted testimony to permit the Court to evaluate both the performance and prejudice prongs of the *Strickland* ineffective assistance standard.

---

[14] Order denying§ 2255 relief, Doc. 1163, at 18 (emphasis added). The Court subsequently stated that Petitioner's failure to provide affidavits was an "arguably fatal" omission. This was probably overstated, but in the context of the entire opinion it was or should have been clear that the Court did not reject Petitioner's contentions without a hearing solely because he failed to include affidavits.

[15] Original petition, Doc. 1118, at 14.

6

FEB 16 2011   194

Appellate Case: 11-1380   Page: 194   Date Filed: 02/17/2011   Entry ID: 3757208

*Strickland v. Washington*, 466 U.S. 668 (1984); see also *Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006) (referencing both *Strickland* requirements as necessary to prove ineffective assistance of counsel claims).

In *Paul v. United States*, 534 F.3d 832 (8th Cir. 2008), the Eighth Circuit affirmed the district court's denial of a § 2255 petition in a death penalty case. The district court rejected the petitioner's ineffective assistance claims based on trial counsel's failure to call witnesses to bolster his defense, both at the guilt and sentencing phases. The Government in opposing the motion did not offer an affidavit from petitioner's trial counsel. Instead, it defended counsel's competence by observing that counsel had persuaded the jury to find several mitigating factors and proffering its own strategic reasons defense counsel might have declined to call witnesses. The district court denied § 2255 relief without conducting an evidentiary hearing. The Eighth Circuit affirmed the ruling even though the record on appeal was "not developed concerning counsel's contemporaneous rationale for the actions that [petitioner] now challenges." *Id.*, at 837. *Paul* reaffirms that ineffective assistance claims may be resolved without an evidentiary hearing or even an affidavit from trial counsel where "the record shows conclusively that [petitioner] did not suffer prejudice from what he now alleges was deficient performance by counsel." *Id.* at 838.

The Court did not apply an affidavit requirement in considering whether there was a need for an evidentiary hearing. Rather, it applied well established Eighth Circuit law. See, e.g., *Delgado, supra*, 162 F.3d at 983 (no evidentiary hearing necessary for Petitioner who "made no showing of what other witnesses were available, how they would have testified, and why such additional evidence would likely have affected the result.").

FEB 16 2011   195
Appellate Case: 11-1380     Page: 195     Date Filed: 02/17/2011 Entry ID: 3757208

Petitioner's contention that the Court "never put Mr. Lee on notice that affidavits or other alternative measures would be considered, or imposed any scheduling order requiring that affidavits be submitted" rings hollow. Petitioner's counsel was on notice of the law and pleading requirements for § 2255 motions. The Court specifically advised that it would determine based on the submissions whether an evidentiary hearing was required.[16] Subsequently, the Court directed Petitioner to produce certain information related to Gloria Kehoe because the Court recognized its potential importance. Finally, before ruling, the Court provided Petitioner with yet another opportunity to submit anything he wished in support of his Petition.

Additionally, Petitioner Lee argues the Court also improperly credited the affidavits proffered by counsel. The Court disagrees. The Government obtained and submitted affidavits from defense counsel.[17] Therein, counsel explained why they elected not to call certain witnesses, described matters that they investigated and provided other insights into trial strategies.[18] The Court evaluated all assertions made by both parties to determine whether there was any need for an evidentiary hearing. The Court did not weigh evidence or make credibility findings. There was no need to do so because Petitioner failed to present any facts which, if true, would have entitled him to relief. Petitioner's obligation was to present facts to demonstrate the need for an evidentiary hearing. He failed to do so. Petitioner failed completely to demonstrate that he suffered any prejudice as a result

---

[16] Order dated February 29, 2008, Doc. 1153.

[17] The Government submitted two affidavits, one from an attorney for Petitioner Lee and another from an attorney for co-defendant Chevie Kehoe. See Exhibits C and D to Government's response, doc. 1126.

[18] Because of these affidavits, the record in this case is far more developed than in *Paul*, where the Government defended counsel's trial strategy and no affidavits were tendered.

FEB 16 2011  196

Appellate Case: 11-1380     Page: 196     Date Filed: 02/17/2011 Entry ID: 3757208

of his counsel's alleged deficiencies. There simply were no issues of fact that needed to be resolved in order to dispose of his post-conviction motion. Even without reviewing the affidavits proffered by trial counsel, the Court still would have found no need for an evidentiary hearing.

