# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 11-1380

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | Appeal from the United States |
| | ) | District Court for the |
| Appellee, | ) | Eastern District of Arkansas |
| | ) | No. 4:06-cv-1608 GTE |
| vs. | ) | (Crim. Case No. 4:97-CR-243-(2)) |
| | ) | |
| **DANIEL LEWIS LEE**, | ) | Honorable G. Thomas Eisele, Judge |
| | ) | |
| Appellant, | ) | |

## PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

DAVID A. RUHNKE
Ruhnke & Barrett
47 Park Street
Montclair, New Jersey 07042
(973)744-1000; (973)746-1490 (fax)
davidruhnke@ruhnkeandbarrett.com

LAURENCE E. KOMP
P.O. Box 1785
Manchester, MO 63011
(636) 207–7330; (636) 207–7351 (fax)
lekomp@swbell.net

JULIE BRAIN
KARL SCHWARTZ
Delaware Federal Defender Office
Capital Habeas Unit
800 King Street, Suite 200
Wilmington, DE 19801
(302) 442-6545
Julie_brain@fd.org; Karl_schwartz@fd.org

COUNSEL FOR APPELLANT LEE

## Required Statement for Rehearing En Banc

1. Undersigned counsel express a belief, based on reasoned and studied professional judgment, that the Motion Panel's decision is contrary to the following decisions of the United States Supreme Court, and the consideration by the full Court is necessary to secure and maintain uniformity of decisions:

> *Miller-El v. Cockrell*, 537 U.S. 322 (2003)
> *Slack v. McDaniel*, 529 U.S. 473 (2000)
> *Tennard v. Dretke*, 542 U.S. 274 (2004)

2. Undersigned counsel express a belief, based on reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:

   a. Does the issuance of an unexplained almost total blanket denial of a certificate of appealability ("COA") in a capital case conflict in which multiple issues readily satisfy the standard for issuance of a COA with 28 U.S.C. § 2253, F.R.A.P. 22(b) and the Supreme Court's decisions in *Slack* and *Miller-El* by effectively precluding a § 2255 petitioner from seeking any meaningful review in this Court or the United States Supreme Court in his first § 2255 appeal?

**I.     The Panel's Summary Denial Of A COA In This Capital Post-Conviction Proceeding Conflicts With 28 U.S.C. § 2253, F.R.A.P. 22(B) And Decisions In *Slack v. McDaniel* And *Miller-El v. Cockrell*.**

In this capital appeal, the district court below denied Mr. Lee's § 2255 Petition while simultaneously summarily denying a COA.  Doc. 1163.  Mr. Lee filed a Rule 59 Motion.  Doc. 1165.  While the district court denied the Rule 59 Motion, it did grant a COA as to a single issue.  Doc. 1189.

Mr. Lee filed his appeal and moved to expand the COA before this Court, on June 20, 2011.  On November 11, 2011, the Government filed its response.  On February 13, 2012, Mr. Lee filed his reply in support of the COA.  Four days later, on February 17, 2012, this Court granted Mr. Lee's motion on a single claim, while denying it as to every other claim, ruling *in toto*: "Appellant, Daniel Lewis Lee's motion to expand the certificate of appealability is granted as to Lee's claim that he received ineffective assistance of counsel because his trial counsel exercised peremptory challenges based on race and denying the motion as to all other claims."[1]

Mr. Lee seeks reconsideration of this order because, at the very least, he established his entitlement to a COA under the lenient threshold standard articulated by the Supreme Court in *Slack* and *Miller-El* with regard to Mr. Lee's

---

[1] A Motion Panel of this Court had previously granted a COA to Lee's co-defendant, Chevie Kehoe, on a similar claim of racial discrimination in jury selection.  The Government did not oppose expansion of the COA to include this issue in Lee's case.

First, Third, Fourth, Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fourteenth COA requests.

In his COA application, Mr. Lee also argued that because this is a capital case, any doubt regarding whether to issue a COA should be resolved in petitioner's favor. As noted in *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983), "[i]n a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of probable cause . . . ." As a result of this statement, as argued in his COA application, any doubt regarding whether to issue a COA should be resolved in petitioner's favor. *See, e.g.*, *Graves v. Cockrell*, 351 F.3d 143, 150 (5th Cir. 2003); *Valerio v. Crawford*, 306 F.3d 742, 767 (9th Cir. 2002) (*en banc*); *Jermyn v. Horn*, 266 F.3d 257, 279 n.7 (3rd Cir. 2001).

