# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
No. 11-1380

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | Appeal from the United States |
| | ) | District Court for the |
| Respondent-Appellee, | ) | Eastern District of Arkansas |
| | ) | No. 4:97-cr-00243-JLH-2 |
| vs. | ) | |
| | ) | |
| **DANIEL LEWIS LEE**, | ) | |
| | ) | Hon. G. Thomas Eisele, Judge |
| Petitioner-Appellant. | ) | |

## MOTION FOR STAY OF APPELLATE PROCEEDINGS PENDING DISTRICT COURT RESOLUTION OF MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1

Daniel Lewis Lee, through undersigned counsel, moves this Court for a temporary stay of his appellate proceedings, specifically to stay consideration of his Petition for Rehearing, filed this date. On this date Mr. Lee has filed a Rule 60(b) motion in the district court seeking to reopen the judgment in his case. Contemporaneously, Mr. Lee requested that the district court issue an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 informing this Court (as contemplated by Federal Rule of Appellate Procedure 12.1) that the Rule 60(b) motion raises a substantial issue. Because the disposition of the Rule 60(b) motion could set aside a previously-imposed procedural bar in Mr. Lee's case that prevented this Court and the district court from fully reviewing the merits of his case, Mr. Lee respectfully suggests that judicial economy would best be served by

1

Appellate Case: 11-1380   Page: 1   Date Filed: 09/27/2013 Entry ID: 4080430

first allowing the district judge to issue an indicative ruling under FRCP 62.1.  Mr. Lee, therefore, respectfully requests that this Court stay his currently-pending appellate proceedings to allow the district court an opportunity to examine the issue in the first instance and promptly issue a Rule 62.1 ruling.  In support of this motion, Mr. Lee states the following:

**I.    THIS COURT WAS PRECLUDED FROM CONSIDERING THE FULL MERITS OF MR. LEE'S INEFFECTIVE ASSISTANCE OF TRIAL CLAIM BECAUSE THE INEFFECTIVENESS OF BOTH HIS TRIAL LAWYERS AND HIS § 2255 COUNSEL CREATED A DEFAULT.**

Mr. Lee was sentenced to death based, in significant part, on unreliable evidence of psychopathy which compelled the jury to reject a life sentence and find that Mr. Lee would be a future danger.  There is no dispute within the scientific community that any suggestion that this evidence is predictive of future dangerousness is utterly false, and that a challenge to its reliability was available at the time of Mr. Lee's trial. Although this Court has reviewed claims tangentially related to the present one, no court has addressed the merits of the current claim: that Mr. Lee's trial lawyers failed to demonstrate the unreliability and invalidity of the Psychopathy Checklist Revised (PCL-R) as a predictive instrument for an individual's future dangerousness in prison and subsequently preclude its use in Mr. Lee's case.  By failing to properly challenge that evidence, Mr. Lee's trial lawyers not only permitted the jury to base its decision on demonstrably false

2

evidence but they also unreasonably allowed it to shape the contour and breadth of their own mitigation investigation and presentation.

On direct review of Mr. Lee's case, this Court was asked to determine whether the **admission** of the psychopathy evidence was erroneous and, if so, whether it prejudiced Mr. Lee. *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2002). This Court concluded that Mr. Lee's "potential psychopathy was probative of his future dangerousness" and was, therefore, not erroneously admitted. *Id*. Because the trial court's **evidentiary** ruling was not erroneous, this Court found a new trial was not required. Mr. Lee's appellate counsel, however, did not challenge the reliability of the PCL-R as a valid means of determining future dangerousness in prison. Therefore, this Court had no reason to question the probative value of the evidence. After all, neither trial nor appellate counsel ever questioned whether the evidence was, in fact, probative of future dangerousness; they merely argued that the evidence was outside the scope of the defense expert's direct examination at the sentencing trial.

Mr. Lee fared little better in post-conviction. Mr. Lee's court-appointed § 2255 counsel raised the issue in post-conviction pleadings but failed to adequately plead the claim, leading the district court judge to deem the issue "foreclosed," preventing that Court and this Court from examining the full merits of the claim.

