# EXHIBIT 3

# Declaration of John F. Edens, Ph.D. Pursuant to 28 U.S.C. § 1746

I, John F. Edens, Ph.D., hereby declare:

1.      I am a licensed psychologist in the state of Texas (license number 31105) and a tenured full professor in the Department of Psychology at Texas A&M University (TAMU), where I serve as the Director of Clinical Training for the Doctoral Program in Clinical Psychology. I received my doctoral degree in clinical psychology from TAMU in 1996, after which I completed a two-year postdoctoral fellowship in forensic psychology in the Department of Mental Health Law and Policy at the Louis de la Parte Florida Mental Health Institute at the University of South Florida. After my fellowship years, I joined the faculty at Sam Houston State University in 1998 and remained there until accepting an academic appointment at Southern Methodist University in 2004. In 2007, I accepted an appointment to return to TAMU. In my role as a faculty member in three Ph.D. training programs, I have been actively involved in the education and training of graduate students in the areas of research methodology, psychological assessment and forensic psychology. I have taught multiple courses in these areas to hundreds of graduate and undergraduate students. I also have conducted advanced training workshops in these and related areas for mental health and legal professionals.

2.      I have conducted research on psychological assessment and the prediction of human behavior since the 1990s and have published over 100 peer-reviewed journal articles, book chapters, and professional manuals related to these topics. Most of my research has focused on forensic and correctional assessment issues, such as the potential for engaging in future violence and other forms of socially deviant behavior. For example, from 2002 to 2006 I was a co-investigator on a $1.3 million research grant from the National Institute of Mental Health that examined the role of psychopathic personality disorder (psychopathy) in the adjustment and

Appellate Case: 11-1380      Page: 2      Date Filed: 09/27/2013 Entry ID: 4080430

future conduct of prison inmates and substance abusers. Additionally, I am the lead author of the *Personality Assessment Inventory Interpretive Report for Correctional Settings* (PAI-CS), which is an empirically derived, actuarial interpretive system designed to aid in the identification of inmates who have mental health problems and/or are likely to have difficulties adjusting to prison. Aside from scientific research on violence risk issues, I also have published extensively on controversies concerning risk assessment methods and procedures, both in general and in relation to capital murder cases specifically.

3. Because of my background and expertise in forensic and correctional psychology in general and violence risk specifically, I am frequently called on to evaluate the work of other social scientists, particularly related to risk assessment issues. For example, I am a former Associate Editor for the peer reviewed scientific journal, *Assessment*. In this capacity, I was responsible for judging the scientific merit of research manuscripts submitted for publication and making editorial decisions - with input from peer reviewers - regarding whether these research reports were scientifically rigorous and warranted publication. *Assessment* routinely receives submissions concerning research on forensic and correctional topics, such as the prediction of institutional misconduct. These submissions typically were assigned to me for editorial review because of my experience in this area. I also have been appointed to the editorial boards of various psychology-law journals (*Law and Human Behavior*, *Behavioral Sciences and the Law*, *International Journal of Forensic Mental Health*) and journals specifically focused on psychological assessment and abnormal behavior (*Psychological Assessment*, *Journal of Personality Assessment*, *Journal of Abnormal Psychology*), where I serve as a peer reviewer of articles submitted for publication. In this capacity, I provide the Editor or Associate Editor with a review of the methodological rigor of the research and a recommendation concerning its overall

Appellate Case: 11-1380     Page: 3     Date Filed: 09/27/2013 Entry ID: 4080430

contribution to the scientific literature. Over the course of my career I have been asked to serve as an editor or reviewer for hundreds of scientific research reports submitted to a multitude of social science and medical journals.

4. I am familiar with the published research literature regarding the Hare Psychopathy Checklist-Revised (PCL-R). I also have provided consultative services and training to legal, correctional, and mental health professionals regarding violence risk and the PCL-R and have testified as an expert witness concerning the use of the PCL-R and other risk assessment methods in the assessment of violence before federal and state criminal courts. Finally, I have used the PCL-R in some of my applied clinical work, which has included conducting risk assessments on convicted sex offenders who were being evaluated for possible civil commitment in the state of Texas.

5. I have been asked in this declaration to provide an opinion as to whether at the time of Daniel Lee's trial, in May of 1999, there was a valid scientific basis to support the use of the PCL-R as an instrument to predict a capital defendant's future dangerousness, and whether the grounds for challenging the PCL-R as a reliable predictor of future violence in prison were available at the time of Mr. Lee's trial.

6. As I will discuss more fully below, in 1999, at the time of Mr. Lee's trial there was no scientific basis to support the use of the PCL-R as a predictor of his future dangerousness in prison and the grounds for challenging its use for that purpose were known within the scientific and mental health communities.

7. Scientific research studies were being performed as early as 1997 that examined the relationship between psychopathy scores and violent behavior in male U.S. prison inmates. None of these early studies reported a statistically significant relationship between the PCL-R

3

Appellate Case: 11-1380    Page: 4    Date Filed: 09/27/2013 Entry ID: 4080430

and acts of physical violence in prison, meaning that the state of the science was that scores from this instrument could not be used to identify to any meaningful degree of certainty which U.S. prison inmates were likely to engage in violence. Thus, in 1999 a claim that a high PCL-R score indicated a high risk of future violence in federal prison was not only made in the absence of any empirical support, it actually contradicted the published, available scientific evidence on the subject at that time. Under these circumstances, at the time of Mr. Lee's 1999 trial, an expert could not ethically and responsibly have asserted that a high PCL-R score was predictive of whether an inmate would be violent in a U.S. prison.

8.     In post-conviction proceedings in another federal death penalty case, *United States v. Richard Stitt*, I was asked a question very similar to the one posed here.  In that case, I provided a declaration explaining the reasons why reliance on the PCL-R was inappropriate in 1998—a year prior to Mr. Lee's trial—and explained that these reasons were known at the time. I provided a declaration summarizing the empirical literature regarding the relationship between psychopathy and U.S. prison violence and noted that the literature did not support a finding that a high PCL-R score was a reliable predictor of future violence in prison. I expressed my concern about the scientific and ethical impropriety of reliance on the PCL-R at Mr. Stitt's 1998 trial to identify him as likely to commit acts of violence in prison and stated that, had I been asked for a declaration to this effect at the time, I would have expressed the same reservations in 1998 that I stated in 2000, when I provided a declaration in another federal death penalty case, *United States v. Haynes*.  As such, I would assert the same conclusion with respect to Mr. Lee's case. In 1999, as in 1998, the available scientific research contradicted the claim that there is a link between a high PCL-R score and violence in U.S. prisons. Thus, the basis for a challenge to the PCL-R as a predictor of future prison violence existed at the time of Mr. Lee's trial in 1999.

4

Appellate Case: 11-1380     Page: 5     Date Filed: 09/27/2013 Entry ID: 4080430

9.      In conclusion, it is my opinion that it was not in 1999, nor is it today, scientifically or ethically defensible to claim that an individual offender with a high PCL-R score is more likely than the typical prison inmate to commit acts of violence in a U.S. prison, given the absence of a meaningful association between the PCL-R and U.S. prison violence.

I declare under penalty of perjury that the foregoing is true and correct.

John F. Edens, Ph.D.
September 13, 2013

5