# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA, )
        Respondent-Appellee, )
                 )     Case No. 11-1380
      vs.              )     (Capital Case)
                 )
DANIEL LEWIS LEE, )
        Petitioner-Appellant. )

## PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR STAY OF APPELLATE PROCEEDINGS

Mr. Lee is the only individual on federal death row whose sentence relied on the Hare Psychopathy Checklist-Revised ("PCL-R"), which has been thoroughly disavowed by the scientific community as an unreliable and invalid predictor of future dangerousness in prison. The government's own expert has repudiated this evidence, and the government does not defend it. In a filing before the district court, Mr. Lee has asked for an indicative ruling pursuant to Civil Rule 62.1 on whether his 60(b) Motion concerning this matter[1] raises "substantial issues," and he has asked this Court for a stay to permit the district court to make that threshold determination. Despite conceding in a filing below that Mr. Lee's 60(b) Motion

---

[1] Mr. Lee's 60(b) Motion does not raise a claim, nor does it seek relief in the form of vacating the underlying conviction and sentence. Rather, the 60(b) Motion addresses a defect in the integrity of the § 2255 proceedings – habeas counsels' default which resulted in a record devoid of any factual support for an asserted claim – and asks that the district court's judgment be re-opened so that Mr. Lee can now present critical evidence which prior habeas counsel failed to proffer in a timely manner.

1

Appellate Case: 11-1380    Page: 1    Date Filed: 11/04/2013 Entry ID: 4092680

raises "substantial issues," 4:97-cr-00243, Doc. 1233 at 1, and thus meets the Rule 62.1 standard, the government's response does not address that question. In fact the government's response contains no discussion or analysis of Rule 62.1 or its operative standard. Instead, it: (1) asks this Court to address the merits of the 60(b) Motion, and (2) asserts, improperly, that the 60(b) Motion presents a new claim and is thus a successor barred by 28 U.S.C. § 2255(h). The government directs its opposition to a prayer for relief that Mr. Lee has not, and could not have, made of this Court – i.e., a merits determination of the 60(b) Motion. Mr. Lee's request, however, is narrow in scope – he asks that the district court be permitted to, as the Federal Rules contemplate, issue an indicative ruling regarding the 60(b) Motion.

**I.      Mr. Lee's request for a stay is narrow and would serve the interests of judicial economy and uniformity of practice.**

The request for a stay in this Court is for a limited purpose: to allow the district court time to issue an indicative ruling on whether Mr. Lee's 60(b) Motion "raises a substantial issue" pursuant to Rule 62.1. In the event the district court makes such a ruling, a stay allows this Court to determine whether to exercise the option afforded it under FRAP 12.1(b) (i.e., to retain jurisdiction while permitting the district court to rule on the Motion). Following its concession that the Motion does, in fact, raise substantial issues, the government could hardly have maintained that this Court should not await the district court's determination. Instead, the government has used its response to raise a series of procedural and substantive

2

Appellate Case: 11-1380      Page: 2      Date Filed: 11/04/2013 Entry ID: 4092680

challenges to Mr. Lee's 60(b) Motion itself. To entertain these challenges at this stage, however, would contravene Rule 62.1 and FRAP 12.1, which direct the *district court* to review the 60(b) Motion in the first instance -- both for its potential merits as well as, in the event of a remand per FRAP 12.1, a full merits review. At no point do the rules contemplate the course that the government urges: that this Court assess the merits of the 60(b) Motion before the district court. The rules were designed *precisely* to deal with a case in Mr. Lee's posture – i.e., the filing of a 60(b) Motion in the district court while an appeal is pending. *See* Notes of Advisory Committee, Civil Rule 62.1 (noting that the rule prescribes the practice that courts should follow "when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal"). The stay motion is consistent with the fundamental purpose of Rule 62.1, which is "to promote awareness of and uniformity in the practice of indicative rulings concerning motions which the district court lacks authority to grant due to a pending appeal." Minutes of Spring 2008 Meeting of Advisory Committee on Appellate Rules, April 10-11, 2008 at 9.[2]

In addition, a 60(b) motion must be filed in the district court, not the circuit, because the district court is by design in the best position to assess the potential merits of the motion. *See, e.g., Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d

---

[2] Available at: http://www.uscourts.gov/uscourts/RulesAndPolices/rules/Minutes/ AP04-2008-min.pdf) (last visited 11/4/13).