In support of his Rule 59 motion, Petitioner has attached numerous affidavits, presented in 65 pages. Such affidavits are submitted by: (1) a private investigator, Daniel Clark, regarding his investigation into potential witnesses Faron Lovelace and Jeff Brown; (2) Kevin McNally, an attorney, opining on the jury selection strategy used by defense counsel; (3) Dr. Thomas Ryan, disavowing the use of PCL-R[19] for measuring future dangerousness and psychopathy; (4) John Edens, Ph.D., a licensed psychologist, opining on inappropriateness of using PCL-R to predict future dangerousness; (5) a group of 5 experts opining on the inappropriateness of relying on the PCL-R to predict future dangerousness, allegedly filed with a motion in limine seeking to exclude Dr. Ryan's testimony in another federal capital case;[20] and (6) Russell Stetler, an attorney, outlining deficiencies in defense counsel during the sentencing phase and their failure to develop mitigation evidence.

Petitioner offers no explanation for why such affidavits or other supporting information were not provided to the Court before it ruled on his original motion for § 2255 relief. Had they been, the Court might have determined that an evidentiary hearing was required. However, the Court is

---

[19] The PCL-R refers to the Hare Pscyhopathy Checklist-Revised. "The PCL-R is a 20-item instrument intended to assess traits associated with the construct of psychopathy." See Affidavit of John Edens, at ¶ 5, attached to Rule 59 motion, Doc. No. 1165.

[20] Petitioner contends the affidavits were submitted in support of a motion in limine filed in the case of *United States v. Willis Haynes*, No. PJM-98-0520 (D. Md.) On May 24, 2000.

FEB 16 2011  197

Appellate Case: 11-1380     Page: 197     Date Filed: 02/17/2011 Entry ID: 3757208

foreclosed by existing legal principles from considering the information now, absent permission and direction from the Eighth Circuit to do so.

## B. Ineffective Assistance of Counsel Standard

The Court rejects Petitioner's argument that it applied the wrong standard in resolving his ineffective assistance of counsel claims. Additionally, the Court finds that all other arguments related to such claims are successive.

Petitioner failed, both in his original petition and his Rule 59(e) petition, to make a sufficient showing that absent counsel's deficient conduct there is "a reasonable probability that at least one juror would have struck a different balance." *Wiggins v. Smith*, 539 U.S. 510, 537 (2003) (discussing that prejudice occurred when counsel failed to put into evidence Wiggins' "excruciating life history" during sentencing). Petitioner failed to make a sufficient showing that counsel's actions prejudiced him. He also failed to show what the evidence would have been had counsel completed further investigation or placed certain persons on the witness stand. He failed to show what the testimony would have been, the availability of persons and evidence, or whether the potential witnesses and evidence were credible.

The Court did not apply an incorrect standard. Petitioner simply failed to produce facts sufficient to warrant any relief.

## C. Recanted Testimony of Dr. Ryan

The Court comments specifically on Petitioner's arguments related to Dr. Ryan. Although such contentions should, in the Court's view, be deemed successive, they are also lacking in merit.

Petitioner contends that his counsel was ineffective for failing to fully and adequately object to the psychopathy evidence presented during the cross-examination of defense expert Dr. Mark

FEB 16 2011   198

Appellate Case: 11-1380     Page: 198     Date Filed: 02/17/2011 Entry ID: 3757208

Cunningham. The Government questioned Dr. Cunningham about the fact that Dr. Thomas Ryan, an expert for the prosecution, had concluded that Petitioner was a psychopath based upon his answers to the Hare Psychopathy Checklist-Revised (or PCL-R). Petitioner claims that Dr. Ryan later disavowed the use of the PCL-R in capital cases. Petitioner further claims that "the basis for challenging the use of psychopathy evidence as a valid predictor for further dangerousness existed at least as early as September of 1998"[21]

Lee's original § 2255 Petition included only one sentence referencing this argument. That lone reference appeared in a footnote and read:

> At a hearing, Movant's counsel are prepared to offer evidence that Dr. Ryan, in sworn testimony and affidavits filed after his testimony in this case, has stated that the Hare Psychopathy Checklist is not an appropriate instrument to be utilized in evaluating the future danger of capital defendants and that he no longer stands by such testimony or analysis.[22]

Petitioner now devotes over 25 pages to this argument.[23] Clearly, the theory is much more developed now than the cursory reference made in requesting 2255 relief. Again, Petitioner does not explain why the information he now includes was not included in connection with his original petition. Petitioner's conclusory statement that Dr. Ryan, subsequent to his testimony in this case, stopped using the PCL-R to evaluate future dangerousness was not sufficient to place the Court on notice of the full argument that Petitioner now presents.

However, the claim, even if considered on the merits, is problematic. Dr. Ryan's recently submitted declaration describes how, in the Spring of 2000, he concluded that it was inappropriate

---

[21] Petitioner's Rule 59 motion, Doc. 1165 at 22.

[22] Petitioner's Motion, Doc. 1118 at 34, n. 14.

[23] Petitioner's Rule 56 motion, Doc. 1165 at 19-45.