The Motion Panel's unexplained, blanket denial of a COA does not comport with the standards required by statute and settled case law. As the Supreme Court noted in *Miller-El*: "the COA determination under Sec. 2253(c) requires an *overview* of the claims in the habeas petition and *a general assessment* of their merits." 537 U.S. at 336 (emphasis added). In *Miller-El*, the Supreme Court reversed the Fifth Circuit because it had "side-stepped" the appropriate procedure. *Id*. at 336.

In *Slack*, the Supreme Court stated: "The COA statute establishes procedural rules and *requires* a threshold inquiry into whether the circuit court may

entertain an appeal." *Slack*, 529 U.S. at 482 (emphasis added); *see also Hohn v. United States*, 524 U.S. 236, 248 (1998). In *Tennard v. Dretke*, 542 U.S. 274, 283 (2004), the Supreme Court again reversed the Fifth Circuit for "paying lip-service" to the COA standard, and remanded the case for further proceedings.

Rehearing is warranted because the Motion Panel failed to conduct the reasoned threshold inquiry required by the statute, the federal rules, the Supreme Court and the examples set by other circuits. *See Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (remanding COA to district court because its "blanket denial" did not comport with Rule 22(b)(1)); *Porterfield v. Bell*, 258 F.3d 484, 485-487 (6th Cir. 2001) (same); *Porter v. Gramley*, 112 F.3d 1308, 1311 (7th Cir. 1997) (noting in procedural history it had previously remanded the case to comport with 22(b)(1)). Although this Court has never issued any published decision disapproving of blanket denials of a COA, the Court has criticized a district court's blanket grant of a certificate of probable cause. *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

For the foregoing reasons, Mr. Lee respectfully requests that this Court grant rehearing by the panel, vacate its February 17, 2012, order and expand the COA to include Mr. Lee's First, Third, Fourth, Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fourteenth COA requests. Alternatively, rehearing *en banc* is

warranted to allow this Court to refine its COA practices to comport with Supreme Court precedent and the approaches taken by other circuit courts of appeal.

**II.     The Panel Clearly Erred In Denying A COA On The Claims Below.**

Rehearing is warranted because Mr. Lee's First, Third, Fourth, Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, and Fourteenth COA requests clearly meet the lenient threshold test of *Miller-El*.

**A.**     Mr. Lee's First COA request relates to trial counsel's failure to request mitochondrial DNA ("mtDNA") testing that exculpated Mr. Lee and rebutted the Government's theory as presented at trial. COA Mtn. at 9-15; COA Reply at 5-8.  The Government found a hair in a cap that the Government argued was worn during the Mueller murders and matched Mr. Lee's hair.  The Government referred to it in closing argument more than once, assuring the jury that "the evidence establishes that that was Danny Lee's hair," Tr. 7000-01, and later reminding them that the "government . . . [has] Danny's hair," Tr. 7005. Indeed this Court specifically noted the hair evidence in its opinion on direct appeal.  *United States v. Lee*, 374 F.3d 637, 643 (8th Cir. 2004).

The hair, however, was not Mr. Lee's.  Testing performed during the course of the § 2255 proceeding conclusively *excluded* Mr. Lee as a source of the hair found in the raid cap.  As a result of trial counsel's unreasonable failure to conduct MtDNA testing available at the time of trial, the jury was utterly misinformed

4

regarding a crucially important piece of evidence.  Because trial counsel failed to request testing which exculpates their client, there is at least a colorable claim of ineffective assistance.  Mr. Lee's case is similar to *Miller v. Anderson*, 255 F.3d 455 (7th Cir. 2001), where the Seventh Circuit granted relief in analogous circumstances concerning the misidentification of hair, and in other cases where trial counsel failed to secure experts that would have undermined the government's case.  *See, e.g.*, *Dugas v. Coplan*, 428 F.3d 317, 329-330 (1st Cir. 2005); *Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005); *Gersten v. Senkowski,* 426 F.3d 588 (2d Cir. 2005); *Soffar v. Dretke,* 368 F.3d 441 (5th Cir. 2004).