The district court recognized the potential merit of Mr. Lee's claim and

3

explicitly stated that further fact development could likely have been necessary had § 2255 counsel pled facts sufficient to support the claim; however, the court concluded that Mr. Lee's § 2255 counsel had failed, in the first instance, to meet the basic standard of pleading, and noted that "[p]etitioner failed to adequately present facts sufficient to support his ineffective assistance of counsel claims." *U.S. v. Lee*, 2010 WL 5347174. at *3. The district court was "purposefully lenient in permitting the parties to expand the record as they wished" and even helpfully pointed out potential pleading deficiencies in certain claims. *Id*. at *2. In an order dated May 22, 2008, the district judge gave § 2255 counsel "one final opportunity to put before the Court additional legal authority or argument in support of the grounds for relief…" *Id*. Yet § 2255 counsel still "failed to include supporting affidavits or *other independent support.*" *Id* at *3 (emphasis in original). As the district court made clear, "[p]etitioner's counsel was on notice of the law and pleading requirements for § 2255 motions" yet they failed to comply. *Id*. at * 4.

In a subsequently filed motion for reconsideration, § 2255 counsel presented the district court with numerous declarations in support of the ineffectiveness claim. However, because they were not timely presented, the district judge—while acknowledging the potential merit of the claim—foreclosed review of that evidence. *See id.* at *5 ("Petitioner offers no explanation for why such affidavits or other supporting information were not provided to the Court before it ruled on his

4

Appellate Case: 11-1380     Page: 4     Date Filed: 09/27/2013 Entry ID: 4080430

original motion for § 2255 relief. **Had they been, the Court might have determined that an evidentiary hearing was required**. However, the Court is foreclosed by existing legal principles from considering the information now, absent permission and direction from the Eighth Circuit to do so.") (emphasis added). The record makes plain that the sole reason the district court did not review the affidavits and other supporting information – and, consequently, did not conduct a full merits review of the underlying IATC claim based on these affidavits and other supporting information – was due to a procedural default; namely, § 2255 counsel's failure to timely provide this information to the court. Post-conviction counsel had no strategic reason for that failure. *See* Declarations of Ruhnke and Komp (attached as Exhibit 1 & 2).

As a result, Mr. Lee sits today on federal death row without ever having a single judge evaluate the full merits of his ineffective assistance of trial counsel (IATC) claim, a claim that indisputably establishes that he was sentenced to death on the basis of unreliable and scientifically invalid evidence.[1]

---

[1] In the recent decision on Mr. Lee's § 2255 proceedings, this Court noted that Mr. Lee had raised this issue in a certificate of appealability (COA) that was denied. *United States v. Lee*, 715 F.3d 215, 224 (8th Cir. 2013). The COA was denied, however, on a record which the district court found to be devoid of any facts sufficient to support the claim. *United States v. Lee*, 2010 WL 5347174. at *3. This Court also noted, in *dicta*, that the direct appeal opinion had determined that the evidence was not unfairly prejudicial and therefore was properly considered as an aggravating factor. *Lee,* 715 F.3d at 224. The direct appeal opinion, however,

5

**II. THE SUPREME COURT'S RECENT DECISION IN TREVINO NOW CREATES THE OPPORTUNITY FOR MERITS REVIEW OF MR. LEE'S CLAIM.**

In *Trevino v. Thaler*, 569 U.S. __, 133 S. Ct. 1911 (2013), the Supreme

Court clarified its decision last term in *Martinez v. Ryan*, 566 U.S. 1 (2012), that

ineffective assistance of post-conviction counsel may excuse procedural default of

an underlying ineffective assistance of trial counsel claim if post-conviction

counsel defaulted the underlying IATC claim in an "initial-review collateral

proceeding." *See Martinez*, 566 U.S. at __ (slip op., at 15). When the Supreme

Court decided *Martinez*, this rule applied only in jurisdictions where habeas

petitioners were prohibited from raising IATC claims on direct appeal or in post-

verdict trial motions, and instead were required to raise such claims exclusively in

an initial-review collateral proceeding. In such jurisdictions, the Court reasoned