3

1322, 1333 (Fed. Cir. 2006) (fact intensive questions implicated in 60(b) motion "are best addressed by the district court in the first instance."). Here, however, the government requests that this Court - without the benefit of a full record[3] - make that assessment. Such a course would subvert the letter and spirit of Rule 62.1.

There is no reason why the Rule 62.1 matter cannot and will not be handled expeditiously. The district court responded promptly to the Rule 62.1 Motion and set a briefing schedule to be completed by October 21, 2013. 4:97-cr-00243, Doc. 1232. But for the *government's* request for extension to respond in the district court, the stay issue might well have been moot. Mr. Lee should not be precluded from receiving an indicative ruling from the district court merely because the government's request for an extension lengthened the briefing schedule. Moreover, the government can show no harm if a stay is granted.

Permitting a stay is also consistent with this Court's long-standing practice of guaranteeing one meaningful opportunity for merits review to habeas petitioners when the errors of post-conviction counsel result in defaults. *See* Motion for Stay at 18-20; *Griffin v. Delo*, 961 F.2d 793 (8th Cir. 1992); *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir. 1990). The government attempts to distinguish *Griffin* and *Simmons* because they were decided before the enactment of AEDPA and its gatekeeping requirement on successive petitions. Government Response (hereafter

---

[3] Mr. Lee's 60(b) Motion is 57 pages long, with 60 pages of exhibits.

4

"GR") at 17. This is unavailing: the Supreme Court's recent decisions in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), re-affirmed the animating principle in *Griffin* and *Simmons*, that habeas counsel's ineffectiveness can serve as cause to excuse a default committed in habeas proceedings. AEDPA is not inconsistent with the ability of a habeas petitioner to obtain at least one meaningful opportunity to have a constitutional claim fully heard on the merits in collateral review. [4]

**II.      The government's argument is premised on the erroneous and inconsistent assertion that Mr. Lee seeks to litigate a new, successive claim.**

A recurrent theme in the government's response is that Mr. Lee has presented a new claim to the district court and is thus seeking an impermissible, additional opportunity to attack his conviction and sentence. This assertion is incorrect and is flatly contradicted by both the district court's opinion and the government's own response to Mr. Lee's Rule 59(e) Motion. Mr. Lee is not seeking to litigate a new claim. He is asking for review of evidence previously foreclosed from consideration due to prior counsels' ineffectiveness.

The district court's opinion denying Mr. Lee's 59(e) Motion demonstrates that his claim was before that court in the 2255 Motion. The court foreclosed

---

[4] The government also argues that *Griffin* and *Simmons* are inapplicable because they involved state, not federal, trials. As discussed in Section III, *infra,* the government is incorrect.

Appellate Case: 11-1380     Page: 5     Date Filed: 11/04/2013 Entry ID: 4092680

review not because 2255 counsel failed to give notice of the claim but rather because counsel failed to provide any factual support for the claim. *See U.S. v. Lee*, 2010 WL 5347174 at \*3 (E.D. Ark. Dec. 22, 2010) ("Petitioner's obligation, however, is greater than simply placing the Court on notice of claims alleged…"); *id* at \*6 ("Lee's original § 2255 Petition included only one sentence referencing [the PCL-R] argument…Petitioner now devotes over 25 pages to this argument."); *id*. ("Petitioner does not explain why the information he now includes was not included with his original petition."). As the decision makes clear, the district court was aware of the claim but faulted 2255 counsel for not alleging, or attaching, *any* factual support when the 2255 was filed.[5]

Likewise, the government's current position that Mr. Lee seeks to present a new claim represents an about-face from the position it took in previous pleadings. In its 59(e) Response, the government argued that "*all of these claims concern this Court's previous resolution on the merits*, and not any erroneous failure to reach the merits, fraud on the federal habeas court, or similar defect in the integrity of the habeas proceedings." 59(e) Response at 4 (internal citations/quotes omitted)