11

FEB 16 2011   199
Appellate Case: 11-1380     Page: 199     Date Filed: 02/17/2011 Entry ID: 3757208

to rely on the PCL-R to assess the future dangerousness of capital defendants. The jury returned its verdict of death against Petitioner on May 14, 1999. Petitioner has not explained how counsel could have been expected, almost one year before Dr. Ryan himself rejected the PCL-R as an effective predictor of future conduct, to challenge the scientific underpinnings for his testimony.

## III. CONCLUSION

The Court rejects Petitioner's contention that it applied incorrect legal standards or committed error which rises to the level of a defect in the integrity of the federal habeas proceedings. Nor has Petitioner presented anything that would require the Court to revisit a previously asserted claim, such as showing manifest errors of law or fact. The remainder of Petitioner's contentions are successive. They are either reiterations of previous arguments or attempts to introduce new evidence or legal theories which could have been raised prior to the entry of judgment.

The Court is required by the 2009 Amendments to Rule 11(a) of the Rules Governing 2255 Proceedings to "issue or deny a certificate of appealability when it issues a final order adverse to the applicant."[24] After considering the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). The Court therefore declines to grant a certificate of appealability.

For the reasons stated above,

IT IS HEREBY ORDERED THAT Petitioner's Rule 59 motion  (Doc. 1165) be,  and it is hereby, **DENIED.**

---

[24] This rule was not in effect at the time the Court entered Judgment denying Petitioner's § 2255 motion.

FEB 16 2011  200
Appellate Case: 11-1380     Page: 200     Date Filed: 02/17/2011   Entry ID: 3757208

IT IS FURTHER ORDERED that Petitioner is hereby denied a certificate of appealability as to all claims for relief.

IT IS SO ORDERED this 22nd day of December, 2010.

_____
UNITED STATES DISTRICT JUDGE

13

FEB 16 2011  201

Appellate Case: 11-1380     Page: 201     Date Filed: 02/17/2011 Entry ID: 3757208

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


UNITED STATES OF AMERICA                    PLAINTIFF/ RESPONDENT

vs.                      NO: 4:97-CR-00243(02) GTE
                              4:06-CV-1608 GTE

DANIEL LEWIS LEE                            DEFENDANT/MOVANT


NOTICE OF APPEAL

PLEASE TAKE NOTICE that Movant, Daniel Lewis Lee, by his undersigned

counsel, hereby appeals to the United States Court of Appeals for the Eighth Circuit from the

decision of the district court, Hon. G. Thomas Eisele, United States District Judge, denying

a motion brought pursuant to 28 U.S.C. § 2255 to set aside Movant's conviction and sentence

of death.  Movant appeals, as well, the subsequent denial of his motion brought pursuant to

F.R.Civ.P. 59 and the denial of a Certificate of Appealability.

                    Respectfully submitted,


/s/ David A. Ruhnke                     /s/ Laurence E. Komp
Ruhnke & Barrett                        Laurence E. Komp, Attorney at Law
47 Park Street                          P.O. Box 1785
Montclair, New Jersey 07042             Manchester, MO 63011
(973)744-1000                           (636)207–7330
(973)746-1490 (fax)                     (636)207–7351 (fax
davidruhnke@ruhnkeandbarrett.com        lekomp@swbell.net


Filed via ECF:      Little Rock, Arkansas
                    February 14, 2011

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that Movant's counsel have filed this notice of appeal on today's date via ECF, thereby serving the United States and all parties.

/s/ David A. Ruhnke
COUNSEL FOR MOVANT

Dated:          February 14, 2011

U. S. COURT OF APPEALS - EIGHTH CIRCUIT
NOA SUPPLEMENT

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

Please note any additions or deletions to the style of the case from the style listed on the docket sheet (or attach an amended docket she

**2/16/11**

**Case No    4:97cr00243-02 GTE (4:06cv01608GTE)**

**Appellant (s)      Daniel Lewis Lee**

**Appellant's Attorney:      David A Ruhnke; Laurence E Komp**

**Appellee (s):    USA**

**Appellee's Attorney:    Clarence Stripling**

**Court Reporter:    N/A**

**Name of Person who prepared NOA Supplement: Doris Collins - (501) 604-5303**

| Length of Trial (# of days) | Fee Paid? Y/N: | IFP Granted Y/N | IFP Pending |
|---|---|---|---|
| N/A | | Y | |
| | | | |

| Counsel Retained/Appointed/Pro Se/Pro Bono | Pending Post Judgment Motions? Y/N | | |
|---|---|---|---|
| Appointed | Y | | |

**Criminal Cases Only:**
**Is Defendant Incarcerated?   Yes**
**Please List Multiple Defendants: Chevie O'Brien Kehoe; Faron Earl Lovelace; Kirby Keith Kehoe**

**NOTIFICATION TO COUNSEL:**