It is noteworthy that the jury rejected much of the Government's case, finding the Government's proof lacking on numerous racketeering acts, including an additional murder with which only co-defendant Chevie Kehoe was charged.  In short, the Government's case against Mr. Lee primarily consisted of circumstantial evidence of Mr. Lee's later possession of property belonging to the Muellers, which failed to establish his participation in the murders as opposed to his subsequent association with stolen goods.  The "proof" of a match between the hair in the raid cap and Mr. Lee's hair therefore provided much-needed corroboration of the Government's case, which was otherwise dependent upon the testimony of witnesses who recounted statements allegedly made by Mr. Lee and his co-defendant about the crime.  For its part, the defense called a series of reliable

witnesses who provided evidence that the Muellers were still alive long after the Government theorized the crime had been committed. The evidence against Mr. Lee was thus far from overwhelming, and the prejudice he suffered from the false claim that his hair was in the raid cap was substantial. Indeed, the hair – which the government claimed was direct scientific evidence of Mr. Lee's involvement in the murders – may have carried the day. Given the above authority supporting the merits of this claim in analogous factual circumstances and the unique circumstances regarding the significance of the hair to the Government's proof, rehearing should be granted and a COA should issue as to this argument.

**B.** Mr. Lee's Third COA request relates to trial counsel's failure at the guilt phase to object to, and seek rescission of, the district court's order forbidding them from meaningfully discussing the case with their client. COA Mtn. at 22-28; COA Reply at 8-12. The order was entered by the court at the Government's request based upon three letters, written by Lee and intercepted by jail personnel, that the government claimed contained threats against witness Sean Haines. The restrictions upon Mr. Lee's counsel, imposed during a hearing at which Mr. Lee was represented only by an attorney who did not object and had, unbeknownst to Mr. Lee, already accepted employment with the same United States Attorney's Office seeking his death, was in effect throughout the pretrial and trial proceedings.

6

The district court was openly skeptical about the wisdom of its decision as it was rendered, expressly noting that it "will be amenable to motions by [defense counsel] for any modification later on. But this seems to be the appropriate thing to do at this point. And then we can see how it works in the future." 11/18/98 Tr. at 14. And the district court later found that the letters contained no threats whatsoever. *Lee*, No. 4:97-CR-00243-GTE [Doc. 553] (noting that "the communications merely informed others of Mr. Haines work with the Government in this case"). Even after this finding, trial counsel did nothing and the draconian and unnecessary restriction upon Mr. Lee's ability to assist counsel in his defense thus remained in place for the remainder of the case. This presents a colorable claim as to whether Mr. Lee was denied his right to counsel and to meaningfully consult with counsel. *See Geders v. United States*, 425 U.S. 80, 91 (1976). *Cf. Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) (holding that counsel has a duty to consult with client regarding possibility of appeal); *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 808 (9th Cir. 2003) (The capacity to communicate with counsel is "a cornerstone of due process at trial").

Further, where counsel's omissions resulted in structural error, prejudice is presumed. *See McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998) (holding that prejudice is presumed from counsel's failure to inform defendant that he had a right to jury trial). A structural error is one that "call[s] into question the very

7

accuracy and reliability of the trial process and thus [is] not amenable to harmless error analysis." *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).

Counsel's failures constituted ineffective assistance of counsel in violation of Mr. Lee's constitutional rights.  Thus, rehearing should be granted and a COA should issue as to this argument.

**C.**    Mr. Lee's Seventh COA request alleges that both his trial and direct appeal counsel were constitutionally ineffective for failing to challenge a penalty phase instruction that erroneously informed the jury that a sentence of less than life was a possibility if the jury could not agree on a sentence of death or of life without possibility of release, when in fact the court was required in that situation to sentence Mr. Lee to life without possibility of release and had no authority under any circumstances to impose a lesser penalty.  COA Mtn. at 62-70; COA Reply at 20-24.  The district court denied relief on this claim based upon a finding that "[t]he Court did not erroneously instruct the jury on the issue of potential punishment, as it clearly stated that it would impose a sentence of life imprisonment or a sentence of life imprisonment without possibility of release, as required by law." [Doc. 1163 at 82.]  This finding is insupportable – it is precisely *because* the court instructed the jury that it would impose a sentence of life imprisonment *or* a sentence of life imprisonment without possibility of release that the instruction was inaccurate and unconstitutional.  Stated as it was in the

disjunctive, the court's instruction erroneously suggested that a sentence of life imprisonment *with* the possibility of release was a potential sentencing option if the jury did not return a death sentence.  Mtn. at 62-66.  Mr. Lee's death sentence was therefore based upon inaccurate and prejudicially misleading sentencing information in violation of *Townsend v. Burke*, 334 U.S. 736, 741 (1948), *Simmons v. South Carolina*, 512 U.S. 154, 158 (1994), *Gregg v. Georgia*, 428 U.S. 153, 190 (1976), and *Johnson v. Mississippi*, 486 U.S. 578, 585-87, 590 (1988).