_____

resolved only an evidentiary issue, i.e., assuming the reliability of the evidence, whether the fact that its introduction was beyond the scope of direct examination was unduly prejudicial to Mr. Lee. *See United States v. Lee*, 274 F.3d 485, 495 (2001) (holding that "[s]ince the [trial] court's *evidentiary rulings* in respect to Dr. Cunningham's testimony were not erroneous," a new trial was not required) (emphasis added). This Court's prior opinion assumed it to be true that the PCL-R was probative of future dangerousness. *Id.* at 495 ("Lee's potential psychopathy was probative of his future dangerousness[.]"). It is that very assumption, however, which has never been reviewed by any court and that is the basis of the IATC claim. The IATC claim on which § 2255 counsel committed the default, and which therefore has never been fully considered on the merits, will demonstrate that the PCL-R evidence introduced against Mr. Lee was unreliable, scientifically invalid, and not probative of future dangerousness in prison.

6

that because the State required that initial review of an IATC claim be conducted only in collateral proceedings, a lawyer's failure to raise an IATC claim during initial-review collateral proceedings would necessarily deprive a defendant of any review of that claim at all.

The rule announced in *Martinez* – that procedural default of a substantial claim of IATC can be excused by habeas counsel's ineffective assistance – only applied in jurisdictions such as the one at issue in Arizona, where state law *required* that IATC claims be raised in an initial-review collateral proceeding. Prior to *Trevino*, circuit courts held that if a jurisdiction permitted IATC claims to be raised on direct appeal, habeas counsel's failure to raise such a claim could not be excused. As the Fifth Circuit held in a decision issued prior to *Trevino*, because Texas did not establish an absolute prohibition on raising such claims on direct appeal, Texas petitioners were not entitled to the benefit of *Martinez* for their defaulted IATC claims. *Ibarra v. Thaler*, 687 F.3d 222, 227 (5th Cir. 2012).

In *Trevino,* however, the Supreme Court held that because "[t]he structure and design of the Texas system, in actual operation . . . make it virtually impossible for an ineffective assistance claim to be presented on direct review," *Martinez* applies "in this procedural regime." *Id.* (slip op., at 2) (internal quotation marks omitted). As explained further below, *Martinez* applies in § 2255 proceedings for the same reasons the Supreme Court has now held that it applies in Texas and other

7

jurisdictions that lack an explicit requirement that IATC must first be raised on collateral review.

The Court explained in *Trevino* that jurisdictions often have good reasons for initially reviewing IATC claims in collateral proceedings rather than on direct appeal. Those reasons include: the need for new attorneys to raise IATC claims; the fact that such claims depend on evidence outside the trial record; and because development of the extra-record evidence on direct appeal might "run afoul of abbreviated deadlines, depriving the new attorney of adequate time to investigate the ineffective-assistance claim." *Trevino*, 569 U.S. ___ (slip op., at 7) (citing *Martinez* slip op., at 10, internal quotation marks omitted).

The Court went on to describe the features of Texas' post-conviction procedure that require *Martinez* to apply there. First, Texas' procedure makes it "virtually impossible" for appellate counsel to raise IATC claims on direct review. *See Trevino*, 569 U.S. at ___ (slip op., at 8) (internal quotation marks omitted). This is because the nature of IATC claims means that the "trial court record will often fail to contain the information necessary to substantiate the claim." *Trevino*, 569 U.S. at ___ (slip op., at 9) (quoting *Ex Parte Torres*, 943 S.W.2d 469, 475 (1997) (*en banc*), internal quotation marks omitted)). Thus, IATC claims are best reserved for habeas litigation rather than direct review because state collateral proceedings are "essential to gathering the facts necessary to evaluate ineffective

8

assistance of trial counsel claims." *Trevino*, 569 U.S. at ___ (slip op., at 9) (internal quotation marks, citations, and punctuation omitted).

The Supreme Court further explained that motions for a new trial are inadequate for developing IATC claims because of time constraints as well as the fact that the trial transcript often is not completed before motions for a new trial must be filed. *See Trevino*, 569 U.S. at ___ (slip op., at 9). The Court also noted that Texas courts have "in effect . . . directed defendants to raise claims of ineffective assistance of trial counsel on collateral review rather than on direct review." *Id.* (slip op., at 11). Finally, in providing direction to lower courts, the Court then concluded that in jurisdictions where "the procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies[.]" *Trevino*, 569 U.S. at ___ (slip op., at 14). The federal system is just such a jurisdiction.