---

[5] Attempting to bolster its argument that this is a "new" claim, the government mischaracterizes the language of the district court, asserting that "the court concluded that Lee's § 2255 motion did not put the court on notice of the *new* argument he advanced . . . ." GR at 5 (emphasis added). This paraphrase is incorrect and misleading: the district court actually said the 2255 did not "place the Court on notice of the *full* argument…" *U.S. v. Lee*, 2010 WL 5347174 at \*6 (Dec. 22, 2010) (emphasis added). The import of this alteration is obvious.

6

Appellate Case: 11-1380    Page: 6    Date Filed: 11/04/2013 Entry ID: 4092680

(emphasis added).[6] The government pointed out that Mr. Lee "proffers an expansive collection of affidavits and other papers *supplementing* the affidavit that accompanied his original § 2255 Motion, yet he does not remotely suggest that he was prevented by 'fraud' or a similar 'defect in the integrity of the proceedings' from proffering this information in his original motion…" *Id.* at 5 (emphasis added). In yet another pleading in January 2009, the government maintained that "Lee's assertions all concern this Court's previous resolution of a claim on the merits . . . ." 4:97-cr-00243, Doc. 1181 at 2.

Now that Mr. Lee, in light of *Trevino,* can demonstrate that his 2255 counsels' ineffectiveness should excuse the failure to receive full and meaningful habeas review of his ineffective assistance of trial counsel (hereafter "IAC") claim, the government has switched course and asserts that this claim is "new" and therefore successive. It is neither. Mr. Lee seeks to do exactly what the government

---

[6] It is important to note that § 2255, unlike § 2254, does not mandate dismissal of claims presented in a previous motion. The language of 28 U.S.C § 2244(b)(1) precluding same-claim successors is explicitly limited to § 2254 cases and, although this Court has not weighed in, there is disagreement among the circuits as to its application. *See U.S. v. MacDonald,* 641 F.3d 596, 614 n.9 (4th Cir. 2011) (declining to resolve "open issue" of whether same-claim successor bar applies to 2255 cases).

7

suggested he should have done in his 59(e) Motion: explain why a defect in the proceeding precluded full review of his IAC claim.[7]

---

[7] The government cites this Court's decision in *Ward v. Norris,* 577 F.3d 925, 935 (8th Cir. 2009), to argue that 2255 counsels' deficient performance preventing full merits consideration of an IAC claim is not a procedural defect upon which a 60(b) action may be brought. GR at 12-13. The government's suggestion that *Ward* applies here is wrong. First, in *Ward,* this Court found that the petitioner attempted to raise a *new* claim of incompetence for the first time in a 60(b) Motion. *Id.* at 932. As discussed, *infra*, Mr. Lee is not raising a new claim; his 60(b) Motion merely seeks to set aside a previously imposed procedural bar.

Second, in *Ward,* this Court actually *did* characterize "ineffective assistance of habeas counsel" as a "defect in the integrity of the proceeding." *Id.* at 932. But *Ward* was decided before *Martinez* and *Trevino* (i.e., in the absence of Supreme Court authority that post-conviction counsels' default could constitute cause), and the holding was informed by AEDPA's "broad" prohibition against claims of ineffectiveness of post-conviction counsel. *Ward,* 577 F.3d at 933. Accordingly this Court properly held, at that time, that Ward's 60(b) Motion could not be based on his post-conviction counsel's ineffectiveness, even if it constituted a procedural defect. *Id.*

In *Martinez*, the Supreme Court – while acknowledging AEDPA's prohibition against claims of ineffective assistance of habeas counsel – held that post-conviction counsel's default of an IAC claim could be excused upon a showing that post-conviction counsel was ineffective. *Martinez* constituted a "remarkable" development in the Supreme Court's jurisprudence, *Lopez v. Ryan,* 678 F.3d 1131, 1136 (9th Cir. 2012), and the Court's language leaves little doubt that such a showing now could constitute a procedural defect affecting the integrity of the federal proceeding. *See Martinez,* 132 S.Ct. at 1316-17 ("When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim;" "The right to the effective assistance of counsel is a bedrock principle in our justice system;" "Indeed, the right to counsel is the foundation for our adversary system.").