In its Response before the Motion Panel, the Government did not attempt to defend the basis for the district court's ruling, arguing instead that Mr. Lee cannot show that he was prejudiced by the instruction because it "could just as easily have caused jurors to compromise on a sentence of life imprisonment without possibility of parole" as a sentence of death.  Resp. at 68.   Obviously, it did not:  Mr. Lee was sentenced to death.  And there are particular factual circumstances in this case that demonstrate  that the erroneous instruction played a role: 1) the co-defendant and more culpable actor had received a life without parole sentence from this same jury; 2) the jury had indicated that there was a holdout juror during penalty phase deliberations, who was ultimately convinced to vote for death (*see* Tr. 7998); and, 3) the Government had presented evidence of alleged future dangerousness via cross examination of Mr. Lee's expert.  Thus, rehearing should be granted and a COA should issue as to this argument.

**D.**     Mr. Lee's Eighth COA request alleges his trial counsel were constitutionally ineffective for failing to adequately challenge the government's misleading evidence that Mr. Lee was a violent psychopath who was likely to continue to be dangerous in the future.  COA Mtn. at 70-90; COA Reply at 25-28. Via the cross-examination of a defense expert and the testimony of its own expert, the Government successfully interjected the Hare PCL-R psycopathy scales administered by Dr. Ryan and their alleged implications for future dangerousness evidence in the community.  *See* Tr. 7745, 7825-7827.  This evidence was highly prejudicial and the overwhelming weight of legal authority and the scientific community reject its validity and reliability.  Indeed, Mr. Lee is the only individual on federal death row where this evidence was admitted; all others have obtained relief.

Because trial counsel failed to adequately challenge the Government's misleading evidence, there is at least a colorable claim of ineffective assistance on the merits.  Mr. Lee's case stands in stark contrast to *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000), *United States v. Sampson*, 335 F. Supp. 2d 217 (D. Mass. 2004), *United States v. Taylor*, 320 F. Supp. 2d 790 (N.D. Ind. 2004), *United States v. Stitt*, 369 F. Supp. 2d 679, 699-700 (E.D. Va. 2005), *United States v. Williams*, 731 F. Supp. 2d 1012 (D. Haw. 2010), where the courts granted relief on the basis of improper use of the PCL-R or excluded it all together from federal

10

capital trials. Further, numerous cases require any future dangerousness evidence to be restricted to the potential for violence in the prison setting and not in the community. *See, e.g.*, *United States v. Duncan*, 2008 WL 711603 at *11 (D. Idaho); *United States v. Rodriguez*, 2006 WL 487117 at *5 (N. D. N.) (collecting cases); *United States v. Sablan*, 555 F. Supp. 2d 1177, 1185-86 (D. Colo. 2006). Thus, rehearing should be granted and a COA should issue as to this argument.

**E.** Mr. Lee's Ninth COA request alleges both his trial and appellate counsel were constitutionally ineffective for failing to adequately challenge the pecuniary gain aggravating factor. COA Mtn. at 90-96; COA Reply at 28-30. As explained in *United States v. Bolden*, 545 F.3d 609, 615 (8th Cir. 2008), the pecuniary gain aggravating circumstance applies "only 'where pecuniary gain is expected to follow as a direct result of the murder," as opposed to the underlying felony. *Id.* (quoting *United States v. Bernard*, 299 F.3d 467, 483 (5th Cir. 2002)). Mr. Lee's case is analogous to *Bernard*, 299 F.3d 467, where the Fifth Circuit found the pecuniary gain aggravator to be inapplicable where the defendants carjacked the decedents, put them in the trunk of their car, and used their ATM cards to attempt to withdraw money at various locations. *Id.* at 472. After several hours, the defendants shot both decedents and set the car on fire to eliminate witnesses. *Id.* at 472-73.

Further, while Mr. Lee's direct appeal was pending, a closely analogous issue regarding the applicability of the pecuniary gain aggravator was being litigated before this very Court in *United States v. Allen*, 357 F.3d 745, 750-51 (8th Cir. 2004), *vacated on other grounds*, 406 F.3d 940 (2005) (*en banc*). Thus, the legal issue was clearly known and being litigated by reasonable counsel. Given the authority supporting Mr. Lee's claim including from this Court, rehearing should be granted and a COA should issue as to this argument.