Much like the procedural framework at issue in Texas, federal law does not prohibit defendants from raising IATC claims on direct review. *See, e.g., United States v. Darling*, 2013 WL 195584 (2d Cir. 2013) (deciding IATC claim on direct appeal); *United States v. Jackson*, 2013 WL 2451093 (4th Cir. 2013) (same). That said, it is highly unlikely in the typical federal case that a defendant will have a

9

Appellate Case: 11-1380     Page: 9     Date Filed: 09/27/2013 Entry ID: 4080430

meaningful opportunity to raise an IATC claim, for the very reason identified in *Trevino*: claims regarding trial counsel's ineffectiveness necessitate the gathering of extra-record facts, so the existing trial court record will often fail to contain the information necessary to substantiate the claim.

As the Supreme Court made plain in *Massaro v. United States*, 538 U.S. 500 (2003), § 2255 litigation is the first practicable and desirable opportunity for federal convicts challenging the constitutionality of their convictions or sentences to challenge the performance of their trial counsel. *See id.* at 504-05 ("Under the rule we adopt today, ineffective-assistance claims *ordinarily* will be litigated in the first instance in district court, the forum best suited for developing the facts necessary to determining the adequacy of representation during an entire trial.") (emphasis added). In describing why § 2255 is preferable to direct appeal for litigants to raise and courts to consider IATC claims, the Court was clear that federal post-conviction litigation's structure, design, and operation make habeas, rather than direct appeal, the most practical forum for challenging trial counsel's ineffectiveness.

The Court explained that the trial record, which is the basis for direct appeals claims, will not reflect all the facts relevant to evaluating whether trial counsel's performance violated *Strickland v. Washington*, 466 U.S. 668 (1984). *See Massaro*, 538 U.S. at 504-05 ("In light of the way our system has developed,

10

in most cases, a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on the trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose."); *see id.* at 506-07 ("Even meritorious [IATC] claims would fail when brought on direct appeal if the trial record were inadequate to support them. Appellate courts would waste time and resources attempting to address some claims that were meritless and other claims that, though colorable, would be handled more efficiently if addressed in the first instance by the district court on collateral review."). The Court thereby made clear that the operation of federal post-conviction litigation made § 2255 not only the ordinary but the preferred time to challenge the effectiveness of trial counsel's performance.

Before *Trevino*, if § 2255 counsel failed in any respect to raise or properly plead a claim, the post-conviction courts nearly always forever lost the opportunity to review that claim, no matter its merit or strength. The recent decision in *Trevino*, addresses this concern (first discussed and addressed in *Martinez*) by providing an opportunity for review of § 2255 counsel's performance to determine whether their ineffectiveness excuses the failure to properly plead the underlying IATC claim. In fact, unlike in § 2254 proceedings where a petitioner obtains state court review of

his claim before seeking federal review, § 2255 litigants have only one forum, the federal district court, in which to develop and plead all the facts supporting their post-conviction claims for relief. As such, *Trevino* should apply with even greater force in § 2255 proceedings, because the district court litigation is not only the "initial-review collateral proceeding," described in *Trevino*, it is the *only*-review collateral proceeding. In addition, concerns of federalism and comity, which might weigh against turning a finding of ineffective assistance of *state* post-conviction counsel are not implicated in § 2255 review. As discussed *supra,* the district court foreclosed review of evidence presented in Mr. Lee's motion for reconsideration solely because his court-appointed § 2255 counsel failed to timely present it.