After *Martinez,* several federal courts have ruled that ineffective assistance of post-conviction counsel may amount to "cause" constituting a procedural defect, not a successive claim, and have analyzed the defect pursuant to Rule 60(b) to determine if it affected the integrity of a post-conviction proceeding. *See, e.g., Lopez,* 678 F.3d at 1136 (denying relief following 60(b) analysis); *Cook v. Ryan,*

8

**III.** *Trevino* **applies to a narrow class of 2255 cases such as Mr. Lee's.**

The government argues that Mr. Lee cannot avail himself of the ruling in *Trevino* because "it has no bearing on collateral proceedings brought by federal defendants under 28 U.S.C. § 2255 . . . ." GR at 15. According to the government, the rationale of *Trevino* is simply inapplicable to 2255 cases because a petitioner could not have defaulted his IAC claim prior to his federal post-conviction proceeding. *Id*. The rationale of *Martinez* and *Trevino* did not turn on the fact that the default occurred in a state, rather than federal, collateral proceeding; rather, the rationale was to provide a remedy when "the initial-review collateral proceeding, if undertaken . . . with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez,* 132 S.Ct. at 1318. The absence of such a remedy creates the unacceptable risk that no court will ever have the opportunity to fairly consider such a claim. *Martinez,* 132 S.Ct. at 1316; *Trevino,* 133 S.Ct. 1918. Where the federal post-conviction proceeding in a death penalty case is not just the initial review but the *only* review, there is a heightened need to ensure that at least one court give meaningful consideration to a substantial IAC claim. The government offers no argument as to why the condemned state defendant *is* afforded such consideration, but the condemned

2012 WL 2798789 AT *5-*9 (D. Ariz. July 9, 2012), *aff'd,* 688 F.3d 598 (9th Cir. 2012); *Barnett v. Roper,* 2013 WL 1721205 at *13-*18 (E.D. Mo. April 22, 2013) (granting relief following 60(b) analysis).

Appellate Case: 11-1380    Page: 9    Date Filed: 11/04/2013 Entry ID: 4092680

federal defendant *is not*; nor does the government cite to any language or analysis in *Trevino* suggesting that its holding is related to the structural framework of a 2254 proceeding. Indeed, principles of comity and federalism – which might weigh against excusing ineffective assistance of *state* post-conviction counsel – surely weigh in the opposite direction when the proceedings are, from beginning to end, federal. *See McQuiggin v. Perkins,* 133 S.Ct. 1924, 1031-32 (2013) (finding it "passing strange" to interpret the AEDPA statute – which is designed to "promote federalism and comity" – as permitting consideration of claims defaulted in state court, but not those defaulted in federal court).

The government maintains that it "is not accurate" to refer "to the failure to raise a claim in a first Section 2255 motion as a 'procedural default' . . . ." GR at 15-16.[8] In support, the government cites a Ninth Circuit opinion, *Buenrostro v. U.S.*, 697 F.3d 1137, 1138 (9th Cir. 2012) ("Buenrostro moved to reopen the [2255] proceeding…due to a newly discovered ineffective assistance of counsel claim."). *Buenrostro* is inapposite. First, the decision rested, in part, on a finding that *Martinez* does not apply to § 2255 matters. That position was, at the time,

---

[8] The government also cites *Magwood v. Patterson,* 130 S.Ct. 2788 (2010) to suggest that "the equitable exception to procedural default recognized in *Trevino* and *Martinez"* is rendered inoperative by the successor bar of § 2255. GR at 15-16. The holding of *Magwood* supports the opposite conclusion, i.e., that these are separate inquiries that require separate analyses. *Id.* at 2801-02 (ruling on successor issue and remanding to the court of appeals the question of procedural default).