**F.**     Mr. Lee's Tenth and Twelfth COA requests allege that both his trial and appellate counsel were constitutionally ineffective for failing to challenge an inapplicable multiple murder aggravating factor. COA Mtn. at 96-97; COA Reply at 30-32. There is no dispute that Mr. Lee's jury considered an inapplicable aggravating factor; the multiple murder factor was not enacted until three months after the murders allegedly occurred. *See* 18 U.S.C. 3592(c)(16). The submission of that factor to Mr. Lee's jury therefore violated the Ex Post Facto Clause. *United States v. Higgs*, 353 F.3d 281, 300-301 (4th Cir. 2003).

Because the pecuniary gain aggravator was itself invalid on the facts of this case, the prejudice to Mr. Lee from the concededly erroneous submission of the multiple murder aggravator becomes manifest – there was no valid aggravating circumstance with respect to the adult victims, and Mr. Lee was ineligible for the death sentence for those crimes. As to the child victim, it is more than reasonably

likely that the jury's analysis regarding whether to impose a death sentence for this crime would have been dramatically different had it imposed a sentence of life without possibility of release for the murders of the two adult victims, given that it was the government's theory at trial that it was co-defendant Chevie Kehoe who killed the child Sarah Powell after Mr. Lee refused to do so. *See* Tr. 4974, 5328. Rehearing should be granted and a COA should issue as to this argument.

**G.** Mr. Lee's Thirteenth COA request alleges that both his trial counsel were constitutionally ineffective for failing to move to quash the indictment on the ground that it failed to allege the two statutory aggravating factors submitted to Mr. Lee's jury for the two adult victims. COA Mtn. at 117-124; COA Reply at 41-46. Because the existence of a statutory aggravating factor determines a defendant's eligibility for the death penalty, the Fifth Amendment to the United States Constitution requires that statutory aggravating factors be charged in the indictment. *United States v. Allen,* 406 F.3d 940, 942 (8th Cir. 2005) (requiring, pursuant to the Fifth Amendment indictment clause, that "capital aggravating factors [] be found by the grand jury and included in the indictment").

This requirement applies retroactively to the instant case, because this case was still pending on direct review when *Ring* was decided. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Mr. Lee's indictment, which did not include the statutory aggravating factors alleged by the Government, failed to fulfill this

13

requirement and was thus invalid, and trial counsel should have moved to quash. Given the authority supporting Mr. Lee's claim, rehearing should be granted and a COA should issue as to this argument.

**H.** Mr. Lee's Fourteenth COA request alleges that the district court incorrectly refused to consider the affidavits attached to Mr. Lee's Motion to Alter and Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) and erroneously denying the Motion as a result. COA Mtn. at 124-132; COA Reply at 30-32. In denying the Rule 59 Motion, the court relied on a gross distortion of the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), whose scope and applicability was restricted to motions filed pursuant to Rule 60(b), not Rule 59(e).

Mr. Lee's Rule 59(e) Motion did not raise any new legal claims – each of the claims argued in his Rule 59(e) Motion are in the § 2255 motion itself. The purpose of Rule 59(e) is to provide district courts the opportunity to correct significant errors of fact or law that are brought to their immediate attention, and thus spare the parties and appellate courts the burden of unnecessary appeals. *See, e.g.*, *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986). The plain language of subsection (c) of Rule 59 contemplates the filing of affidavits with the motion. *See* Rule 59(c) ("Time to Serve Affidavits"). Mr. Lee's submission of his affidavits was therefore fully in compliance with the dictates of Rule 59. Given the colorable

14

nature of Mr. Lee's claim, rehearing should be granted and a COA should issue as to this argument.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, rehearing by the Panel or rehearing *en banc* should be granted.

Respectfully submitted,

/s/ David A. Ruhnke
Ruhnke & Barrett

-and-

/s/ Laurence E. Komp
Laurence E. Komp
Attorney at Law

-and-

/s/ Julie Brain
Julie Brain
Karl Schwartz
Delaware Federal Defender Office
Capital Habeas Unit

COUNSEL FOR APPELLANT LEE

## **CERTIFICATE OF SERVICE**

Appellant's counsel have filed this Petition for Rehearing and Suggestion for Rehearing *En Banc* on today's date via ECF, thereby serving the United States and all parties.

/s/ Laurence E. Komp
COUNSEL FOR APPELLANT

Electronically filed:        St. Louis, Missouri        March 2, 2012