This is exactly the situation for which *Trevino* presents a remedy: by reason of the federal post-conviction framework's design and operation, Mr. Lee had no meaningful opportunity before his § 2255 proceedings to have any court consider his underlying IATC claim; that claim is substantial; the district court strongly suggested that but for § 2255 counsel's inadequate development and pleading of the claim, it likely would have granted an evidentiary hearing and allowed further factual development of the claim. *See Lee*, 2010 WL 5347174 at \*5. In light of the Supreme Court's clear statement in *Trevino,* that in jurisdictions in which initial-review collateral proceedings are the first opportunity to raise IATC claims, post-conviction counsel's ineffectiveness may excuse procedural default of a substantial

Appellate Case: 11-1380    Page: 12    Date Filed: 09/27/2013 Entry ID: 4080430

underlying IATC claim, Mr. Lee has requested the district court to consider whether he can establish cause for, and prejudice resulting from, the default pursuant to *Trevino*. Mr. Lee, therefore, respectfully requests that this Court stay his appellate proceedings to allow the district court the opportunity to do consider his Rule 62.1 Motion.

## III. MR. LEE HAS STATED A POTENTIALLY MERITORIOUS IAC CLAIM THAT REQUIRES FURTHER DEVELOPMENT IN THE DISTRICT COURT.

As the district court made clear, even as it applied a procedural default, Mr. Lee's claim was potentially meritorious and would likely demand further factual development in the district court. But for § 2255 counsel's ineffectiveness, "the Court might have determined that an evidentiary hearing was required." *United States v. Lee, supra* at \*5. As discussed below, the district court's reference to the potential merit of Mr. Lee's allegations was supported by scientific information readily available at the time of Mr. Lee's trial, and suggests that further factual development is necessary.

A diagnosis of psychopathy, as measured by the PCL-R, is not – and never has been – probative of, or a valid predictor of, an individual's future

13

dangerousness in prison.[2]  Mr. Lee is the *only* individual still on federal death row whose capital sentencing proceedings relied on aggravating evidence of future dangerousness based on the PCL-R and so-called psychopathy evidence. Every other federal capital case involving such evidence has either been reversed after judgment, or the evidence was precluded from ever being presented to the jury in the first place.

There is compelling evidence that the psychopathy evidence introduced at Mr. Lee's penalty phase hearing was false, prejudicial and an improper basis of his death sentence.  There is a clear consensus within the scientific community on the falsity of the PCL-R as a predictor of future violence in prison. Even the government's own expert, Dr. Ryan, has disavowed his reliance on the PCL-R and any claims about an individual's future dangerousness in prison based on a diagnosis of psychopathy. Trial counsel's failure to adequately challenge this evidence was objectively unreasonable, as the basis for such a challenge was readily available at the time of Mr. Lee's trial. Moreover, there is no question that trial counsel's deficient performance prejudiced Mr. Lee.  In fact, this evidence was so clearly responsible for Mr. Lee's death sentence that the district court

---

[2] The evidence was additionally highly prejudicial in that the jury was assured that as a diagnosed "psychopath" Mr. Lee would be incapable of controlling his future violent behavior.

14

Appellate Case: 11-1380     Page: 14     Date Filed: 09/27/2013 Entry ID: 4080430

"conclude[d] that it is very questionable whether the jury would have given Defendant Lee the death penalty" in the absence of the psychopathy evidence.[3]

Mr. Lee has also presented evidence to the district court confirming that the basis for this challenge was available to trial counsel. Although the district court defaulted Mr. Lee's claim because of § 2255 counsel's errors, it noted in passing that it was unclear how trial counsel would have been expected to challenge the PCL-R evidence in 1999 since Dr. Ryan's recantation was in 2000. *United States v. Lee*, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010), at \*6. The district court's *dicta* was based on an unfortunate misunderstanding of the evidence before it. Although Dr. Ryan recanted in 2000, he has clearly acknowledged that testimony he gave in another case, a year before Mr. Lee's trial, linking a high PCL-R score with future prison violence, was invalid, and that a challenge to his testimony at that time was available. In a further attempt to clarify the misunderstanding, Mr. Lee has now submitted the September 13, 2013 affidavit of Dr. John F. Edens, a licensed forensic clinical psychologist with extensive forensic, clinical and research experience in the area of psychopathy and the PCL-R. (Attached as Exhibit 3) (hereafter "Edens Declaration"). As Dr. Edens states, at the time of Mr.

---

[3] *United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. 3/21/00) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol).