10

Appellate Case: 11-1380     Page: 10     Date Filed: 11/04/2013 Entry ID: 4092680

arguably supported by *Martinez's* explicit limitation to jurisdictions in which IAC claims could not be raised on direct appeal. That position is no longer tenable after *Trevino.* Second, Mr. Lee does not seek to litigate a new claim in his 60(b) Motion, nor has he suggested that the procedural defect in his case relates to a failure to raise a claim. The procedural defect in Mr. Lee's case—a unique and rare occurrence in 2255 cases—is post-conviction counsels' utter failure to proffer *any facts whatsoever* in support of the claim they asserted.

In denying 59(e) relief, the district court left no doubt that Mr. Lee was foreclosed from full review of his IAC claim solely because 2255 counsel failed to comply with the rules governing habeas actions. *Lee*, 2010 WL 5347174 at *5[9] ("[The] affidavits or other supporting information were not provided to the Court before it ruled on [Petitioner's] original motion for § 2255 relief. [] [T]he Court is foreclosed by existing legal principles from considering the information now . . . ."). This "foreclosure" – informed by the principle of finality – conforms precisely to the government's definition of procedural default: "a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important

---

[9] The court noted that had this evidence been timely provided it "might have determined that an evidentiary hearing was required." *Lee,* 2010 WL 5347174 at *5. The government now suggests that this comment does "not pertain specifically to the psychopathy issue." GR at 18 n. 4. This is simply not so, and is belied by a fair appraisal of the evidence actually provided to the district court. Each of the 85 pages submitted in support of the 59(e) Motion related to Mr. Lee's IAC claim, and 80 of those pages related specifically to the PCL-R issue.

11

interest in the finality of judgments." GR at 16 (internal citation omitted). It bears every significant characteristic of a procedural defect as defined and discussed in *Gonzalez v. Crosby,* 545 U.S 524 (2005), *Martinez,* and *Trevino,* and belies the government's argument that this is a successive claim.

## IV. Mr. Lee's claim is potentially meritorious.

Mr. Lee's underlying IAC claim is potentially meritorious; however, his claim has never received the benefit of a full merits review because his 2255 counsel unreasonably failed to timely proffer facts in support of the claim. The government suggests that this Court previously reached the merits of this claim in its direct appeal opinion. GR at 7. But this is contradicted by the position the government took in response to Mr. Lee's request for a Certificate of Appealability, i.e., that the merits of the claim were never addressed. COA Response at 77-78. No court in these proceedings has ever heard expert testimony about the virtually universal agreement within the scientific community that the evidence presented below falls within the category of other well known, formerly accepted, "scientific" theories that have been discredited and relegated to the category of historical curiosities. Additionally, a full merits review of the claim would necessarily take into account not only the prejudicial impact of the PCL-R evidence had at trial, but also its effect on trial counsels' decision to curtail their mitigation presentation, to avoid the PCL-R evidence. *See* GR at 18 (*conceding*

12

that "trial counsel limited the defense case at sentencing" in order to avoid introduction of psychopathy evidence). Such an analysis has never been conducted on Mr. Lee's claim.

Notably, the government does not contest any of the now-proffered facts establishing that the psychopathy evidence admitted at Mr. Lee's trial was scientifically invalid and unreliable. *See*, *e.g.*, Declaration of John F. Edens, PhD., Exh. 3 to Motion for Stay, at ¶ 6 ("[I]n 1999, at the time of Mr. Lee's trial there was no scientific basis to support the use of the PCL-R as a predictor of his future dangerousness in prison and the grounds for challenging its use for that purpose were known within the scientific and mental health communities."). Notable also is the government's silence in response to Mr. Lee's assertion that the government has abandoned its use of this evidence in federal capital trials. For this reason, this Court should take little comfort in the government's assurance that "Fed. R. Evid. 702's relevance and reliability requirements for scientific expert testimony [] are not pertinent to the admissibility of evidence at a capital sentencing hearing." GR at 19. At the very least, the Eighth Amendment demands *some* relevance and *some* reliability. The government also fails to mention that in cases in which counsel has challenged the PCL-R *on the grounds articulated in the 60(b) Motion,* the evidence has been found to be utterly unreliable. *See, e.g., U.S. v. Taylor,* 320 F.Supp.2d 790, 794 (N.D. Ind. 2004) ("[D]ue to the uncertainty of the validity and reliability