Appellate Case: 11-1380     Page: 15     Date Filed: 09/27/2013 Entry ID: 4080430

Lee's trial in 1999, there was agreement in the forensic psychological community that no scientific basis existed for the claim that a high PCL-R score was predictive of an individual's future dangerousness:

> I have been asked in this declaration to provide an opinion as to whether at the time of Daniel Lee's trial, in May of 1999, there was a valid scientific basis to support the use of the PCL-R as an instrument to predict a capital defendant's future dangerousness, and whether the grounds for challenging the PCL-R as a reliable predictor of future violence in prison were available at the time of Mr. Lee's trial.
>
> As I will discuss more fully below, in 1999, at the time of Mr. Lee's trial there was no scientific basis to support the use of the PCL-R as a predictor of his future dangerousness in prison and the grounds for challenging its use for that purpose were known within the scientific and mental health communities.
>
> Scientific research studies were being performed as early as 1997 that examined the relationship between psychopathy scores and violent behavior in male U.S. prison inmates. None of these early studies reported a statistically significant relationship between the PCL-R and acts of physical violence in prison, meaning that the state of the science was that scores from this instrument could not be used to identify to any meaningful degree of certainty which U.S. prison inmates were likely to engage in violence. Thus, in 1999 a claim that a high PCL-R score indicated a high risk of future violence in federal prison was not only made in the absence of any empirical support, it actually contradicted the published, available scientific evidence on the subject at that time. Under these circumstances, at the time of Mr. Lee's 1999 trial, an expert could not ethically and responsibly have asserted that a high PCL-R score was predictive of whether an inmate would be violent in a U.S. prison.
>
> In post-conviction proceedings in another federal death penalty case, *United States v. Richard Stitt*, I was asked a question very similar to the one posed here. In that case, I provided a declaration explaining the reasons why reliance on the PCL-R was inappropriate in 1998 – a year prior to Mr. Lee's trial – and explained that these reasons were known at the time. I provided a

16

Appellate Case: 11-1380     Page: 16     Date Filed: 09/27/2013 Entry ID: 4080430

declaration summarizing the empirical literature regarding the relationship between psychopathy and U.S. prison violence and noted that the literature did not support a finding that a high PCL-R score was a reliable predictor of future violence in prison. I expressed my concern about the scientific and ethical impropriety of reliance on the PCL-R at Mr. Stitt's 1998 trial to identify him as likely to commit acts of violence in prison and stated that, had I been asked for a declaration to this effect at the time, I would have expressed the same reservations in 1998 that I stated in 2000, when I provided a declaration in another federal death penalty case, *Unites States v. Haynes*. As such, I would assert the same conclusion with respect to Mr. Lee's case. In 1999, as in 1998, the available scientific research contradicted the claim that there is a link between a high PCL-R score and violence in U.S. prisons. Thus, the basis for a challenge to the PCL-R as a predictor of future prison violence existed at the time of Mr. Lee's trial in 1999.

In conclusion, it is my opinion that it was not in 1999, nor is it today, scientifically or ethically defensible to claim that an individual offender with a high PCL-R score is more likely than the typical prison inmate to commit acts of violence in a U.S. prison, given the absence of a meaningful association between the PCL-R and U.S. prison violence.

Edens Declaration. As Dr. Eden notes, these concerns about the scientific propriety of using the PCL-R to identify individuals as likely to commit acts of violence in prison are not new, and date at least as far back as 1998 – in other words, prior to Mr. Lee's trial.  *See* Edens Declaration at ¶ 8.

It would be a manifest injustice to allow Mr. Lee to be executed on the basis of highly inflammatory evidence injected into the trial based on pseudo-science that the government's own expert no longer stands by, and which the government no longer introduces in other capital cases on account of its unreliability.  Mr. Lee has presented a substantial claim to the Court, and recent Supreme Court case law

17

has created a means for the Court to hear the merits of his claim. For these reasons, Mr. Lee respectfully requests that this Court stay the appellate proceedings to allow the district court an opportunity to rule on the pending Rule 62.1 motion.

## IV. AVOIDING PIECEMEAL LITIGATION BY ALLOWING THE DISTRICT COURT THE OPPORTUNITY TO ISSUE AN INDICATIVE RULING IS CONSISTENT WITH THIS COURT'S LONG-STANDING EQUITABLE REMAND DOCTRINE.