13

Appellate Case: 11-1380     Page: 13     Date Filed: 11/04/2013 Entry ID: 4092680

of the PCL-R as it is used in capital sentencing hearings, the Government and any of its experts is prohibited from utilizing this test in evaluating Defendant . . . ."); *U.S. v. Haynes,* No. 8:98 –cr-00520- PJM (D. Md.) [Doc. 241] (in response to defense motion, Dr. Ryan, proponent of PCL-R, withdrew opinion after admitting its unreliability); *Stitt v. U.S.*, 369 F. Supp. 2d 679, 699 (E.D. Va. 2005) (court finds PCL-R evidence to be unreliable and "cannot conceive" of refusing to consider a claim that scientific evidence used at trial was later found to be "[in]accurate" and "unreliable," death sentence vacated on other grounds).[10]

Finally, the government also relies on a finding by the district court in the 59(e) denial to support its argument that the PCL-R claim lacks merit. The finding in question, however, was erroneous. That is, the district court stated the claim was "problematic" because Dr. Ryan repudiated the PCL-R as a predictor of prison violence in 2000, but Mr. Lee's trial was in 1999, so Mr. Lee's counsel could not

---

[10] The government cites *U.S. v. Barnette*, 211 F.3d 803 (4th Cir. 2000) for the proposition that other courts have found the PCL-R to be admissible. That case, however, does not suggest that the PCL-R is a reliable indicator of future dangerousness in prison. The defendant in *Barnette* did not raise that issue, and instead raised an altogether different challenge to the PCL-R: that it was unreliable because "it had not been standardized as to the black population (Barnette is black) or as to the post middle-age population." 211 F.3d at 816. As the cases cited above demonstrate, federal courts have uniformly concluded that the PCL-R is not a reliable indicator of a capital defendant's future dangerousness in prison, and have precluded its use for that purpose when the type of challenge discussed in Mr. Lee's 60(b) Motion has been raised. Indeed, even the government has abandoned using the PCL-R for this purpose in federal capital cases -- *including* at Mr. Barnette's capital re-sentencing hearing.

14

have been expected to raise the relevant challenges to the PCL-R at that time. *Lee*, 2010 WL 5347174 at *6. Dr. Ryan, though, stated in his declaration attached to the 59(e) Motion – the same declaration in which he stated that he rejected the PCL-R in 2000 - that the basis for challenging the PCL-R existed as early as when he testified at the *Stitt* trial. The *Stitt* trial was held in 1998. Thus, the relevant challenge was certainly available to Mr. Lee's trial counsel in 1999.[11]

**Conclusion**

Mr. Lee respectfully requests that this Court stay his appellate proceedings to allow the district court to make a reasoned determination of the Rule 62.1 Motion pending before it.

Respectfully submitted,

EDSON A. BOSTIC

Federal Public Defender

By: /s/Karl Schwartz
Karl D. Schwartz, PA Bar # 38994
Jennifer Merrigan, MO Bar # 56733
Office of the Federal Public Defender
District of Delaware
800 N. King Street, Suite 200
Wilmington, DE 19801
(302) 573-6010

Dated: November 4, 2013

---

[11] While the government chose not to mention Dr. Ryan's assertion that the PCL-R was subject to challenge in 1998, it surely was aware of that assertion. *Stitt* was a *federal* prosecution in which Dr. Ryan testified at trial and thereafter recanted his testimony. Dr. Ryan's declaration was submitted in Mr. Stitt's 2255 proceeding, as well as in the instant proceeding.

Appellate Case: 11-1380   Page: 15   Date Filed: 11/04/2013 Entry ID: 4092680

## CERTIFICATE OF SERVICE

Appellant's counsel have filed this Reply on November 4, 2013, via ECF, thereby serving the United States and all parties.

/s/ Karl Schwarz
KARL SCHWARTZ

16