This Circuit has a strong and lengthy tradition -  which predates *Martinez v. Ryan,* 566 U.S. ___ (2012)  - of affording at least one meaningful opportunity of merits review to habeas petitioners whose post-conviction lawyers' errors resulted in defaults. In *Griffin v. Delo*, 961 F.2d 793 (8th Cir. 1992), this Court remanded the case to the district court for further proceedings based on petitioner's argument that his first post-conviction counsel inadequately presented and argued issues before this Court and failed to raise a number of constitutional claims. *See id.* at 794. This Court vacated the district court's denial of habeas relief and remanded "with directions to allow the petitioner to raise additional issues for consideration by the district court." *Id.* This Court reasoned that in a capital case, the *possibility* that the first post-conviction lawyer *may* not have "recognized and presented issues of constitutional dimension during . . . habeas proceedings . . . [and] may have . . . failed to bolster claims actually raised," was sufficient to warrant a remand with

18

orders for the district court to allow new habeas counsel an opportunity to develop the claims and supporting facts. *Id.*

Moreover, the procedural posture of the *Griffin* case created no barrier to this Court's inherent authority to remand the case. As in Mr. Lee's case, Mr. Griffin's case had already been denied on appeal in the Circuit and the allegations of his habeas counsel's ineffectiveness were raised for the first time in a petition for rehearing. *Id*. This Court believed "[c]onsidering the severity of the sentence…that it was the most prudent course to allow the petitioner a reasonable opportunity to raise additional claims of constitutional error." *Griffin v. Delo*, 33 F.3d 895, 900 (8th Cir. 1994).

Similarly, in *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir. 1990), the petitioner sought merits review of two claims that his previous counsel had failed to raise in prior proceedings. One of the issues was that his trial counsel labored under a conflict of interest which resulted in constitutionally ineffective representation at his trial. *See Simmons*, 915 F.2d at 374. The district court found the claim procedurally barred by his post-conviction lawyer's failure to raise it in state court and decided that to hear the argument in this second habeas petition would amount to abuse of the writ. *See id.* This Court remanded the case for the district court to make findings of fact as to why Simmons's post-conviction lawyer

19

had failed to raise the claim in state court. *See id.* (citing *Simmons v. Lockhart*, 856 F.2d 1144, 1146 (8th Cir. 1988)).

Like the petitioners in *Griffin* and *Simmons*, Mr. Lee forfeited full merits review of a claim due to the ineffectiveness of his § 2255 counsel, and through no fault of his own. The Supreme Court's recent *Trevino* decision, however, establishes an avenue for Mr. Lee's claim to be considered on the merits. As this Court reasoned in a similar situation, "considering the severity of the sentence…it [would be] the most prudent course to allow the petitioner a reasonable opportunity to raise additional claims of constitutional error." *Griffin v. Delo*, 33 F.3d 895, 900 (8th Cir. 1994). This Court may allow that one opportunity to Mr. Lee by simply staying his appellate proceedings so that the district court might make a reasoned determination of the motions pending before it.

Respectfully submitted,

/s/ Karl Schwartz
KARL SCHWARTZ
(PA Bar # 38994)
Jennifer Merrigan
(Mo Bar # 56733)
Capital Habeas Unit
Delaware Federal Defender Office
800 King Street, Suite 200
Wilmington, DE 19801
(302) 442-6545

Dated: September 27, 2013        karl_schwartz@fd.org

20

Appellate Case: 11-1380     Page: 20     Date Filed: 09/27/2013 Entry ID: 4080430

# CERTIFICATE OF SERVICE

Appellant's counsel have filed this Motion for Stay of Appellate Proceedings Pending District Court Resolution of Motion Pursuant to Federal Rule of Civil Procedure 62.1 on today's date, September 27, 2013 via ECF, thereby serving the United States and all parties.

<u>/s/ Karl Schwarz</u>
KARL SCHWARTZ

Appellate Case: 11-1380    Page: 21    Date Filed: 09/27/2013 Entry ID: 4080430